# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| **INTELLECTUAL VENTURES I LLC and INTELLECTUAL VENTURES II LLC** | **Civil Action No. 10-1065-LPS** |
| **Plaintiffs,** | **JURY TRIAL DEMANDED** |
| **v.** | <u>**FILED UNDER SEAL**</u> |
| **ALTERA CORPORATION, MICROSEMI CORPORATION, LATTICE SEMICONDUCTOR CORPORATION, and XILINX, INC.** | |
| **Defendants.** | |

<u>**PLAINTIFFS' OPPOSITION TO DEFENDANT XILINX INC.'S MOTION TO DISMISS OR TRANSFER**</u>

Brian E. Farnan (Bar No. 4089)
FARNAN LLP
919 North Market Street
12th Floor
Wilmington, DE 19801
(302) 777-0300
(302) 777-0301
bfarnan@farnanlaw.com

*Counsel for Plaintiffs*
*Intellectual Ventures I LLC and*
*Intellectual Ventures II LLC*

John M. Desmarais (admitted *pro hac vice*)
Michael P. Stadnick (admitted *pro hac vice*)
DESMARAIS LLP
230 Park Avenue
New York, NY 10169
(212) 351-3400
(212) 351-3401
jdesmarais@desmaraisllp.com
mstadnick@desmaraisllp.com

Dated:  April 28, 2011

## TABLE OF CONTENTS

I.    INTRODUCTION ................................................................................................. 1

II.   FACTUAL BACKGROUND ................................................................................. 3

III.  ARGUMENT ........................................................................................................ 5

    A.  This Action Should Not Be Dismissed Under The "First-to-File" Rule. .......................... 5

        1.  The IV Plaintiffs Should Be Considered First to File Because This Court Was First To Obtain Jurisdiction Over The Parties And Issues. .................................. 6

        2.  Even If Xilinx's Anticipatory Suit Were Properly Considered The First-Filed Action, Settled Exceptions Justify Departure From The "First-to-File" Rule. ............. 7

            a.  The Interests Of Judicial Economy And Avoidance Of Inconsistent Adjudications Warrant Departure From The "First-to-File" Rule. ........................ 8

            b.  The California Action Falls Squarely Within The Anticipatory Suit Exception To The "First-to-File" Rule. ................................................................. 9

            c.  Jurisdictional Disputes In The California Action Weigh Against Application Of The "First-to-File" Rule. ................................................................ 11

    B.  Xilinx Cannot Demonstrate That The California Court Is A Clearly More Convenient Forum Than This Court. ........................................................................... 12

        1.  The Relevant Private Interest Factors Weigh Against Transfer. .............................. 12

            a.  The Plaintiff's Choice of Forum Disfavors Transfer. ........................................... 12

                i.  The IV Plaintiffs Are The True Plaintiffs In This Action. .............................. 13

                ii. The IV Plaintiffs' Choice Of The Delaware Forum Is Rational And Legitimate And Therefore Entitled to Paramount Consideration. ................. 13

            b.  The Convenience of the Parties Does Not Favor Transfer ................................... 15

                i.  Litigating In Delaware Would Not Pose Any Unique Or Undue Burden On Xilinx's Business Operations. .................................................................. 15

                ii. Xilinx Fails To Demonstrate That Its Party Witnesses Would Be Unable To Attend Trial In Delaware. ...................................................................... 16

            c.  The Convenience Of Non-Party Witnesses Does Not Support Transfer. .............. 17

            d.  The Location of Sources of Proof Does Not Support Transfer. ........................... 18

        2.  The Relevant Public Interest Factors Weigh Against Transfer. ............................... 19

IV.   CONCLUSION .................................................................................................... 20

# TABLE OF AUTHORITIES

**Cases**

*1st Source Bank v. Merritt,*
  2011 WL 30767 (D. Del. Jan. 5, 2011) ................................................................... 19

*ADE Corp. v. KLA-Tencor Corp.,*
  138 F. Supp. 2d 565 (D. Del. 2001) ................................................................. 14, 15

*Affymetrix, Inc. v. Synteni, Inc.,*
  28 F. Supp. 2d 192 (D. Del. 1998) ........................................................................ 17

*Alexander v. Franklin Resources, Inc.,*
  No. C 06-7121 SI, 2007 WL 518859 (N.D. Cal. Feb. 14, 2007) ............................... 9

*Asten Inc. v. Weavexx Corp.,*
  No. 99-593 GMS, 2000 WL 1728354 (D. Del. Feb. 11, 2000) ................................. 7

*Autodesk Canada Co. v. Assimilate, Inc.,*
  No. 08-587-SLR-LPS, 2009 WL 3151026 (D. Del. Sept. 29, 2009) ....................... 16

*Automotive Techs. Int'l, Inc. v. Am. Honda Motor Co., Inc.,*
  Civil Action No. 06-187 GMS, 2006 WL 3783477 (D. Del. Dec. 21, 2006) ........... 11

*Carl Zeiss Meditec, Inc. v. XOFT, Inc.,*
  C.A. No. 10-308-LPS-MPT, 2010 WL 4024603 (D. Del. Oct. 13, 2010) ......... 17, 18

*Cisco Sys., Inc. v. GPNE Corp.,*
  Civ. No. 07-671-SLR, 2008 WL 1758866 (D. Del. Apr. 17, 2008) ....................... 15

*CNH America LLC v. Kinzenbaw,*
  C.A. No. 08-945(GMS), 2009 WL 3737653 (D. Del. Nov. 9, 2009) ..................... 13

*Comcast Cable Commn's, LLC v. USA Video Tech. Corp.,*
  Civil Action No. 06-407-JJF, 2008 WL 1908612 (D. Del. Apr. 29, 2008) ........... 5, 6

*Cypress Semiconductor Corp. v. Integrated Circuit Sys., Inc.,*
  2001 WL 1617186 (D. Del. Nov. 28, 2001) ........................................................... 18

*Derry Fin. N.V. v. Christiana Co., Inc.,*
  555 F. Supp. 1043 (D. Del. 1983) ......................................................................... 18

*Downing v. Globe Direct LLC,*
  C.A. No. 09-693-JAP, 2010 WL 2560054 (D. Del. June 18, 2010) ....................... 19

*Drugstore-Direct, Inc. v. Cartier Div. of Richemont N. Am., Inc.,*
  350 F. Supp. 2d 620 (E.D. Pa. 2004) .................................................................... 10

*E.E.O.C. v. Univ. of Pennsylvania,*
  850 F.2d 969 (3d Cir. 1988) ............................................................................... 5, 8

*Envirometrics Software, Inc. v. Georgia-Pacific Corp.*,
   No. CIV. A. 97-243-SLR, 1997 WL 699328 (D. Del. Nov. 4, 1997) ..................................... 10

