## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| INTELLECTUAL VENTURES I LLC and INTELLECTUAL VENTURES II LLC<br><br>    Plaintiffs,<br><br>    v.<br><br>ALTERA CORPORATION, MICROSEMI CORPORATION, LATTICE SEMICONDUCTOR CORPORATION, and XILINX, INC.<br><br>    Defendants. | Civil Action No. 10-1065-LPS<br><br>**JURY TRIAL DEMANDED**<br><br>**FILED UNDER SEAL** |

### PLAINTIFFS' OPPOSITION TO DEFENDANTS ALTERA, LATTICE, AND MICROSEMI'S MOTION TO TRANSFER

Brian E. Farnan (Bar No. 4089)
FARNAN LLP
919 North Market Street
12th Floor
Wilmington, DE 19801
(302) 777-0300
(302) 777-0301
bfarnan@farnanlaw.com

*Counsel for Plaintiffs*
*Intellectual Ventures I LLC and*
*Intellectual Ventures II LLC*

John M. Desmarais (admitted *pro hac vice*)
Michael P. Stadnick (admitted *pro hac vice*)
DESMARAIS LLP
230 Park Avenue
New York, NY 10169
(212) 351-3400
(212) 351-3401
jdesmarais@desmaraisllp.com
mstadnick@desmaraisllp.com

Dated:  May 13, 2011

**TABLE OF CONTENTS**

I.   INTRODUCTION ................................................................................................. 1

II.  FACTUAL BACKGROUND ............................................................................... 2

  A.  Procedural History ....................................................................................... 2

  B.  Altera Is A Delaware Corporation With National And International Operations. ............. 3

  C.  Lattice Is A Delaware Corporation With National And International Operations. ........... 4

  D.  Microsemi Is A Delaware Corporation With National And International Operations. ....... 5

III. ARGUMENT ....................................................................................................... 5

  A.  Private Factors Do Not Weigh In Favor Of The California Court As A Clearly More
      Convenient Forum Than This Court. ............................................................... 5

    1.  Plaintiffs' Choice Of Forum Is Entitled To Paramount Consideration......................... 6

      a)  Plaintiffs Chose To Litigate On Their "Home Turf." ........................................... 7

      b)  Plaintiffs' Choice Of The Delaware Forum Is Rational And Legitimate And
          Accordingly Entitled To Paramount Consideration............................................. 7

    2.  The Convenience Of The Parties And Party Witnesses Does Not Favor Transfer. ... 10

      a)  Litigating In Delaware Will Not Pose Any Unique Or Undue Burden On The
          Original Defendants' Business Operations......................................................... 10

      b)  The Original Defendants Fail To Demonstrate That Their Party Witnesses Would
          Be Unable To Attend Trial In Delaware........................................................... 12

    3.  The Convenience of the Non-Party Witnesses Does Not Support Transfer............... 12

    4.  The Location Of Sources Of Proof Does Not Support Transfer................................ 15

  B.  The Public Interest Factors Do Not Weigh In Favor Of The California Court As A
      Clearly More Convenient Forum Than This Court........................................... 16

IV.  CONCLUSION................................................................................................... 18

## TABLE OF AUTHORITIES

**Cases**

*Acuity Brands, Inc. v. Cooper Indus., Inc.,*
    C.A. No. 07-444-GMS, 2008 WL 2977464 (D. Del. July 31, 2008)...............................12, 15

*ADE Corp. v. KLA-Tencor Corp.,*
    138 F. Supp. 2d 565 (D. Del. 2001)..............................................................................10

*Autodesk Canada Co. v. Assimilate, Inc.,*
    No. 08-587-SLR-LPS, 2009 WL 3151026 (D. Del. Sept. 29, 2009)..............................10, 12

*Carl Zeiss Meditec, Inc. v. Optovue, Inc.,*
    C.A. No. 10-084-GMS, 2011 WL 1419714 (D. Del. Apr. 13, 2011) ...................................12

*Carl Zeiss Meditec, Inc. v. XOFT, Inc.,*
    No. 10-308-LPS-MPT, 2010 WL 4024603 (D. Del. Oct. 13, 2010) ...........................7, 13, 15

*Carl Zeiss Meditec, Inc. v. XOFT, Inc.,*
    No. 10-308-LPS-MPT, 2011 WL 1212235 (D. Del. Mar. 30, 2011) ...................7, 12, 15, 16

*CNH Am. LLC v. Kinzenbaw,*
    C.A. No. 08-945 (GMS), 2009 WL 3737653 (D. Del. Nov. 9, 2009) ...........................7, 8, 13

*Cypress Semiconductor Corp., Int'l v. Microcircuits, Inc.,*
    No. 01-199-SLR, 2001 WL 1617186 (D. Del. Nov. 28, 2001) .........................................6, 15

*Derry Fin. N.V. v. Christiana Co., Inc.,*
    555 F. Supp. 1043, 1046 (D. Del. 1983)...............................................................................15

*ICU Med., Inc.v. Rymed Tech., Inc.,*
    Civ. A. No. 07-468-JJF, 2008 WL 205307 (D. Del. Jan. 23, 2008) ................................13, 15

*In re Acer America,*
    626 F.3d 1252 (Fed. Cir. 2010)............................................................................................16

*In re Genentech,*
    566 F.3d 1338 (Fed. Cir. 2009).............................................................................................16

*Jumara v. State Farm Ins. Co.,*
    55 F.3d 873 (3d Cir. 1995)..........................................................................................6, 10, 13

*Mallinckrodt v. E-Z-Em,*
    670 F. Supp. 2d 349 (D. Del. 2009)...................................................................................6, 8

