# EXHIBIT "A"

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

| | |
|---|---|
| In re *Inter Partes* Reexamination of: | § Control Number: 95/001,550 |
| U.S. Patent No. 6,272,646 | § Art Unit: 3992 |
| | § |
| Attorney Docket No: 42299.9 | § Examiner: Mark A. Sager |

For: PROGRAMMABLE LOGIC DEVICE HAVING AN INTEGRATED PHASE LOCK LOOP

### COMMENTS BY THIRD PARTY REQUESTER PURSUANT TO 37 CFR 1.947

Mail Stop *Inter Partes* Reexam
Commissioner for Patents
P.O. Box 1450
Alexandria, VA 22313-1450

Dear Sir:

The *inter partes* reexamination of U.S. Patent No. 6,272,646 ("the '646 patent") was initiated by the Patent Office in response to the Request for *Inter Partes* Reexamination ("Request") filed by Xilinx, Inc. ("Requester"). The following comments are provided by the Requester pursuant to 37 CFR 1.947 in response to the issues raised by the non-final Office Action dated April 28, 2011 ("Office Action") and the Patent Owner's Response to Office Action filed June 28, 2011 ("Patent Owner Response"). The following comments are intended to facilitate examination, but should not limit the Examiner from a full and complete examination as required under 35 U.S.C. § 311(a), 37 CFR 1.104(a)(1), and MPEP 2111.

The following comments are provided in two sections, the first section being directed to the Patent Owner Response to the rejection of original (and un-amended) claims 1-17 and amended claims 18-20, and the second section being directed to new claims 21-42 provided in the Patent Owner Response.

### COMMENTS TO THE PATENT OWNER'S RESPONSE

Claims 1-20 of the '646 patent stand rejected over Wright, alone or in combination with other art. Furthermore, the Patent Owner has amended claims 18-20 and added new dependent claims 21-42. As explained further below, Patent Owner proffers a construction of the term *programmable logic circuit* that is far narrower than the broadest reasonable interpretation and still

narrower than what would be understood by one of ordinary skill in the art. Also, as explained below, new claims 21-42 fail to add anything patentable to the '646 patent.

Requester shows below that the Patent Owner's proposed construction of the claims is incorrect. Also, Requester presents new rejections in response to 1) the amendments to claims 18-20 (*see* claim charts attached in Appendix AA) and 2) the addition of new claims 21-42 (*see* claim charts attached in Appendix BB and CC).

## I.    Ground of Rejection No. 1: Wright (Patent Owner Response at 15-21)

Claims 1-4, 6, 10-13, and 16-19 stand rejected under 35 U.S.C. § 102(b) over US 5,349,544 (hereinafter, Wright). Claims 5, 14, and 20 stand rejected under 35 U.S.C. § 103(a) as being unpatentable over Wright in view of US 5,594,376 (hereinafter, McBride). Claims 7-19 stand rejected under 35 U.S.C. § 103(a) as being unpatentable over Wright in view of US 5,276,716 (hereinafter, Wincn). Also, Claims 7-9 stand rejected under 35 U.S.C. § 103(a) as being unpatentable over Wright in view of US 5,206,979 (hereinafter, Parker). The following comments are directed to the Office Action and Patent Owner Response with reference to these rejections.

### A.    *Comments Directed To:* **"Wright fails to disclose a programmable logic circuit" (Patent Owner Response at 19-20)**

Claim 1 of the '646 patent recites "[a] device comprising: a *programmable logic circuit*...wherein said programmable logic circuit and said phase lock loop are integrated on a single circuit." (Emphasis added). Wright teaches a "PLL [Phase Lock Loop] is integrated on the same chip as a programmable logic circuit." Wright at Abstract (emphasis added). Thus, Wright teaches the exact same invention articulated in claim 1 of the '646 patent. However, the Patent Owner now argues that the programmable logic circuit of claim 1 is a different programmable logic circuit than that disclosed by Wright. Specifically, Patent Owner argues that the specification compels the Examiner to limit the claims to a programmable logic circuit that has an in situ reconfigurable routing element, which the Patent Owner calls a "fourth generation" PLD. Patent Owner response at 17-18. Patent Owner's treatment of the term *programmable logic circuit* is unsupported and incorrect at least for the reasons given below.

     1.    Patent Owner's argument to distinguish over Wright should be rejected because it is based on Patent Owner's impermissible attempt to import limitations from the specification.

     a. The MPEP provides guidance leading to a different interpretation of *programmable logic circuit*:

> Although claims of issued patents are interpreted in light of the specification, prosecution history, prior art and other claims, this is not the mode of claim interpretation to be applied during examination. During examination, the claims must be interpreted as broadly as their terms reasonably allow. In re American Academy of Science Tech Center, 367 F.3d 1359, 1369, 70 USPQ2d 1827, 1834 (Fed. Cir. 2004) (The USPTO uses a different standard for construing claims than that used by district courts; during examination the USPTO must give claims their broadest reasonable interpretation in light of the specification.). <u>This means that the words of the claim must be given their plain meaning unless the plain meaning is inconsistent with the specification</u>. In re Zletz, 893 F.2d 319, 321, 13 USPQ2d 1320, 1322 (Fed. Cir. 1989) (discussed below); Chef America, Inc. v. Lamb-Weston, Inc., 358 F.3d 1371, 1372, 69 USPQ2d 1857 (Fed. Cir. 2004).

MPEP § 2111.01(I) (Emphasis added). The MPEP further clarifies that the "plain meaning" refers to the "meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention." MPEP § 2111.01(III). Thus, the claim terms must be given (1) their plain meaning that reflects how one of ordinary skill in the art would have understood the terms (2) unless the plain meaning is inconsistent with the specification. As explained below at I(A)(1)(b), *programmable logic circuit* is understood to be generic and not limited to an in situ reconfigurable routing element, and there is nothing in the specification mandating a different construction for this reexamination proceeding. Thus, it is improper to limit *programmable logic circuit* to an in situ reconfigurable routing element.

     b.    The claim term *programmable logic circuit* should be construed consistent with the three words that make up the term. Terms such as *Field Programmable Gate Array* (FPGA), *Programmable Logic Device* (PLD), and *Programmable Array Logic* (PAL) are all terms of art that have specific meanings to persons of ordinary skill in the art. Declaration of Dr. Ray Mercer at para. 12. By contrast, *programmable logic circuit* is a term that has not yet become a term of art (and was not a term of art at the filing of the '646 patent). *Id.* In fact, the term does not appear in the specification of the '646 patent (other than in the claims) or in Cypress Book

(Cypress Semiconductor Corp., Programmable Logic Data Book at pp. 2-1-2-5 and 3-8-3-15 (Nov. 1995)), cited by the Patent Owner and Dr. Stine to support their unreasonably narrow claim construction. Since *programmable logic circuit* is not a readily accepted term of art, and further because the specification does not use the term itself to assist in interpretation, one of ordinary skill in the art would ascribe a meaning to *programmable logic circuit* consistent with the three words constituting the term. *Id.* Therefore, one of ordinary skill in the art would understand *programmable logic circuit* to encompass circuits providing in situ reconfigurability as well as circuits that are programmable but not necessarily reprogrammable in situ. *Id.*

   c. Patnet Owner's attempt to read in limitations from the specification should be rejected. Patent Owner tries to read in limitations from the specification for a term that Patent Owner does not use in the specification. Thus, Patent Owner asks the Examiner to perform the difficult task of picking and choosing certain limitations from the specification to be read into the claims even though the term at issue is not used in context with those limitations. There is no indication in the specification that *programmable logic circuit* should or should not be interpreted in any particular manner. Also, whereas the Patent Owner quoted portions of the specification that describe select features of an embodiment, there is no language in those quotations mandating that such features limit the claims. *See* Patent Owner Response at 18.

   2. The specification would not enable the claims if Patent Owner's proposed construction of *programmable logic circuit* were adapted. The specification of the '646 patent fails to enable in situ reconfigurability, especially in light of the fact that the Patent Owner argues that programmable logic devices providing in situ reconfigurability were introduced in 1996 (the same year as the filing of the '646 patent). For a claim to be enabled, the patent must teach one of ordinary skill in the art how to make and use the claimed subject matter without undue experimentation. MPEP § 2146.01. In one notable omission, the specification never uses the terms *in situ reprogrammable* or *in situ reconfigurable routing element*, nor does the specification provide an operating example involving in situ reconfigurability. Instead, the specification only provides the vague hint that the "programmer can dynamically change the functionality." See '646 Patent at 1:58-62. Further omissions from the specification of the '646 patent render the specification non-enabling as to an in situ reconfigurable routing element.

For instance, electrically erasable programmable logic chips providing in situ reconfigurability were developed using advances in electrically erasable logic devices. Declaration of Dr. Ray Mercer at para. 15. However, assuming *arguendo* that Dr. Stine is correct that programmable logic devices with in situ reconfigurability were developed in 1996, it is noteworthy that the specification of the '646 Patent does not disclose electrically erasable programmable logic devices for use in portions 14, 16, or 18 of Fig. 1. *Id.* Nor does the specification disclose how one would perform in situ reconfiguration physically in the circuit, such as *inter alia*, by generating the higher voltages needed for programming and erasing the physical device. *Id.* at para. 16. Furthermore, it is also noteworthy that the specification of the '646 Patent does not disclose how a programmer would interact with the device of Fig. 1 in order to dynamically reconfigure the device. *Id.* at para. 15. If Dr. Stine is correct that in situ reprogrammable logic devices were not known until 1996, then one of ordinary skill in the art at the time the '646 Patent was filed would not have had the knowledge to make or use the device of Fig. 1 under Patent Owner's proposed construction. *Id.* The person of ordinary skill in the art would not have been able to gain that knowledge from the specification of the '646 patent, either. *Id.* Accordingly, the '646 patent does not enable the subject matter that Patent Owner seeks to add to the claims.

Furthermore, if the claims include an situ reconfigurable routing element, which is not enabled, then the claims must be invalid for lack of enablement under 35 U.S.C. §112, first paragraph.

3.     Even the prior art teaches that programmable logic circuit should not be limited as Patent Owner proposes. First, when Wright uses the term *programmable logic circuit*, this itself constitutes evidence of what the broadest reasonable interpretation of the term should include. Wright uses the term *programmable logic circuit* numerous times throughout to describe a programmable logic device (PLD) that is not limited to the narrow "in situ reconfigurable routing element" aspect asserted by the Patent Owner. *See*, e.g., Wright at 2:3-7 and 44-46, 10:16-17 and Patent Owner Response at 17. The broadest reasonable interpretation of the claims should reflect use of the same term in Wright.

4.     Second, Patent Owner argues that Wright teaches a Programmable Array Logic (PAL) that has characteristics of other devices that the Patent Owner defines as first and second generation PLDs. *See* Patent Owner Response at 20. Requester does not acquiesce in

Patent Owner's characterization of Wright's device, but notes, *arguendo*, that if Wright describes a PAL with first and second generation characteristics as a programmable logic circuit, then that is further evidence that *programmable logic circuit* is more generic than the treatment advanced by Patent Owner.

    5.    Patent Owner chose not to include an in situ reconfigurable routing element in the claims during prosecution or in the Patent Owner Response. The use of generic language evinces a desire for broader claims, while the failure to amend the claims evinces a desire to argue in a different proceeding that the claims are broader than they were argued in this reexamination proceeding. The Patent Owner should not be allowed to have it both ways.

    Thus, the Patent Owner's proposed reading of the claims is incorrect, and Wright explicitly teaches a programmable logic circuit within the meaning of the claims. Moreover, even if Patent Owner's position regarding the in situ reconfigurable routing element were adopted, the claims still would not be patentable at least for the reasons given below.

    1.    To the extent that Patent Owner believes that the '646 patent is enabled as to an in situ reconfigurable routing element, it is noted that Wright teaches just as much or more. For example, Wright discloses the use of electrically-erasable components. Wright at 10:7-11. Thus, even under Patent Owner's proposed construction, Wright still anticipates the claims of the '646 patent.

    2.    In further support of Wright, it is noted that Wright's multiplexers 33 and 44 (Fig. 1) do perform routing, despite the Patent Owner's assertion otherwise. *See* Patent Owner's Response at 19. Persons of ordinary skill in the art at the time of the '646 patent, and now, consider multiplexers to be routing elements. Declaration of Dr. Ray Mercer at para. 17.

**B.  *Comments Directed To:* "Wright fails to disclose the features of independent claim 18, as amended" (Patent Owner Response at 20-21)**

    In the Patent Owner Response, the Patent Owner amended claim 18 to recite "two or more clock signals" rather than "one or more clock signals." Patent Owner asserts that claim 18 is patentable over Wright because of the amendment. However, Wright teaches embodiments that provide two or more clock signals from the PLL. Requester charts the embodiment of Fig. 3 of

Wright (and other art) against amended claims 18-20 in Exhibit AA.  The amendments made to claims 18-20 fail to provide patentability, and amended claims 18-20 should be rejected as follows:

- Claim 18 is anticipated under 35 U.S.C. § 102(b) by Wright.
- Claim 19 is obvious under 35 U.S.C. § 103(a) over Wright in view of Graham (US 5,204,555)
- Claim 20 is obvious under 35 U.S.C. § 103(a) over Wright and Graham in further view of McBride (US 5,594,376).

### *Comments Directed to*: DEPENDENT CLAIMS (Patent Owner Response at 22-23)

The Patent Owner does not separately addresses the dependent claims, other than by amending dependent claims 19 and 20 (addressed above).  Rather, the Patent Owner relies on arguments for patentability for the independent claims.  Requester addresses the dependent claims in the claims charts attached as Exhibits AA-CC to address the amendments to claims 18-20 and the addition of new claims 21-42.

### *Comments Directed to*: NEWLY ADDED CLAIMS 21-42 (Patent Owner Response at 8-10 and 23-26)

The Patent Owner has added new claims 21-42, which are separately addressed below.  Each limitation of the new claims are also addressed in detail in the claim charts attached as Exhibits BB and CC.

**New claims 21 and 31.**  Claim 21 adds a limitation to claim 1, and claim 31 adds a limitation to claim 12, where the added limitations are similar to the limitation added to claim 18 by amendment (two or more clock signals).  For the same reasons discussed for claim 18, claims 21 and 31 should be rejected as follows:

- Claims 21 and 31 are anticipated under 35 U.S.C. § 102(b) by Wright

**New claims 25, 28, 37, and 39.**  Claims 25 and 37 add to their respective independent claims a limitation that the device comprises a Field Programmable Gate Array (FPGA).  Claims 28 and 39 depend from dependent claims 21 and 31, respectively, and add a similar limitation.  In the

specification of the '646 patent, the only explanation about how the alleged invention may be implemented in an FPGA is the unsupported statement, "[t]he present invention may also be implemented using a Field Programmable Gate Array (FPGA)." '646 Patent at 4:54-55. The '646 patent provides no details about how such implementation may be carried out, nor why such implementation would be patentably different from the implementation shown in Fig. 1 of the '646 patent. Thus, in light of the admission by the Patent Owner that FPGAs were known in the art, it must be assumed that such a feature is an obvious modification. *Id.* at 1:35-39. Thus, new claims 25, 28, 37, and 39 should be rejected as follows:

- Claims 25, 28, 27, and 37 are obvious under 35 U.S.C. § 103(a) over Wright in view of Applicant's Admitted Prior Art (AAPA).

**New claims 26, 29, 38, and 40.** Claims 26 and 38 add to their respective independent claims a limitation that the device comprises a Complex Programmable Logic Device (CPLD). Claims 29 and 40 depend from dependent claims 21 and 31, respectively, and add a similar limitation. In light of the admission by the Patent Owner that CPLDs were known in the art, it is apparent that such a feature is an obvious modification. *Id.* at 1:35-39. Thus, new claims 26, 29, 38, and 40 should be rejected as follows:

- 26, 29, 38, and 40 are obvious under 35 U.S.C. § 103(a) over Wright in view of AAPA.

