# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| **INTELLECTUAL VENTURES I LLC and INTELLECTUAL VENTURES II LLC** | Civil Action No. 10-1065-LPS |
| **Plaintiffs,** | **JURY TRIAL DEMANDED** |
| **v.** | |
| **ALTERA CORPORATION, MICROSEMI CORPORATION, LATTICE SEMICONDUCTOR CORPORATION, and XILINX, INC.** | |
| **Defendants.** | |

### PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO STAY LITIGATION PENDING CONCLUSION OF PTO REEXAMINATIONS OF THE PATENTS-IN-SUIT

Brian E. Farnan (Bar No. 4089)
FARNAN LLP
919 North Market Street
12th Floor
Wilmington, DE 19801
(302) 777-0300
(302) 777-0301
bfarnan@farnanlaw.com

*Counsel for Plaintiffs*
*Intellectual Ventures I LLC and*
*Intellectual Ventures II LLC*

John M. Desmarais (admitted *pro hac vice*)
Michael P. Stadnick (admitted *pro hac vice*)
DESMARAIS LLP
230 Park Avenue
New York, NY 10169
(212) 351-3400
(212) 351-3401
jdesmarais@desmaraisllp.com
mstadnick@desmaraisllp.com

Dated:  August 25, 2011

## TABLE OF CONTENTS

I.    NATURE AND STAGE OF PROCEEDINGS.................................................................1

II.   SUMMARY OF ARGUMENT.................................................................................1

III.  FACTUAL BACKGROUND ...................................................................................3

      A.    Plaintiffs' Original Complaint...............................................................3

      B.    Xilinx's Anticipatory California Action And Reexamination Requests.................3

      C.    Defendants' Responsive Pleadings And Motion Practice ...........................4

      D.    Defendants' Motion And Subsequent Declaratory Judgment Claims...............6

IV.   ARGUMENT ........................................................................................................6

      A.    A Stay Here Would Reward Defendants' Repeated Efforts To Secure An
            Unwarranted Tactical Advantage, While Causing Unfair Prejudice To
            Plaintiffs............................................................................................7

            1.    Defendants' Stay Motion Is Their Third Unfounded Attempt To
                  Secure A Tactical Advantage By Avoiding Litigation In This
                  Court. ...........................................................................................7

            2.    A Stay Here Would Unduly Prejudice Plaintiffs' Patent Rights
                  Both During And After Reexamination.........................................9

                  a)    Reexamination Proceedings Would Likely Last Up To
                        Eight Years. ......................................................................10

                  b)    Plaintiffs' Patent Rights Would Be Severely Hindered
                        During The Pendency Of A Protracted Stay. ...............10

                  c)    A Stay Here Could Prejudice Plaintiffs' Ability To Prove
                        Infringement Once Litigation Resumes........................12

                  d)    Defendants Will Suffer No Hardship In The Absence Of A
                        Stay. .................................................................................12

      B.    A Stay Here Will Not Simplify The Issues In The Case. .......................13

            1.    Any Assertion That Reexamination Will Simplify The Issues Is
                  Pure Speculation. .......................................................................13

            2.    Unlike The PTO, This Court Can Resolve All Disputed Issues In A
                  Single Forum. .............................................................................14

      C.    This Litigation Has Advanced Relative To The Reexaminations, Which
            Are Far From Being "Substantially Completed."..................................16

V.    CONCLUSION ....................................................................................................17

# TABLE OF AUTHORITIES

**Cases**

*Affinity Labs of Texas v. Apple, Inc.,*
   Civ. No. 09-04436-CW, 2010 WL 1753206 (N.D. Cal. Apr. 29, 2010) ................................. 11

*Belden Techs. Inc. v. Superior Essex Commn's LP,*
   Civ. No. 08-63-SLR, 2010 WL 3522327 (D. Del. Sep. 2, 2010) ........................... 8, 10, 15, 17

*Cooper Notification, Inc. v. Twitter, Inc.,*
   Civ. No. 09-865-LPS, 2010 WL 5140573 (D. Del. Dec. 13, 2010) ................................ passim

*Ethicon, Inc. v. Quigg,*
   849 F.2d 1422 (Fed. Cir. 1998) ................................................................................... 6, 7

*Fresenius USA, Inc. v. Baxter Int'l, Inc.,*
   582 F.3d 1288 (Fed. Cir. 2009) ................................................................................... 9, 11

*Hoechst Celanese Corp. v. BP Chems. Ltd.,*
   78 F.3d 1575 (Fed. Cir. 1996) ........................................................................................ 14

*In re Xoft, Inc.,*
   Misc. Docket No. 2011-M983 (Fed. Cir. Aug. 18, 2011) ........................................................ 6

*Life Techs. Corp. v. Illumina, Inc.,*
   Civ. No. 09-706-RK, 2010 WL 2348737 (D. Del. June 7, 2010) ................................... passim

*Oracle Corp. v. Parallel Networks, LLP,*
   Civ. No. 06-414-SLR, 2010 WL 3613851 (D. Del. Sep. 8, 2010) ............................................ 8

*Power Integrations Inc. v. Fairchild Semiconductor Int'l, Inc.,*
   Civ. No. 08-309-JJF-LPS, 2008 WL 5335400 (D. Del. Dec. 19, 2008) ................................. 14

*St. Clair Intellectual Prop. Consultants v. Sony Corp.,*
   Civ. No. 01-557JJF, 2003 WL 25283239 (D. Del. Jan. 30, 2003) ........................................... 7

*St. Clair Intellectual Prop. Consultants v. Fujifilm Holding Corp.,* No. 08-373-JJF-LPS,
   2009 WL 192457 (D. Del. Jan. 27, 2009).  ........................................................................ 12