*Erbamont Inc. v. Cetus Corp.*,
   720 F. Supp. 387 (D. Del. 1989)........................................................................................... 8, 11

*FMC Corp. v. AMVAC Chem. Corp.*,
   379 F. Supp. 2d 733 (E.D. Pa. 2005) ........................................................................................ 6

*Genentech v. Eli Lilly & Co.*,
   998 F.2d 931 (Fed. Cir. 1993) ............................................................................................. 6, 11

*ICU Medical, Inc. v. Rymed Tech., Inc.*,
   2008 WL 205307 (D. Del. Jan. 23, 2008)................................................................................ 17

*IMS Health, Inc v. Vality Tech., Inc.*,
   59 F. Supp. 2d 454 (E.D. Pa. 1999) ........................................................................................ 10

*Jefferson Ward Stores, Inc. v. Doody Co.*,
   560 F. Supp. 35 (E.D. Pa. 1983) ........................................................................................... 6, 7

*Jumara v. State Farm Ins. Co.*,
   55 F.3d 873 (3d Cir. 1995) ................................................................................. 12, 15, 17, 18

*Mallinckrodt v. E-Z-Em*,
   670 F. Supp. 2d 349 (D. Del. 2009)....................................................................... 12, 14, 15

*Mekiki Co., Ltd. v. Facebook, Inc.*,
   Civ. A. No. 09-745, 2010 WL 2348740 (D. Del. June 7, 2010)............................................. 12

*Osteotech, Inc. v. GenSci Regeneration Sciences, Inc.*,
   6 F. Supp. 2d 349 (D.N.J. 1998) .............................................................................................. 6

*Peregrine Corp. v. Peregrine Industries, Inc.*,
   769 F. Supp. 169 (E.D. Pa. 1991) ............................................................................................ 7

*Pfizer Inc. v. Apotex, Inc.*,
   Civ. A. No. 08-cv-948, 2009 WL 2843288 (D. Del. Aug. 13, 2009) ..................................... 14

*Schering Corp. v. Amgen Inc.*,
   969 F. Supp. 258 (D. Del. 1997)............................................................................................. 14

*Serco Svcs. Co., L.P. v. Kelley Co., Inc.*,
   51 F.3d 1037 (Fed. Cir. 1995) ................................................................................................ 10

*Shutte v. Armco Steel Corp.*,
   431 F.2d 22 (3d Cir. 1970) ..................................................................................................... 12

*Time Warner Cable, Inc. v. USA Video Tech. Corp.*,
   520 F. Supp. 2d 579 (D. Del. 2007).......................................................................................... 8

*Tradimpex Egypt Co. v. Biomune Co.*,
   C.A. No. 10-757-LPS, 2011 WL 1447553 (D. Del. Apr. 14, 2011)....................................... 15

*TransCore L.P. v. Mark IV Ind. Corp.*,
   2009 WL 3365870 (E.D. Pa. Oct. 15, 2009) ............................................................................ 20

**Statutes**

28 U.S.C. § 1404(a) ........................................................................................................................ 12

35 U.S.C. § 271(a) .......................................................................................................................... 14

## I.      INTRODUCTION

Plaintiffs Intellectual Ventures I LLC and Intellectual Ventures II LLC (collectively, "the IV Plaintiffs") own fundamental patents relating to the design and operation of Field Programmable Gate Array ("FPGA") devices and similar products.  FPGAs are semiconductor chips that contain logic circuitry capable of being modified after manufacturing by electrical or other means.  The ability of FPGAs to be programmed "in the field"—from which they derive their name—makes them more versatile and functional than traditional, hard-wired logic devices.

Defendant Xilinx, Inc. ("Xilinx") is one of a handful of companies that designs and sells a significant number of FPGAs.  In 2010, an affiliate of the IV Plaintiffs, Intellectual Ventures Management LLC ("IV Management"), approached several FPGA companies—including each of the Defendants in this action—to negotiate licenses for various FPGA patents, including U.S. Patent Nos. 5,675,808, 5,687,325, 6,260,087, 6,272,646, and 6,993,669 ("the Patents-in-Suit").  When those negotiations failed to progress into license agreements, the IV Plaintiffs brought this patent infringement action against Altera Corporation ("Altera"), Lattice Semiconductor Corporation ("Lattice"), and Microsemi Corporation ("Microsemi").  Altera, Lattice, and Microsemi have all now answered the IV Plaintiffs' complaint and have each asserted declaratory-judgment counterclaims challenging (among other things) the validity of the Patents-in-Suit.

The instant motion concerns only Xilinx, whom the IV Plaintiffs did not initially name as a Defendant in this action.  ███████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████  In so doing, the IV Plaintiffs kept the door open for one final opportunity to resolve their dispute with Xilinx over the Patents-in-Suit.  Yet Xilinx well knew—as it admits in its brief—that the IV Plaintiffs would not wait indefinitely to join Xilinx in this action if negotiations floundered.

Flounder they did.  After nearly two months with little progress toward resolution, Xilinx found itself approaching a February 28, 2011 deadline that the IV Plaintiffs had imposed for Xilinx and IV Management to agree on license terms.  And so on February 14, 2011, Xilinx filed an anticipatory suit in the United States District Court for the Northern District of California ("the California Action"), asserting declaratory-judgment claims challenging the infringement, validity, and ownership of four of the Patents-in-Suit (along with twelve other patents owned by various IV Management affiliates).  Rather than serve its declaratory-judgment complaint, however, Xilinx attempted to employ its filing and potential service as a lever to force concessions from IV Management.  (*See* Declaration of Joseph F. Chernesky ("Chernesky Decl.") at ¶ 6)  On February 15, 2011, the IV Plaintiffs responded to Xilinx's tactics by amending their pleading in this action to name Xilinx as a party—the contemplated consequence of a breakdown in negotiations from the outset.  Xilinx served its California complaint two days later.

Xilinx now moves to dismiss under the "first-to-file" rule.  Xilinx's motion fails because under the facts of this case (1) Xilinx cannot demonstrate that it was the "first-to-file" and (2) in any event, several established exceptions to the "first-to-file" rule apply.  As an initial matter, it remains unclear just who should be considered the "first-to-file," because Xilinx withheld service—holding it over the IV Plaintiffs as a bargaining chip—until after the IV Plaintiffs added Xilinx as a Defendant in this Court.  Moreover, Xilinx's rush to the California courthouse produced a complaint that suffers fatal standing and personal jurisdiction defects.  The IV Plaintiffs have therefore moved to dismiss the California action based on defects—not present in this Court—that could render the California action a nullity.  Under the circumstances, ample authority supports a determination that the IV Plaintiffs, as the parties that served their complaint and perfected jurisdiction first, qualify as "first-to-file" for purposes of the rule.