*Pfizer Inc. v. Apotex, Inc.,*
    Civ. A. No. 08-cv-948, 2009 WL 2843288 (D. Del. Aug. 13, 2009) ...............................9, 10

*Praxair, Inc. v. ATMI, Inc.,*
    No. 03-1158-SLR, 2004 WL 883395 (D. Del. Apr. 20, 2004).................................................7

*Schering Corp. v. Amgen Inc.*,
    969 F. Supp. 258 (D. Del. 1997)................................................................................... 9

*Shutte v. Armco Steel Corp.*,
    431 F.2d 22 (3d Cir. 1970)........................................................................................... 6

*Tradimpex Egypt Co. v. Biomune Co.*,
    C.A. No. 10-757-LPS, 2011 WL 1447553 (D. Del. Apr. 14, 2011)....................................... 10

*TransCore L.P. v. Mark IV Ind. Corp.*,
    Civ. A. 09-2789, 2009 WL 3365870 (E.D. Pa. Oct. 15, 2009).............................................. 17

**Statutes**

28 U.S.C. § 1404(a) ............................................................................................................. 6

35 U.S.C. § 271(a) ............................................................................................................. 9

## I.    INTRODUCTION

In December 2010, Plaintiffs Intellectual Ventures I LLC and Intellectual Ventures II
LLC (collectively, "Plaintiffs") filed this suit against Altera Corporation ("Altera"), Lattice
Semiconductor Corporation ("Lattice"), and Microsemi Corporation ("Microsemi") (collectively,
"the Original Defendants"). Each of the Original Defendants filed its answer and counterclaims
in early March 2011 after the Plaintiffs amended their Complaint. Accordingly, since early
March, this case has been ready to proceed against the Original Defendants.

Now—nearly two months after the Original Defendants filed their last responsive
pleadings, and almost six months since the inception of this case—the Original Defendants raise
transfer for the first time. They articulate no reason for the delay. But the reason is nevertheless
clear: the Original Defendants have long recognized that Delaware is the proper forum for this
dispute. Only after their later-added co-defendant Xilinx moved to transfer did the Original
Defendants take issue with Plaintiffs' choice to litigate here. The Original Defendants'
arguments for transfer—like those of Xilinx—lack merit.

*First*, the Plaintiffs and all of the Original Defendants are incorporated in Delaware. As
such, Delaware is the Plaintiffs' "home turf." Moreover, as this Court has repeatedly recognized,
Delaware has a strong interest in resolving disputes among its corporate citizens. Accordingly,
Plaintiffs' choice of forum is entitled to paramount consideration and cannot be lightly disturbed.

*Second*, the Original Defendants cannot establish—or even legitimately argue—that
litigating in Delaware poses a "unique or unusual burden" on their operations. To the contrary,
the Original Defendants generate hundreds of millions in annual revenue and maintain
employees and facilities throughout the nation and the world. Nor do the Original Defendants
articulate any reason why putative witnesses and documentary evidence would be unavailable in
Delaware. As such, the Original Defendants fail to meet their heavy burden of showing that
private interest factors support transfer.

*Third*, judicial economy and other public interest factors weigh strongly against transfer.
Perhaps recognizing that their Delaware incorporation and worldwide operations heavily

disfavor transfer under this Court's established precedent, the Original Defendants filed responsive pleadings (and in the case of Lattice and Microsemi, multiple responsive pleadings) rather than seeking transfer.  Now, using the motion recently filed by Xilinx as a hook, the Original Defendants seek transfer so that claims can be consolidated with declaratory judgment claims asserted by Xilinx more than three months ago in the Northern District of California ("the California Action").

But as outlined in Plaintiffs' opposition to Xilinx's pending dismissal motion, Plaintiffs have moved to dismiss the California Action on jurisdictional and other grounds.  That motion to dismiss remains pending in the California Court, and a hearing is not scheduled until late July. By contrast, no dispute exists that this Court has jurisdiction over the subject matter and all of the parties.  Indeed, upon resolution of this and Xilinx's motion, this action is ready to proceed.[1] This case is therefore substantially further advanced than the California Action.  Accordingly, judicial economy and other practical considerations weigh against transfer.

## II.     FACTUAL BACKGROUND

### A.      Procedural History

On December 8, 2010, Plaintiffs filed this action against Altera, Lattice, and Microsemi alleging infringement of five patents (the "Patents-in-Suit").  (D.I. 1)  All of the Original Defendants sought and received extensions of time to respond to Plaintiffs' Complaint.  (D.I. 7, 9, 10, 12)  Lattice filed its answer and counterclaims to Plaintiffs' Complaint on January 28, 2011.  (D.I. 13)

On February 14, 2011, Xilinx, Inc. ("Xilinx") filed mirror-image declaratory judgment claims in the Northern District of California concerning four of the Patents-in-Suit, as well as twelve additional patents.  (Declaration of Ameet A. Modi "Modi Decl.", Ex. A)  Defendants in the California Action—which include the two Plaintiffs in this action—have moved to dismiss

---

[1] Should any of the non-overlapping infringement claims in the California Action survive Plaintiffs' motion to dismiss in the California Court, Xilinx can remedy any concerns over litigating in two courts by simply consenting to transfer of those claims to Delaware—where they could and should have been asserted in the first place.

Xilinx's declaratory judgment claims for, among other things, lack of standing, subject matter jurisdiction, and personal jurisdiction. (Modi Decl., Ex. B)  That motion is currently pending in the Northern District of California with a hearing scheduled for July 29, 2011.