**New claim 27.** Claim 27 adds to claim 1 a limitation that the device comprises a Programmable Logic Device (PLD). In light of the admission by the Patent Owner that PLDs were known in the art, it is apparent that such a feature is an obvious modification. *Id.* at 1:15-20 and 29-35. Thus, claim 27 should be rejected as follows:

- Claim 27 is obvious under 35 U.S.C. § 103(a) over Wright in view of AAPA.

**New claims 23, 24, 33-35, and 41.** These new claims refer to routing clock signals. Out of these new claims, claim 33 adds the least amount of subject matter, by simply reciting, "routing said one or more clock signals to a logic block in said programmable logic circuit." As shown in the

attached claim charts, claim 33 is anticipated by Wright, which shows the clock signal routed to circuit blocks 24 and 40 via mux 86 in Fig. 1.

With respect to new claims 23 and 34, such claims add a Programmable Interconnect Matrix (PIM) that routes clock signals to the logic blocks. Such new claims are not supported by the specification under 35 U.S.C. § 112, first paragraph and, therefore, lack enablement and written description. *See* MPEP §§ 2163, 2164. For instance, the specification of the '646 patent fails to describe, or even mention, that the PIM 18 of Fig. 1 routes clock signals to the logic blocks 14, 16. Instead, the specification says that clocks are "presented to the PIM 18" but does not provide any further details about what the PIM 18 does to the clocks. '646 Patent at 2:52-57. Instead, the specification states that multi-bus 24, not the PIM, "presents" the clocks to logic sections 14 and 16. Id. In other words, the specification of the '646 patent never actually says that the PIM routes the clock signals. Furthermore, such new claims 23 and 34 also impermissibly add new matter. *See* MPEP §§ 706.03(o), 2671.1(III).

With respect to claims 24, 35, and 41 (and 23 and 34 as well), such claims are obvious combinations including Wright and Intel (D. Smith, Intel's FLEXlogic FPGA Architecture, IEEE, 1993), which discloses a clock signal routing circuit. Thus, claims 23, 24, 33-35, and 41 should be rejected as follows:

- Claims 23 and 34 do not comply with 35 U.S.C. § 112, first paragraph, for lack of enablement and written description.
- Claim 33 is anticipated under 35 U.S.C. § 102(b) by Wright.
- Claims 23, 24, 34, 35, and 41 are obvious under 35 U.S.C. § 103(a) over Wright in view of Intel.

**New claims 22, 30, 32, 36, and 42.** Each of these new claims adds a limitation requiring that the clock signals are generated to satisfy a set up time and a hold time requirement of the programmable logic circuit. However, generating a clock to satisfy a set up time requirement and a hold time requirement is nothing new. In fact, Intel teaches a clock that satisfies a set up and hold time requirement. New claims 22, 30, 32, 36, and 42 are obvious over a combinations including Wright and Intel. Thus, claims 22, 30, 32, 36, and 42 should be rejected as follows:

- Claims 22, 30, 32, 36, and 42 are obvious under 35 U.S.C. § 103(a) over Wright in view of Intel.

## CONCLUSION

Therefore, it is requested that claims 1-42 (all the claims) be finally rejected.

Respectfully submitted,

David L. McCombs
Registration No.

Dated: July 28, 2011
HAYNES AND BOONE, LLP
2323 Victory Avenue, Suite 700
Dallas, Texas 75219
Telephone: 972/739-8635
Facsimile: 214/200-0853
Attorney Docket No.: 42299.9

---

**CERTIFICATE OF TRANSMISSION
UNDER 37 CFR §1.8**

I hereby certify that this correspondence and any corresponding filing fee is being transmitted via the Electronic Filing System (EFS) Web with the United States Patent and Trademark Office on July 28, 2011 .

Lydia Epps-Hilliard

---

## CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the following:

- Comments By Third Party Requester Pursuant To 37 CFR 1.947; and

- Exhibits A-E and AA-CC

were served on:

STERNE, KESSLER, GOLDSTEIN & FOX P.L.L.C.
1100 New York Avenue, N.W.
Washington, DC 2005

the attorney of record for the assignee of USP 6,272,646 and attorney of record for reexamination

proceeding in accordance with MPEP § 2666.06 and 37 CFR §§ 1.248 and 1.903, on July 28, 2011.

David L. McCombs, Registration No.



**Sterne Kessler Goldstein Fox**
ATTORNEYS AT LAW

ROBERT GREENE STERNE
DIRECTOR
(202) 772-8555
RSTERNE@SKGF.COM

June 28, 2011

RECEIVED

JUN 2 8 2011

CENTRAL REEXAMINATION UNIT

Mail Stop *"Inter Partes Reexam"*
Attn: Central Reexamination Unit
Commissioner for Patents
P.O. Box 1450
Alexandria, VA 22313-1450

Re:     Reexamination of U.S. Patent No. 6,272,646
        Control No. 95/001,550; Filed: February 18, 2011
        For:     **Programmable Logic Device Having an Integrated Phase Lock Loop**
        Inventors:     RANGASAYEE *et al.*
        Our Ref:     3059.008REX0

Sir:

        Transmitted herewith for appropriate action are the following documents:

1.      Fee Transmittal Form;
2.      Credit Card Payment Form authorized in the amount of $1,144.00 to cover fee for 22 excess total claims;
3.      Patent Owner's Response to Office Action of April 28, 2011;
4.      Declaration of Dr. James Stine under 37 C.F.R. §1.132 (Exhibit 1);
        a.   Curriculum Vitae of Dr. James E. Stine, Jr. (Exhibit A to Stine Decl.)
        b.   Copy of Cypress Data Book: *Programmable Logic* (Exhibit B to Stine Decl.) (Excerpt, Chapter 2, pp. 1-5 and Chapter 3, pp. 1 and 8-14);
5.      Certification of Service; and
6.      Return postcard.

        The U.S. Patent and Trademark Office is hereby authorized to charge any fee deficiency, or credit any overpayment, to our Deposit Account No. 19-0036.

                              Respectfully submitted,

                              STERNE, KESSLER, GOLDSTEIN & FOX P.L.L.C.

                              Robert Greene Sterne
                              Attorney for Patent Owner
                              Registration No. 28,912

LAG/O-A:mlb
Enclosures
1381111_1.DOC

PTO/SB/17 (10-08)
Approved for use through 06/30/2010. OMB 0651-0032
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995 no persons are required to respond to a collection of information unless it displays a valid OMB control number

# FEE TRANSMITTAL
## For FY 2009

*Effective on 12/08/2004.*
*Fees pursuant to the Consolidated Appropriations Act, 2005 (H.R. 4818).*

[ ] Applicant claims small entity status. See 37 CFR 1.27

| TOTAL AMOUNT OF PAYMENT | ($) | $1,144.00 |
|---|---|---|

| **Complete if Known** | |
|---|---|
| Application Number | Control No. 95/001,550 |
| Filing Date | February 18, 2011 |
| First Named Inventor | RANGASAYEE, Krishna |
| Examiner Name | Sager, Mark Alan |
| Art Unit | 3992 |
| Attorney Docket No. | 3059.008REX0 |

## METHOD OF PAYMENT (check all that apply)

[ ] Check  [X] Credit Card  [ ] Money Order  [ ] None  [ ] Other (please identify): _____

[X] Deposit Account   Deposit Account Number: **19-0036**   Deposit Account Name: **Sterne, Kessler, Goldstein & Fox P.L.L.C.**

For the above-identified deposit account, the Director is hereby authorized to: (check all that apply)

[ ] Charge fee(s) indicated below

[X] Charge any additional fee(s) or underpayments of fee(s) under 37 CFR 1.16 and 1.17

[ ] Charge fee(s) indicated below, **except for the filing fee**

[X] Credit any overpayments

**WARNING:** Information on this form may become public. Credit card information should not be included on this form. Provide credit card information and authorization on PTO-2038.

## FEE CALCULATION

### 1. BASIC FILING, SEARCH, AND EXAMINATION FEES

| Application Type | FILING FEES Fee ($) | FILING FEES Small Entity Fee ($) | SEARCH FEES Fee ($) | SEARCH FEES Small Entity Fee ($) | EXAMINATION FEES Fee ($) | EXAMINATION FEES Small Entity Fee ($) | Fees Paid ($) |
|---|---|---|---|---|---|---|---|
| Utility | 330 | 165 | 540 | 270 | 220 | 110 | _____ |
| Design | 220 | 110 | 100 | 50 | 140 | 70 | _____ |
| Plant | 220 | 110 | 330 | 165 | 170 | 85 | _____ |
| Reissue | 330 | 165 | 540 | 270 | 650 | 325 | _____ |
| Provisional | 220 | 110 | 0 | 0 | 0 | 0 | _____ |

### 2. EXCESS CLAIM FEES

| Fee Description | Fee ($) | Small Entity Fee ($) |
|---|---|---|
| Each claim over 20 (including Reissues) | 52 | 26 |
| Each independent claim over 3 (including Reissues) | 220 | 110 |
| Multiple dependent claims | 390 | 195 |

| Total Claims | Extra Claims | Fee ($) | Fee Paid ($) |
|---|---|---|---|
| **42** - 20 or HP = | **22** x | **52** = | **1,144.00** |

HP = highest number of total claims paid for, if greater than 20.

| Indep. Claims | Extra Claims | Fee ($) | Fee Paid ($) |
|---|---|---|---|
| _____ - 3 or HP = | _____ x | _____ = | _____ |

HP = highest number of independent claims paid for, if greater than 3.

**Multiple Dependent Claims**

| Fee ($) | Fee Paid ($) |
|---|---|
| _____ | _____ |

### 3. APPLICATION SIZE FEE

If the specification and drawings exceed 100 sheets of paper (excluding electronically filed sequence or computer listings under 37 CFR 1.52(e)), the application size fee due is $270 ($135 for small entity) for each additional 50 sheets or fraction thereof. See 35 U.S.C. 41(a)(1)(G) and 37 CFR 1.16(s).

| Total Sheets | Extra Sheets | Number of each additional 50 or fraction thereof | Fee ($) | Fee Paid ($) |
|---|---|---|---|---|
| _____ - 100 = | _____ / 50 = | _____ (round up to a whole number) x | _____ = | _____ |

### 4. OTHER FEE(S)

Non-English Specification,   $130 fee (no small entity discount)

Other (e.g., late filing surcharge): _____

07/01/2011 JMCDOUGA 00000008 95001550
01 FC:1822                                    1144.00 OP

## SUBMITTED BY

| Signature | [signature] | Registration No. (Attorney/Agent) | 50,633 | Telephone | (202) 371-2600 |
|---|---|---|---|---|---|
| Name (Print/Type) | Lori A. Gordon | | | Date | June 28, 2011 |

This collection of information is required by 37 CFR 1.136. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.14. This collection is estimated to take 30 minutes to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA 22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. **SEND TO: Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.**

*If you need assistance in completing the form, call 1-800-PTO-9199 and select option 2.*

RECEIVED

JUN 2 8 2011

CENTRAL REEXAMINATION UNIT

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

| | |
|---|---|
| In re reexam of: U.S. Patent 6,272,646 RANGASAYEE *et al.* | Confirmation No.: 2728 |
| | Art Unit: 3992 |
| Reexam Control No.: 95/001,550 | Examiner: SAGER, Mark Alan |
| Filed: February 18, 2011 | Atty. Dkt. No.: 3059.008REX0 |
| For: **Programmable Logic Device Having an Integrated Phase Lock Loop** | |

## Patent Owner's Response to Office Action of April 28, 2011

Mail Stop *Inter Partes* Reexam
Commissioner for Patents
P.O. Box 1450
Alexandria, VA 22313-1450

Sir:

In reply to the Order Granting *Inter Partes* Reexamination and accompanying Office Action dated April 28, 2011, the patent owner Intellectual Ventures II LLC ("Patent Owner") submits the following Amendments to the Claims and Remarks.   It is believed that no extensions of time or other fees are required.   However, if any fees are necessary to prevent abandonment of this reexamination, then such fees are hereby petitioned and hereby authorized to be charged to our Deposit Account No. 19-0036.

07/01/2011 JMCDOUGA 00000003 95001550
01 FC:1822                          1144.00 OP

### *Amendments to the Claims*

A listing of each claim under reexamination is provided below. The Patent Owner provides this listing of original patent claims 1-20 from the U.S. Patent No. 6,272,646 and a listing of newly presented claims 21-42. This appendix of claims does not count against the 50 page limit pursuant to 37 C.F.R. § 1.943(b).

1.    (original patent claim) A device comprising:

a programmable logic circuit configured to (i) generate one or more control signals and (ii) receive one or more clock signals; and

a phase lock loop circuit configured to generate said one or more clock signals, each capable of oscillating at a different one of a plurality of frequencies, said clock signals generated in response to (i) a reference clocks (ii) said one or more control signals, and (iii) one or more of said clock signals wherein said programmable logic circuit and said phase lock loop circuit are integrated on a single circuit.

2.    (original patent claim)  The circuit according to claim 1, wherein said one or more clock signals are individually programmable to oscillate at a different one of said plurality of frequencies.

3.    (original patent claim)   The circuit according to claim 1, wherein said programmable logic circuit comprises one or more logic blocks.

4.    (original patent claim)  The circuit according to claim 3, wherein said logic block comprises a product term array.

5.    (original patent claim) The circuit according to claim 1, wherein said one or more clock signals each have an impedance that is adjusted to match an external impedance.

6.    (original patent claim) The circuit according to claim 1, wherein said plurality of frequencies can be programmed after fabrication and installation of said device.

7.    (original patent claim) The circuit according to claim 1, wherein said reference clock is selected from two or more reference clock signals in response to a configuration signal.

8.    (original patent claim) The circuit according to claim 7, wherein said two or more reference clock signals are generated internally to said device.

9.    (original patent claim) The circuit according to claim 7, wherein said two or more reference clock signals are generated externally to said device.

10.   (original patent claim) The device according to claim 1, wherein said programmable logic circuit comprises a device selected from a group consisting of programmable logic devices (PLDs), complex programmable logic devices (CPLDs) and field programmable gate arrays (FPGAs).

11.   (original patent claim) The device according to claim 1, wherein said programmable logic circuit is further configured to generate one or more output signals in response to (i) one or more input signals and (ii) said one or more clock signals.

12.   (original patent claim) A method for dynamically changing a frequency of operation of a programmable logic circuit comprising the steps of:

(a) configuring said programmable logic circuit to generate one or more control signals and receive one or more clock signals; and

(b) generating said one or more clock signals with a phase lock loop circuit, each of said one or more clock signals being:

(i) capable of oscillating at a different one of a plurality of frequencies, and

(ii) generated in response to a reference clock, one or more of said clock signals, and said one or more control signals.

13. (original patent claim) The method according to claim 12, further comprising the step of:

(c) individually programming each of said one or more clock signals to one of a plurality of independent frequencies.

14. (original patent claim) The method according to claim 13, further comprising the step of:

(d) adjusting an impedance of said one or more clock signals to match an external impedance.

15. (original patent claim) The method according to claim 13, further comprising the step of:

(c) selecting said reference clock frequency from one or more internal clock signals generated internally to said programmable logic circuit.

16. (original patent claim) The method according to claim 12, further comprising the step of:

(c) selecting said reference clock frequency from one or more external clock signals generated externally to said programmable logic circuit.

17. (original patent claim) The method according to claim 13, further comprising the step of:

(d) selecting said reference clock from one or more second clock signals generated internally or externally to said programmable logic circuit.