*Tesco Corp. v. Weatherford Int'l, Inc.,*
   599 F. Supp. 2d 848 (S.D. Tex. 2009) .............................................................................. 14

*Vehicle IP, LLC v. Wal-Mart Stores, Inc.,*
   Civ. No. 10-503-SLR, 2010 WL 4823393 (D. Del. Nov. 22, 2010) ........................................ 8

*Xerox Corp. v. Google, Inc., et al.,*
   No. 10-136 (LPS) (D. Del. Feb. 28, 2011) ..................................................................... 9, 11

**Statutes**

35 U.S.C. § 134 ......................................................................................................... 10

35 U.S.C. § 301 ..................................................................................................15

35 U.S.C. § 311 ..................................................................................................15

35 U.S.C. § 315 ..................................................................................................10

35 U.S.C. § 317(b)..........................................................................................15, 17

## I.  NATURE AND STAGE OF PROCEEDINGS

Plaintiffs Intellectual Ventures I LLC and Intellectual Ventures II LLC (collectively, "Plaintiffs") filed this suit for patent infringement against Altera Corporation ("Altera"), Lattice Semiconductor Corporation ("Lattice"), and Microsemi Corporation ("Microsemi") in December 2010, and amended their complaint in February 2011 to add infringement claims against Xilinx, Inc. ("Xilinx") (collectively, "Defendants").  Since that time, Defendants have engaged in repeated efforts to deny Plaintiffs the opportunity to litigate in their legitimately chosen forum. Now—nearly nine months since the outset of this litigation, following significant motion practice in two Courts, and having failed in their prior attempts to avoid litigating Plaintiffs' claims in Delaware—Defendants launch yet another effort to derail this litigation, this time by way of a stay in favor of reexamination proceedings initiated by Defendants months *after* Plaintiffs filed this case.  Defendants' motion to stay should be denied for at least four separate reasons.

## II.  SUMMARY OF ARGUMENT

*First*, staying the litigation now would provide a clear and unwarranted tactical advantage to Defendants.  Defendants have engaged in a coordinated scheme to frustrate Plaintiffs' choice of forum by any means necessary, including:  (1) Xilinx's assertion of mirror-image declaratory judgment claims in California, which the California Court found to be anticipatory and properly litigated in this Court, (2) Xilinx's motion in California to enjoin Plaintiffs' prosecution of their Delaware claims, which was also denied by the California Court, and (3) Defendants' motions in this Court to transfer and/or dismiss, which Defendants now concede are unlikely to succeed. (D.I. 77)  Rewarding Defendants' latest attempt to circumvent Plaintiffs' choice of forum "would grant Defendants their choice of forum . . . for no good reason."  *Cooper Notification, Inc. v. Twitter, Inc.*, Civ. No. 09-865-LPS, 2010 WL 5140573, at *3 (D. Del. Dec. 13, 2010).  Indeed, Xilinx's recent filing of new declaratory judgment claims in California regarding five of Plaintiffs' other patents—four of which are the subject of reexamination proceedings initiated by

or on behalf of Xilinx—confirms that Xilinx and its co-defendants are motivated by tactical advantage rather than any professed concern for judicial efficiency.

*Second*, a protracted stay would impose undue prejudice on Plaintiffs, whereas denial of a stay will not subject Defendants to any real hardship.  Reexamination proceedings, through appeal, can require up to eight years for completion—far longer than the average duration of litigation in this District through appeal to the Federal Circuit.  Delaying the litigation in favor of reexamination proceedings (which are in their earliest stages) would severely hinder Plaintiffs' ability to enforce both the Patents-in-Suit and its other intellectual property rights, and could raise significant concerns regarding Plaintiffs' collection of evidence to present their infringement case once the litigation resumes.  By contrast, Defendants do not—and cannot— articulate any hardship they would suffer in the absence of a stay.  Indeed, as this Court has recognized, matters on which Defendants bear the burden of proof—including invalidity of the Patents-in-Suit due to anticipation or obviousness—are typically based on prior art references which do not change, and the evidentiary concerns presented by a stay therefore disproportionally prejudice a patentee.  Accordingly, the balance of hardship weighs heavily against a stay.

*Third*, granting a stay would not significantly streamline the issues in this case.  All of the Defendants dispute infringement of the Patents-in-Suit and have raised counterclaims that will not and cannot be considered by the PTO in the reexaminations.  Nor can the PTO consider purported prior art under certain sections of the Patent Act, which the Defendants would be free to raise even after the eventual conclusion of the reexamination process.  By contrast, this Court can fully resolve all of the outstanding issues in one forum, and in a much shorter time frame through appeal, than would be possible through the PTO process.

*Finally*, although this case is in its early stages (largely due to Defendants' dilatory motion practice), it nevertheless stands significantly closer to resolution than the reexamination proceedings, which are far from being substantially completed.  The parties have invested significant time and resources in litigating the proper venue for this dispute—indeed, Plaintiffs

2

have been forced to brief those issues in two Courts. Now that the California Court has rejected Xilinx's "first-to-file" arguments and transferred overlapping claims to this Court, this action is on the verge of proceeding to discovery and claim construction. By contrast, the reexamination proceedings are many years away from completion. No final rejections have been issued for any claim of any Patent-in-Suit, none of the claims in any of the Patents-in-Suit has been cancelled, and only one independent claim has been amended. In two of the five reexamination proceedings, the PTO has not even issued an office action rejecting claims. The relative stage of the proceedings therefore disfavors a stay.