Furthermore, even if the Court determines that Xilinx should be considered "first-to-file," several well-settled exceptions render dismissal improper here.  *First*, the rule gives way to judicial economy where—as here—its application would foreclose an opportunity to consolidate

2

closely related matters.  *Second*, the "first-to-file" rule does not apply where—as here—the alleged first filer commenced an anticipatory suit to "jump the gun" on an imminent threat of litigation and/or to gain some perceived advantage in settlement negotiations.  *Third*, the "first-to-file" rule yields where—as here—legitimate jurisdictional challenges have been raised in the putative "first filed" Court but not in the latter filed Court.  Xilinx's motion to dismiss under the "first-to-file" rule should therefore be denied.

Xilinx also moves in the alternative for severance and transfer to the United States District Court for the Northern District of California.  Xilinx's transfer motion fails because Xilinx—itself a Delaware corporation—cannot remotely demonstrate that transfer to the California Court would be plainly more convenient.  Rather, proceeding in this forum will avoid the duplicative burden on non-party witnesses—such as named inventors, alleged prior art custodians, and experts—that litigating in both California (against Xilinx) and Delaware (against the remaining Defendants) will necessarily require.  Moreover, even if the balance of conveniences favored transfer to California (which it does not), the interests of judicial economy dictate denial of Xilinx's transfer motion.  After all, transfer would compel two different District Courts to perform the same analyses of (at least) the Patents-in-Suit, claim construction, and validity issues, a result that will not only waste judicial resources but also open the door for potentially inconsistent rulings.  Xilinx's motion should be denied in its entirety.

## II.    FACTUAL BACKGROUND

The IV Plaintiffs are Delaware limited liability companies that own the Patents-in-Suit and are affiliates of IV Management.  IV Management was founded in 2000 to create a novel, dynamic marketplace for invention.  (Chernesky Decl. at ¶ 2)  IV Management and its affiliates have built a portfolio of over 30,000 intellectual property assets.  (*Id.*)  IV Management offers those inventions to investors through licensing and partnering programs.  (*Id.*)

Xilinx is a global semiconductor company that designs, develops, and markets field-programmable gate array (FPGA) technology.  Incorporated in Delaware, Xilinx has major facilities in San Jose, California, Ireland, and Singapore.  (Declaration of Ameet A. Modi ("Modi

Decl." at ¶ 2, Ex. A)  The company has approximately 3,000 employees worldwide and more than 30 offices throughout North America, Europe, and Asia.  (*Id.* at ¶¶ 2-3, Exs. A-B)  In its fiscal year 2010, Xilinx reported revenues of over $1.8 billion.  (*Id.* at ¶ 4, Ex. C at 22)

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████████

██████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████

     Around the same time, IV Management also engaged in patent license negotiations with several other companies, including Altera, Lattice, and Microsemi.  Discussions regarding those parties' need for a license faltered, and on December 8, 2010, the IV Plaintiffs filed this action against those parties for infringement of the Patents-in-Suit.  (D.I. 1)  Altera, Lattice, and Microsemi have each asserted counterclaims seeking a declaration of invalidity of the Patents-in-Suit.  (D.I. 27, 29, 31)

████████████████████████████████████████████

█████████████████████████████████████████

██████████████████████████████████  Then, faced with what it describes as "IV['s] . . . arbitrary February 28, 2011 'deadline' for reaching a conclusion to the negotiations and agreeing on the financial terms of Xilinx's potential investment" (D.I. 37 at 5), Xilinx cobbled together and filed a declaratory judgment complaint in the Northern District of California ("the California Action").[1]  (Modi Decl. at ¶ 5, Ex. D)  Xilinx withheld service of its California complaint for several days, however, employing the threat of service to gain leverage during the parties' negotiations.  (Chernesky Decl. at ¶ 6)  On February 17, 2011, only after the

---

[1] Perhaps recognizing the dispositive impact of the anticipatory filing exception on its motion, Xilinx's representations contrast its later assertion that "IV did not specifically threaten legal action, much less set a deadline for such action."  (D.I. 37 at 11)

IV Plaintiffs amended their complaint in this District to add allegations against Xilinx for infringement of the '325, '087, '646, and '669 patents, Xilinx finally served its California complaint.  (Modi Decl. at ¶ 6, Ex. E)

But in its rush to the California courthouse, Xilinx drafted a complaint with fatal defects. For example, Xilinx's California complaint fails to establish or even allege personal jurisdiction over the individual IV Defendants.  (*See id.* at ¶ 7, Ex. F)  Accordingly, on April 11, 2011, the IV Defendants moved in the California Action to dismiss Xilinx's declaratory judgment complaint in its entirety.  (*Id.*)  In the alternative, the IV Defendants moved for severance and transfer of Xilinx's claims regarding the '325, '087, '646, and '669 patents to this District for consolidation with overlapping claims already pending against Altera, Lattice, and Microsemi.  (*Id.*)  Oral argument on that motion is scheduled for July 21, 2011.

## III.   ARGUMENT

### A.   This Action Should Not Be Dismissed Under The "First-to-File" Rule.

The "first-to-file" rule gives District Courts "the power to enjoin the subsequent prosecution of proceedings involving the same parties and the same issues already before another district court." *E.E.O.C. v. Univ. of Pennsylvania*, 850 F.2d 969, 971 (3d Cir. 1988) (internal quotations omitted).  The rule "encourages sound judicial administration and promotes comity among federal courts of equal rank." *Id.*  Where parties bring parallel actions in different jurisdictions, "the rule's primary purpose is to avoid burdening the federal judiciary and to prevent the judicial embarrassment of conflicting judgments." *Id.* at 977.

"[C]ourts have consistently recognized that the first-filed rule is not a rigid or inflexible rule to be mechanically applied." *Id.* at 976 (internal quotations omitted).  Rather, "courts may exercise discretion in departing from [the first-to-file rule] where exceptional circumstances are presented." *Comcast Cable Commn's, LLC v. USA Video Tech. Corp.*, Civil Action No. 06-407-JJF, 2008 WL 1908612, at *1 (D. Del. Apr. 29, 2008).  As exceptions to the first-to-file rule in patent cases, this Court has considered factors such as "the convenience and availability of witnesses, [the] absence of jurisdiction over all necessary or desirable parties, and the possibility

5

of consolidation with related litigation." *Id.* at *1 (citing *Genentech v. Eli Lilly & Co.*, 998 F.2d 931, 937 (Fed. Cir. 1993)).  In particular, "judicial and litigant economy and a comprehensive disposition of litigation are important considerations."  *Id.*  Finally, circumstances such as inequitable conduct, bad faith, anticipatory filing or forum shopping also justify departure from the "first-to-file" rule.  *FMC Corp. v. AMVAC Chem. Corp.*, 379 F. Supp. 2d 733, 738 (E.D. Pa. 2005).