On February 15, 2011, Plaintiffs filed an Amended Complaint naming Xilinx as a defendant in this action. (D.I. 17)  In March 2011, Altera, Lattice, and Microsemi answered Plaintiffs' Amended Complaint, each asserting affirmative defenses and counterclaims seeking a declaration of non-infringement and invalidity of the Patents-in-Suit. (D.I. 25, 27, 29)  Microsemi thereafter filed an amended answer on March 22, 2011.  (D.I. 31)

On April 11, 2011, Xilinx filed a motion to transfer this action to the Northern District of California.  (D.I. 36)  On April 26, 2011, over four months after the Plaintiffs filed their initial Complaint, nearly two months after the Original Defendants each answered the Amended Complaint, and over two weeks after defendant Xilinx filed its motion to transfer, the Original Defendants filed the instant motion to transfer this case to the Northern District of California. (D.I. 43)

### B.    Altera Is A Delaware Corporation With National And International Operations.

Altera is a global semiconductor company that designs, manufactures and markets programmable logic devices ("PLDs") including field-programmable gate arrays ("FPGAs"). (Modi Decl., Ex. C at 5)  FPGAs are integrated circuits that can be programmed to perform desired logic functions within electronic systems.  (*Id.*)  Altera was founded in 1983 and reincorporated in Delaware in 1997.  (*Id.* at 46)  Altera has over 2600 employees worldwide with over 1100 employees located in the United States, and maintains engineering design and/or technology centers in San Jose, California, Malaysia, Canada, and the United Kingdom.  (*Id.* at 15, 21)  Altera generated $1.95 billion in net sales in 2010, with FPGAs accounting for 82% of its net sales.  (*Id.* at 22, 25)  Altera estimated that in 2010 it captured 39% of the total FPGA market.  (*Id.* at 8-9)

Altera markets its products worldwide through direct sales channels as well as a network of distributors and independent sales representatives. (*Id.* at 12) Altera's sales, engineering and managerial personnel provide technical, business and marketing support to its distributors and sales representatives, which includes applications assistance, design services and customer training. (*Id.*) In turn, many of Altera's distributors create customer demand at the engineering level as well as provide technical support and other value-added services to its customers. (*Id.* at 18) Altera states that its customer support and service are important components to selling and marketing its products. (*Id.* at 12) Altera's largest distributor, Arrow Electronics, Inc., accounted for 46% of Altera's worldwide net sales in 2010 and is headquartered in Melville, New York. (Modi Decl., Ex. C at 18, Ex. D) In addition to its independent distributors, Altera maintains 13 direct sales offices in the United States, only two of which are located in California. (Modi Decl., Ex. E)

### C.   Lattice Is A Delaware Corporation With National And International Operations.

Lattice is a global company that designs, develops and markets programmable logic products including PLDs and FPGAs. (Modi Decl., Ex. F at 4-5) Lattice was first incorporated in Oregon in 1983 and later reincorporated in Delaware in 1985. (*Id.* at 4) In addition to its Oregon headquarters, Lattice also develops products in California, Illinois, Pennsylvania, and China, has an operations center in Singapore, and employs nearly 750 people. (*Id.* at 7, 11) Lattice's 2010 revenue was approximately $297 million, of which 67% ($200 million) was derived from its PLD products and 33% ($97 million) from its FPGA products. (*Id.* at 5-6, 27)

Lattice markets its products to end customers through a number of sales representatives, manufacturer representatives, and distributors. (*Id.* at 8) Three of its primary distributors include Arrow Electronics, Inc. (which is headquartered New York), Avnet, Inc. (headquartered in Arizona), and Weikeng International Co., Ltd. (based in Taiwan and Hong Kong), which collectively accounted for nearly 50% of Lattice's 2010 revenue. (*Id.* at 8-9) To support its end customers and indirect sales resources, Lattice employs a direct sales management and field

4

applications engineering organization. (*Id.*) This organization provides technical and marketing support with engineering staff based at Lattice's headquarters, product development centers, and some field sales offices. (*Id.* at 9) Lattice field offices are located not only internationally, but throughout the United States, including North Carolina, Oregon, Texas, California, Massachusetts, New Jersey, and Illinois. (*Id.*; Modi Decl., Ex. G)

### D.    Microsemi Is A Delaware Corporation With National And International Operations.

Microsemi is a global semiconductor company that designs, manufactures and markets integrated circuits, including FPGAs. (Modi Decl., Ex. H at 1, 4) Microsemi has been incorporated in Delaware since 1960 and maintains its corporate executive offices in Irvine, California. (*Id.* at 4) Although most of Microsemi's product development is performed in-house, it also employs a number of outside consultants to assist with product design. (*Id.* at 6) Microsemi's principal domestic engineering and production operations are located in California, Oregon, Arizona, Indiana, Georgia, New York, and Massachusetts, with international operations in China, Taiwan, Hong Kong, Israel, Macau, France, Ireland, and the Philippines. (*Id.* at 7, 25) Microsemi employs approximately 1,600 people in the United States and 650 people internationally. (*Id.* at 6) Microsemi's net sales for 2010 exceeded $500 million. (*Id.* at 6, 10)

To make use of its engineering capabilities, Microsemi shares research and production methods across divisions, including assigning engineers to the same projects regardless of the facility that incurs the cost. (*Id.* at 33) Microsemi maintains sales offices for its FPGA products, which it acquired from Actel Corporation in 2010, throughout the United States including California, Florida, Georgia, Illinois, New Hampshire, North Carolina, Pennsylvania, and Texas. (Modi Decl., Ex. I)

## III.    ARGUMENT

### A.    Private Factors Do Not Weigh In Favor Of The California Court As A Clearly More Convenient Forum Than This Court.