18.   (Amended) A device comprising:

means for implementing programmable logic for manipulating information to generate one or more control signals, wherein said means for implementing programmable logic receives [[one]] two or more clock signals; and

means for generating said [[one]] two or more clock signals in response to (i) a reference clock, (ii) said one or more control signals, and (iii) one or more of said clock signals wherein said [[one]] two or more clock signals are each capable of oscillating at a different one of a plurality of frequencies, said means for implementing programmable logic and said means for generating are integrated on a single circuit.

19.   (Amended) The device according to claim 18, wherein said [[one]] two or more clock signals are individually programmable to oscillate at one of said plurality of frequencies.

20.   (Amended) The device according to claim 19, wherein said [[one]] two or more clock signals each have an impedance that is adjusted to match an impedance of an external device.

21.   (new) The device according to claim 1, wherein said one or more clock signals comprises a plurality of clock signals.

22.   (new) The device according to claim 21, wherein said phase lock loop circuit is configured to generate said plurality of clock signals satisfying a set up time requirement and a hold time requirement associated with said programmable logic circuit.

23.   (new) The device according to claim 3, wherein said programmable logic circuit comprises a programmable interconnect matrix (PIM) configured to route said one or more clock signals to a logic block in said one or more logic blocks.

24.  (new)  The  device  according  to  claim  21,  wherein  said  programmable  logic circuit comprises a plurality of logic blocks and wherein said programmable logic circuit is configured to route a first clock signal to a first logic block in said plurality of logic blocks and to route a second clock signal to a second logic block in said plurality of logic blocks.

25.  (new) The device according to claim 1, wherein said device comprises a field programmable gate array (FPGA).

26.  (new) The device according to claim 1, wherein said device comprises a complex programmable logic device (CPLD).

27.  (new)  The  device  according  to  claim  1,  wherein  said  device  comprises  a programmable logic device (PLD).

28.  (new)    The  device  according  to  claim  21,  wherein  said  device  comprises  a field programmable gate array (FPGA).

29.  (new)    The  device  according  to  claim  21,  wherein  said  device  comprises  a complex programmable logic device (CPLD).

30.  (new)  The device according to claim 1, wherein said phase lock loop circuit is configured to generate said one or more clock signals satisfying a set up requirement and a hold time requirement associated with said programmable logic circuit.

31.  (new) The method according to claim 12, wherein step (b) comprises:
        generating a plurality of clock signals with said phase lock loop circuit.

32.  (new) The method according to claim 31, wherein step (b) comprises:
        generating said plurality of clock signals satisfying a set up time requirement and a hold time requirement associated with said programmable logic circuit.

33.   (new) The method according to claim 12, further comprising:

(c) routing said one or more clock signals to a logic block in said programmable logic circuit.

34.   (new) The method according to claim 33, further comprising:

(c) routing said one or more clock signals to said logic block in said programmable logic circuit using a programmable interconnect matrix (PIM) in said programmable logic circuit.

35.   (new) The method according to claim 31, further comprising:

(c) routing a first clock signal in said plurality of clock signals to a first logic block in said programmable logic circuit and a second clock signal in said plurality of clock signals to a second logic block in said programmable logic circuit.

36.   (new) The method according to claim 12, wherein step (b) comprises:

generating said one or more clock signals satisfying a set up time requirement and a hold time requirement associated with said programmable logic circuit.

37.   (new) The method according to claim 12, wherein said device comprises a field programmable gate array (FPGA).

38.   (new) The method according to claim 12, wherein said device comprises a complex programmable logic device (CPLD).

39.   (new) The method according to claim 31, wherein said device comprises a field programmable gate array (FPGA).

40.   (new) The method according to claim 31, wherein said device comprises a complex programmable logic device (CPLD).

41.   (new) The device according to claim 18, wherein said means for implementing programmable logic comprises means for routing a first clock signal of said two or more clock signals to a first logic block of said means for implementing programmable logic and a second clock signal of said two or more clock signals to a second logic block of said means for implementing programmable logic.

42.   (new) The device according to claim 18, wherein said two or more clock signals satisfy a set up time requirement and a hold time requirement associated with said means for implementing programmable logic.

### *Remarks*

Issued patent claims 1-20 of U.S. Patent No. 6,272,646 to Rangasayee *et al.* ("Rangasayee" or "the '646 patent") are currently subject to the present *inter partes* reexamination proceeding. Claims 1, 12, and 18 are independent claims. In accordance with 35 U.S.C. § 314(a), Patent Owner is presenting new claims 21-42. Pursuant to 37 C.F.R. 1.530(e), the status of all claims and an explanation of the support in the disclosure of the '646 patent for newly presented claims 21-42 is provided in **Section I**. Newly presented claims 21-42 do not enlarge the scope of the claims of the '646 patent.

Based on the following remarks, and the Declaration of Dr. James Stine under 37 C.F.R. § 1.132 submitted herewith (Exhibit 1; "Stine Decl."), Patent Owner respectfully requests that the Examiner reconsider and withdraw all outstanding rejections and enter and examine newly presented claims 21-42.

**Section I** provides the status of all claims. **Section I** also presents the added claims and provides an explanation of the support in the disclosure of the '646 patent for newly presented claims 21-42. **Section II** provides a summary of arguments that support the allowance of all claims subject to this reexamination. **Section III** discusses the legal standards relevant to the issues in this reexamination. **Section IV** describes the differences between the applied references and the original patent claims. **Section V** addresses patentability of newly presented claims 21-42 over the applied references.

### I.   STATUS OF CLAIMS

Original issued patent claims 1-20 stand rejected. No amendments have been made to original patent claims 1-17. Claims 18-20 are sought to be amended.

In accordance with 35 U.S.C. § 314(a), Patent Owner seeks to add dependent claims 21-42. Newly presented 21-42 have not been entered by the Examiner. Support for claims 21-42 is as follows:

#### *New Claims 21 and 31*

New claim 21, which depends from independent claim 1, respectively, recites *"wherein said one or more clock signals comprises a plurality of clock signals"*; new claim 31, which depends from independent claim 12, recites *"generating a plurality of clock signals with said phase lock loop circuit."* Exemplary support for these features includes, but is not limited to: '646 patent at 1:55-58; 2:49-53 & FIG. 1.

### *New Claims 22, 32, and 42*

New claim 22, which depends from claim 21 recites "*wherein said phase lock loop circuit is configured to generate said plurality of clock signals satisfying a set up time requirement and a hold time requirement associated with said programmable logic circuit*"; new claim 32, which depends from claim 31, recites "*generating said plurality of clock signals satisfying a set up time requirement and a hold time requirement associated with said programmable logic circuit*"; and new claim 42, which depends from claim 18, recites "*wherein said two or more clock signals satisfy a set up time requirement and a hold time requirement associated with said means for implementing programmable logic.*" Exemplary support for these features includes, but is not limited to: '646 patent at 3:55-65; FIG. 5.

### *New Claims 23, 24, 33-35, and 41*

New claim 23, which depends from claim 3 recites "*wherein said programmable logic circuit comprises a programmable interconnect matrix (PIM) configured to route said one or more clock signals to a logic block in said one or more logic blocks*"; new claim 33, which depends from independent claim 12, recites "*(c) routing said one or more clock signals to a logic block in said programmable logic circuit*"; and new claim 34, which depends from claim 33, recites "*(c) routing said one or more clock signals to said logic block in said programmable logic circuit using a programmable interconnect matrix (PIM) in said programmable logic circuit.*" Exemplary support for these features includes, but is not limited to: '646 patent at 2:52-58; FIG. 1.

New claim 24, which depends from claim 21, recites "*wherein said programmable logic circuit comprises a plurality of logic blocks and wherein said programmable logic circuit is configured to route a first clock signal to a first logic block in said plurality of logic blocks and to route a second clock signal to a second logic block in said plurality of logic blocks*"; new claim 35, which depends from claims 31, recites "*(c) routing a first clock signal in said plurality of clock signals to a first logic block in said programmable logic circuit and a second clock signal in said plurality of clock signals to a second logic block in said programmable logic circuit*"; and new claim 41, which depends from independent claim 18, recites "*wherein said means for implementing programmable logic comprises means for routing a first clock signal of said two or more clock signals to a first logic block of said means for implementing programmable logic and a second clock signal of said two or more clock signals to a second logic block of said means for implementing programmable logic.*"

Exemplary support for these features includes, but is not limited to: '646 patent at 2:52-58 & 3:5-8; FIG. 1.

### *New Claims 25, 28, 37, and 39*

New claims 25 and 28, which depend from independent claim 1 and claim 21, respectively, and claims 37 and 39, which depend from independent claim 12 and claim 31, respectively, recite *"wherein said device comprises a field programmable gate array (FPGA)."* Exemplary support for this feature includes, but is not limited to: '646 patent at 4:54-55.

### *New Claims 26, 29, 38 and 40*

New claims 26 and 29, which depend from independent claim 1 and claim 21, respectively, and claims 38 and 40, which depend from independent claim 12 and claim 31, respectively, recite *"wherein said device comprises a complex programmable logic device (CPLD)."* Exemplary support for this feature includes, but is not limited to '646 patent at 2:43-44 & FIG. 1.

### *New Claim 27*

New claim 27, which depends from independent claim 1, recites *"wherein said device comprises a programmable logic device (PLD)."* Exemplary support for this feature includes, but is not limited to: '646 patent at 1:53-55; 4:50-51.

### *New Claims 30 and 36*

New claim 30, which depends from independent claim 1 recites *"wherein said phase lock loop circuit is configured to generate said one or more clock signals satisfying a set up requirement and a hold time requirement associated with said programmable logic circuit"*; and new claim 36, which depends from independent claim 12, recites *"generating said one or more clock signals satisfying a set up time requirement and a hold time requirement associated with said programmable logic circuit."* Exemplary support for these features includes, but is not limited to: '646 patent at 3:16-25; FIG. 3.

## II.   SUMMARY OF ARGUMENTS

The application which matured into the '646 patent was filed on September 4, 1996. At that time, engineers designing high-speed devices having a wide array of functionality were required to allocate valuable real estate on integrated circuits to frequency adjustment

elements. (Stine Decl. ¶ 23.) The complex, high-speed digital components making up those devices often required particular clock signals at specific frequencies. ('646 patent, 1:13-15.) Prior to the filing date of the '646 patent, the clock circuits for these high-speed devices were generally designed independently of the digital components. (Stine Decl., ¶ 23.) Therefore, engineers were forced to utilize frequency adjustment elements to compensate for the clock signals generated by circuits designed independently of the digital components. (Stine Decl. ¶ 23.) To address problems with the then-state of the art, the inventors designed a device that includes a programmable logic circuit and a phase lock loop integrated on a single circuit. By integrating the high-speed programmable logic circuit on the same circuit as the phase lock loop, a "virtual hardware device" is realized that provides numerous advantages specific to reconfigurable devices. ('646 patent, 1:58-62.)

The Office is required to interpret "the scope of claims … not solely on the basis of the claim language, but upon giving claims their broadest reasonable interpretation 'in light of the specification as it would be interpreted by one of ordinary skill in the art.' (MPEP § 2111; citing *Phillips v. AWH Corp.*, 415 F.3d 1303, 75 USPQ2d 1321 (Fed. Cir. 2005)) (emphasis added); *see also, In re Am. Acad. of Sci. Tech. Ctr.*, 367 F.3d 1359, 1364 (Fed. Cir. 2004). When interpreted in light of the specification of the '646 patent, a person of skill in the art would understand the "*programmable logic circuit*" disclosed in the '646 patent and recited in independent claims 1 and 12 to necessarily include an in situ reconfigurable routing element. (Stine Dec., ¶ 26.) None of the references applied by the Examiner in the Office Action teach or suggest a device having a programmable logic circuit with this in situ reconfigurable routing element.

The Patent Owner has amended claim 18 to recite "*means for implementing programmable logic for manipulating information to generate one or more control signals, wherein said means for implementing programmable logic receives two or more clock signals; and means for generating said two or more clock signals in response to (i) a reference clock, (ii) said one or more control signals, and (iii) one or more of said clock signals wherein said two or more clock signals are each capable of oscillating at a different one of a plurality of frequencies, said means for implementing programmable logic and said means for generating are integrated on a single circuit.*" None of the references applied by the Examiner in the Office Action disclose these features.

## III.  REVIEW OF LEGAL STANDARDS GOVERNING THE REJECTIONS

### A.  *Standard of Review*

The standard of review for determining patentability is "preponderance of the evidence." (MPEP § 706.I.)  The examiner must weigh the evidence presented for and against patentability and if it is more likely than not that the claims are patentable, they must be allowed. (*Id.*)  Patentability is determined through the lens of one having ordinary skill in the art at the time the application was filed. *Phillips v. AWH Corp.*, 415 F.3d 1303, 1316 (Fed. Cir. 2005) (en banc).  Further, the scope of the claims in patent applications is to be determined "not solely on the basis of the claim language, but upon giving claims their broadest reasonable construction 'in light of the specification as it would be interpreted by one of ordinary skill in the art.'" (*Id.*) (quoting *In re Am. Acad. of Sci. Tech. Ctr.*, 367 F.3d 1359, 1364 (Fed. Cir. 2004)).

### B.  *Claim Construction*

Despite the fact that patent owners in reexamination do not have the same freedom to amend claims as applicants do during regular prosecution, the Office nonetheless uses the "broadest reasonable interpretation" standard during reexamination. (MPEP § 2258(I)(G); *see also In re Trans Texas Holdings, Corp.*, 498 F.3d 1290, 1292 (Fed. Cir. 2007).  But use of the broadest reasonable construction standard is not an unfettered license to ignore the specification and the perspective of the skilled artisan.  Even under that rubric, the Office must interpret "the scope of claims ... not solely on the basis of the claim language, but upon giving claims their broadest reasonable interpretation 'in light of the specification as it would be interpreted by one of ordinary skill in the art.' (MPEP § 2111; citing *Phillips v. AWH Corp.*, 415 F.3d 1303, 75 USPQ2d 1321 (Fed. Cir. 2005)) (emphasis added); *see also, In re Am. Acad. of Sci. Tech. Ctr.*, 367 F.3d 1359, 1364 (Fed. Cir. 2004).

Indeed, the Federal Circuit has stated that the "PTO applies to verbiage of the proposed claims the broadest reasonable meaning of the words in their ordinary usage as they would be understood by one of ordinary skill in the art, taking into account whatever enlightenment by way of definitions or otherwise that may be afforded by the written description contained in applicant's specification." *In re Morris*, 127 F.3d 1048, 1054-55 (Fed. Cir. 1997).  For instance, in *In re Buszard*, the Federal Circuit found the PTO's alleged "broadest reasonable interpretation" to be <u>unreasonable</u> where the claims and the specification specifically supported the applicant's construction and were contrary to the Office's construction. *In re Buszard*, 504 F.3d 1364 (Fed. Cir. 2007).  It is thus well settled

that under the "broadest reasonable interpretation" standard, the Office is still required to interpret the claims in a reasonable manner and in light of the specification.

The premise for the broadest reasonable interpretation standard is that claims can be readily amended during prosecution of an application. This claim construction standard has been extended to prosecution during reexaminations because patent owners are ostensibly free to amend claims.[1]  However, the freedom of patent owners to amend claims is not practical where the claims under reexamination are involved in simultaneous district court and/or ITC litigation. The reasons are many. First, the doctrine of intervening rights may cut off past damages where claims are substantively amended. 35 U.S.C. §§ 307(b) and 316(b). Second, the parties may have expended considerable resources in *Markman* hearings— resources that could be effectively wasted if the claims are substantively amended. Third, because different claim construction standards are applied by the two bodies charged with determining patent validity, the patent owner is often faced with a Hobson's choice of taking inconsistent claim positions during one or the other proceedings.[2]  Put simply, patent owners are often *not* free to amend claims in the same way as patent applicants during original prosecution.