## III.   FACTUAL BACKGROUND

### A.   Plaintiffs' Original Complaint

On December 8, 2010, Plaintiffs filed this action against Altera, Lattice, and Microsemi alleging infringement of five patents (the "Patents-in-Suit"). (D.I. 1) After seeking and receiving a 30-day extension to respond, Lattice filed its answer and counterclaims on January 28, 2011, which asserted counterclaims concerning, *inter alia*, non-infringement, invalidity under 35 U.S.C. §§ 101, 102, 103, and 112, along with affirmative defenses such as prosecution history estoppel and other equitable defenses. (D.I. 13) Microsemi sought and received two separate 30-day extensions to respond. (D.I. 10, 12) Altera sought and received a 60-day extension to respond. (D.I. 7)

### B.   Xilinx's Anticipatory California Action And Reexamination Requests

In deference to ongoing license negotiations, Plaintiffs excluded Xilinx from the original complaint, but made clear to Xilinx that it would be included in the action if the parties could not reach an agreement by a specified date. (Declaration of Ameet A. Modi In Support Of Plaintiffs' Opposition To Defendants' Motion To Stay Litigation ("Modi Decl."), Ex. A at 4) With negotiations foundering, Xilinx responded by filing mirror-image declaratory judgment claims in the Northern District of California on February 14, 2011 concerning four of the patents at issue in this action, as well as twelve additional patents. (*Id.*) Plaintiffs amended their complaint the following day to add claims against Xilinx. (D.I. 17)

3

Within days of filing its anticipatory California complaint, Xilinx began executing a strategy of placing the Patents-in-Suit—and at least a dozen additional patents owned by Plaintiffs and their affiliates—into reexamination.  On February 18, 2011, the law firm Haynes & Boone LLP requested *inter partes* reexamination of U.S. Patent No. 6,272,646 (the "'646 patent").  (Modi Decl., Ex. B)  The reexamination request identifies Xilinx as the real party in interest.  (*Id.*)  On February 25, 2011, Haynes & Boone requested *ex parte* reexamination of U.S. Patent No. 6,687,325 (the "'325 patent").  (Modi Decl., Ex. C)  On March 4, 2011, Haynes & Boone requested *ex parte* reexamination of U.S. Patent No. 6,260,087 (the "'087 patent"). (Modi Decl., Ex. D)  On March 9, 2011, Haynes & Boone requested *inter partes* reexamination of U.S. Patent No. 6,993,669 (the "'669 patent"), with Xilinx again listed as the real party in interest.  (Modi Decl., Ex. E)  Before Defendants' motion here, Xilinx did not request a stay of either the Delaware or California litigations.[1]

C.     **Defendants' Responsive Pleadings And Motion Practice**

Altera, Lattice, and Microsemi each answered Plaintiffs' Amended Complaint in March 2011.  Each of those defendants denied infringement of the Patents-in-Suit.  (D.I. 27, 29, 31) Altera asserted counterclaims and affirmative defenses of non-infringement, invalidity under (without limitation) 35 U.S.C. §§ 101, 102, 103, and/or 112, limitation of damages under 35 U.S.C. § 286, express and/or implied license, laches, and other equitable defenses.  (D.I. 29) Lattice, as it did in its answer to Plaintiffs' initial Complaint, asserted counterclaims and affirmative defenses of non-infringement, invalidity under (without limitation) 35 U.S.C. §§ 101,

---

[1] Plaintiffs have submitted responses in two of the pending reexamination proceedings, traversing substantially all of the PTO's non-final claim rejections.  Plaintiff Intellectual Ventures II LLC responded to the PTO's non-final office action in the reexamination involving the '646 patent on June 28, 2011, traversing rejections with respect to claims 1-17 and amending one of the three independent claims (three claims total).  (Modi Decl., Ex. F)  Plaintiff Intellectual Ventures I LLC responded to the PTO's non-final office action in the reexamination involving the '669 patent on July 27, 2011, traversing rejections with respect to all claims. (Modi Decl., Ex. G)  The PTO issued a non-final office action in the reexamination involving the '087 patent on August 1, 2011.  (Modi Decl., Ex. H)  Plaintiffs' deadline to respond to the non-final office action is October 1, 2011.  (*Id.*)  The PTO has not issued any office actions in the reexamination proceeding involving the '325 patent.  (Modi Decl., Ex. I)

102, 103, and/or 112, prosecution history estoppel, and other equitable defenses. (D.I. 27)

Microsemi answered the Amended Complaint on March 1, 2011 and asserted counterclaims and

affirmative defenses of non-infringement, invalidity (without limitation) under 35 U.S.C. §§ 101,

111, 112, 116, 132, and/or 251, limitation of damages under 35 U.S.C. §§ 286 and 287, and other

equitable defenses. (D.I. 25)  Microsemi filed an amended answer on March 22, 2011, adding an

affirmative defense under 28 U.S.C. § 1498. (D.I. 31)

      After requesting and receiving a nearly two-month extension to respond to Plaintiffs'

Amended Complaint, on April 11, 2011, Xilinx moved to dismiss this case pursuant to the "first-

to-file" rule and/or sever and transfer claims to the Northern District of California. (D.I. 36)  At

the same time, Xilinx filed a motion asking the California Court to enjoin Plaintiffs from

prosecuting its claims against Xilinx in Delaware. (Modi Decl., Ex. J)  Shortly after Xilinx filed

its motion to transfer, the remaining defendants—despite having long since answered Plaintiffs'

amended complaint—filed their own motion to transfer, relying largely on the existence of the

mirror-image claims in the Northern District of California. (D.I. 43)

      On July 27, 2011, after dismissing several of Plaintiffs' affiliates, the California Court

severed and transferred Xilinx's declaratory judgment claims pertaining to the '325, '087, '646,

and '669 patents to this District, denied Xilinx's motion to enjoin Plaintiffs' prosecution of the

this action, and dismissed the remainder of Xilinx's declaratory judgment complaint. (Modi

Decl., Ex. A)  In its Order, the California Court ruled that Xilinx's declaratory judgment

complaint was anticipatory and not entitled to the benefit of the "first-to-file" rule. (*Id.*)  Rather,

the Court found that Xilinx's declaratory judgment action was an improper attempt to

circumvent Plaintiffs' choice of litigation in this Court. (*Id.* at 4)  Accordingly, Xilinx's

declaratory judgment claims pertaining to the '325, '087, '646, and '669 patents are now pending

in this Court. *See Xilinx, Inc. v. Intellectual Ventures I LLC, et al.*, No. 11-cv-666-LPS.