Here, Xilinx's reliance on the "first-to-file" rule is misplaced for several reasons. Because Xilinx delayed in serving its anticipatory suit, and because jurisdictional disputes remain to be resolved in that action, sound reasons exist not to credit the California Action as the first filed.  Furthermore, even if Xilinx were properly deemed the first filer, several settled exceptions to the "first-to-file" rule—based on judicial economy, discouragement of anticipatory suits, and avoiding jurisdictional uncertainty—justify departure from its application here. Xilinx's motion to dismiss should therefore be denied.

### 1.    The IV Plaintiffs Should Be Considered First to File Because This Court Was First To Obtain Jurisdiction Over The Parties And Issues.

Xilinx's dismissal arguments hinge on the premise that the timing of its anticipatory lawsuit entitles Xilinx to be considered "first to file" for purposes of determining priority of the parallel actions.  But this Court—not the California Court—was first to secure undisputed jurisdiction over the parties and issues in dispute.  Accordingly, this Court should be recognized as the initial forum for purposes of the "first to file" rule.

"It is not the first case filed which has precedence, but 'the court first ***obtaining jurisdiction*** of the parties and the issues' which should proceed with the litigation." *Jefferson Ward Stores, Inc. v. Doody Co.*, 560 F. Supp. 35, 37 (E.D. Pa. 1983).  "Accordingly, a persuasive argument can be made in this circuit that [the Court in which a complaint was first served] was the 'first filed.'"  *Osteotech, Inc. v. GenSci Regeneration Sciences, Inc.*, 6 F. Supp. 2d 349, 357 n.4 (D.N.J. 1998).  Here, the IV Plaintiffs served Xilinx with the Amended Complaint in this action on February 16, 2011.  Even though Xilinx filed its anticipatory suit on February 14,

6

2011, it purposefully delayed serving the IV Plaintiffs until February 17, 2011, attempting to use the threat of service as leverage in its negotiations with IV Management.  (Chernesky Decl. at ¶ 6)  Under the circumstances, because service was perfected first in this action, the IV Plaintiffs are more fairly considered "first to file."  Xilinx's motion to dismiss therefore fails.[2]

Furthermore, the IV Plaintiffs have moved in the California Action to dismiss Xilinx's anticipatory suit for lack of standing and personal jurisdiction.  (Modi Decl. at ¶ 7, Ex. F)  No such jurisdictional dispute exists in this action, as both Xilinx and the IV Plaintiffs are Delaware entities.  (D.I. 17 at ¶¶ 1, 2, 6)  This Court's primacy in securing undisputed jurisdiction over the parties further underscores the equity of deeming this action first filed.  *See Jefferson Ward Stores*, 560 F. Supp. at 36 (finding that the court in the earlier-filed action "has not yet assumed jurisdiction of the controversy" in light of a pending motion to dismiss for lack of personal jurisdiction in that action).  Because Xilinx's jurisdictionally defective anticipatory suit should not be considered the first action filed, Xilinx's motion to dismiss under the "first to file" rule should be denied.

   **2.    Even If Xilinx's Anticipatory Suit Were Properly Considered The First-Filed Action, Settled Exceptions Justify Departure From The "First-to-File" Rule.**

Even accepting Xilinx's premise that the California Action qualifies as first filed, at least three settled exceptions to the "first to file" rule foreclose its application here.  *First*, the judicial economy that can be achieved by consolidating the IV Plaintiffs' claims against Xilinx with their already-pending claims against Altera, Lattice, and Microsemi overshadows any deference owed Xilinx for winning its race to the courthouse.  *Second*, Xilinx's California suit was plainly—

---

[2] To be sure, some Courts in this Circuit have reached the opposite result, albeit under different circumstances.  *See Asten Inc. v. Weavexx Corp.*, No. 99-593 GMS, 2000 WL 1728354 (D. Del. Feb. 11, 2000); *Peregrine Corp. v. Peregrine Industries, Inc.*, 769 F. Supp. 169 (E.D. Pa. 1991).  Neither of those cases confronted the extraordinary facts present here, where Xilinx filed an anticipatory complaint to preempt an upcoming negotiation deadline, then purposefully withheld service in an explicit attempt to gain leverage during continued negotiations.  Nor did either Court confront the situation where—as here—significant doubt exists regarding jurisdiction over the parties in the earlier-filed action.

7

indeed, admittedly—commenced to preempt an expected infringement suit, and therefore falls

squarely within the anticipatory suit exception to the "first-to-file" rule. *Third*, the presence of a

legitimate jurisdictional dispute in the California Action, and the absence of any such dispute

here, also nullify any deference owed Xilinx under the "first-to-file" rule. Because multiple,

independent grounds exist to depart from the "first-to-file" rule in this case, Xilinx's motion to

dismiss should be denied.

### a. The Interests Of Judicial Economy And Avoidance Of Inconsistent Adjudications Warrant Departure From The "First-to-File" Rule.

Xilinx's requested dismissal of this action would spawn duplicative litigation concerning

the four Patents-in-Suit that overlap between this litigation and the California Action. That result

would undermine the very purpose of the "first-to-file" rule, which is to "avoid burdening the

federal judiciary and [] prevent the judicial embarrassment of conflicting judgments." *E.E.O.C.*,

850 F.2d at 977. Courts also apply the first-to-file rule in order to "eliminate economic waste

involved in duplicating litigation." *Time Warner Cable, Inc. v. USA Video Tech. Corp.*, 520 F.

Supp. 2d 579, 587 (D. Del. 2007). Accordingly, this Court has declined to dismiss or transfer

claims in a patent case to a first-filed declaratory action where overlapping factual and legal

issues are already pending in in this District. *See, e.g., Erbamont Inc. v. Cetus Corp.*, 720 F.

Supp. 387, 396 (D. Del. 1989) (noting that a defendant in two separate litigations involving

overlapping issues would "likely seek to depose many of the same [] personnel . . . and the

inventors of the [patent-in-suit]" as well as "seek discovery of many of the same documents from

[the patent enforcer]," whereas "[s]ome degree of coordinated discovery in this district on the

issues of the validity and enforceability of the [patent-in-suit] would serve judicial economy").