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."

28 U.S.C. § 1404(a). The Third Circuit has articulated a variety of private and public interests for the Court to consider in determining whether to transfer venue under Section 1404(a).[2] The moving party bears the burden of establishing that the balancing of the proper interests strongly favors transfer. *Cypress Semiconductor Corp., Int'l v. Microcircuits, Inc.*, No. 01-199-SLR, 2001 WL 1617186, at *2 (D. Del. Nov. 28, 2001) (internal quotations omitted). "[T]ransfer will be denied if the factors are evenly balanced or weigh only slightly in favor of the transfer." *Mallinckrodt v. E-Z-Em*, 670 F. Supp. 2d 349, 356 (D. Del. 2009).

The Original Defendants fall far short of meeting their burden to establish that the California Court would be a more convenient litigation forum than this Court. Rather, as demonstrated below, the convenience factors articulated by the Original Defendants individually and collectively weigh against transfer.

### 1.    Plaintiffs' Choice Of Forum Is Entitled To Paramount Consideration.

"Generally, a plaintiff's choice of forum is entitled to 'paramount consideration,' and should not lightly be disturbed. *Mallinckrodt*, 670 F. Supp. at 356 (citing *Shutte v. Armco Steel Corp.*, 431 F.2d 22, 25 (3d Cir. 1970)). The Original Defendants argue that Plaintiffs' choice of the Delaware forum here is entitled to diminished deference because (1) Delaware is not Plaintiffs' "home forum," and (2) there is "no connection" between the Delaware forum and the operative facts giving rise to this action. (D.I. 44 at 9) Both arguments are without merit.

---

[2] The private interests include: (1) plaintiff's forum preference; (2) defendant's forum preference; (3) where the claims arose; (4) the convenience of the parties, as indicated by their relative physical and financial conditions; (5) the convenience of third-party witnesses, as indicated by their availability to participate at trial in the forum; and (6) the locations of books and records, to the extent they cannot be produced in the forum. *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879 (3d Cir. 1995). The public interests include: (1) the enforceability of the judgment; (2) practical considerations that could make a trial easy, expeditious, or inexpensive; (3) the relative administrative difficulty in the two fora resulting from court congestion; (4) the local interest in deciding local disputes at home; (5) the public policies of the fora; and (6) the familiarity of the trial judge with the applicable state law in diversity cases. *Id.*

      a)     **Plaintiffs Chose To Litigate On Their "Home Turf."**

Contrary to the Original Defendants' assertions, Plaintiffs' choice of the Delaware forum is entitled to significant deference. As an initial matter, Plaintiffs are each incorporated in Delaware. As explained in *Praxair, Inc. v. ATMI, Inc.*, No. 03-1158-SLR, 2004 WL 883395 (D. Del. Apr. 20, 2004), a party's "home turf" includes its "situs of incorporation." *Id.* at *1-2 (denying defendant's motion to transfer, where both parties were incorporated in Delaware but maintained headquarters elsewhere, because "[b]y availing themselves of the advantages of Delaware corporate laws, defendants have voluntarily exposed themselves to the risk of suit in Delaware.") Consequently, as a matter of law and contrary to Original Defendants' assertions, Delaware is "home turf" for all parties.[3]

      b)     **Plaintiffs' Choice Of The Delaware Forum Is Rational And Legitimate And Accordingly Entitled To Paramount Consideration.**

While Delaware is the Plaintiffs' home turf, "[t]he plaintiff's chosen forum is a paramount consideration even where the forum is not the plaintiff's 'home turf' or where the alleged wrongful conduct occurred." *Carl Zeiss Meditec, Inc. v. XOFT, Inc.*, No. 10-308-LPS-MPT, 2010 WL 4024603, at *1 (D. Del. Oct. 13, 2010) (report and recommendation to deny transfer adopted in full, No. 10-308-LPS-MPT, 2011 WL 1212235 (D. Del. Mar. 30, 2011)). That paramount consideration is afforded so long as rational and legitimate reasons exist for the plaintiff's choice of forum. *CNH Am. LLC v. Kinzenbaw*, C.A. No. 08-945 (GMS), 2009 WL 3737653, at *2 (D. Del. Nov. 9, 2009). Here, Plaintiffs' choice of the Delaware forum is rational and legitimate—and therefore entitled to paramount consideration—because (1) Plaintiffs are

---

[3] The Original Defendants assert—without legal support—that Plaintiffs' recent formation and incorporation in Delaware somehow entitles their choice of forum to diminished deference. (D.I. 44 at 10) But even if the Original Defendants' assertion had any legal basis, their argument would be without merit here because the Patents-in-Suit were held by pre-existing **Delaware entities** that merged into the Plaintiffs. (Modi Decl., Exs. J-L) Plaintiffs chose to avail themselves of the rights, benefits, and obligations of Delaware law—just as each of the Original Defendants did in choosing to incorporate here—and accordingly their choice of forum is entitled to "paramount consideration."

incorporated in Delaware; (2) each of the Original Defendants is incorporated in Delaware; and (3) the Original Defendants' infringing products are sold and marketed in this District.