For all of these reasons, the CRU should interpret "broadest reasonable interpretation" in view of these very real issues faced by Patent Owner in this case and rigidly adhere to the guidelines set forth by the Federal Circuit that the claims must be interpreted in light of the specification as understood by a person of ordinary skill in the art and not in a vacuum.

### C.   *Anticipation*

"Anticipation requires the presence in a single prior art reference disclosure of each and every element of the claimed invention, as arranged in the claim." *Lindemann Maschinenfabrik, GmbH v. Am. Hoist & Derrick Co.*, 730 F.2d 1452, 1458 (Fed. Cir. 1984). The requirement of strict identity between the claim and the prior art reference is not met if a

---

[1] MPEP § 706.I. ("The standard to be applied in all cases is the 'preponderance of the evidence' test. In other words, an examiner should reject a claim if, in view of the prior art and evidence of record, it is more likely than not that the claim is unpatentable.").

[2] However, when a patent owner loses their ability to amend the claims (e.g., when a patent term expires during the reexamination proceeding), the standard for claim construction moves from the broadest reasonable interpretation standard to a standard "pursuant to the principle set forth by the court in *Phillips v. AWH Corp.,* 415 F.3d 1303, 1316, 75 USPQ2d 1321, 1329 (Fed. Cir. 2005)(words of a claim 'are generally given their ordinary and customary meaning' as understood by a person of ordinary skill in the art in question at the time of the invention)." MPEP §2258.I.G.

single element or limitation required by the claim is missing from the prior art source. *See Structural Rubber Prods. Co. v. Park Rubber Co.*, 749 F.2d 707, 716 (Fed. Cir. 1984). The reference must also be enabling. *Akzo, N.V. v. U.S. Int'l Trade Comm'n*, 808 F.2d 1471, 1479 (Fed. Cir. 1986.) The disclosure may be inherent, but only if the element necessarily results from the prior art reference. *In re Oelrich*, 666 F.2d 578, 581 (C.C.P.A. 1981).

Therefore, a prima facie case of anticipation is established where the examiner provides objective evidence that a single enabling reference discloses or teaches each of the claimed elements, as arranged in the claim, expressly or inherently, as interpreted by one of ordinary skill in the art. *See* Donner, Ira H., PATENT PROSECUTION: LAW, PRACTICE, AND PROCEDURE, Ch. 7.V.A., pp. 1382-85 (BNA 6th Ed. 2009). If any one of these elements is missing, the prima facie case standard is not satisfied, and the burden of production does not shift to the applicant. *In re Oetiker*, 977 F.2d 1443 (Fed. Cir. 1992).

Critically, evidence must be adduced to bridge any facially apparent gaps between the construed claims and the alleged teachings of an applied reference. *In re Kotzab*, 217 F.3d at 1370-71; *In re McNeil-PPC*, 574 F.3d 1393, 1399-1400 (Fed. Cir. 2008). It is well settled that "what a reference teaches is a question of fact." *See Rapoport v. Dement*, 254 F.3d 1053, 1060 (Fed. Cir. 2001). And conclusory assertions of what a reference teaches are insufficient to meet the rigors of anticipation. *Motorola, Inc. v. Interdigital Tech. Corp.*, 121 F.3d 1461, 1473 (Fed. Cir. 1997).

For example, in *Kotzab*, for instance, the parties disputed whether a reference that recited "one system" had "taught" the claimed "one sensor." *Id.* But the reference "never uses the term 'system' as a substitute for the simple temperature measuring device it calls 'sensor.'" *Id.* The Court therefore criticized the Board because it "made no reference to any evidence in the record that would equate 'one system' with 'one sensor.'" *Id.* at 1370-71. Therefore, the Court concluded that that "the Board's decision, adopting the Examiner's premise, lacks the necessary substantial evidence to support a rejection of Kotzab's claims." *In re Kotzab*, 217 F.3d at 1370. Because of a general failure by the Board to support its allegations as to what the references taught, the Court concluded that no *prima facie* case of obviousness had been established. *Id.* at 1472. A similar situation was presented in *In re McNeil*. There, the Court also found that the Board's final determination lacked substantial evidentiary support in support of anticipation. *In re McNeil*, 574 F.3d at 1401.

### D.   *Obviousness*

"A patent may not be obtained . . . if the differences between the subject matter sought to be patented and the subject matter as a whole would have been obvious at the time the invention was made to a person of ordinary skill in the art to which the subject matter pertain." 35 U.S.C. §103(a).  In *KSR Int'l v. Teleflex* 550 U.S. 398 (2006), the Supreme Court reaffirmed its decision in *Graham v. John Deere* that held that "the scope and content of the prior art [must] be determined; differences between the prior art and the claims at issue [must] be ascertained; and the level of ordinary skill in the pertinent art [must be] resolved" in order to support a finding of obviousness. *Graham v. John Deere Co.*, 383 U.S. 1, 17 (1966). *Graham* also set forth "secondary considerations" relevant to nonobviousness such as "commercial success, long felt but unsolved needs, [and] failure of others." *Id.* at 17-18.

To guard against impermissible hindsight, the Office must fully articulate its obviousness rejections. *See In re Kahn*, 441 F.3d 977, 986 (Fed. Cir. 2006).  For instance, the Examiner may not use the challenged claims as a roadmap on how or why to combine references.  Instead, the Examiner must rely solely on the prior art teachings and knowledge of a person of ordinary skill at the time the invention was made to determine whether an invention is obvious.  *See id.*; *see also* MPEP 2145.X.A.  For this reason, obviousness analysis is not an armchair exercise.  If a person of skill in the art would not have identified the proposed combination, or if the proposed modification would have been inoperable, a conclusion of obviousness is improper.  Further, "[i]f [a] proposed modification would render the prior art invention being modified unsatisfactory for its intended purpose, then there is no suggestion or motivation to make the proposed modification." MPEP 2143.01.V.

Using these legal standards, each of the substantive rejections in the Office Action is addressed below in the order they were presented in the Office Action.

## IV.   RESPONSE TO SUBSTANTIVE REJECTIONS

### A.   Claims 1-4, 6, 10-13, and 16-19 are Patentable over Wright.

Independent claims 1, 12, and 18 and dependent claims 2-4, 6, 10, 11, 13, 16, 17, and 19 stand rejected under 35 U.S.C. § 102(b) as allegedly being anticipated by U.S. Patent No. 5,349,544 to Wright et al. ("Wright").  As set forth below, Wright fails to disclose each and every element recited in independent claims 1 and 12, and amended independent claim 18.

### *1. History of Programmable Logic Devices.*

Programmable logic devices have evolved significantly over the past three decades. First appearing in the late 1970s, the early generation of programmable logic devices were one time programmable (OTP) hardware devices that could be programmed prior to installation to implement simple two-level logic functions. (Stine Decl., ¶ 19.) Generally using fuse-programmable logic, once the fuses were blown to configure these first generation devices, the devices could not be reconfigured. (Stine Decl., ¶ 19.) For example, U.S. Patent No. 4,124,899 to Birkner et al. ("Birkner"), filed on May 23, 1977, describes these early fuse-programmable logic devices. (Birkner, 4:31-42.) The fuses described in Birkner are blown and cannot be reconfigured. (*See* Birkner, 4:31-42; Stine Decl., ¶ 19; *see also* U.S. Patent No. 4,064,493 to Davis, filed June 3, 1976 (describing standard methods of permanently blowing fuses).) The fuse-programmable AND and OR gates described in Wright are examples of these first generation OTP devices. (Stine Decl., ¶ 19.)

In 1985, a second generation of programmable logic devices was introduced. (Stine Decl., ¶ 20.) These devices implemented similar two-level programmable logic to the first generation of programmable logic devices, but added limited reconfigurabilty via electrically erasable memory cells. (Stine Decl., ¶ 20.) However, these devices could not be reconfigured "in situ." (Stine Decl., ¶ 20.) Instead, the second generation devices had to be physically removed from the system to be reconfigured. (Stine Decl., ¶ 20.) For example, U.S. Patent No. 4,761,768 to Turner et al. ("Turner"), filed March 4, 1985, describes programmable logic devices having a serial register latch, which had to be removed from the system and placed into a programmer to be reconfigured. (Turner, 3:38-48; Stine Decl., ¶ 20.) The electrically erasable programmable array of AND and OR gates described in Wright are examples of these second generation devices having limited reconfigurability. (Stine Decl., ¶ 20.)

In response to the limitations of two-level programmable logic, in 1990, a third generation of programmable logic devices was introduced. (Stine Decl., ¶ 21.) These devices allowed engineers to implement virtually any logic function and to incorporate a memory alongside the programmable logic that allowed for the device to be reconfigured. (Stine Decl., ¶ 21.) However, the reconfigurability introduced in the third generation devices was still limited. (Stine Decl., ¶ 21.) Although the memory simplified the reconfiguration process, third generation devices still had to be either removed from the system and placed in

a programmer or implemented in the system alongside a circuit element that enabled reconfigurability. (Stine Decl., ¶ 21.)

Then, in 1996, a fourth generation of programmable logic devices was introduced. Overcoming the limited reconfigurability of its predecessors, these fourth generation devices allowed for in situ reconfigurability. (Stine Decl., ¶ 22.) Importantly, these devices allowed engineers to reconfigure the logic without removing the device from the system. (Stine Decl., ¶ 22.) For example, U.S. Patent No. 5,757,207 to Lytle et al. ("Lytle"), filed on May 6, 1996, describes a programmable integrated circuit that is configured using in-system programming. (Lytle, 10:45-50.)

### 2. *Even with the advancement from simple two-level, OTP devices to in situ reconfigurable devices, the inventors of the '646 patent recognized that there remained room for improvement.*

To support the wide array of functionality that programmable logic devices provide, the individual logic components making up the programmable logic device typically require respective clock signals having specific frequencies. ('646 patent, 1:13-15.) But, before the filing date of the '646 patent, devices used to generate clock signals were manufactured independently of the logic components of the programmable logic device. (Stine Decl., ¶ 23.) Because of this fact, design engineers were forced to include frequency adjustment elements such as delay loops or counters – which take up precious real estate in the computing device – to obtain clock signals of a specific frequency. (Stine Decl. ¶ 23.) Faced with real estate requirements of the frequency adjustment elements, design engineers were left to either increase the total size of the device, driving the cost of the device higher, or remove portions of the logic components, reducing the functionality of the device. (Stine Decl. ¶ 23.) The constantly changing industry standards only added to the challenges that design engineers faced. Because the frequency adjustment elements were chosen with specific frequencies in mind, once an industry standard was changed to require another frequency, design engineers were forced to completely redesign their logical components. ('646 patent, 1:40-41.)

Recognizing these challenges, the inventors of the '646 patent developed a programmable logic device having a phase lock loop integrated alongside a fourth generation programmable logic circuit in a single chip. In this device, the phase lock loop is configured to provide one or more clock signals at a different one of a plurality of different frequencies in response to, *inter alia*, control signals received from the programmable logic circuit.

### 3.  The Programmable Logic Circuit of Independent Claims 1 and 12.

The specification of the '646 patent provides the scope of the proper interpretation for the terms "*programmable logic circuit*" recited in independent claims 1 and 12. (*See* MPEP § 2111 and Section III(B) above.)  In the context of the '646 patent specification, a person of ordinary skill in the art would interpret the "*programmable logic circuit*" recited in independent claims 1 and 12 as necessarily being a fourth generation device having an in situ reconfigurable routing element.  (Stine Dec., ¶ 26.)  In the '646 patent specification, the inventors made clear that "[t]he *present invention* integrates a phase lock loop (PLL) with a programmable logic device (PLD) to realize a *flexible PLD* with a variety of clocking options." ('646 patent, 1:53-55.) (emphasis added)  The '646 patent goes on to state in this discussion of the present invention that "[t]he programmer can *dynamically* change the functionality of the programmable logic device" resulting in a "*virtual hardware device*" being realized that offers "tremendous advantage [sic] to users of *reconfigurable computing*." ('646 patent, 1:58-62.) (emphasis added)  As would be apparent to one of ordinary skill in the art, the "virtual hardware device," discussed in the '646 patent, is a complete hardware system designed for in situ reconfigurability and high speed digital operation. (Stine Dec., ¶ 27.)

As would be recognized by one of ordinary skill in the art, the UltraLogic High-Density Flash CPLD described in the "Programmable Logic" Chapter of the Cypress Data book[3] is one example of a "*programmable logic circuit*" of the '646 patent. (*See* Cypress Semiconductor Corp., *Programmable Logic Data Book* 2-1-2-5 & 3-8-3-15 (Nov. 1995); Stine Decl., ¶ 28.)  With respect to Figure 1, shown in page 3-9, the Cypress Book states that "[e]ach member of the family is designed with Cypress's state-of-the-art 0.65-micron Flash technology." (Cypress Book, p. 3-8.)  With this Flash technology, "users can program the devices in-circuit, which simplifies both the development and manufacturing processes." (Cypress Book, p. 3-1.)

Accordingly, in light of the specification, a person of ordinary skill in the art would interpret the term "*programmable logic circuit*" recited in independent claims 1 and 12 as encompassing an in situ reconfigurable routing element. (Stine Dec., ¶ 26.)

---

[3] A copy of the Cypress Data Book was submitted in an Information Disclosure Statement during the prosecution of U.S. Patent Application No. 08/707,694, which matured into the '646 patent.  A copy of the Chapter is provided as Exhibit B to the Stine Decl.

### 4. Wright Fails to Disclose a "Programmable Logic Circuit" As Recited in Independent Claims 1 and 12.

Both the Requester and the Examiner applied an overly broad interpretation of the term "*programmable logic circuit*" when assessing the patentability of claims 1-17 over Wright. When viewed under the proper construction, Wright fails to disclose at least the "*programmable logic circuit*" recited in independent claims 1 and 12.

As discussed above, the "*programmable logic circuit*" recited in the claims must be interpreted as encompassing an in situ reconfigurable routing element. Although both Wright and the inventors opted to use the same term, "*programmable logic circuit*," that is the extent of the similarities between the reconfigurability of the circuits of Wright and the '646 patent. The circuit of Wright does not include any mechanism to reconfigure the routing element in situ. Thus, a person of skill in the art would immediately appreciate that the programmable logic circuit of Wright is not equivalent to the "*programmable logic circuit*" recited in the claims 1-17 of the '646 patent. (Stine Decl., ¶¶ 29-33.)

FIG. 1 of Wright, on which the Requestor and Office Action relied upon in the rejection, is a block diagram of an integrated circuit chip that includes a programmable logic circuit 10 and a phase lock loop (PLL) 20. (Wright, 3:12-16.) Despite the Requester's allegations to the contrary, the rudimentary programmable circuit 10 of Wright is not the equivalent of the "*programmable logic circuit*" recited in the claims of the '646 patent. In particular, Wright's programmable circuit 10 does not include an in situ reconfigurable routing element.

Instead, the programmable logic circuit 10 of Wright consists of a programmable AND array 22, eight output blocks 24, eight input blocks 40, four OR gates 50, OR gate 52, and OR gate 54. (Wright, 3:16-24, 3:42-43, & 3:57-4:3.) The output blocks 24 of Wright include an OR gate 28, a D flip-flop 30, an output buffer 32, and a feedback multiplexer 34. (Wright, 3:22-29 & 3:32-34.) The input blocks 40 include an input synchronizing latch 42, implemented as a D flip-flop, and an input multiplexer 44. (Wright, 3:43-45.) The D flip-flop 30, input synchronizing latch 42, and output buffer 32 are all static logic elements incapable of providing in situ reconfigurable routing. (Stine Decl., ¶ 30.) Furthermore, as would be apparent to one of ordinary skill in the art, multiplexers 34 and 44 do not provide routing. The multiplexers determine *whether* a signal is provided at a certain point not *where* the signal is routed. (Stine Decl., ¶ 30.)