      On July 29, 2011, Plaintiffs filed a letter notifying this Court of the California Court's

Order, submitting that the Order moots Xilinx's pending motion to dismiss or transfer. (D.I. 75)

Defendants responded to Plaintiffs' letter on August 1, 2011, conceding that Defendants'

pending motions to transfer were unlikely to succeed in light of the California Court's Order and this Court's order denying transfer to the Northern District of California in another case involving Intellectual Ventures I LLC. (D.I. 77)  Defendants nevertheless asked this Court to defer its decision on their respective motions to transfer pending the Federal Circuit's decision on a petition for a writ of mandamus in an unrelated case. (*Id.* (citing *In re Link_A_Media Devices Corp.*, Misc. Docket No. 2011-M990))  Plaintiffs responded on August 2, 2011, highlighting numerous distinctions between *Link_A_Media* and the facts supporting denial of transfer in this case. (D.I. 78)  The Federal Circuit recently denied mandamus in a third case, considering many of the same issues presented in the parties' motions here and upholding this Court's analysis denying transfer under 28 U.S.C. § 1404(a). *See In re Xoft, Inc.*, Misc. Docket No. 2011-M983 (Fed. Cir. Aug. 18, 2011).

On August 4, 2011—three days after submitting their letter to the Court conceding the unlikelihood of success of their motion to transfer—Xilinx's counsel Haynes & Boone filed an *ex parte* reexamination request for the '808 patent. (Modi Decl., Ex. K)  The PTO has not ordered reexamination of the '808 patent. (Modi Decl., Ex. L)

### D.  Defendants' Motion And Subsequent Declaratory Judgment Claims

Seven days after conceding that their motions to transfer Plaintiffs' claims out of this District were likely to fail, and four days after rushing to file the '808 patent reexamination request, Defendants filed the instant motion to stay. (D.I. 80)  On August 18, 2011—having just submitted a brief in this Court urging that stays in favor of PTO proceedings promote judicial efficiency—Xilinx filed declaratory judgment claims in the Northern District of California pertaining to five patents (not at issue in this action) owned by Plaintiffs. (Modi Decl., Ex. M)  Xilinx filed its declaratory judgment claims even though it had long since initiated reexamination proceedings on four of those patents. (Modi Decl., Ex. N)

## IV.  ARGUMENT

"Whether or not to stay litigation pending a PTO reexamination is a matter left to the Court's discretion." *Cooper Notification*, 2010 WL 5140573, at *1 (citing *Ethicon, Inc. v.*

*Quigg*, 849 F.2d 1422, 1426-27 (Fed. Cir. 1998)).  The factors that Courts typically consider in deciding whether to exercise that discretion include:  (1) whether a stay would allow the moving party to gain a clear tactical advantage over the non-moving party or cause the non-moving party to suffer undue prejudice from any delay; (2) whether a stay will simplify the issues for trial; and (3) whether discovery is complete and a trial date has been set.  *St. Clair Intellectual Prop. Consultants v. Sony Corp.*, Civ. No. 01-557JJF, 2003 WL 25283239, at *1 (D. Del. Jan. 30, 2003).  A movant's failure to articulate a clear hardship or inequity that it would suffer in the absence of a stay also weighs against such relief.  *Cooper*, 2010 WL 5149351, at *2.

### A.   A Stay Here Would Reward Defendants' Repeated Efforts To Secure An Unwarranted Tactical Advantage, While Causing Unfair Prejudice To Plaintiffs.

Since the outset of this litigation nine months ago, Defendants have engaged in repeated efforts to deprive Plaintiffs of their legitimate choice to litigate in this Court.  The instant motion to stay continues that campaign to obtain an unjust tactical advantage.  Because the fledgling reexaminations (including any appeals) will likely take years to complete, Defendants' proposed stay will obstruct Plaintiffs' right to enforce the Patents-in-Suit and prejudice their ability to marshal evidence and present infringement proof once the litigation resumes.  By contrast, denial of a stay would pose no undue hardship on Defendants.

### 1.   Defendants' Stay Motion Is Their Third Unfounded Attempt To Secure A Tactical Advantage By Avoiding Litigation In This Court.

Nine months ago, Plaintiffs chose litigation in this Court to resolve their patent infringement claims, and Defendants have attempted to circumvent Plaintiffs' choice of forum ever since.  The timing and circumstances of Defendants' conduct throughout this litigation plainly reflect their motivation to secure a tactical advantage.  While Defendants initiated reexamination proceedings six months ago, only now—after each of Defendants' previous efforts to circumvent litigation in this Court has proven unsuccessful—have Defendants requested a stay.  Under the circumstances, staying this litigation in favor of the PTO

proceedings would "grant Defendants their choice of forum . . . for no good reason." *Cooper,* 2010 WL 5149351, at *3.

As outlined above, Defendants' motion to stay is at least their third attempt to frustrate Plaintiffs' choice of forum. Rather than face the prospect of litigation in Delaware—the contemplated consequence of a breakdown in the parties' negotiations—Xilinx filed a declaratory judgment complaint in the Northern District of California, and subsequently engaged in a coordinated strategy to request reexamination of four of the five Patents-in-Suit. Xilinx thereafter moved this Court to dismiss or transfer claims to California, while moving the California Court to enjoin Plaintiffs' from enforcing claims in this action. Then the remaining Defendants in this action moved to transfer claims in favor of Xilinx's declaratory judgment claims in California.