The IV Plaintiffs' original complaint in this action asserted claims of infringement

against Altera, Lattice, and Microsemi on the same four patents that the IV Plaintiffs assert

against Xilinx—the '325, '087, '646, and '669 patents. All three of the other Defendants have

answered and counterclaimed for a declaratory judgment of invalidity on those patents. Thus,

the IV Plaintiffs' claims against Altera, Lattice, and Microsemi will proceed before this Court

regardless of the outcome on Xilinx's motion.[3]  If the California Action is allowed to proceed with mirror-image claims, both this Court and the California Court will have to make rulings regarding the scope, meaning, and validity of the same patent claims.  Both Courts will be required to conduct separate *Markman* hearings for claim construction.  Duplication of those litigation efforts will not only waste the Courts' resources, but also create a risk of inconsistent results—exactly what the first-to-file rule is intended to avoid.

Moreover, duplicative suits will not only lead to judicial inefficiencies but also impose additional burden on witnesses, including non-parties.  Potential witnesses identified by either party—whether inventors, former employees, or experts—will be inconvenienced by having to appear for depositions or trial testimony in separate litigations on opposite coasts.  *See Alexander v. Franklin Resources, Inc*., No. C 06-7121 SI, 2007 WL 518859, at *3 (N.D. Cal. Feb. 14, 2007).  Since many issues in both litigations are identical, certain third-party witnesses would almost certainly be called on twice, and in Courts located nearly three thousand miles apart.  In the interests of judicial economy and convenience, this Court should therefore decline to apply the "first-to-file" rule and instead deny Xilinx's motion to dismiss.

### b.    The California Action Falls Squarely Within The Anticipatory Suit Exception To The "First-to-File" Rule.

The IV Plaintiffs chose not to include Xilinx in their original complaint, opting instead to continue good-faith license negotiations.  Fully aware of this action, and facing addition to the case upon expiration of what it knew to be a "February 28, 2011 'deadline' for reaching a conclusion to the negotiations" (D.I. 37 at 5), Xilinx rushed to the courthouse in California.[4]  Xilinx's tactics fall well within this Court's "anticipatory suit" exception to the first-to-file rule.

---

[3] On April 26, 2011, more than four full months into this litigation, Altera, Lattice, and Microsemi filed a motion to transfer the claims against them to the Northern District of California.  (D.I. 43).  The IV Plaintiffs oppose that motion and will timely file opposition papers.

[4] Tellingly, while Xilinx asserts that "IV did not specifically threaten legal action," Xilinx does not—and cannot—deny that it fully knew the IV Plaintiffs would add Xilinx to this action upon expiration of the negotiation deadline.

Courts in this Circuit have recognized an exception to the "first-to-file" rule where an improper anticipatory suit was lodged to preempt the filing of a suit by the opposing party. *See, e.g., Envirometrics Software, Inc. v. Georgia-Pacific Corp.*, No. CIV. A. 97-243-SLR, 1997 WL 699328, at *4 (D. Del. Nov. 4, 1997). For instance, where one party "delay[s] its filing in reliance upon ongoing settlement negotiations and partial cooperation," and subsequently gets sued, a later-filed Court need not defer to the improper anticipatory filing. *Drugstore-Direct, Inc. v. Cartier Div. of Richemont N. Am., Inc.*, 350 F. Supp. 2d 620, 623 (E.D. Pa. 2004). Rather, preemption of an imminent infringement suit is an important factor favoring the maintenance of the subsequent infringement action. *Serco Svcs. Co., L.P. v. Kelley Co., Inc.*, 51 F.3d 1037, 1040 (Fed. Cir. 1995).

As acknowledged in its brief, Xilinx was notified on December 8, 2010 that the IV Plaintiffs had filed a patent infringement action in this Court against Altera, Microsemi, and Lattice. (D.I. 37 at 4) Licensing negotiations continued for two months; but with "IV's self-imposed February 28th 'deadline' looming" (*id.* at 5), Xilinx filed its California Action, raising validity claims substantially identical to claims already filed in this Court for the '669 Patent, the '325 Patent, the '087 Patent, and the '646 Patent. (*See, e.g.*, D.I. 13 at ¶¶ 61-64) One day after Xilinx filed its anticipatory suit on February 14, 2011, the IV Plaintiffs amended their Complaint in this Action to include Xilinx as a defendant. *See IMS Health, Inc v. Vality Tech., Inc.*, 59 F. Supp. 2d 454, 463 (E.D. Pa. 1999) ("[T]he bad faith inquiry also encompasses consideration of the amount of time between the declaratory and affirmative filings, with a shorter period indicating bad faith.").

Here, just as in *Drugstore-Direct*, the IV Plaintiffs delayed their filing of a patent infringement action in this Court in good-faith reliance upon Xilinx's apparent cooperation with licensing negotiations. 350 F. Supp. 2d at 623. And just as in *Drugstore-Direct*, Xilinx's anticipatory filing should be afforded no deference. The timing and circumstances of Xilinx's declaratory judgment action in California clearly invoke the anticipatory filing exception to the

first-to-file rule.  Proceedings against Xilinx should go forward in this Court as contemplated, and Xilinx's motion to dismiss should accordingly be denied.

### c.    Jurisdictional Disputes In The California Action Weigh Against Application Of The "First-to-File" Rule.

The Federal Circuit has recognized that first-filed declaratory judgment actions should yield to subsequently-filed patent infringement actions if there is "sound reason that would make it unjust or inefficient to continue the first-filed action."  *Genentech*, 998 F.2d at 938.  "Such reason may be the . . . absence of jurisdiction over all necessary or desirable parties."  *Id.* Accordingly, courts have declined to transfer an action where doing so, "only to have [the transferee] court dismiss those parties, hardly serves the interests of judicial economy." *Erbamont,* 720 F. Supp. at 396*.*

Here, the IV Plaintiffs have filed a motion to dismiss the California Action, challenging the Court's personal jurisdiction over Intellectual Ventures I and Intellectual Ventures II.  By contrast, Xilinx, along with three other Defendants in this Action—all Delaware entities—have no grounds to challenge jurisdiction in this Court.[5]  *See Automotive Techs. Int'l, Inc. v. Am. Honda Motor Co., Inc.*, Civil Action No. 06-187 GMS, 2006 WL 3783477, at *2 (D. Del. Dec. 21, 2006).  Since jurisdiction in this Court is clear and uncontested, moving forward with the claims against Xilinx in this Court minimizes any delay in proceedings.  Furthermore, it eliminates the risk that those claims would be dismissed only to later see the California Court dismiss Xilinx's parallel claims for lack of jurisdiction.  Just as in *Erbamont*, this Court should therefore conclude that dismissal in favor of the California Action is unwarranted because a "distinct possibility" exists that the California Action will be dismissed on jurisdictional grounds, a risk that "hardly serves the interests of judicial economy."  720 F. Supp. at 396.