*First*, Plaintiffs are Delaware limited liability companies. As this Court has repeatedly held, a plaintiff's incorporation in this District is a legitimate and rational reason to bring suit here because it relates to its legitimate, rational concerns as a Delaware entity. *See, e.g., CNH Am. LLC*, 2009 WL 3737653, at *2 (stating that the rule that a plaintiff's choice of forum is entitled to paramount consideration "is particularly true in cases where the plaintiff is a corporate entity that is incorporated in Delaware, because a corporation's decision to incorporate in a particular state is a rational and legitimate reason to choose to litigate in that state"); *Mallinckrodt*, 670 F. Supp. 2d at 356. Thus, even crediting the Original Defendants' erroneous contention that Delaware is not Plaintiffs' "home turf," the Plaintiffs' choice of the Delaware forum is rational and legitimate, and therefore entitled to significant deference.

*Second*, the Original Defendants are all incorporated in Delaware and therefore chose to avail themselves of the protections and benefits of Delaware law. The Original Defendants cannot have it both ways by selecting Delaware as their state of incorporation and then complaining when sued in that same forum. *See id.* at 356-57 ("While Defendants' preferred forum is clearly the Eastern District of Texas, when a corporation chooses to incorporate in Delaware and accept the benefits of incorporating in Delaware, it cannot complain once another corporation brings suit against it in Delaware.").

Perhaps recognizing the impact of their Delaware incorporation on the merits of their transfer arguments, the Original Defendants seek to downplay their Delaware connections. Those efforts lack merit. For instance, in its 2010 Annual Report (filed with the Securities and Exchange Commission), Microsemi describes the benefits that its stockholders enjoy as a result of its incorporation in Delaware:

> ***Delaware law and our charter documents contain provisions that could discourage or prevent a potential takeover of Microsemi that might otherwise result in our stockholders receiving a premium over the market price for their shares.***

> Provisions of Delaware law, our certificate of incorporation and bylaws, and our Shareholder Rights Plan could make more difficult an acquisition of Microsemi by means of a tender offer, a proxy contest, or otherwise, and the removal of incumbent officers and directors.

(Modi Decl., Ex. H at 24 (emphasis in original))  Microsemi has enjoyed the benefit of Delaware's corporation law for over 40 years since its incorporation in 1960.  (*See id.* at 4)

Lattice and Altera similarly enjoy the benefits of being incorporated in Delaware, which they affirmatively chose in lieu of the location of their corporate headquarters and original states of incorporation.  For example, Lattice originally incorporated in Oregon in 1983 but then reincorporated in Delaware in 1985.  (Modi Decl., Ex. F at 4)  Similarly, Altera originally incorporated in California in 1984 but then reincorporated in Delaware in 1997.  (Modi Decl., Ex. C at 46)  The Original Defendants' complaints of litigating in Delaware therefore ring hollow given their choice of Delaware for incorporation and reliance on the corporate protections provided by Delaware law.

Finally, in addition to choosing Delaware for incorporation, the Original Defendants have each sold infringing products nationwide, including in Delaware.  (D.I. 17 at ¶¶ 35, 43, 48)  As such, the Original Defendants have committed infringing acts in Delaware, *see* 35 U.S.C. § 271(a), and Delaware therefore has a "meaningful connection to this dispute." *See Schering Corp. v. Amgen Inc.*, 969 F. Supp. 258, 269 (D. Del. 1997) (noting that defendant's characterization that Delaware has little or no meaningful connection to the dispute was disingenuous since the accused product was sold internationally and generated millions of dollars in revenues); *Pfizer Inc. v. Apotex, Inc.*, Civ. A. No. 08-cv-948, 2009 WL 2843288, at *3 n.5 (D. Del. Aug. 13, 2009) ("the Federal Circuit has held that injury in a patent infringement action occurs . . . where 'the infringing activity directly impacts on the interests of the patentee,' like the place of an infringing sale.").

Thus, contrary to the Original Defendants' argument, Plaintiffs' choice of the Delaware forum is rational and legitimate, and this District's connection to the parties' dispute is significant.  Plaintiffs' choice of the Delaware forum is therefore entitled to paramount

consideration, and the Original Defendants bear a heavy burden to prove that the other *Jumara*

factors strongly outweigh that choice. *Id.* at *2; *see also ADE Corp. v. KLA-Tencor Corp.*, 138

F. Supp. 2d 565, 567-68 (D. Del. 2001) ("Unless the balance is strongly in favor of a transfer, the

plaintiff's choice of forum should prevail."). As demonstrated below, the Original Defendants

fall well short of meeting that heavy burden.

### 2. The Convenience Of The Parties And Party Witnesses Does Not Favor Transfer.

The Original Defendants argue that the Northern District of California is more convenient

for the parties and their witnesses because "[a]ll parties maintain their principal places of

business on the West Coast." (D.I. 44 at 12)  But convenience of the parties is assessed

according to "their relative physical and financial condition," not their location. *Jumara*, 55 F.3d

at 879. As such, the Original Defendants must show—which they have failed to do here—"that

litigating in Delaware would pose a ***unique or unusual burden*** on their operations." *Tradimpex*

*Egypt Co. v. Biomune Co.*, C.A. No. 10-757-LPS, 2011 WL 1447553, at *4 (D. Del. Apr. 14,

2011) (emphasis added); *see also Autodesk Canada Co. v. Assimilate, Inc.*, No. 08-587-SLR-

LPS, 2009 WL 3151026, at *8 (D. Del. Sept. 29, 2009) ("Because a plaintiff's choice of forum is

accorded substantial weight and ***venue is transferred only if the defendant truly is regional (as***

***opposed to national) in character***, a defendant has the burden of establishing that the balance of

convenience of the parties and witnesses strongly favors the defendant.") (emphasis added).

Here, the Original Defendants' transfer arguments are therefore unpersuasive at least because (1)

litigating in Delaware would not pose any unique or undue burden on their international business

operations, and (2) the Original Defendants fail to demonstrate that their party witnesses would

be unavailable to attend trial in Delaware. As such, these factors do not favor transfer.