Furthermore, the AND array 22 and OR gates 28, 50, 52, and 54 of Wright collectively form a programmable array logic (PAL) device, which one of ordinary skill in the art would understand not to be in situ reconfigurable. (Stine Decl., ¶ 31.) Wright notes that a typical PAL device includes "a fuse-programmable or electrically erasable programmable array of AND gates, and a fixed array of OR gates. In some programmable logic circuits, the OR array is itself programmable." (Wright, 1:16-20.) Wright was filed in 1988, over 7 years before the fourth generation reconfigurable devices disclosed in the '646 patent were introduced. Therefore, a person having ordinary skill in the art would recognize that the PAL device of Wright does not have the in situ reconfigurability of fourth generation devices. (Stine Decl., ¶ 31.) Specifically, as described above, fuse-programmable logic devices are first generation programmable logic devices that can be programmed only once, external to the system, and therefore cannot be reconfigured at all. (Stine Decl., ¶¶ 19 and 31; Section (IV)(A)(1) above.) Indeed, one of ordinary skill in the art would interpret Wright's fuse-programmable logic devices to be similar to the OTP fuse-programmable logic devices described in Birkner, which are not reconfigurable. (Stine Decl., ¶ 31.) And although electrically erasable devices can be reconfigurable, as described above, these second generation programmable devices can only be reconfigured by removing the device from the system and inserting them into a programmer. (Stine Decl., ¶¶ 20 and 32.; Section (IV)(A)(1), above.) As with the fuse-programmable logic devices, one of ordinary skill in the art would also interpret Wright's electrically erasable devices to be similar to the electrically erasable devices described in Turner, which must be placed in a programmer to be reconfigured. (Stine Decl., ¶ 32.)

Therefore, Wright fails to disclose at least the *"programmable logic circuit"* element recited in independent claims 1 and 12 and their respective dependent claims. For at least these reasons, independent claims 1 and 12 are patentable over Wright. Claims 2-4, 6, 10, and 11 depend from independent claim 1; and claims 13, 16, and 17, depend from independent claim 12. For at least this reason and further in view of their own patentable features, dependent claims 2-4, 6, 10, 11, 13, 16 and 17 are patentable over Wright. Accordingly, the Patent Owner respectfully requests that the rejection of claims 1-4, 6, 10-13, 16, and 17 under 35 U.S.C. § 102(b) over Wright be reconsidered and withdrawn.

### 5. *Wright Fails to Disclose the Features of Independent Claim 18, As Amended.*

Wright fails to disclose each and every element of amended claim 18. For example, amended independent claim 18 recites "*means for generating said two or more clock signals*

*in response to (i) a reference clock, (ii) said one or more control signals, and (iii) one or more of said clock signals wherein said two or more clock signals are each capable of oscillating at a different one of a plurality of frequencies, said means for implementing programmable logic and said means for generating are integrated on a single circuit."*

Wright fails to disclose at least the elements *"wherein said means for implementing programmable logic receives two or more clocks signals"* and *"means for generating said two or more clock signals,"* as recited in amended independent claim 18.  In contrast, FIG. 1 of Wright (reproduced below) discloses a phase lock loop 20 that outputs a single output signal $f_o$.  (*See also* Wright 4:18-28.)



Thus, the phase lock loop 20 of Wright generates a single clock signal and the programmable logic circuit 10 receives a single clock frequency.  For at least this reason, amended independent claim 18 is patentable over Wright.  (Stine Decl., ¶ 31.)  Claim 19, which depends from amended independent claim 18, is patentable over Wright at least in view of its dependency to amended independent claim 18, and further in view of its own respective features.  Accordingly, the Patent Owner respectfully requests that the rejection of amended independent claim 18 and its dependent claim 19 under 35 U.S.C. § 102(b) over Wright be reconsidered and withdrawn.

**B.  Claims 5, 14, and 20 are Patentable Over the Combination of Wright and McBride**

Claims 5, 14, and 20 stand rejected under 35 U.S.C. § 103(a) as allegedly being unpatentable over Wright in view of U.S. Patent No. 5,594,376 to McBride et al. ("McBride"). The Patent Owner respectfully traverses the rejection.

Claims 5 and 14 depend from independent claims 1 and 12, respectively. Thus, claims 5 and 14 are patentable over Wright at least in view of their dependency to their respective independent claim, and further in view of their own respective features. Furthermore, claim 20 depends from amended independent claim 18. Thus, claim 20 is patentable over Wright at least in view of its dependency to amended independent claim 18, and further in view of its own features. Moreover, McBride fails to provide the teachings missing from Wright as to independent claims 1 and 12 and amended independent claim 18. Thus, claims 5, 14, and 20 are patentable over Wright and McBride. Accordingly, the Patent Owner respectfully requests that the rejection of claims 5, 14, and 20 under 35 U.S.C. § 103(a) be reconsidered and withdrawn.

**C.     Claims 7-9 are Patentable Over the Combination of Wright and Wincn.**

Claims 7-9 stand rejected under 35 U.S.C. § 103(a) as allegedly being unpatentable over Wright in view of U.S. Patent No. 5,276,716 to Wincn ("Wincn"). The Patent Owner respectfully traverses the rejection.

Claims 7-9 depend from independent claim 1. Thus, claims 7-9 are patentable over Wright at least in view of their dependency to independent claim 1, and further in view of their own respective features. Moreover, Wincn fails to provide the teachings missing from Wright as to independent claim 1. Thus, claims 7-9 are patentable over Wright and Wincn. Accordingly, the Patent Owner respectfully requests that the rejection of claims 7-9 under 35 U.S.C. § 103(a) be reconsidered and withdrawn.

**D.     Claims 7-9 and 15 are Patentable Over the Combination of Wright and Parker.**

Claims 7-9 and 15 stand rejected under 35 U.S.C. § 103(a) as allegedly being unpatentable over Wright in view of U.S. Patent No. 5,260,979 to Parker et al. ("Parker"). The Patent Owner respectfully traverses the rejection.

Claims 7-9 depend from independent claim 1 and claim 15 depends from independent claim 12. Thus, claims 7-9 and 15 are patentable over Wright at least in view of their dependency to their respective independent claim, and further in view of their own respective features. Moreover, Parker fails to provide the teachings missing from Wright as to independent claims 1 and 12. Thus, claims 7-9 and 15 are patentable over Wright and Parker. Accordingly, the Patent Owner respectfully requests that the rejection of claims 7-9 under 35 U.S.C. § 103(a) be reconsidered and withdrawn.

### E.   The Basis for Allowance.

In the order granting/denying Request for *inter partes* reexamination, the Examiner states that "[s]ince there are no stated reasons for allowance, as best understood, the basis for allowing the claims regards the added language that was argued by Patent Owner in the After Final amendment." (Order, p. 4.) Patent Owner respectfully disagrees with this characterization.

In the After Final response, Patent Owner argued that U.S. Patent No. 5,710,524 "fail[ed] to disclose a programmable logic circuit configured to receive one or more clock signals..." (Amendment After Final dated February 13, 2001, pp. 8-9.) Therefore, as discussed by Patent Owner, the basis for allowance over the cited references was more than merely the language added by amendment.

## V.   NEWLY PRESENTED CLAIMS 21-42 ARE PATENTABLE OVER WRIGHT ALONE OR IN COMBINATION WITH MCBRIDE, WINCN OR PARKER

### New Claims 21 and 31

New claim 21, which depends from independent claim 1, respectively, recites "*wherein said one or more clock signals comprises a plurality of clock signals*"; new claim 31, which depends from independent claim 12, recites "*generating a plurality of clock signals with said phase lock loop circuit.*" Claims 21 and 31 are patentable over the applied references at least in view of their dependency to their respective independent claim and furthermore in view of their own respective features. For example, Wright does not teach or suggest the above-mentioned these features of claims 21 and 31. As shown in FIG. 1 of Wright (reproduced above), phase lock loop 20 outputs a single output signal $f_o$. (*See also* Wright 4:18-28.) Moreover, McBride, Wincn, and Parker, either alone or in combination, do not cure the deficiencies of Wright regarding the above-noted features of claims 21 and 31.

Accordingly, the Patent Owner respectfully requests that claims 21 and 31 be passed to allowance.

### New Claims 22, 32, and 42

New claim 22, which depends from claim 21 recites "*wherein said phase lock loop circuit is configured to generate said plurality of clock signals satisfying a set up time requirement and a hold time requirement associated with said programmable logic circuit*"; new claim 32, which depends from claim 31, recites "*generating said plurality of clock signals satisfying a set up time requirement and a hold time requirement associated with said programmable logic circuit*"; and new claim 42, which depends from claim 18, recites "*wherein said two or more clock signals satisfy a set up time requirement and a hold time requirement associated with said means for implementing programmable logic.*" Claims 22, 32, and 42 are patentable over the applied references at least in view of their dependency to their respective independent claim and furthermore in view of their own respective features. For example, the applied references fail to teach or suggest the above-cited features generally relating to satisfying a set up time and a hold time requirement associated with a programmable logic circuit. Accordingly, the Patent Owner respectfully requests that claims 22, 32, and 42 be passed to allowance.

### New Claims 23, 24, 33-35, and 41

New claim 23, which depends from claim 3 recites "*wherein said programmable logic circuit comprises a programmable interconnect matrix (PIM) configured to route said one or more clock signals to a logic block in said one or more logic blocks*"; new claim 33, which depends from independent claim 12, recites "*(c) routing said one or more clock signals to a logic block in said programmable logic circuit*"; and new claim 34, which depends from claim 33, recites "*(c) routing said one or more clock signals to said logic block in said programmable logic circuit using a programmable interconnect matrix (PIM) in said programmable logic circuit.*"

New claim 24, which depends from claim 21, recites "*wherein said programmable logic circuit comprises a plurality of logic blocks and wherein said programmable logic circuit is configured to route a first clock signal to a first logic block in said plurality of logic blocks and to route a second clock signal to a second logic block in said plurality of logic blocks*"; new claim 35, which depends from claims 31, recites "*(c) routing a first clock signal in said plurality of clock signals to a first logic block in said programmable logic circuit and*

*a second clock signal in said plurality of clock signals to a second logic block in said programmable logic circuit*"; and new claim 41, which depends from independent claim 18, recites "*wherein said means for implementing programmable logic comprises means for routing a first clock signal of said two or more clock signals to a first logic block of said means for implementing programmable logic and a second clock signal of said two or more clock signals to a second logic block of said means for implementing programmable logic.*"

New claims 23, 24, 33-35, and 41 are patentable over the applied references at least in view of their dependency to their respective independent claim, and further in view of their own respective features. Moreover, McBride, Wincn, and Parker fail to cure the deficiencies of Wright regarding claims 23, 24, 33-35, and 41. Accordingly, the Patent Owner respectfully requests that claims 23, 24, 33-35, and 41 be passed to allowance.

### *New Claims 25, 28, 37, and 39*

New claims 25 and 28, which depend from independent claim 1, and claims 37 and 39, which depend from independent claim 12, recite "*wherein said device comprises a field programmable gate array (FPGA)*"and are patentable over the applied references at least in view of their dependency to their respective independent claim, and further in view of their own respective features. Accordingly, the Patent Owner respectfully requests that claims 25, 28, 37, and 39 be passed to allowance.

### *New Claims 26, 29, 38 and 40*

New claims 26 and 29, which depend from independent claim 1, and claims 38 and 40, which depend from independent 12, recite "*wherein said device comprises a complex programmable logic device (CPLD),*" are patentable over the applied references at least in view of their dependency to their respective independent claim, and further in view of their own respective features. Accordingly, the Patent Owner respectfully requests that claims 26, 29, 38 and 40 be passed to allowance.

### *New Claim 27*

New claim 27, which depends from independent claim 1, recites "*wherein said device comprises a programmable logic device (PLD),*" is patentable over the applied references at least in view of its dependency to their respective independent claim, and further in view of their own respective features. Accordingly, the Patent Owner respectfully requests that claim 27 be passed to allowance.

### *New Claims 22, 30, 32, 36, and 42*

New claim 30, which depends from independent claim 1 recites "*wherein said phase lock loop circuit is configured to generate said one or more clock signals satisfying a set up requirement and a hold time requirement associated with said programmable logic circuit*"; and new claim 36, which depends from independent claim 12, recites "*generating said one or more clock signals satisfying a set up time requirement and a hold time requirement associated with said programmable logic circuit.*" New claims 30 and 36 are patentable over the applied references at least in view of their dependency to their respective independent claim, and further in view of their own respective features. Accordingly, the Patent Owner respectfully requests that claims 30 and 36 be passed to allowance.

## VI.    CONCLUSION

All of the stated grounds of rejection have been properly traversed, accommodated, or rendered moot.    The Patent Owner therefore respectfully requests that the Examiner reconsider all presently outstanding rejections and that they be withdrawn.  The Patent Owner believes that a full and complete reply has been made to the outstanding Office Action and that the claims under reexamination are allowable over the rejections presented in the Office Action.

Prompt and favorable consideration of this Reply is respectfully requested.

Respectfully submitted,

STERNE, KESSLER, GOLDSTEIN & FOX P.L.L.C.

Robert Greene Sterne
Attorney for Patent Owner
Registration No. 28,912

Lori A. Gordon
Attorney for Patent Owner
Registration No. 50,633

Omar Amin
Agent for Patent Owner
Registration No. 60,885

Date:      June 28, 2011

1100 New York Avenue, N.W.
Washington, D.C. 20005-3934
(202) 371-2600
1365073_2.DOC

**Patent Under Reexamination:** 6,272,646
**Reexamination Control No.:** 95/001,550
**Examiner:** Sager, Mark Alan
**Confirmation No.:** 2728
**Art Unit:** 3992
**Atty Docket No.:** 3059.008REX0

RECEIVED

JUN 2 8 2011

CENTRAL REEXAMINATION UNIT

**Mail Stop:** *Inter Partes* **Reexam**
**Attn:  Central Reexamination Unit**
Commissioner for Patents
PO Box 1450
Alexandria, VA  22313-1450

Dear Sir:

# CERTIFICATION OF SERVICE

In compliance with 37 C.F.R. § 1.248, the undersigned, on behalf of the Patent Owner, hereby certifies that a copy of the following documents have been served on the Third Party Requester by first class mail on June 28, 2011:

1.  Fee Transmittal Form;
2.  Patent Owner's Response to Office Action of April 28, 2011;
3.  Declaration of Dr. James Stine  under 37 C.F.R. §1.132 (Exhibit 1);
    a.  Curriculum Vitae of Dr. James E. Stine, Jr. (Exhibit A to Stine Decl.)
    b.  Copy of Cypress Data Book: *Programmable Logic* (Exhibit B to Stine Decl.) (Excerpt, Chapter 2, pp. 1-5 and Chapter 3, pp. 1 and 8-14);
4.  Certification of Service; and
5.  Return postcard.

The name and address of the attorney representing the Patent Owner to whom these documents have been sent is as follows:

David L. Mccombs
**Haynes and Boone, LLP**
IP Secion
2323 Victory Avenue, Suite 700
Dallas, TX  75219

Respectfully submitted,
Sterne, Kessler, Goldstein & Fox, PLLC

Lori A. Gordon
Attorney for Patent Owner
Registration No. 50,633

Date: _June 28, 2011_
1100 New York Ave., NW
Washington, D.C.  20005-3934
202-371-2600
1381167_1.DOC

UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 95/001,550 | 02/18/2011 | 6272646 | 42299.9 | 2728 |

26111      7590      04/28/2011
STERNE, KESSLER, GOLDSTEIN & FOX P.L.L.C.
1100 NEW YORK AVENUE, N.W.
WASHINGTON, DC 20005

| EXAMINER |
|---|
| SAGER, MARK ALAN |

| ART UNIT | PAPER NUMBER |
|---|---|
| 3992 | |

| MAIL DATE | DELIVERY MODE |
|---|---|
| 04/28/2011 | PAPER |

**Please find below and/or attached an Office communication concerning this application or proceeding.**

The time period for reply, if any, is set in the attached communication.