Only after each of those attempts to avoid litigation in this Court failed did Defendants move to stay in favor of reexaminations filed *after* Plaintiffs brought this action. *Cf. Vehicle IP, LLC v. Wal-Mart Stores, Inc.*, Civ. No. 10-503-SLR, 2010 WL 4823393, at *2 (D. Del. Nov. 22, 2010) (granting stay where a third party initiated reexaminations months *before* plaintiff brought suit and defendants moved for stay immediately upon commencement of litigation).[2]  In so doing, Defendants hope to finally succeed in driving Plaintiffs' infringement claims from this Court while some (but not all) of their invalidity theories grind through the PTO process for years.

Against that backdrop, Defendants' argument that their motion to stay is motivated by concerns of judicial efficiency rather than tactical advantage strains credibility. Indeed, Defendants' purported concern for judicial efficiency cannot be reconciled with Xilinx's recent

---

[2] *See also, e.g., Oracle Corp. v. Parallel Networks, LLP*, Civ. No. 06-414-SLR, 2010 WL 3613851, at *2 (D. Del. Sep. 8, 2010) (denying motion to stay where "Defendant moved for a stay only following having 'tested the waters'"); *Belden Techs. Inc. v. Superior Essex Commn's LP*, Civ. No. 08-63-SLR, 2010 WL 3522327, at *2 (D. Del. Sep. 2, 2010) ("A request for reexamination made well after the onset of litigation followed by subsequent request to stay may lead to an inference that the moving party is seeking an inappropriate tactical advantage.")

conduct in the Northern District of California.  In addition to the reexaminations concerning the
Patents-in-Suit, in February and March of this year, Xilinx initiated reexamination proceedings
on at least a dozen other patents owned by Plaintiffs and their affiliates.  (Modi Decl., Ex. N)
Then, as Defendants argued that judicial efficiency would be served by a stay in the litigation
here, just last week Xilinx filed anew declaratory judgment claims in California, notwithstanding
the fact that four of the five patents identified in its California amended complaint were already
subject to reexamination.  (Modi Decl., Ex. M at ¶¶ 9-13; Ex. N)  Such conduct, which directly
contradicts Defendants' professed preference for PTO proceedings based on efficiency grounds,
reveals the true motive behind Defendants' motion here:  to gain an unwarranted tactical
advantage in the litigation.[3]

### 2.     A Stay Here Would Unduly Prejudice Plaintiffs' Patent Rights Both During And After Reexamination.

Reexamination proceedings can last between six and eight years.  *Life Techs. Corp. v.
Illumina, Inc.*, Civ. No. 09-706-RK, 2010 WL 2348737, at *2 (D. Del. June 7, 2010).  If this
Court grants a stay, Plaintiffs' enforcement of their patent rights will be severely hindered both
during the pendency of the stay and after the litigation resumes, when Plaintiffs will likely
confront significant barriers in gathering evidence to prove their infringement case.  Moreover,
permitting litigation adversaries such as Defendants to derail litigation for years simply by
initiating reexamination proceedings—which, as Defendants admit, can be commenced almost as
a matter of administrative routine—would effectively deprive patentees of access to the Federal
Courts to enforce their patent rights.  For companies such as Plaintiffs who rely on patent
licensing to generate revenue, and therefore depend heavily on access to the Courts when needed

---

[3] *See, e.g., Fresenius USA, Inc. v. Baxter Int'l, Inc.*, 582 F.3d 1288, 1305 (Fed. Cir. 2009) ("[I]f
routinely available to delay the judicial resolution of disputes, the [reexamination] procedure is
subject to inequity, if not manipulation and abuse, through the delays that are inherent in PTO
activity.") (Newman, J., concurring); *Cooper*, 2010 WL 5149351, at *3 (noting that a stay would
grant defendants' choice of forum); D.I. 136, *Xerox Corp. v. Google, Inc., et al.*, No. 10-136
(LPS) (D. Del. Feb. 28, 2011) (denying motion to stay where "granting a stay would effectively
deprive the plaintiff of his choice to forum by transplanting this dispute at least for quite awhile
to the PTO.") (Modi Decl., Ex. O).

to support their business activities, such a result could have potentially crippling consequences. As such, the undue prejudice a stay would impose on Plaintiffs strongly disfavors a stay.

### a)    Reexamination Proceedings Would Likely Last Up To Eight Years.

Reexamination "is an arduous process fraught with the potential for multiple appeals." *Belden*, 2010 WL 3522327, at *3. Statistics published by the PTO show that reexamination proceedings before the PTO on average last over two years (25.7 months) for *ex parte* reexaminations and over three years (36.6 months) for *inter partes* reexaminations. (Modi Decl., Exs. P-Q) A patentee may appeal a final PTO rejection to the Board of Patent Appeals and Interferences ("BPAI") in an *ex parte* reexamination, and either party may appeal in an *inter partes* reexamination. 35 U.S.C. §§ 134, 315. Appeals to the BPAI last an average of 32 months additional after a notice of appeal is filed. (Modi Decl., Ex. R) Thus, the reexamination process and BPAI appeal average over 57 months in *ex parte* reexaminations and 68 months in *inter partes* reexaminations. Considering any subsequent appeal to the Federal Circuit, "reexaminations . . . are likely to take 6.5 to 8 years to reach a final decision." *Life Techs. Corp*, 2010 WL 2348737, at *2 (D. Del. June 7, 2010).