---

[5] Altera, Lattice, and Microsemi all admit that personal jurisdiction is proper in this District. (D.I. 27, 29, 31)

**B.    Xilinx Cannot Demonstrate That The California Court Is A Clearly More Convenient Forum Than This Court.**

In the alternative, Xilinx seeks severance and transfer of the infringement claims it faces here to the Northern District of California.  "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."  28 U.S.C. § 1404(a).  The Third Circuit has articulated a variety of private and public interests for the Court to consider in determining whether to transfer venue under Section 1404(a).[6]  "[T]he moving party has the burden to establish that the proposed transferee forum is a proper forum and that a balancing of the proper interests weighs in favor of transferring the case there."  *Mekiki Co., Ltd. v. Facebook, Inc*., Civ. A. No. 09-745, 2010 WL 2348740, at *2 (D. Del. June 7, 2010) (citing *Jumara*, 55 F.3d at 879).  "[T]ransfer will be denied if the factors are evenly balanced or weigh only slightly in favor of the transfer." *Mallinckrodt v. E-Z-Em*, 670 F. Supp. 2d 349, 356 (D. Del. 2009).

Xilinx falls far short of meeting its burden to establish that the California Court would be a more convenient litigation forum than this Court.  Rather, as demonstrated below, the convenience factors articulated by Xilinx individually and collectively weigh against transfer.

**1.    The Relevant Private Interest Factors Weigh Against Transfer.**

**a.    The Plaintiff's Choice of Forum Disfavors Transfer.**

"Generally, a plaintiff's choice of forum is entitled to 'paramount consideration,' and should not lightly be disturbed."  *Mallinckrodt*, 670 F. Supp. at 356 (citing *Shutte v. Armco Steel Corp.*, 431 F.2d 22, 25 (3d Cir. 1970)).  As demonstrated below, the IV Plaintiffs are properly

---

[6] The private interests include:  (1) plaintiff's forum preference; (2) defendant's forum preference; (3) where the claims arose; (4) the convenience of the parties, as indicated by their relative physical and financial conditions; (5) the convenience of third-party witnesses, as indicated by their availability to participate at trial in the forum; and (6) the locations of books and records, to the extent they cannot be produced in the forum.  *Jumara v. State Farm Ins. Co*., 55 F.3d 873, 879 (3d Cir. 1995).  The public interests include:  (1) the enforceability of the judgment; (2) practical considerations that could make a trial easy, expeditious, or inexpensive; (3) the relative administrative difficulty in the two fora resulting from court congestion; (4) the local interest in deciding local disputes at home; (5) the public policies of the fora; and (6) the familiarity of the trial judge with the applicable state law in diversity cases.  *Id.*

considered the true plaintiffs for the purposes of Xilinx's transfer motion.  As such, the IV Plaintiffs' choice of the Delaware forum is entitled to paramount consideration, and Xilinx provides no legitimate grounds to disregard the IV Plaintiffs' choice of forum here.

        **i.**       **The IV Plaintiffs Are The True Plaintiffs In This Action.**

Relying on its mistaken argument that it is the first-filed plaintiff, Xilinx asserts—without legal support—that its choice of the California forum "should be given great weight in the balance of factors."  (D.I. 37 at 14)  As detailed above, Xilinx is ***not*** entitled to deference as the "first-to-file" plaintiff because, among other factors, Xilinx's California complaint was an improper anticipatory filing.  Moreover, in its rush to the California courthouse, Xilinx filed a case that suffers from fatal jurisdictional flaws.  Here, on the other hand, no dispute exists that the Delaware Court has jurisdiction over each of the defendants.

Even more fundamentally, Xilinx ignores the simple fact that, like Altera, Lattice, and Microsemi, Xilinx is a ***defendant*** in ***this*** case.  Xilinx's rush to file in California is not entitled to deference in Delaware.  Rather, in seeking transfer out of the Delaware forum, Xilinx bears an ***affirmative burden*** to establish that the balance of relevant considerations weighs strongly in favor of transfer.  *See, e.g., CNH America LLC v. Kinzenbaw*, C.A. No. 08-945(GMS), 2009 WL 3737653, at *2 (D. Del. Nov. 9, 2009) ("The burden to establish the need to transfer rests on the moving party.").

        **ii.**     **The IV Plaintiffs' Choice Of The Delaware Forum Is Rational And Legitimate And Therefore Entitled to Paramount Consideration.**

Xilinx correctly notes that the IV Plaintiffs' principal place of business is in Bellevue, Washington.  (D.I. 37 at 3)  But the IV Plaintiffs are also Delaware limited liability companies. As this Court has repeatedly held, a plaintiff's incorporation in this District is a legitimate and rational reason to bring suit here.  *See, e.g., CNH America LLC*, 2009 WL 3737653, at *2 (stating that the rule that a plaintiff's choice of forum is entitled to paramount consideration "is particularly true in cases where the plaintiff is a corporate entity that is incorporated in Delaware,

because a corporation's decision to incorporate in a particular state is a rational and legitimate reason to choose to litigate in that state.") (citations and internal quotations omitted); *see also Mallinckrodt*, 670 F. Supp. at 356 (holding that while the plaintiff maintained its principal place of business outside of Delaware, its "decision to litigate in Delaware is still accorded significant deference because [p]laintiffs' choice of Delaware as a forum relates to their legitimate, rational concerns as Delaware corporations").

Xilinx's attempts to downplay its own connections to this District are equally unavailing. In their Amended Complaint, the IV Plaintiffs allege that Xilinx has committed infringing conduct in Delaware. But in addition to choosing Delaware for incorporation, Xilinx has sold infringing products nationwide, including in Delaware. (D.I. 17 at ¶ 54) As such, Xilinx has committed infringing acts in Delaware, *see* 35 U.S.C. § 271(a), and Delaware therefore has a "meaningful connection to this dispute." *See Schering Corp. v. Amgen Inc.*, 969 F. Supp. 258, 269 (D. Del. 1997) (noting that defendant's characterization that Delaware has little or no meaningful connection to the dispute was disingenuous since the accused product was sold internationally and generated millions of dollars in revenues); *Pfizer Inc. v. Apotex, Inc.*, Civ. A. No. 08-cv-948, 2009 WL 2843288, at *3 n.5 (D. Del. Aug. 13, 2009) ("the Federal Circuit has held that injury in a patent infringement action occurs . . . where 'the infringing activity directly impacts on the interests of the patentee,' like the place of an infringing sale.").

Thus, contrary to Xilinx's suggestion, the IV Plaintiffs' choice of the Delaware forum is rational and legitimate, and this District's connection to this dispute is significant. The IV Plaintiffs' choice of the Delaware forum is therefore entitled to paramount consideration, and Xilinx bears a heavy burden to prove that the other *Jumara* factors strongly outweigh that choice. *Id*. at *2; *see also ADE Corp. v. KLA-Tencor Corp.*, 138 F. Supp. 2d 565, 567-68 (D. Del. 2001) ("Unless the balance is strongly in favor of a transfer, the plaintiff's choice of forum should prevail."). As demonstrated below, Xilinx falls well short of meeting that heavy burden.