### a) Litigating In Delaware Will Not Pose Any Unique Or Undue Burden On The Original Defendants' Business Operations.

Far from being regional companies, each of the Original Defendants is a multi-national

corporation with design centers and sales offices located throughout the United States and the

world. Although the Original Defendants might believe that defending litigation in California

10

will be more convenient, litigating in Delaware—where each Original Defendant chose to incorporate—surely does not pose a *unique* or *unusual* burden on their operations.  Indeed, the Original Defendants have come forward with no such proof.

For example, Altera's global operations employ over 2,600 employees worldwide with over 1,100 employees located in the United States.  (Modi Decl., Ex. C at 15)  It maintains engineering design and/or technology centers in San Jose, California, Malaysia, Canada, and the United Kingdom, and has 13 direct sales offices in the United States, of which only two are located in California.  (Modi Decl., Ex. C at 21, Ex. E)  In 2010, Altera reported worldwide revenues of nearly $2 billion.  (Modi Decl., Ex. C at 25)

Similarly, Lattice is a global semiconductor company with revenues of nearly $300 million in 2010.  (Modi Decl., Ex. F at 27)  While it maintains headquarters in Oregon, Lattice employs nearly 750 employees and develops products in Oregon, California, Illinois, Pennsylvania, and China, as well as maintaining an operations center in Singapore.  (*Id.* at 7)  Lattice also has international and domestic field offices, with its United States offices located in North Carolina, Oregon, Texas, California, Massachusetts, New Jersey, and Illinois.  (Modi Decl., Ex. F at 9, Ex. G)

Finally, Microsemi has over 2,200 employees worldwide and maintains engineering and production operations in California, Oregon, Arizona, Indiana, Georgia, New York, Massachusetts, China, Taiwan, Hong Kong, Israel, Macau, France, Ireland, and the Philippines.  (Modi Decl., Ex. H at 10, 25)  Microsemi also maintains sales offices for its FPGA products throughout the United States including California, Florida, Georgia, Illinois, New Hampshire, North Carolina, Pennsylvania, and Texas.  (Modi Decl., Ex. I)  In 2010, Microsemi generated over $500 million in net sales.  (Modi Decl., Ex. H at 6)

In short, Defendants have not shown "that convenience and fairness strongly favor[s] transfer," or that "participating in litigation in Delaware presents an *unusual* burden," particularly in light of their annual revenues and global design, manufacturing and sales

operations.[4]  *Autodesk*, No. 08-587-SLR-LPS, 2009 WL 3151026, at *22-24 ("[Defendant] has

sufficient resources to defend a lawsuit in Delaware—the jurisdiction in which it chose to

incorporate—just as it has the resources to support employees and sales efforts in multiple

countries.") (emphasis in original).  The lack of any unusual burden also comports with the

Original Defendants' failure to move for—or even mention—transfer for nearly six months,

while instead filing multiple responsive pleadings.  As such, this factor weighs against transfer.

> **b)    The Original Defendants Fail To Demonstrate That Their Party Witnesses Would Be Unable To Attend Trial In Delaware.**

The Original Defendants suggest that litigating in the Northern District of California

would reduce expense and inconvenience for their employees and other party witnesses.  (D.I. 44

at 13)  But "[p]arty witnesses such as employees are presumed willing to testify at trial."  *Carl

Zeiss Meditec, Inc. v. Optovue, Inc.*, C.A. No. 10-084-GMS, 2011 WL 1419714, at *3 (D. Del.

Apr. 13, 2011).  Accordingly, employees and other party witnesses are generally not considered

in the convenience analysis.  *Acuity Brands, Inc. v. Cooper Indus., Inc.*, C.A. No. 07-444-GMS,

2008 WL 2977464, at *2 (D. Del. July 31, 2008).  The Original Defendants do not articulate any

reason as to why their employees and other purported party witnesses would be unable to attend

trial in Delaware.  As such, this factor does not favor transfer.

> **3.    The Convenience of the Non-Party Witnesses Does Not Support Transfer.**

Original Defendants correctly note that the convenience of non-party witnesses is an

important consideration insofar as those "witness[es] may actually be unavailable for trial in one

---

[4] The Original Defendants cite *In re Acer America*, 626 F.3d 1252 (Fed. Cir. 2010) in support of their argument that "transfer to the Northern District of California would significantly reduce the expense and inconvenience that would otherwise be incurred if the case proceeded in Delaware." (*See* D.I. 44 at 13)  But given that each Original Defendant is a global company with design and technology centers located worldwide, it is unclear (indeed, unlikely) that transferring this case to California would significantly impact the burden of litigation expenses.  Moreover, the Federal Circuit in *Acer* applied Fifth Circuit law, "which places less emphasis on a plaintiff's choice of forum than the Third Circuit."  *See Carl Zeiss Meditec, Inc.*, 2011 WL 1212235, at *2. Properly applying Third Circuit case law, the Original Defendants have not met their burden to show that Plaintiffs' choice of forum should be disrupted.

of the fora." (D.I. 44 at 13) (citing *Jumara*, 55 F.3d at 879). But the Original Defendants—despite citing the correct legal standard—fail to demonstrate that any non-party witnesses are actually unavailable.[5] Moreover, the Original Defendants selectively point to certain purported non-party witnesses allegedly residing in California while omitting analogous witnesses residing elsewhere, in many instances closer to Delaware. As such, the Original Defendants fail to carry their heavy burden in establishing that the California forum is plainly more convenient.