 UNITED STATES PATENT AND TRADEMARK OFFICE

Commissioner for Patents
United States Patents and Trademark Office
P.O.Box 1450
Alexandria, VA 22313-1450
www.uspto.gov

**DO NOT USE IN PALM PRINTER**

THIRD PARTY REQUESTER'S CORRESPONDENCE ADDRESS

HAYNES AND BOONE, LLP
IP SECTION
2323 VICTORY AVENUE, SUITE 700
DALLAS, TX 75219

Date: MAILED 

APR 28 2011

CENTRAL REEXAMINATION UNIT

### Transmittal of Communication to Third Party Requester
### Inter Partes Reexamination

REEXAMINATION CONTROL NO. : 95001550
PATENT NO. : 6272646
TECHNOLOGY CENTER : 3999
ART UNIT : 3992

Enclosed is a copy of the latest communication from the United States Patent and Trademark Office in the above identified Reexamination proceeding. 37 CFR 1.903.

Prior to the filing of a Notice of Appeal, each time the patent owner responds to this communication, the third party requester of the inter partes reexamination may once file written comments within a period of 30 days from the date of service of the patent owner's response. This 30-day time period is statutory (35 U.S.C. 314(b)(2)), and, as such, it cannot be extended. See also 37 CFR 1.947.

If an ex parte reexamination has been merged with the inter partes reexamination, no responsive submission by any ex parte third party requester is permitted.

All correspondence relating to this inter partes reexamination proceeding should be directed to the Central Reexamination Unit at the mail, FAX, or hand-carry addresses given at the end of the communication enclosed with this transmittal.

PTOL-2070(Rev.07-04)

| | Control No. | Patent Under Reexamination |
|---|---|---|
| **ORDER GRANTING/DENYING REQUEST FOR INTER PARTES REEXAMINATION** | 95/001,550 | 6272646 |
| | Examiner | Art Unit | |
| | M. Sager | 3992 | |

*-- The MAILING DATE of this communication appears on the cover sheet with the correspondence address. --*

The request for *inter partes* reexamination has been considered. Identification of the claims, the references relied on, and the rationale supporting the determination are attached.

Attachment(s):   ☐ PTO-892   ☒ PTO/SB/08   ☐Other: _____

1. ☒ The request for *inter partes* reexamination is GRANTED.

　　☒ An Office action is attached with this order.

　　☐ An Office action will follow in due course.

2. ☐ The request for *inter partes* reexamination is DENIED.

This decision is not appealable. 35 U.S.C. 312(c). Requester may seek review of a denial by petition to the Director of the USPTO within ONE MONTH from the mailing date hereof. 37 CFR 1.927. EXTENSIONS OF TIME ONLY UNDER 37 CFR 1.183. In due course, a refund under 37 CFR 1.26(c) will be made to requester.

**All correspondence** relating to this *inter partes* reexamination proceeding should be directed to the **Central Reexamination Unit** at the mail, FAX, or hand-carry addresses given at the end of this Order.

| INTER PARTES REEXAMINATION COMMUNICATION | Control No. | Patent Under Reexamination | |
|---|---|---|---|
| | 95/001,550 | 6272646 | |
| | Examiner | Art Unit | |
| | M. Sager | 3992 | |

*-- The MAILING DATE of this communication appears on the cover sheet with the correspondence address. --*

A SHORTENED STATUTORY PERIOD FOR RESPONSE TO THIS ACTION IS SET TO EXPIRE ☒ 2 MONTH(S) ☐ THIRTY DAYS  FROM THE MAILING DATE OF THIS LETTER. EXTENSIONS OF TIME FOR PATENT OWNER ARE GOVERNED BY 37 CFR 1.956.

Each time the patent owner responds to this Office action, the third party requester of the *inter partes* reexamination may once file written comments within a period of 30 days from the date of service of the patent owner's response. This 30-day time period is statutory (35 U.S.C. 314(b)(2)), and, as such, it cannot be extended. See also 37 CFR 1.947.

**All correspondence** relating to this *inter partes* reexamination proceeding should be directed to the **Central Reexamination Unit** at the mail, FAX, or hand-carry addresses given at the end of this Office action.

| INTER PARTES REEXAMINATION COMMUNICATION | Control No. 95/001,550 | Patent Under Reexamination 6272646 | |
|---|---|---|---|
| | Examiner M. Sager | Art Unit 3992 | |

*-- The MAILING DATE of this communication appears on the cover sheet with the correspondence address. --*

A SHORTENED STATUTORY PERIOD FOR RESPONSE TO THIS ACTION IS SET TO EXPIRE ☒ 2 MONTH(S) ☐ THIRTY DAYS  FROM THE MAILING DATE OF THIS LETTER. EXTENSIONS OF TIME FOR PATENT OWNER ARE GOVERNED BY 37 CFR 1.956.

Each time the patent owner responds to this Office action, the third party requester of the *inter partes* reexamination may once file written comments within a period of 30 days from the date of service of the patent owner's response. This 30-day time period is statutory (35 U.S.C. 314(b)(2)), and, as such, it cannot be extended. See also 37 CFR 1.947.

**All correspondence** relating to this *inter partes* reexamination proceeding should be directed to the **Central Reexamination Unit** at the mail, FAX, or hand-carry addresses given at the end of this Office action.

| Transmittal of Communication to Third Party Requester Inter Partes Reexamination | Control No.<br>95/001,550 | Patent Under Reexamination<br>6272646 | |
|---|---|---|---|
| | Examiner<br>M. Sager | Art Unit<br>3992 | |

*-- The MAILING DATE of this communication appears on the cover sheet with the correspondence address. --*

Enclosed is a copy of the latest communication from the United States Patent and Trademark Office in the above-identified reexamination proceeding. 37 CFR 1.903.

Prior to the filing of a Notice of Appeal, each time the patent owner responds to this communication, the third party requester of the *inter partes* reexamination may once file written comments within a period of 30 days from the date of service of the patent owner's response. This 30-day time period is statutory (35 U.S.C. 314(b)(2)), and, as such, it <u>cannot</u> be extended. See also 37 CFR 1.947.

If an *ex parte* reexamination has been merged with the *inter partes* reexamination, no responsive submission by any *ex parte* third party requester is permitted.

**All correspondence** relating to this inter partes reexamination proceeding should be directed to the **Central Reexamination Unit** at the mail, FAX, or hand-carry addresses given at the end of the communication enclosed with this transmittal.

| **Transmittal of Communication to Third Party Requester Inter Partes Reexamination** | Control No. 95/001,550 | Patent Under Reexamination 6272646 | |
|---|---|---|---|
| | Examiner M. Sager | Art Unit 3992 | |

*-- The MAILING DATE of this communication appears on the cover sheet with the correspondence address. --*

Enclosed is a copy of the latest communication from the United States Patent and Trademark Office in the above-identified reexamination proceeding. 37 CFR 1.903.

Prior to the filing of a Notice of Appeal, each time the patent owner responds to this communication, the third party requester of the *inter partes* reexamination may once file written comments within a period of 30 days from the date of service of the patent owner's response. This 30-day time period is statutory (35 U.S.C. 314(b)(2)), and, as such, it <u>cannot</u> be extended. See also 37 CFR 1.947.

If an *ex parte* reexamination has been merged with the *inter partes* reexamination, no responsive submission by any *ex parte* third party requester is permitted.

**All correspondence** relating to this inter partes reexamination proceeding should be directed to the **Central Reexamination Unit** at the mail, FAX, or hand-carry addresses given at the end of the communication enclosed with this transmittal.

Application/Control Number: 95/001,550        ———— .     Page 2

Art Unit: 3992

## DECISION GRANTING INTERPARTES REEXAMINATION

**Decision on Request for Reexamination**

A substantial new question of patentability affecting claims 1-20 of United States Patent

Number 6,272,646 issued to Rangasayee et al is raised by the request for inter partes

reexamination.


The Request for inter partes reexamination filed Feb 18, 2011 alleges the art cited therein

raises a substantial new question of patentability. The examiner has considered if a substantial

new question of patentability has been raised by the following prior art references cited in the

Request:


U.S. Patent No. 5349544 (Wright)

U.S. Patent No. 4908841 (Leis)

U.S. Patent No. 5594376 (McBride)

U.S. Patent No. 5276716 (Winen)

U.S. Patent No. 5260979 (Parker)

U.S. Patent No. 5394114 (Davis)


**Issue(s) Raised by Request**

Issue 1: The requester alleges (Request pages 5-6) that Wright (Appendix B) raises a substantial

new question of patentability regarding claims 1-20 of '646. Wright issued on Sept. 20 1994

which predates the issue date of '646 patent by more than one year.

Application/Control Number: 95/001,550                                    Page 3
Art Unit: 3992

Issue 2:  The requester alleges (Request pages 6-7) that Leis (Appendix C) raises a substantial

new question of patentability regarding claims 1-20 of '646.  Leis issued on March 13, 1990

which predates the issue date of '646 patent by more than one year.


On November 2, 2002, Public Law 107-273 was enacted. Title III, Subtitle A, Section

13105, part (a) of the Act revised the reexamination statute by adding the following new last

sentence to 35 U.S.C. 303(a) and 312(a):

The existence of a substantial new question of patentability is not precluded by the fact

that a patent or printed publication was previously cited by or to the Office or considered by the

Office.  For any reexamination ordered on or after November 2, 2002, the effective date of the

statutory revision, reliance on previously cited/considered art, i.e., "old art," does not necessarily

preclude the existence of a substantial new question of patentability (SNQ) that is based

exclusively on that old art.  Rather, a determination on whether a SNQ exists in such an instance

shall be based upon a fact-specific inquiry done on a case-by-case basis.


Regarding the Request for reexamination of '646 patent, the Request presents new art

that was not recorded as having been considered by the examiner at the time of allowance of

'646 that raise non-cumulative technological teachings relating to elements deemed as the

presumptive allowable subject matter during prosecution of '646 patent that alone and/or in

combination with art considered during prosecution of '646 forms basis of decision regarding

SNQs herein.

**Background**

The request for reexamination regards claims 1-20 in United States Patent Number

6,272,646 issued to Rangasayee et al that issued Aug. 7, 2001 from application 08/7076946 filed

September 4, 1996.   The '646 patent is entitled "Programmable Logic Device Having an

Integrated Phase Lock Loop" and is directed to an integrated phase lock loop (PLL) with a

programmable logic circuit (PLC) device where the PLL is capable of providing a plurality of

frequencies in response to control signals received from PLC (abstract).   Review of the

prosecution history of '646 shows after numerous office actions rejecting claimed invention and

amendments to claims by the Patent Owner, the Office issued a Notice of Allowance (NOA) in

response to an After Final amendment that amended all claims to add the limitation that the PLL

be responsive to 'one or more of said clock signals', but the NOA did not state reasons for

allowance.   Since there are no stated reasons for allowance, as best understood, the basis for

allowing the claims regards the added language that was argued by Patent Owner in the After

Final amendment.

However, these features appears to be disclosed in newly cited prior art that was not

recorded as having been considered during prosecution of '646 patent as stated next.

**Analysis**

Issue 1:  The Request on pages 5-6) states Wright (Appendix B) shows a PLL (ref 20) and a PLC

(ref 10) wherein the PLC generates clock signals and receives clock signals in feedback loop.

Wright shows (3:15) that the PLL generates a clock signal that is provided to PLC (ref 10) where

the clock signal is also fed back to the PLL as the DOWN CNTR 82. Thus, Wright discloses a

circuit containing a PLL and PLC where the PLL is configured to generate one or more clock

Application/Control Number: 95/001,550                                    Page 5
Art Unit: 3992

signals and receive one or more clock signals where the one or more clock signals are generated

in response to clock signals fed back from PLC thereby regarding the elements argued by Patent

Owner that were lacking in the references cited during the prosecution of the '646 patent that is

presumed to be basis for allowance of '646.  Since this teaching is directly related to subject

matter considered as the basis for allowability of the '646 patent claims, a reasonable examiner

would consider the evaluation of the Wright reference as important in determining the

patentability of '646 claims.  Further, Wright was not recorded as having been considered during

prosecution of '646 patent and thus is new prior art.  As such, a reasonable examiner would

consider the teachings of Wright raises a substantial new question of patentability (SNQ) over

claims 1-20 of the '646 patent.  Reexamination is **granted** for issue number 1.


Issue 2:  The Request (on pages 6-8 states that Leis (Appendix C) discloses a device having a

PLC and a PLL, wherein the PLL includes a clock signal feedback loop.  Leis discloses a data

decoding circuit that includes a PLL wherein the PLL includes a clock signal feedback loop and

a data separator and trim logic circuit.  Leis (@ 11:55-56) shows the PLL generates the clock

signals CLKS that are provided to the data separator and trim logic circuit (ref 13) and the clock

signals CLKS are also fed back to the PLL as shown in fig 2 therein.  As best understood, the

Request alleges that the data separator and trim logic circuit regards the claimed PLC in '646 but

the Office disagrees, since an artisan would not consider the data separator and trim logic in Leis

ref 13 regards the claimed PLC in '646.  Also, there is a footnote on page 6 of Request where

Requester suggests it would be obvious to implement the circuit (ref 13) using a PLC as taught

by Davis.  It is reiterated that 37 CFR 1.915(b)(3) requires that the request include 'a statement

pointing out each substantial new question of patentability based on the cited patents and printed

publications'. Also, it is not sufficient that a request for reexamination merely proposes one or

more rejections of a patent claim or claims as a basis for reexamination. It must first be

demonstrated that a patent or printed publication that is relied upon in a proposed rejection

presents a new, non-cumulative technological teaching that was not previously considered and

discussed on the record during the prosecution of the application that resulted in the patent for

which reexamination is requested, and during the prosecution of any other prior proceeding

involving the patent for which reexamination is requested. See also MPEP § 2642.  In this case,

the facts in the Request does not show a non-cumulative technological teaching relating to Leis

regarding the elements argued by Patent Owner that were lacking in the references cited during

the prosecution of the '646 patent. Also, with respect to footnote on page 6 for obvious rejection

for combination of Leis with Davis, the proposed obviousness rejection does not show a SNQ

since a proposed rejection is not a basis for showing a SNQ and the Request does not show a

non-cumulative technological teaching relating to elements deemed the allowable subject matter

during prosecution of '646.  In particular, the proposed combination of Leis with Davis is similar

to combination of Chou with Davis during prosecution of '646 that thereby  does not raise a new

technological teaching relating to Davis regarding the elements argued by Patent Owner that

were lacking in the references during prosecution of '646.  In re Recreative Technologies Corp.,

83 F.3d 1394, 38 USPQ2d 1776 (Fed Cir 1996).  MPEP 2246, II.E.  As such, a reasonable

examiner would not consider the teachings of Leis or Leis with Davis raises a substantial new

question of patentability over claims 1-20 of '646 patent.  For reasons stated above, there is no

SNQ shown for Leis or Leis with Davis.

Application/Control Number: 95/001,550                                    Page 7
Art Unit: 3992

Accordingly, for reasons noted above, inter partes reexamination of the '646 patent is granted for

claims 1-20.


**Conclusion**

        The patent owner is reminded of the continuing responsibility under 37 CFR 1.565(a) to

apprise the Office of any litigation activity, or other prior or concurrent proceeding, involving

Patent No. 6272646 throughout the course of this reexamination proceeding.  The third party

requester is also reminded of the ability to similarly apprise the Office of any such activity or

proceeding throughout the course of this reexamination proceeding.  See MPEP §§ 2207, 2282

and 2286.