### b)    Plaintiffs' Patent Rights Would Be Severely Hindered During The Pendency Of A Protracted Stay.

Defendants devote much of their brief to arguing that, because Plaintiffs allegedly do not develop or sell products of their own,[4] the impact of a protracted stay on Plaintiffs' ability to license or enforce the Patents-in-Suit is immaterial. (D.I. 80 at 8-9) But Courts recognize the undue prejudice that indefinite duration of reexaminations impose on a patentee's enforcement rights during the pendency of a protracted stay—regardless of whether or not the parties directly compete. Indeed, this Court has repeatedly noted that a patentee's right to enforce and license a patent during a lengthy stay would be "severely hindered," even though the patentee would be entitled to compensation for past infringement if the patent-in-suit survived reexamination.

---

[4] Contrary to Defendants' assertion, Plaintiffs and their affiliates do in fact engage in research and technology development. *See* D.I. 17 at ¶¶ 22-25.

*Cooper*, 2010 WL 5149351, at *4; *see also Affinity Labs of Texas v. Apple, Inc.*, Civ. No. 09-04436-CW, 2010 WL 1753206, at *2 (N.D. Cal. Apr. 29, 2010) (finding prejudice to plaintiff and denying stay in part because plaintiff would "not be able to enforce and license its patents until the litigation [which would continue only after the reexaminations conclude] is resolved").[5]

Here, as in *Cooper*, *Affinity Labs*, and *Xerox*, Plaintiffs' businesses include licensing and enforcement of their patented technologies, which would be severely hindered by a protracted stay. Three of the five Patents-in-Suit expire within the next five years—well before the reexamination proceedings are likely to be completed. Under such circumstances, the severe prejudice to Plaintiffs' prospective ability to license the Patents-in-Suit weighs against a stay.

Indeed, Defendants' concession that the PTO grants 92% of all *ex parte* reexamination requests and 95% of all *inter partes* reexamination requests—and issues office actions rejecting claims in nearly every instance—actually ***confirms*** the prejudice Plaintiffs will suffer if a stay is granted at this stage. Taking Defendants' argument to its logical conclusion, the virtual certainty that a reexamination request will be granted and that the PTO will reject claims would mandate that all patent cases be stayed for years whenever a savvy defendant files a request for reexamination. No doubt, "the [reexamination] procedure is subject to inequity, if not manipulation and abuse, through the delays that are inherent in PTO activity," *Fresenius USA*, 582 F.3d at 1305, and any alleged infringers' ability to obtain a lengthy stay of litigation upon

---

[5] This Court's recent order in *Xerox v. Google*—cited by Defendants—acknowledges the prejudice to licensing patentees of prolonged reexamination stays:

> The plaintiff's rights also will be hindered during the pendency of a stay. Plaintiff represents that its business includes the development of technology which it subsequently tried to license and the cloud of reexamination but also the inability, if it were to happen, to get the case fully resolved at a trial, which would be the result of a stay, would hinder the plaintiff's efforts to license the technology, reducing unfairly in these circumstances its business interests.

D.I. 136 at 28, *Xerox Corp. v. Google, Inc.*, No. 10-136-LPS (D. Del. Feb. 28, 2011) (Modi Decl., Ex. O).

filing (and virtually automatic grant) of a reexamination request imposes unique prejudice on Plaintiffs—whose business relies heavily on licensing of patented technologies and enforcement of those rights.  The prospect of such abuse and manipulation of the reexamination process therefore weighs heavily against the grant of a stay in this case.

**c)**   **A Stay Here Could Prejudice Plaintiffs' Ability To Prove Infringement Once Litigation Resumes.**

If stayed until reexaminations are complete, this litigation likely will not resume for years.  As this Court noted in *Cooper* and *Xerox*, given the early stage of reexamination and the lengthy process to completion, "[r]esuming [a] litigation after a protracted stay would likely raise issues with stale evidence, faded memories, and lost documents."  *Cooper*, 2010 WL 5140573, at *4; Modi Decl., Ex. O at 27.

Indeed, Defendants claimed in their respective transfer motions that much of the evidence in this case lies with Defendants' employees and other witnesses responsible for the design and development of the accused products.  After a lengthy stay, those witnesses' memories will inevitably fade and then will likely be difficult to locate.  *Cooper*, 2010 WL 5140573, at *4.  In addition, as in *Cooper* and *Xerox*, infringement here will "depend to some extent on how Defendants' accused products and services function today, which will be harder to prove years from now."  *Id.*  The risk of stale evidence presents a particular concern in this case, which concerns rapidly evolving technology.  *See* Modi Decl., Ex. O at 27 ("Given that the technology here is a computer technology, I think that any delay hurts the plaintiff even more give[n] that the defendants' products may very rapidly change, which could make it that much harder to prove what they looked like at a particular time.").  A stay would therefore unfairly prejudice Plaintiffs' ability to present infringement proof.

**d)**   **Defendants Will Suffer No Hardship In The Absence Of A Stay.**

Generally, the party seeking a stay must make a "special showing" of hardship or inequity in the absence of a stay.  *St. Clair Intellectual Prop. Consultants, Inc. v. Fujifilm Holding Corp.*, No. 08-373-JJF-LPS, 2009 WL 192457, at *2 (D. Del. Jan. 27, 2009).  While not

12

fatal, failure to articulate such clear hardship or inequity weighs against a stay. *Cooper*, 2010 WL 5149351, at *2. Added cost incurred in proceeding with the litigation does not constitute clear hardship or inequity. *Id.* at *2 n.1.

Here, Defendants fail to demonstrate that denial of a stay will pose clear hardship or inequity. Nor can they. Many of the matters on which Defendants bear the burden of proof—including invalidity due to anticipation or obviousness—do not grow more difficult to prove with the passage of time because such defenses are based on prior art references, which do not change. *Id.* at *4. Delay will therefore work substantial prejudice on Plaintiffs without much, if any, corresponding impact on Defendants.