14

b. **The Convenience of the Parties Does Not Favor Transfer**

Xilinx argues that the Northern District of California is more convenient because its U.S. operations and certain employees involved in the design and production of the accused products are based in California. (D.I. 37 at 15) But this Court has consistently held "that absent a truly regional defendant or critical witnesses that cannot be compelled to attend trial, Delaware (especially for Delaware corporations []) is at least as convenient as any other forum." *Cisco Sys., Inc. v. GPNE Corp.*, Civ. No. 07-671-SLR, 2008 WL 1758866, at *2 (D. Del. Apr. 17, 2008). Xilinx's arguments are unpersuasive because (a) litigating in Delaware would not pose any unique or undue burden on Xilinx's business operations, and (b) Xilinx fails to demonstrate that its party witnesses would be unavailable to attend trial in Delaware. As such, these factors do not favor transfer.

i. **Litigating In Delaware Would Not Pose Any Unique Or Undue Burden On Xilinx's Business Operations.**

Under the *Jumara* factors, the "convenience of the parties" is assessed not according to their location but to "their relative physical and financial condition." *Jumara*, 55 F.3d at 879. Under this framework, a party seeking transfer must identify a "unique or unusual burden" that litigating in Delaware would have on its business operations. *Tradimpex Egypt Co. v. Biomune Co.*, C.A. No. 10-757-LPS, 2011 WL 1447553, at *4 (D. Del. Apr. 14, 2011). That burden is particularly difficult where the movant is a Delaware corporation. *See, e.g, ADE Corp.*, 138 F. Supp. 2d at 573 ("absent some showing of a unique or unexpected burden, a company should not be successful in arguing that litigation in its state of incorporation is inconvenient"); *Mallinckrodt*, 670 F. Supp. 2d at 357 ("[W]hen a corporation chooses to incorporate in Delaware and accept the benefits of incorporating in Delaware, it cannot complain once another corporation brings suit against it in Delaware.").

Xilinx, like the IV Plaintiffs, is incorporated in Delaware and has sought the protection of Delaware's laws. Xilinx asserts that its "US operations are primarily based in San Jose, California." (D.I. 37 at 15) But according to its website, Xilinx maintains additional headquarters in Ireland and Singapore, as well as over thirty offices throughout North America,

15

Europe, and Asia.  (Modi Decl. at ¶ 2, Ex. A)  In 2010, Xilinx reported revenues of over $1.8 billion.  (*Id.* at ¶ 4, Ex. C)  Xilinx does not (and cannot) legitimately argue that litigating in this forum would impose a unique or undue burden on its global operations.  *See Autodesk Canada Co. v. Assimilate, Inc.*, No. 08-587-SLR-LPS, 2009 WL 3151026, at *8 (D. Del. Sept. 29, 2009) ("[Defendant] has sufficient resources to defend a lawsuit in Delaware—the jurisdiction in which it chose to incorporate—just as it has the resources to support employees and sales efforts in multiple countries.").

Indeed, just over one year ago, Xilinx filed a complaint in this Court seeking declaratory relief relating to 15 patents against two other Delaware corporations, LSI Corporation and Agere Systems.  Citing this Court's established precedent, Xilinx opposed LSI and Agere's efforts to transfer that case to another district:

> Delaware is a more appropriate forum . . . . All of the parties are Delaware corporations, and Delaware has an interest in adjudicating cases involving corporations which have availed themselves of the protections of Delaware's laws.  *See Chase Manhattan Bank, U.S.A., N.A. v. Freedom Card, Inc.*, 265 F. Supp. 2d 445, 451 (D. Del. 2003) ("[T]his forum's interest extends to these corporate citizens that have sought the protection of Delaware's laws." (quoting *Motorola, Inc. v. PC-Tel, Inc.*, 58 F. Supp. 2d 349, 356 (D. Del. 1999).  And, because both Defendants are Delaware corporations, they should not be inconvenienced by litigating in Delaware."  *See, e.g., Wesley-Jessen Corp. v. Pilkington Visioncare, Inc.*, 157 F.R.D. 215, 218 (D. Del. 1993) ("Absent some showing of a unique or unexpected burden, [Delaware] corporations should not be successful in arguing that litigation in their state of incorporation is inconvenient."; *see also Zoetics, Inc. v. Yahoo!, Inc.*, No. Civ.A. 06-108-JJF, 2006 WL 1876912, at *5 (D. Del. July 6, 2006) ("a defendant's incorporation in the chosen forum is a rational and legitimate reason for choosing the forum that cannot be disregarded.") (internal citations omitted).

(Modi Decl. at ¶ 8, Ex. G at 10)  Xilinx's own arguments apply with full force here.

### ii.   Xilinx Fails To Demonstrate That Its Party Witnesses Would Be Unable To Attend Trial In Delaware.

Xilinx asserts that transfer is warranted because certain of its employees responsible for the design and development of the accused products are located in California.  (D.I. 37 at 15; D.I. 38 at ¶ 6)  But Xilinx fails to apply the correct legal standard.  Convenience of witnesses is only

considered "to the extent that the witnesses may actually be unavailable for trial in one of the fora." *Jumara*, 55 F.3d at 879.  "Party witnesses or witnesses who are employed by a party carry **no weight** in the 'balance of convenience' analysis since each party is able, indeed, obligated to procure the attendance of its own employees for trial." *Affymetrix, Inc. v. Synteni, Inc.*, 28 F. Supp. 2d 192, 203 (D. Del. 1998) (emphasis added).   Xilinx does not articulate any reason as to why its employees would be unable to attend trial in Delaware.  As such, Xilinx fails to carry its burden to prove that the convenience of the parties strongly favors transfer.

> **c.    The Convenience Of Non-Party Witnesses Does Not Support Transfer.**

Xilinx argues that transfer is warranted because certain inventors and prosecuting attorneys of the patents-in-suit are located in California.  (D.I. 37 at 15 n.6)  This argument fails for several reasons.  Indeed, as outlined below, this factor favors maintenance of the claims against Xilinx in Delaware.

*First*, Xilinx's assertions regarding the locations of the inventors are based solely on the information included on the face of the patents—the earliest of which was issued over thirteen years ago.  Xilinx does not otherwise provide any support for its unstated assumption that these inventors still reside in California.  These unsupported assertions are insufficient to meet Xilinx's heavy burden as the moving party.