In addition, the Original Defendants' assertions with respect to the locations of inventors of the Patents-in-Suit are based solely on information included on the face of the patents—the earliest of which was issued over thirteen years ago. The Original Defendants do not provide any evidence with respect to the current whereabouts of those inventors—let alone whether they would be unavailable or unwilling to attend trial in Delaware. *See ICU Med., Inc.v. Rymed Tech., Inc.*, Civ. A. No. 07-468-JJF, 2008 WL 205307, at *3 (D. Del. Jan. 23, 2008) (location of third-party witnesses does not weigh strongly in favor of transfer where defendant "has not demonstrated that these witnesses would be unwilling to testify voluntarily or that their information is not available in another form."); *see also CNH Am.*, 2009 WL 3737653, at *3 ("Potential witnesses based outside Delaware can be deposed in their home states, and in general, progress in communications and transportation has made the defense of a lawsuit in a foreign tribunal less burdensome."). The Original Defendants similarly provide no legal support for their apparent contention that the locations of the original assignees of the Patents-in-Suit are relevant to the convenience analysis.

---

[5] The Original Defendants additionally argue that purported third-party witnesses are "unavailable" because they allegedly reside outside this Court's subpoena power. (D.I. 44 at 15) But as this Court has more recently noted, "inconvenient must be distinguished from unavailable." *Carl Zeiss*, 2010 WL 4024603, at *2. As such, this factor is afforded substantially less weight where—as here—the movant provides no evidence that purported non-party witnesses are in fact unwilling or unavailable to attend trial in Delaware. *See id.* ("It is reasonable to provide information, via affidavit for example, to prove a witness is unavailable. Moreover, a flight to Delaware is not an onerous task warranting transfer.").

Similarly, the Original Defendants fail to provide any factual support for their contention that the location of prosecuting attorneys and inventors or assignees of certain alleged prior art references favor transfer.[6] As an initial matter, the Original Defendants wholly fail to articulate the relevance of the testimony from such witnesses. But even assuming that such testimony is relevant, the Original Defendants once again fail to demonstrate—as they must do to support their transfer argument—that those witnesses would be unavailable or unwilling to attend trial in Delaware. Indeed, as Original Defendants expressly state, several prosecuting attorneys appear to reside in Michigan or Texas.[7] (D.I. 44 at 14) The Delaware forum is likely at least as convenient for such witnesses as the California forum.

Finally, numerous potential non-party witnesses having knowledge related to the engineering and sales of the accused products appear to be located closer to Delaware. For example, Altera and Lattice both employ Arrow Electronics, Inc. as a major distributor of their products. (Modi Decl., Ex. C at 18, Ex. F at 9) Indeed, as Altera states in its public filings, Arrow Electronics "create[s] demand for [Altera's] products at the engineering level" and accounted for nearly $1 billion of its sales in the past year. (Modi Decl., Ex. C at 18) Thus, executives and other employees of Arrow Electronics—based in Melville, New York—are likely to have key information regarding product development, sales, and distribution of many of the accused products. Transfer of Plaintiffs' claims to California would therefore only shift the burden of travel and expense to such potential witnesses. *Cf. Derry Fin. N.V. v. Christiana Co.,*

---

[6] The Original Defendants assert—without legal support—that inventors and assignees of alleged prior art references cited in reexamination proceedings are somehow relevant to the transfer analysis. Tellingly, the Original Defendants selectively cite only to references with (marginal) connections to California. Yet the reexamination proceedings involve additional references with inventors and assignees located throughout the nation and world. Hence, even if such witnesses might potentially provide relevant testimony—an assertion that the Original Defendants do not remotely substantiate—the convenience of those witnesses fails to carry the Original Defendants' heavy burden in establishing the need for transfer.

[7] Indeed, contrary to the Original Defendants' assertion, one of the prosecuting attorneys for the '669 Patent appears to reside in Austin, Texas—not in California. (Modi Decl., Exs. M-N)

*Inc.*, 555 F. Supp. 1043, 1046 (D. Del. 1983) (refusing to grant motion to transfer where doing so would simply shift inconvenience from one party to another).

### 4.    The Location Of Sources Of Proof Does Not Support Transfer.

The Original Defendants cannot demonstrate that the California forum is clearly more convenient based on the location of sources of proof. "[T]echnological advances of recent years have significantly reduced the weight of this factor." *ICU Med.*, 2008 WL 205307, at *3. Because discovery can be conducted at any location convenient to the parties and their employees, any inconvenience incurred in connection with producing documents in Delaware for trial is minimal—particularly for Delaware defendants. *Acuity Brands*, 2008 WL 2977464, at *3. As such, "[t]he location of the sources of proof . . . are considered only to the extent those sources are *unavailable*." *Carl Zeiss Meditec*, 2010 WL 4024603, at *3 (report and recommendation to deny transfer adopted in full by 2011 WL 1212235 (D. Del. Mar. 31, 2011)).

Here, the Original Defendants argue that transfer is warranted because business records and other documents are located primarily in California. (D.I. 44 at 17)  But they have not identified any documents that are "especially difficult to transport"—much less unavailable—in Delaware. *Cypress Semiconductor Corp. v. Integrated Circuit Sys., Inc.*, No. 01-199-SLR, 2001 WL 1617186, at *3 (D. Del. Nov. 28, 2001). ████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████  In this age of electronic discovery, any assertion that Defendants' documents would be unavailable in Delaware strains credibility.