        Any paper filed with the USPTO, i.e., any submission made, by either the Patent Owner

or the Third Party Requester must be served on every other party in the reexamination

proceeding, including any other third party requester that is part of the proceeding due to merger

of the reexamination proceedings. As proof of service, the party submitting the paper to the

Office must attach a Certificate of Service to the paper which sets forth the name and address of

the party served and the method of service. Papers filed without the required Certificate of

Service may be denied consideration. 37 CFR 1.903; MPEP 2666.06.

        All correspondence relating to this inter partes reexamination proceeding should be

directed as follows:

By U.S. Postal Service Mail to:

Mail Stop Inter Partes Reexam
ATTN: Central Reexamination Unit Commissioner for Patents

Application/Control Number: 95/001,550                                                     Page 8
Art Unit: 3992

P.O. Box 1450
Alexandria, VA 22313-1450

By FAX to:

(571) 273-9900
Central Reexamination Unit

By hand:

Customer Service Window
Randolph Building
401 Dulany Street
Alexandria, VA 22314

Any inquiry concerning this communication should be directed to the Central
Reexamination Unit at telephone number (571) 272- 7705.

Mark Sager                    Conferee #1:              Conferee#2:
Primary Examiner
Art Unit 3992

| *OFFICE ACTION IN **INTER PARTES** REEXAMINATION* | Control No. 95/001,550 | Patent Under Reexamination 6272646 | |
|---|---|---|---|
| | Examiner M. Sager | Art Unit 3992 | |

**-- The MAILING DATE of this communication appears on the cover sheet with the correspondence address. --**

Responsive to the communication(s) filed by:
Patent Owner on _____
Third Party(ies) on 18 February 2011

**RESPONSE TIMES ARE SET TO EXPIRE AS FOLLOWS:**

*For Patent Owner's Response*:
    2 MONTH(S) from the mailing date of this action. 37 CFR 1.945. EXTENSIONS OF TIME ARE GOVERNED BY 37 CFR 1.956.
*For Third Party Requester's Comments on the Patent Owner Response*:
    30 DAYS from the date of service of any patent owner's response. 37 CFR 1.947. NO EXTENSIONS OF TIME ARE PERMITTED. 35 U.S.C. 314(b)(2).

**All correspondence** relating to this inter partes reexamination proceeding should be directed to the **Central Reexamination Unit** at the mail, FAX, or hand-carry addresses given at the end of this Office action.

This action is not an Action Closing Prosecution under 37 CFR 1.949, nor is it a Right of Appeal Notice under 37 CFR 1.953.

**PART I. THE FOLLOWING ATTACHMENT(S) ARE PART OF THIS ACTION:**

1. ☐ Notice of References Cited by Examiner, PTO-892
2. ☒ Information Disclosure Citation, PTO/SB/08
3. ☐ _____

**PART II.  SUMMARY OF ACTION:**

1a. ☒ Claims 1-20 are subject to reexamination.
1b. ☐ Claims _____ are not subject to reexamination.
2. ☐ Claims _____ have been canceled.
3. ☐ Claims _____ are confirmed. [Unamended patent claims]
4. ☐ Claims _____ are patentable. [Amended or new claims]
5. ☒ Claims 1-20 are rejected.
6. ☐ Claims _____ are objected to.
7. ☐ The drawings filed on _____ ☐ are acceptable ☐ are not acceptable.
8. ☐ The drawing correction request filed on _____ is: ☐ approved. ☐ disapproved.
9. ☐ Acknowledgment is made of the claim for priority under 35 U.S.C. 119 (a)-(d). The certified copy has:
       ☐ been received. ☐ not been received. ☐ been filed in Application/Control No 95001550.
10. ☐ Other _____

Application/Control Number: 95/001,550                                        Page 2

Art Unit: 3992

## *Reexamination*

1.      This Office action addresses the *inter partes* reexamination of claims 1-20 of U.S. Patent

6,272,646 issued to Rangasayee et al for which a substantial new question of patentability has

been determined to exist as detailed in the Order Granting Reexamination.

## *Rejections Proposed by the Requester*

2.      The following 10 rejections were proposed in the Request:

Issue 1:        Wright anticipates claims 1-4, 6, 10-13 and 16-19.

Issue 2:        Wright in view of McBride renders claims 5, 14 and 20 obvious.

Issue 3:        Wright in view of Wincn renders claims 7-9 obvious.

Issue 4:         Wright in view of Parker renders claims 7-9 and 15 obvious.

Issue 5:        Leis anticipates claims 1-3, 7, 9, 11-13 and 16-19.

Issue 6:        Leis in view of McBride renders claims 5, 14 and 20 obvious.

Issue 7:.       Leis in view of Parker renders claims 8 and 15 obvious.

Issue 8:        Leis in view of 68HC11 renders claims 8 and 15 obvious.

Issue 9:        Leis in view of Davis renders claims 1-4, 6-13 and 15-19 obvious.

Issue 10:       Leis in view of Davis and further McBride renders claims 5, 14 and 20 obvious.

3.      The proposed rejections identified in issues 1-4 are <u>adopted</u>.  No SNQs were raised by

Leis as stated in the Order and thus issues 5-10 are not further discussed herein.

## *Claim Rejections - 35 USC § 102*

4.      The following is a quotation of the appropriate paragraphs of 35 U.S.C. 102 that form the

`basis for the rejections under this section made in this Office action:

A person shall be entitled to a patent unless –

Application/Control Number: 95/001,550                                    Page 3
Art Unit: 3992

(b) the invention was patented or described in a printed publication in this or a foreign country or in public use or
on sale in this country, more than one year prior to the date of application for patent in the United States.

### Claim Rejections - 35 USC § 103

5.      The following is a quotation of 35 U.S.C. 103(a) which forms the basis for all

obviousness rejections set forth in this Office action:

(a) A patent may not be obtained though the invention is not identically disclosed or described as set forth in
section 102 of this title, if the differences between the subject matter sought to be patented and the prior art are
such that the subject matter as a whole would have been obvious at the time the invention was made to a person
having ordinary skill in the art to which said subject matter pertains.  Patentability shall not be negatived by the
manner in which the invention was made.

6.      The factual inquiries set forth in *Graham* v. *John Deere Co.*, 383 U.S. 1, 148 USPQ 459

(1966), that are applied for establishing a background for determining obviousness under 35

U.S.C. 103(a) are summarized as follows:

    1.      Determining the scope and contents of the prior art.
    2.      Ascertaining the differences between the prior art and the claims at issue.
    3.      Resolving the level of ordinary skill in the pertinent art.
    4.      Considering objective evidence present in the application indicating obviousness
            or nonobviousness.

7.      This application currently names joint inventors.  In considering patentability of the

claims under 35 U.S.C. 103(a), the examiner presumes that the subject matter of the various

claims was commonly owned at the time any inventions covered therein were made absent any

evidence to the contrary.  Applicant is advised of the obligation under 37 CFR 1.56 to point out

the inventor and invention dates of each claim that was not commonly owned at the time a later

invention was made in order for the examiner to consider the applicability of 35 U.S.C. 103(c)

and potential 35 U.S.C. 102(e), (f) or (g) prior art under 35 U.S.C. 103(a).

### Issue 1

### Requester Proposed Rejection (Adopted)

Application/Control Number: 95/001,550                                      Page 4
Art Unit: 3992

8.      Claims 1-4, 6, 10-13 and 16-19 are rejected under 35 U.S.C. 102(b) as being anticipated

by Wright (5349544). This rejection was proposed by the third party requester in the request for

reexamination, and is **adopted** essentially as proposed on page 9, and Exhibit AA, Section 1,

pages 1-13 of the request which are incorporated into this rejection by reference.

**Issue 2**

**Requester Proposed Rejection (Adopted)**

9.      Claims 5, 14 and 20 are rejected under 35 U.S.C. 103(a) as being unpatentable over

Wright in view of McBride (5594376). This rejection, proposed by the third party requester in

the request for reexamination, is **adopted** essentially as proposed in Request on page 9, and

Exhibit AA, Section 2, pages 14-17 which are hereby incorporated into this rejection by

reference.

**Issue 3**

**Requester Proposed Rejection (Adopted)**

10.     Claims 7-9 are rejected under 35 U.S.C. 103(a) as being unpatentable over Wright in

view of Wincn (5276716). This rejection, proposed by the third party requester in the request for

reexamination, is **adopted** essentially as proposed on page 9, and Exhibit AA, Section 2, pages

18-19 of the request which are hereby incorporated into this rejection by reference.

**Issue 4**

**Requester Proposed Rejection (Adopted)**

11.     Claims 7-9 and 15 are 35 U.S.C. 103(a) as being unpatentable over Wright in view of

Parker (5206979). This rejection, proposed by the third party requester in the request for

Application/Control Number: 95/001,550                                    Page 5
Art Unit: 3992

reexamination, is **adopted** essentially as proposed on page 9, and Exhibit AA, Section 2, pages

20-22 of the request which are hereby incorporated into this rejection by reference.


**Conclusion**

12.     Any paper filed with the USPTO, i.e., any submission made, by either the Patent Owner

or the Third Party Requester must be served on every other party in the reexamination

proceeding, including any other third party requester that is part of the proceeding due to merger

of the reexamination proceedings. As proof of service, the party submitting the paper to the

Office must attach a Certificate of Service to the paper which sets forth the name and address of

the party served and the method of service. Papers filed without the required Certificate of

Service may be denied consideration. 37 CFR 1.903; MPEP 2666.06.


13.     Any proposed amendment to the specification and/or claims in this reexamination

proceeding must comply with 37 CFR 1.530(d)-(j), must be formally presented pursuant to 37

CFR 1.52(a) and (b), and must contain any fees required by 37 CFR 1.20(c). Amendments in an

inter partes reexamination proceeding are made in the same manner that amendments in an ex

parte reexamination are made. MPEP 2666.01. See MPEP 2250 for guidance as to the manner of

making amendments in a reexamination proceeding.


14.     Extensions of time under 37 CFR 1.136(a) will not be permitted in inter partes

reexamination proceedings because the provisions of 37 CFR 1.136 apply only to "an applicant"

and not to the patent owner in a reexamination proceeding. Additionally, 35 U.S.C. 314(c)

Application/Control Number: 95/001,550                                    Page 6
Art Unit: 3992

requires that inter partes reexamination proceedings "will be conducted with special dispatch"

(37 CFR 1.937). Patent owner extensions of time in inter partes reexamination proceedings are

provided for in 37 CFR 1.956. Extensions of time are not available for third party requester

comments, because a comment period of 30 days from service of patent owner's response is set

by statute. 35 U.S.C. 314(b)(3).


15.     The patent owner is reminded of the continuing responsibility under 37 CFR 1.985(a), to

apprise the Office of any litigation activity, or other prior or concurrent proceeding, involving the

patent undergoing reexamination or any related patent throughout the course of this

reexamination proceeding. The third party requester is also reminded of the ability to similarly

inform the Office of any such activity or proceeding throughout the course of this reexamination

proceeding. See MPEP § 2686 and 2686.04.


16.     All correspondence relating to this inter partes reexamination proceeding should be

directed as follows:

By U.S. Postal Service Mail to:

Mail Stop Inter Partes Reexam
ATTN: Central Reexamination Unit Commissioner for Patents
P.O. Box 1450
Alexandria, VA 22313-1450


By FAX to:

(571) 273-9900
Central Reexamination Unit

By hand:

Application/Control Number: 95/001,550                                    Page 7
Art Unit: 3992

Customer Service Window
Randolph Building
401 Dulany Street
Alexandria, VA 22314

17.     Any inquiry concerning this communication should be directed to the Central

Reexamination Unit at telephone number (571) 272-7705.

Mark Sager                    Conferee #1:                    Conferee#2:
Primary Examiner
Art Unit 3992

# Litigation Search Report CRU 3999

**Reexam Control No. 95/001,550**

| TO: MARK REINHART<br>Location: CRU<br>Art Unit: 3992<br>Date: 02/24/11 | From: MANUEL SALDANA<br>Location: CRU 3999<br>MDW 7C55<br>Phone: (571) 272-7740<br><br>MANUEL.SALDANA@uspto.gov |
|---|---|

**Search Notes**

Litigation was found for US Patent Number: **6,272,646**
**DOCKET 1:01CV1065 (NOT CLOSED).**

1) I performed a KeyCite Search in Westlaw, which retrieves all history on the patent including any litigation.

2) I performed a search on the patent in Lexis CourtLink for any open dockets or closed cases.

3) I performed a search in Lexis in the Federal Courts and Administrative Materials databases for any cases found.

4) I performed a search in Lexis in the IP Journal and Periodicals database for any articles on the patent.

5) I performed a search in Lexis in the news databases for any articles about the patent or any articles about litigation on this patent.

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

| | | |
|---|---|---|
| In re patent of Rangasayee et al. | § | REQUEST FOR *Inter Partes* |
| | § | REEXAMINATION |
| U.S. Patent No. 6,272,646 | § | |
| | § | Attorney Docket No.: 42299.9 |
| Filed: September 4, 1996 | § | |
| | § | Customer No.: 27683 |
| Issued: August 7, 2001 | § | |
| | § | Real Party in Interest: |
| Title: PROGRAMMABLE LOGIC | § | Xilinx, Inc. |
| DEVICE HAVING AN | § | |
| INTEGRATED PHASE LOCK | § | |
| LOOP | § | |
| | § | |

## REQUEST FOR INTER PARTES REEXAMINATION

Mail Stop *Inter partes* Reexam
Hon. Commissioner for Patents
P.O. Box 1450
Alexandria, VA 22313-1450

Dear Sir:

Pursuant to the provisions of 35 U.S.C. §§ 311-318, David L. McCombs ("Requester") hereby requests *inter partes* reexamination of claims 1-20 (all of the claims) of United States Patent No. 6,272,646 ("the '646 patent," Ex. A) that issued on August 7, 2001, to Rangasayee et al., on behalf of Xilinx, Inc., the real party in interest. The '646 patent is based on a Continued Prosecution Application (CPA) filed on May 3, 2000, which is further based on an application for patent filed on September 4, 1996.

In accordance with 37 C.F.R. 1.915(b)(7), Xilinx, Inc. hereby certifies that the estoppel provisions of 37 C.F.R. 1.907 do not prohibit this request for *inter partes* reexamination.

The Requester hereby asserts that the present request presents prior art references that are better than, and non-cumulative of, the prior art that was before the examiner during the original prosecution of the '646 patent, and claims 1-20 are invalid over these references. Requester requests that an order for reexamination be issued and an Office Action rejecting all claims.

# TABLE OF CONTENTS

I.   STATEMENT POINTING OUT SUBSTANTIAL NEW QUESTIONS OF PATENTABILITY ........................................................................................................3

A.   Overview of the '646 Patent and its Prosecution History ............................................3

B.   Claim Construction ........................................................................................................4

C.   Listing Of Prior Art Patents And Printed Publications.................................................4

D.   Substantial New Questions of Patentability ..................................................................5
     1.   Wright presents a substantial new question of patentability............................. 5
     2.   Leis presents a substantial new question of patentability. .............................. 6

II.  DETAILED EXPLANATION OF THE PERTINENCE AND MANNER OF APPLYING THE PRIOR ART REFERENCES TO EVERY CLAIM FOR WHICH REEXAMINATION IS REQUESTED .........................................................8

A.   Summary of the Remaining Prior Art............................................................................8

B.   Proposed Rejection of the Claims .................................................................................9

III. LIST OF EXHIBITS .....................................................................................................11

IV.  CONCLUSION .............................................................................................................12

V.   CERTIFICATE OF SERVICE .....................................................................................13

## I.   STATEMENT POINTING OUT SUBSTANTIAL NEW QUESTIONS OF PATENTABILITY

Prior to describing the substantial new questions of patentability being presented in the present request, provided below is an overview of the '646 patent, a discussion of claim construction, and a listing of the prior art being discussed in the present request:

### A.   Overview of the '646 Patent and its Prosecution History

The '646 patent was filed on September 4, 1996 and initially contained 20 claims. The background section of the '646 patent describes the problems of logic devices that the '646 patent was attempting to address:

> Modern computers require various clocks operating at different frequencies to operate different individual components of individual on-board devices.... [D]esign engineers typically use delay loops or counters on a PLD (programmable logic device) to achieve the various frequencies. Consequentially, the logic resources available in the programmable logic device are expended to implement this remedial frequency adjustment. As a result, either less programmable features may be implemented, or either more costly PLD complex programmable devices (CPLDs) must be implemented or field programmable gate arrays (FPGAs).