### B.    A Stay Here Will Not Simplify The Issues In The Case.

Defendants argue that staying this case until the reexaminations are completed—*i.e.*, for up to eight years—will promote judicial efficiency and streamline the pending litigation. Those predictions are pure speculation. This action involves numerous disputes related to the Patents-in-Suit, many of which will not be addressed or resolved in the reexaminations. Even if a reasonable possibility of simplification exists, it remains nearly certain that any such simplification will not occur for many years. This factor therefore weighs against a stay.

### 1.    Any Assertion That Reexamination Will Simplify The Issues Is Pure Speculation.

Defendants argue for a stay in this case because "a number of the asserted patent claims have already undergone considerable substantive modifications in the reexamination proceedings" and that subsequent proceedings "will likely result in similar rejections." (D.I. 80 at 1-2) That assertion is false. Plaintiff Intellectual Ventures I LLC traversed the rejection of claims of the '669 patent claims without amending a single claim. (Modi Decl., Ex. G) Intellectual Ventures II LLC traversed the rejection of all but three claims of the '646 patent. (Modi Decl., Ex. F) Plaintiffs have not yet had an opportunity to respond to the office action pending in the reexamination of the '087 patent, and the PTO has not even issued an office action regarding the '325 patent or ordered reexamination of the '808 patent. (Modi Decl., Exs.

13

H, I, L)  Thus, contrary to Defendants' assertion, ***only three of the ninety-eight*** original claims in the Patents-in-Suit have been modified in any way.

Moreover, Defendants' conjecture that reexamination proceedings will result in similar future rejections—based entirely on PTO statistics—deserves no weight.  As this and other Courts have noted, the notion that a reexamination will result in all, or even any, relevant claims being cancelled is purely speculative and does not weigh in favor of a stay.  *See, e.g., Hoechst Celanese Corp. v. BP Chems. Ltd.*, 78 F.3d 1575, 1584 (Fed. Cir. 1996) ("The grant of a request for reexamination . . . does not establish a likelihood of patent invalidity."); *Power Integrations Inc. v. Fairchild Semiconductor Int'l, Inc.*, Civ. No. 08-309-JJF-LPS, 2008 WL 5335400, at *2 (D. Del. Dec. 19, 2008) ("No one can predict the outcome or the timing of [reexamination] proceedings."); *Tesco Corp. v. Weatherford Int'l, Inc.*, 599 F. Supp. 2d 848, 853 (S.D. Tex. 2009) ("the speculative nature of which claims will survive reexamination reduces the weight of this factor").  Indeed, as outlined above, the fact that the PTO grants 92% of all *ex parte* reexamination requests and 95% of all *inter partes* reexamination requests—and issues office actions in nearly every instance where it orders reexamination—illustrates the lack of any predictive value and the prejudice Plaintiffs suffer when stays are granted at such an early stage of reexamination.

### 2.   Unlike The PTO, This Court Can Resolve All Disputed Issues In A Single Forum.

This case presents numerous issues with respect to the Patents-in-Suit that cannot and will not be resolved by the PTO in reexamination.  All Defendants that have answered Plaintiffs' amended complaint dispute infringement and have raised numerous counterclaims and defenses, including invalidity under 35 U.S.C. §§ 101, 102, 103, 112, 116, 132, and 251, notice under 35 U.S.C. § 287, and the equitable defenses of estoppel and laches.  (*See* D.I. 25 at 8-11, D.I. 27 at 7-10, D.I. 29 at 9-13, D.I. 31 at 8-12)  As part of claims recently transferred to this Court, Xilinx has also contested ownership and standing to enforce four of the Patents-in-Suit.  (D.I. 1, *Xilinx, Inc. v. Intellectual Ventures I LLC, et al.*, No. 1:11-cv-666-LPS)

14

This Court can address all of those issues in one forum. *See Cooper*, 2010 WL 5140573, at *2. By contrast, reexamination will address only validity of the claims of the Patents-in-Suit under 35 U.S.C. §§ 102 and 103. *Id.* Reexamination will therefore not resolve all of the issues raised in this litigation and will produce no efficiency. *See Belden*, 2010 WL 3522327, at *2 ("[A] stay is more appropriate when the only issues left for trial completely overlap with those typically resolved upon reexamination" but is "not favored when infringement, validity under 35 U.S.C. § 112, or other issues outside the purview of reexamination remain to be tried."). Indeed, upon the rendering of a final decision in this litigation—which empirically will occur well before the conclusion of the reexaminations—the PTO will be barred from maintaining an *inter partes* reexamination concerning issues that Defendants raised, or could have raised, with respect to any adjudicated claims. 35 U.S.C. § 317(b). Proceedings in this Court will thereby moot those reexaminations. *See Life Techs. Corp.*, 2010 WL 2348737, at *2 (D. Del. June 7, 2010) (judicial waste of resources "is highly unlikely to happen because [of] 35 U.S.C. § 317(b), which is applicable to *inter-partes* reexaminations, and which mandates that if [defendant] fails to prove that [plaintiff's] patent claims are invalid in this Court, that result will be binding in the reexaminations . . . [and] it is a near certainty that there will be a final decision (*i.e.* through appeal) in this action before there is such a decision in the reexaminations which are likely to take 6.5 to 8 years to reach a final decision.").