*Second*, even assuming that certain inventors and prosecuting attorneys reside in California today, Xilinx fails to establish—by declaration or otherwise—that any of these potential witnesses would be unavailable or unwilling to testify at trial.  *See ICU Medical, Inc. v. Rymed Tech., Inc.*, 2008 WL 205307, at *3 (D. Del. Jan. 23, 2008) (location of third-party witnesses does not weigh strongly in favor of transfer where defendant "has not demonstrated that these witnesses would be unwilling to testify voluntarily or that their information is not available in another form"); *Carl Zeiss Meditec, Inc. v. XOFT, Inc.*, C.A. No. 10-308-LPS-MPT, 2010 WL 4024603, at *2 (D. Del. Oct. 13, 2010) ("While [defendant] may have third-party

witnesses that are necessary for litigation, [defendant] produced no substantiated evidence that third-party witnesses are unwilling to appear for trial.").

Third, and most significantly, Xilinx entirely ignores the fact that these very witnesses will be required in Delaware *regardless* because the IV Plaintiffs' claims regarding the four patents asserted against Xilinx will still move forward against Altera, Lattice, and Microsemi in this District. All four patents asserted against Xilinx here are also asserted against at least one of the other Defendants in this action. Testimony from the potential witnesses identified by Xilinx—including testimony on issues regarding inventorship and claim construction of the Patents-in-Suit—will thus be required in Delaware *whether or not* the claims against Xilinx are severed and transferred to California.

On the other hand, severance and transfer of Xilinx's claims would require those witnesses to repeat the same testimony in a different Court. Moreover, because the two suits would likely proceed on different schedules, those witnesses would almost certainly be called on twice, in Courts located nearly three thousand miles apart. Indeed, transfer of the claims against Xilinx to California would simply shift any burden from Xilinx squarely onto the shoulders of those third party witnesses. *Cf. Derry Fin. N.V. v. Christiana Co., Inc.*, 555 F. Supp. 1043, 1046 (D. Del. 1983) (refusing to grant motion to transfer where doing so would simply shift inconvenience from one party to another). The extraordinary burden duplicative suits would place on non-party witnesses does not favor transfer, and indeed weighs strongly *against* transfer.

       **d.**       **The Location of Sources of Proof Does Not Support Transfer.**

Xilinx argues that transfer is justified because certain financial records, business records, and other documents are located in California. (D.I. 37 at 15) But "[t]he location of the sources of proof are . . . considered only to the extent those sources are unavailable." *Carl Zeiss Meditec*, 2010 WL 4024603, at *3 (citing *Jumara*, 55 F.3d at 879). Here, Xilinx has "not identified any particular piece of evidence or document that would be especially difficult to transport to Delaware." *Cypress Semiconductor Corp. v. Integrated Circuit Sys., Inc.*, 2001 WL

1617186, at *3 (D. Del. Nov. 28, 2001). Indeed, "given the state of technology and electronic discovery, it is unlikely that parties would be unable to produce documents in an alternative forum." *Downing v. Globe Direct LLC*, C.A. No. 09-693-JAP, 2010 WL 2560054, at *2 n.1 (D. Del. June 18, 2010); *see also 1st Source Bank v. Merritt*, 2011 WL 30767, at *5 (D. Del. Jan. 5, 2011). Xilinx's bare assertion that categories of documents exist in California is insufficient to support its arguments for transfer.

### 2.   The Relevant Public Interest Factors Weigh Against Transfer.

Xilinx references only one public interest factor as allegedly favoring transfer—practical considerations that could make the trial easy, expeditious, or inexpensive. (D.I. 37 at 16)  Xilinx additionally points to the conservation of judicial resources as a relevant consideration purportedly supporting transfer. (*Id.*)  In fact, both factors weigh against transfer.

Regarding practical considerations, Xilinx simply recycles its earlier arguments regarding the location of parties, relevant documents, and witnesses. But as demonstrated above, Xilinx is an international corporation that generates billions in annual revenue, and cannot meritoriously argue that litigating in Delaware would cause any undue or unique burden, particularly as a Delaware corporation itself. Xilinx refers generally to certain categories of documents located in California, but cannot articulate how those documents would be more difficult to produce in Delaware given the realities of modern electronic discovery. Finally, while Xilinx identifies certain party and non-party witnesses located in California, it provides no argument as to why any of those witnesses would be unavailable and unwilling to appear in Delaware. Therefore, these practical considerations do not support transfer.

Moreover, as outlined above, Xilinx's California complaint suffers from fatal jurisdictional flaws. As a result, significant doubt exists as to whether the California Court can exercise jurisdiction over Xilinx's claims—a practical consideration that weighs ***against*** transfer. *TransCore*, a case relied upon by Xilinx, illustrates the point:

> Based on the parties' filings, it appears that the court in the District of Delaware can exercise personal jurisdiction over ***all*** of the parties involved in both actions, which allow the Delaware court to

19

> fully resolve the issues at hand.  By contrast it is ***not*** clear that this Court can exercise personal jurisdiction over all [parties], which might prevent this Court from fully resolving the issues at hand . . . .  This uncertainty weighs in favor of transferring the case to the District of Delaware.

*TransCore L.P. v. Mark IV Ind. Corp.*, 2009 WL 3365870, at *8 n.10 (E.D. Pa. Oct. 15, 2009).

The rationale behind *TransCore* applies with full force here.  Practical considerations—namely, the uncertainty as to whether the California Court can fully resolve the issues at hand—overwhelmingly weigh against transfer.

Finally, regarding conservation of judicial resources, Xilinx entirely ignores the fact that the same four patents asserted against it are also being asserted against Altera, Lattice, and Microsemi.  This action will therefore process regardless of the Court's ruling.  As a result, for the reasons described above, maintaining the claims against Xilinx in Delaware would avoid duplicative proceedings and conserve substantial resources.

## IV.    CONCLUSION

For the reasons set forth above, IV Plaintiffs respectfully request that the Court deny Xilinx's Motion to Dismiss or Transfer.

20

DATED:   April 28, 2011                            Respectfully submitted,

                                                   __/s/ Brian E. Farnan_____
                                                   Brian E. Farnan (Bar No. 4089)
                                                   Farnan LLP
                                                   919 North Market Street
                                                   12th Floor
                                                   Wilmington, DE 19801
                                                   (302) 777-0300
                                                   (302) 777-0301
                                                   bfarnan@farnanlaw.com


                                                   John M. Desmarais (admitted *pro hac vice*)
                                                   Michael P. Stadnick (admitted *pro hac vice*)
                                                   DESMARAIS LLP
                                                   230 Park Avenue
                                                   New York, NY 10169
                                                   (212) 351-3400
                                                   (212) 351-3401
                                                   jdesmarais@desmaraisllp.com
                                                   mstadnick@desmaraisllp.com

                                                   *Counsel for Plaintiffs*