Moreover, despite the Original Defendants' assertions, many documents relevant to the parties' dispute are located closer to Delaware than the Northern District of California. For example, Arrow Electronics—which "create[s] customer demand . . . at the engineering level" for Altera's products and accounted for 46% of Altera's $1.95 billion in worldwide sales in 2010—is headquartered in Melville, New York. (Modi Decl., Ex. C at 18, Ex. D) ███████

████████████████████████████████████████████

████████████████████████████  And contrary to its assertions here, Microsemi's

15

public filings indicate that its engineering capabilities, research, and production methods are shared "across our divisions . . . regardless of the facility that incurs the personnel expense." (Modi Decl., Ex. H at 33)  Thus, relevant documents are likely also located in Microsemi's sales offices in Florida, Georgia, Illinois, New Hampshire, North Carolina, and Pennsylvania—each closer to Delaware than the Northern District of California.

The cases relied upon by the Original Defendants are uniformly inapposite.  For example, the Original Defendants rely on *In re Genentech*, 566 F.3d 1338 (Fed. Cir. 2009) for their suggestion that the location of documents is a particularly relevant consideration in patent cases. (*See* D.I. 44 at 17)  But this Court has consistently held—including in patent cases—that despite their physical location, documents must actually be ***unavailable*** in Delaware in order to support a transfer argument.  *See, e.g., Carl Zeiss*, 2011 WL 1212235, at *1.  Defendants' reliance on *In re Acer*, 626 F.3d 1252 (Fed. Cir. 2010) is similarly misplaced.  As this Court recently noted, *Acer* (and *Genentech*) apply Fifth Circuit law, "which places less emphasis on a plaintiff's choice of forum than the Third Circuit."  *Carl Zeiss*, 2011 WL 1212235, at *2.  Finally, in *Arrow Communications*, this Court granted transfer under "exceptional circumstances" due to the "regional character of the parties."  *Arrow Comm'n's*, 2005 WL 2786691, at *4 (D. Del. Oct. 26, 2005).  Those "exceptional circumstances" are not present here; rather, each of the Original Defendants operates and maintains offices throughout the United States and the world.  As such, the Original Defendants have not remotely demonstrated that this factor favors transfer.

**B.     The Public Interest Factors Do Not Weigh In Favor Of The California Court As A Clearly More Convenient Forum Than This Court.**

As demonstrated above, the private interest factors clearly do not support the Original Defendants' arguments for transfer.  The Original Defendants have long recognized this fact— indeed, the Original Defendants filed their motion only after Xilinx initiated mirror-image claims in California and moved to transfer claims there.  In disputing venue at this late stage, the Original Defendants all but concede that their argument for transfer boils down to their assertion that their claims ***may*** be consolidated with the California Action, and that transfer could

16

therefore promote judicial economy.  (D.I. 44 at 18-19)  But this action *is ready to proceed*, whereas significant doubt exists as to jurisdiction in the California Action.  As such, judicial economy and other practical considerations weigh *against* transfer.

As Plaintiffs have demonstrated in earlier filings, the California Action is the result of Xilinx's rush to file an improper anticipatory suit.  (D.I. 48)  In its haste, Xilinx drafted a complaint with fatal jurisdictional flaws.  Accordingly, the defendants in the California Action have moved to dismiss the complaint in its entirety.  (Modi Decl., Ex. B)  The California Action is in its earliest stages.  Xilinx has not submitted any opposition to the motion to dismiss, and a hearing is not scheduled until July 29, 2011.

By contrast, there is no dispute regarding the parties' jurisdiction in this District.  Each of the Defendants is incorporated in Delaware and subject to this Court's personal jurisdiction. Each of the Original Defendants answered the Amended Complaint nearly two months ago. Plaintiffs' claims against the Original Defendants are therefore ready to proceed today. Furthermore, nothing prevented (or is preventing) Xilinx from raising its declaratory claims in this Court.  This Court can therefore guarantee that all claims move forward in one forum— preventing significant burden to the parties, witnesses, and the judiciary—by denying the both motions to transfer.  As explained by another Court in this Circuit—one cited by the Original Defendants—these practical considerations weigh in favor of maintaining claims in Delaware, where jurisdiction is undisputed:

> Based on the parties' filings, it appears that the court in the District of Delaware can exercise personal jurisdiction over *all* of the parties involved in both actions, which allows the Delaware court to fully resolve the issues at hand.  By contrast, it is *not* clear that this Court can exercise personal jurisdiction over all [parties], which might prevent this Court from fully resolving the issues at hand. . . . This uncertainty weighs in favor of transferring the case to the District of Delaware.

*TransCore L.P. v. Mark IV Ind. Corp.*, Civ. A. 09-2789, 2009 WL 3365870, at *8 n.10 (E.D. Pa. Oct. 15, 2009).  Those same practical considerations—uncertainty as to whether the California

Court can fully resolve the issues at hand, and this Court's undisputed jurisdiction to do so—apply with full force here.  The public interest factors therefore weigh heavily against transfer.

## IV.   CONCLUSION

For the reasons set forth above, Plaintiffs respectfully request that the Court deny the Original Defendants' Motion to Transfer.

DATED:  May 13, 2011

Respectfully submitted,

  /s/ Brian E. Farnan
Brian E. Farnan (Bar No. 4089)
Farnan LLP
919 North Market Street
12th Floor
Wilmington, DE 19801
(302) 777-0300
(302) 777-0301
bfarnan@farnanlaw.com

John M. Desmarais (admitted *pro hac vice*)
Michael P. Stadnick (admitted *pro hac vice*)
DESMARAIS LLP
230 Park Avenue
New York, NY 10169
(212) 351-3400
(212) 351-3401
jdesmarais@desmaraisllp.com
mstadnick@desmaraisllp.com

*Counsel for Plaintiffs*