(Ex. A, Col. 1, ll. 13-15 and 31-38).

The '646 patent attempts to address these problems by providing a device that includes two components:  (1) a programmable logic circuit (PLC) and (2) a phase lock loop (PLL). The PLL is capable of providing a plurality of frequencies, in response to control signals received from the PLC. For the sake of reference, claim 1 is reproduced below, with emphasis added to facilitate the following discussion.

> 1.   A device comprising:
> a programmable logic circuit configured to
> (i) generate one or more control signals and
> (ii) receive one or more clock signals; and
> a phase lock loop circuit configured to *generate said one or more clock signals*, each capable of oscillating at a different one of a plurality of frequencies, said clock signals generated in response to
> (i) a reference clocks [sic]
> (ii) said one or more control signals, and
> (iii) <u>one or more of said clock signals</u>
> wherein said programmable logic circuit and said phase lock loop circuit are integrated on a single circuit.

All of the claims of the '646 patent were extensively amended through four rounds of Office Actions and Responses, and the issued claims have many differences from the claims as originally filed.  In the final Amendment, the Applicants amended all the independent claims to include a limitation that the PLL be responsive to the "one or more of said clock signals." (See underlined portion of claim 1 above). (Ex. I, pg. 7-9).  Since the clock signals are also generated by the PLL (see italicized portion of claim 1 above), the clock signals would be part of a feedback loop.

The Examiner issued a Notice of Allowance for all the 20 pending claims on March 1, 2001.  No reasons were given for the Allowance.

As indicated in the present request, substantial new questions of patentability are presented in light of the previously uncited, non-cumulative prior art references that teach the *exact features* argued by the Applicant to obtain allowance of the '646 patent.

## B.    Claim Construction

"During patent examination, the pending claims must be 'given their broadest reasonable interpretation consistent with the specification.'" (MPEP § 2111).  The present request presents the following claim analysis in a manner that is consistent with the broadest reasonable interpretation consistent with the specification.  The Requester reserves the right to advocate a different claim interpretation in district court or any other forum if necessary.

## C.    Listing Of Prior Art Patents And Printed Publications

Reexamination of claims 1-20 (all of the claims) of the '646 patent is requested in view of the following references:

| | |
|---|---|
| Exhibit B | ("Wright") US 5,349,544, 9/20/1994, Wright et al., 364/600. |
| Exhibit C | ("Leis") USP 4,908,841, 3/13/1990, Leis et al., 375/81 |
| Exhibit D | ("McBride") USP 5,594,376, 1/14/1997, McBride, 327/236 |
| Exhibit E | ("Wincn") USP 5,276,716, 1/4/1994, Wincn, 375/120. |
| Exhibit F | ("Parker") US 5,260,979, 11/9/1993, Parker et al., 375/108. |
| Exhibit G | ("Davis") USP 5,394,114, 2/28/1995, Davis, 331/1A |

Exhibit H      ("68HC11")  M68HC11 E Series, Motorola Databook,  1995

Wright, Leis, Wincn, Parker, Davis, and 68HC11 qualify as prior art under 35 U.S.C. §
102(b); McBride qualifies as prior art under 35 U.S.C. § 102(e). Wright, Leis, McBride, Wincn,
and 68HC11 were not cited during the original prosecution of the '646 patent; Davis was.

## D.    Substantial New Questions of Patentability

### 1.    Wright presents a substantial new question of patentability.

As discussed above, claim 1 was allowed for reciting a programmable logic circuit (PLC)
and a phase lock loop (PLL), wherein the PLL generates clock signals and also receives said
clock signals (i.e., a feedback loop).   Unlike the prior art that was before the original Examiner,
Wright (Ex. B) discloses a device having a PLC and a PLL, wherein the PLL includes a clock
signal feedback loop – exactly as recited in claim 1 of the '646 patent.   The PLL is shown in the
dotted box 20 in Fig. 1 of Wright, reproduced below.



**Wright, Fig. 1**

The PLL generates a clock signal $f_o$, that is provided to "programmable logic circuit 10."
(Wright, col. 3, line 15.)   As shown in Fig. 1 above, the clock signal $f_o$ is also fed back to the
PLL, specifically to the DOWN CNTR 82.   Therefore, Wright teaches the very thing that the

Applicant argued to be missing from the cited prior art during the original prosecution. Wright also teaches all of the remaining elements of claim 1, and therefore anticipates the claim. Thus, Wright is better than and non-cumulative of the references considered during the original prosecution of the '646 patent.

The present request proposes the following rejections based on Wright:

#1.   Claims 1-4, 6, 10-13, and 16-19 are anticipated by Wright under 35 U.S.C. § 102(b).

#2.   Claims 5, 14, and 20 are obvious over Wright in view of McBride under 35 U.S.C. § 103(a).

#3   Claims 7-9 are obvious over Wright in view of Wincn under 35 U.S.C. § 103(a).

#4   Claims 7-9 and 15 are obvious over Wright in view of Parker under 35 U.S.C. § 103(a).

### 2.    Leis presents a substantial new question of patentability.

Leis (Ex. C) also discloses a device having a PLC and a PLL, wherein the PLL includes a clock signal feedback loop.    Leis discloses a data decoding circuit that includes a PLL and a data separator and trim logic circuit.[1]  The PLL is shown in the top portion of Fig. 2 of Leis, reproduced below.



Leis, Fig. 2

---

[1]    To the extent the Examiner finds that the data separator and trim logic circuit does not read on the claimed programmable logic circuit (PLC), the present request shows how it would nonetheless be obvious to implement the circuit using a PLC, as taught by Davis.

The PLL generates clock signals CLKS, that are provided to the data separator and trim logic circuit 13. (Leis, col. 11, lines 55-56.)   The clock signals CLKS are also fed back to the PLL, as shown in Fig. 2, above.  Therefore, Leis teaches the very thing that the Applicant argued to be missing from the cited prior art during the original prosecution.  Thus, Leis is better than and non-cumulative of the references considered during the original prosecution of the '646 patent.

The present request proposes the following rejections based on Leis:

#5.   Claims 1-3, 7, 9, 11-13, and 16-19 are anticipated by Leis under 35 U.S.C. § 102(b).

#6.   Claims 5, 14, and 20 are obvious over Leis in view of McBride under 35 U.S.C. § 103(a).

#7.   Claims 8 and 15 are obvious over Leis in view of Parker under 35 U.S.C. § 103(a).

#8.   Claims 8 and 15 are obvious over Leis in view of 68HC11 under 35 U.S.C. § 103(a).

#9.   Claims 1-4, 6-13, and 15-19 are obvious over Leis in view of Davis under 35 U.S.C. § 103(a).

#10. Claims 5, 14, and 20 are obvious over Leis in view of Davis and McBride under 35 U.S.C. § 103(a).

Detailed explanations of the proposed rejections are set forth in Section II below and the accompanying claim charts.

## II.   DETAILED EXPLANATION OF THE PERTINENCE AND MANNER OF APPLYING THE PRIOR ART REFERENCES TO EVERY CLAIM FOR WHICH REEXAMINATION IS REQUESTED

Prior to providing the detailed explanation of the pertinence and manner of applying the prior art references to the claims, a summary of the prior art cited in the present request is provided below.

### A.   Summary of the Remaining Prior Art

A description of the primary references Wright and Leis is provided immediately above. The remaining references of the present request are provided to address elements of certain dependent claims, and are summarized below.

McBride (Ex. D) is provided to show that matching the impedance of transmission lines, such as cited in dependent claims 5, 14, and 20, was well known in the art. McBride was not cited during the original prosecution of the '646 patent for the same reason.

Wincn (Ex. E) is provided to show that selecting from two or more reference clock signals, such as cited in dependent claims 7-9, was well known in the art. Wincn was not cited during the original prosecution of the '646 patent.

Parker (Ex. F) is provided to show that selecting from two or more reference clock signals, such as cited in dependent claims 7-9 and 15, was well known in the art. Parker was not cited during the original prosecution of the '646 patent.

Davis (Ex. G) is provided to show that a product term array, such as cited in dependent claim 4, was well known in the art. Davis was cited and discussed during the original prosecution of the '646 patent for the same reason. This teaching of Davis was not specifically disputed by the Applicants. Davis is also provided to show that it was known in the art to implement a data separator and trim logic circuit (as shown in Leis) using a programmable array logic (PAL) device was known in the art.

68HC11 (Ex. H) is provided to show that internally generating clock signals, such as in dependent claim 8, was well known in the art. 68HC11 was not cited during the original prosecution of the '646 patent.

**B.      Proposed Rejection of the Claims**

The following is a quotation of 35 U.S.C. § 102(b) that forms the basis for all of the following anticipation rejections:

> *A person shall be entitled to a patent unless ... (b) the invention was patented or described in a printed publication in this or a foreign country or in public use or on sale in this country, more than one year prior to the date of application for patent in the United States.*

The following is a quotation of 35 U.S.C. § 103(a) that forms the basis of all obviousness rejections:

> *A patent may not be obtained though the invention is not identically disclosed or described as set forth in section 102 of this title, if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains. Patentability shall not be negatived by the manner in which the invention was made.*

### Proposed Rejections based on Wright

Proposed Rejection #1.          Claims 1-4, 6, 10-13, and 16-19 are anticipated by Wright under 35 U.S.C. § 102(b).

The claim chart provided  at Exhibit AA, Section 1 – Anticipation, provides a detailed analysis mapping each and every element of the above-listed claims to the prior art.

Proposed Rejection #2.          Claims 5, 14, and 20 are obvious over Wright in view of McBride under 35 U.S.C. § 103(a)

The claim chart provided  at Exhibit AA, Section 2 – Obviousness, provides a detailed analysis mapping each and every element of the above-listed claims to the prior art.

Proposed Rejection #3.          Claims 7-9 are obvious over Wright in view of Wincn under 35 U.S.C. § 103(a)

The claim chart provided  at Exhibit AA, Section 2 – Obviousness, provides a detailed analysis mapping each and every element of the above-listed claims to the prior art.

Proposed Rejection #4.     Claims 7-9 and 15 are obvious over Wright in view of
                           Parker under 35 U.S.C. § 103(a)

The claim chart provided at Exhibit AA, Section 2 – Obviousness, provides a detailed analysis mapping each and every element of the above-listed claims to the prior art.

## Proposed Rejections based on Leis

Proposed Rejection #5.     Claims 1-3, 7, 9, 11-13, and 16-19 are anticipated by Leis
                           under 35 U.S.C. § 102(b).

The claim chart provided at Exhibit BB, Section 1 – Anticipation, provides a detailed analysis mapping each and every element of the above-listed claims to the prior art.

Proposed Rejection #6.     Claims 5, 14, and 20 are obvious over Leis in view of
                           McBride under 35 U.S.C. § 103(a)

The claim chart provided at Exhibit BB, Section 2 – Obviousness, provides a detailed analysis mapping each and every element of the above-listed claims to the prior art.

Proposed Rejection #7.     Claims 8 and 15 are obvious over Leis in view of Parker
                           under 35 U.S.C. § 103(a)

The claim chart provided at Exhibit BB, Section 2 – Obviousness, provides a detailed analysis mapping each and every element of the above-listed claims to the prior art.

Proposed Rejection #8.     Claims 8 and 15 are obvious over Leis in view of 68HC11
                           under 35 U.S.C. § 103(a)

The claim chart provided at Exhibit BB, Section 2 – Obviousness, provides a detailed analysis mapping each and every element of the above-listed claims to the prior art.

Proposed Rejection #9.     Claims 1-4, 6-13, and 15-19 are obvious over Leis in view
                           of Davis under 35 U.S.C. § 103(a)

The claim chart provided at Exhibit BB, Section 2 – Obviousness, provides a detailed analysis mapping each and every element of the above-listed claims to the prior art.

<u>Proposed Rejection #10.</u>    <u>Claims 5, 14, and 20 are obvious over Leis in view of
Davis and McBride under 35 U.S.C. § 103(a)</u>

The claim chart provided at Exhibit BB, Section 2 – Obviousness, provides a detailed analysis mapping each and every element of the above-listed claims to the prior art.


## III.    LIST OF EXHIBITS

| Exhibit A | US 6,272,646 to Rangasayee et al. |
|-----------|-----------------------------------|
| Exhibit B | US 5,349,544, 9/20/1994, Wright et al., 364/600 |
| Exhibit C | US 4,908,841, 3/13/1990, Leis et al., 375/81 |
| Exhibit D | US 5,594,376, 6/10/1997, McBride, 327/236 |
| Exhibit E | US 5,276,716, 1/4/1994, Wincn, 375/120 |
| Exhibit F | US 5,260,979, 11/9/1993, Parker et al., 375/108 |
| Exhibit G | US 5,394,114, 2/28/1995, Davis, 331/1A |
| Exhibit H | M68HC11 E Series, Motorola Databook, pp. 10-1 through 10-9, 1995 |
| Exhibit I | File History of US 6,272,646 |
| Exhibit AA | Claim charts applying Wright, McBride, Wincn, and Parker to claims 1-20 of the '646 patent. The claim chart is separated into four different sections, corresponding to proposed rejections 1-4. |
| Exhibit BB | Claim charts applying Leis, McBride, Davis, and Parker to claims 1-20 of the '646 patent. The claim chart is separated into four different sections, corresponding to proposed rejections 5-8. |

Request for *Inter partes* Reexamination
U.S. Patent No. 6,272,646

## IV.   CONCLUSION

For the reasons set forth above, it is clear that substantial new questions of patentability are raised in connection with claims 1-20 by this request for *inter partes* reexamination since claims 1-20 are anticipated by and/or rendered obvious in view of the above-listed prior art references. Therefore, Requester asks that this request for reexamination be granted and that claims 1-20 all be canceled.

As identified in the attached Certificate of Service and in accordance with 37 C.F.R. §§ 1.33(c) and 1.915(b)(6), a copy of the present request, in its entirety, is being served to the address of the attorney or agent of record.

Please direct all correspondence in this matter to the undersigned.

Respectfully submitted,

/David L. McCombs/

David L. McCombs
Registration No. 32,271

Dated: February 18, 2011
HAYNES AND BOONE, LLP
Customer No. 27683
Telephone: 214/651-5533
Facsimile: 214/200-0853
Attorney Docket No.: 42299.9
R-252223_2.DOC

CERTIFICATE OF SERVICE
I hereby certify that this correspondence, all attachments, and any corresponding filing fee is being transmitted via the Electronic Filing System (EFS) Web with the United States Patent and Trademark Office on February 18, 2011.

Theresa O'Connor

## V.   CERTIFICATE OF SERVICE

The undersigned certifies that a copy of this request was served in its entirety on

> SADLER, BREEN, MORASCH & COLBY, ps
> 601 W. MAIN AVE.
> SUITE 1300
> SPOKANE WA 99201

the attorney of record for the assignee of U.S. Patent No. 6,272,646, in accordance with 37

C.F.R. § 1.915 (b)(6), on the 18th day of February, 2011.


                              /David L. McCombs/

                              _____
                              David L. McCombs, Registration No. 32,271




R-252223.2.DOC