Moreover, this Court can address the entire universe of purported prior art, whereas the PTO cannot. Reexaminations concern only prior patents or printed publications, not prior products or systems. 35 U.S.C. §§ 301, 311. Defendants here concede that they intend to rely "in part" on the prior art references submitted to the PTO in the reexamination proceedings. (D.I. 80 at 6-7) Thus, even if the PTO ultimately rejects the anticipation and obviousness challenges raised in the reexamination proceedings, Defendants will conceivably remain free to raise additional invalidity theories when the litigation resumes.[6]

---

[6] Indeed, Defendants suggest they will rely on the same art in this Court, ***even if*** the reexaminations are unsuccessful. (D.I. 80 at 6-7)

Finally, even if the reexamination proceedings could conceivably simplify this litigation, any such simplification would take years to materialize. "[R]eexaminations . . . are likely to take 6.5 to 8 years to reach a final decision." *Life Techs. Corp.*, 2010 WL 2348737, at *2; Modi Decl., Ex. O at 23-24 ("I think that there is a reasonable possibility of simplification, but there is also a near certainty that it will take quite a long number of years before that will occur.") (denying motion to stay). By contrast, this Court can resolve issues concerning validity of the Patents-in-Suit, including issues the PTO cannot consider, all well before the reexamination proceedings could possibly be substantially completed. The prospect of simplifying issues for litigation therefore weighs against a stay.

**C.     This Litigation Has Advanced Relative To The Reexaminations, Which Are Far From Being "Substantially Completed."**

Defendants suggest that a stay is warranted because no scheduling conference or trial date has been set in this case. But they conveniently ignore the underlying cause—their repeated (and unsuccessful) attempts to undermine Plaintiffs' choice of forum. This case has been ready to proceed against Altera, Lattice, and Microsemi for months. Once Xilinx finally answers the February 15, 2011 amended complaint, the case will proceed into discovery and claim construction. Only Defendants' own dilatory motion practice has prevented this case from already advancing through a scheduling conference and into discovery. Indeed, discovery has commenced in both of the actions filed by Plaintiffs concurrently with this action, and trial has been set for March 2013 (27 months from filing) in one of the cases. *See* D.I. 30, *Intellectual Ventures I LLC v. Hynix Semiconductor Inc., et al.*, No. 1:10-cv-1066-SLR-MPT (D. Del. May 9, 2011) (Modi Decl., Ex. S); D.I. 119, *Intellectual Ventures I LLC v. Check Point Software Techs. Ltd., et al.*, No. 1:10-cv-1067-LPS (D. Del. Aug. 16, 2011) (Modi Decl., Ex. T). Notably, in the *Check Point* action, this Court denied Defendants' motion to transfer on June 22, 2011 and ordered a Rule 16 scheduling conference shortly thereafter. D.I. 95, 109, *Intellectual Ventures I LLC v. Check Point Software Techs. Ltd., et al.*, No. 1:10-cv-1067-LPS. A *Markman* hearing has been scheduled for August 24, 2012 (20 months from the initial complaint). (Modi Decl., Ex. T)

16

By contrast, the pending reexamination proceedings—one filed mere days before Defendants' request for a stay—are truly in their infancy and are certain to take many more years to complete. *See Belden*, 2010 WL 3522327, at *3 ("[O]nly those reexamination proceedings that have been ***substantially completed*** will weigh in favor of a stay.") (emphasis added). As outlined above, the PTO's grant of reexamination and subsequent office action rejecting claims is virtually automatic. None of the reexaminations has progressed past that automatic stage— *i.e.*, to a second office action. [7] None of the claims of any of the Patents-in-Suit has been finally rejected or cancelled. To run their full course, reexamination proceedings average six to eight years to completion. On the other hand, this Court can reach a final determination on the merits well before the reexamination proceedings even complete the PTO review stage. And, as explained above, this Court's final decision will moot the pending *inter partes* reexaminations. 35 U.S.C. § 317(b); *Life Techs. Corp.*, 2010 WL 2348737, at *2.

In summary, Defendants' attempts to avoid Plaintiffs' claims in this Court have failed for nine months. This Court and the parties have already invested substantial time and resources litigating venue and related disputes. This case is ready to proceed and will reach a final determination far earlier than any of the pending reexaminations. Defendants' motion for stay should be denied.

## V.    CONCLUSION

For the reasons set forth above, Plaintiffs respectfully request that the Court deny the Defendants' Motion to Stay Litigation.

---

[7] In *Belden*, the PTO rejected every claim of seven of plaintiff's eight patents-in-suit during reexamination and issued an Action Closing Prosecution ("ACP") in six of those reexamination proceedings. *Id.* at *1. The reexamination proceedings in *Belden* were therefore significantly advanced compared to the reexamination proceedings at issue here. But as Judge Robinson explained, the PTO had not issued a Right of Appeal Notice ("RAN") in any of the reexamination proceedings, and the average pendency between receiving a notice of appeal and, subsequently, an appellate decision from the BPAI is roughly equivalent to the pendency of the underlying reexamination by the PTO. *Id.* at *3; *see also* Modi Decl., Ex. R. The Court therefore denied defendants' motion to stay, concluding that "the docketing of the reexamination appeal serves as a minimal benchmark that would weigh in favor of a stay." *Id.*

DATED:  August 25, 2011                    Respectfully submitted,

                                           /s/ Brian E. Farnan
                                           Brian E. Farnan (Bar No. 4089)
                                           Farnan LLP
                                           919 North Market Street
                                           12th Floor
                                           Wilmington, DE 19801
                                           (302) 777-0300
                                           (302) 777-0301
                                           bfarnan@farnanlaw.com


                                           John M. Desmarais (admitted *pro hac vice*)
                                           Michael P. Stadnick (admitted *pro hac vice*)
                                           DESMARAIS LLP
                                           230 Park Avenue
                                           New York, NY 10169
                                           (212) 351-3400
                                           (212) 351-3401
                                           jdesmarais@desmaraisllp.com
                                           mstadnick@desmaraisllp.com

                                           *Counsel for Plaintiffs*

18