IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| INTELLECTUAL VENTURES I LLC and INTELLECTUAL VENTURES II LLC, | ) ) ) |
| Plaintiffs, | ) ) ) C.A. No. 10-1065 (LPS) |
| v. | ) ) |
| ALTERA CORPORATION, MICROSEMI CORPORATION, LATTICE SEMICONDUCTOR CORPORATION and XILINX, INC., | ) ) ) ) ) |
| Defendants. | ) |

**DEFENDANTS' REPLY BRIEF IN SUPPORT OF THEIR MOTION TO STAY LITIGATION PENDING CONCLUSION OF <u>PTO REEXAMINATION OF THE PATENTS-IN-SUIT</u>**

OF COUNSEL:

William F. Lee
Lauren B. Fletcher
WILMER CUTLER PICKERING HALE AND DORR LLP
60 State Street
Boston, MA  02109
(617) 526-6000

Mark D. Selwyn
Joseph H. Haag
Evelyn C. Mak
WILMER CUTLER PICKERING HALE AND DORR LLP
950 Page Mill Road
Palo Alto, CA  94304
(650) 858-6000

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jack B. Blumenfeld (#1014)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899-1347
(302) 658-9200
jblumenfeld@mnat.com

*Attorneys for Altera Corporation*

| | |
|---|---|
| OF COUNSEL: | RICHARDS, LAYTON & FINGER, P.A. |
| | Frederick L. Cottrell (#2555) |
| Mark A. Samuels | Anne Shea Gaza (#4093) |
| Brian Berliner | Jason James Rawnsley (#5379) |
| Yixin Zhang | 920 North King Street |
| O'MELVENY & MYERS LLP | Wilmington, DE  19801 |
| 400 South Hope Street – Suite 1800 | (302) 651-7700 |
| Los Angeles, CA  90071 | cottrell@rlf.com |
| (213) 430-6000 | gaza@rlf.com |
| | rawnsley@rlf.com |
| Michael Myers | |
| O'MELVENY & MYERS LLP | *Attorneys for Microsemi Corporation* |
| 610 Newport Center Drive – 17th Floor | |
| Newport Beach, CA  92660 | |
| (949) 823-6900 | |
| | |
| OF COUNSEL: | |
| | |
| Alan H. Blankenheimer | ASHBY & GEDDES |
| Jo Dale Carothers | Steven J. Balick (#2114) |
| COVINGTON & BURLING LLP | Tiffany Geyer Lydon (#3950) |
| 9191 Towne Centre Drive | Andrew C. Mayo (#5207) |
| Sixth Floor | 500 Delaware Avenue – 8th Floor |
| San Diego, CA  92122-1225 | P.O. Box 1150 |
| (858) 678-1800 | Wilmington, DE  19899 |
| | sbalick@ashby-geddes.com |
| Robert T. Haslam | tlydon@ashby-geddes.com |
| Kurt G. Calia | amayo@ashby-geddes.com |
| COVINGTON & BURLING LLP | |
| 333 Twin Dolphin Drive | *Attorneys for Lattice Semiconductor* |
| Suite 700 | *Corporation* |
| Redwood Shores, CA  94065-1418 | |
| (650) 632-4700 | |
| | |
| OF COUNSEL | |
| | |
| Behrooz Shariati | MORRIS, NICHOLS, ARSHT & TUNNELL LLP |
| Laurie Charrington | Karen Jacobs Louden (#2881) |
| JONES DAY | Richard J. Bauer (#4828) |
| 1755 Embarcadero Road | 1201 North Market Street |
| Palo Alto, CA  94303 | P.O. Box 1347 |
| (650) 739-3939 | Wilmington, DE  19899-1347 |
| | (302) 658-9200 |
| | klouden@mnat.com |
| | rbauer@mnat.com |
| | *Attorneys for Xilinx, Inc.* |

September 6, 2011

**TABLE OF CONTENTS**

**Page**

I.    INTRODUCTION ........................................................................................................... 1

II.    ARGUMENT ................................................................................................................... 2

    A.    A Stay Would Promote Judicial Efficiency ......................................................... 2

        1.    There is already good reason to believe that claims of the patents-in-suit will be canceled and/or narrowed ............................................. 2
        2.    It would be inefficient for the Court, and unfair to Defendants, to chase the moving target created by the ongoing reexaminations. ....................... 4
        3.    IV's exaggerated time estimates provide no reason to deny a stay. ............ 5

    B.    Plaintiffs Fail To Articulate Any Prejudice Beyond That Generally Associated With A Delay In Proceedings. ................................................................... 7

        1.    A stay will not affect IV's licensing activity. .......................................... 7
        2.    IV does not identify any specific risk of evidentiary prejudice. ................ 8
        3.    Although Defendants are not required to make a special showing of hardship, they will be prejudiced absent a stay. ......................................... 9

    C.    Defendants Have Not Engaged In A "Campaign To Obtain An Unjust Tactical Advantage." ........................................................................................................... 9

III.    CONCLUSION .............................................................................................................. 10

## TABLE OF AUTHORITIES

**Page**

Federal Cases

*Life Techs. Corp. v. Illumina, Inc.*
  2010 WL 2348737 (D. Del. June 7, 2010) ...................................................................................6

*Belden Techs. Inc. v. Superior Essex Comm. LP*
  2010 WL 3522327 (D. Del. Sept 2, 2010)....................................................................................6

*Oracle Corp. v. Parallel Networks, LLP*
  2010 WL 3613851 (D. Del. Sept. 8, 2010)...................................................................................6

*Alltech, Inc. v. Agra-Partners, Ltd.*
  2007 WL 3120085 (W.D. Ky. Oct. 23, 2007) ..............................................................................9

*Cooper Notification, Inc. v. Twitter, Inc.*
  2010 WL 5140573 (D. Del. Dec. 13, 2010) ....................................................................... 3, 6, 7–9

*Enhanced Sec'y Res. LLC v. Cisco Sys. Inc.*
  2010 WL 2573925 (D. Del. June 25, 2010) .................................................................................7

*Gioello Enters. Ltd. v. Mattel, Inc.*
  2001 WL 125340 (D. Del. Jan. 29, 2001) .................................................................................7, 8

*Hoechst Celanese Corp. v. BP Chems. Ltd.*
  78 F.3d 1575 (Fed. Cir. 1996) ......................................................................................................3

*Howmedica Osteonics Corp. v. Tranquil Prospects, Ltd.*
  401 F.3d 1367 (Fed. Cir. 2005)....................................................................................................5

*Microsoft Corp. v. TiVo Inc.*
  2011 WL 1748428 (N.D. Cal. May 6, 2011)................................................................................5

*Pegasus Dev. Corp. v. DirecTV Inc.*
  2003 WL 21105073 (D. Del. May 14, 2003) .................................................................... 4, 5, 10

*Power Integrations Inc. v. Fairchild Semiconductor Int'l, Inc.*
  2008 WL 5335400 (D. Del. Dec. 19, 2008) .................................................................................3

*Progressive Cas. Ins. Co. v. Allstate Ins. Co.*
  2011 WL 3322767 (N.D. Ohio Aug. 2, 2011)..............................................................................4

*Sorensen Research & Dev. Trust v. Black & Decker Corp.*
  2007 WL 2696590 (S.D. Cal. Sept. 10, 2007)..............................................................................8

*St. Clair Intell. Prop. Consultants, Inc. v. Fujifilm Holding Corp.*
  2009 WL 192457 (D. Del. Jan. 27, 2009) ....................................................................................9

*Tesco Corp. v. Weatherford Int'l Inc.*
  599 F. Supp. 2d 848 (S.D. Tex. 2009)..........................................................................................3

## TABLE OF AUTHORITIES

**Page**

*Wall Corp. v. BondDesk Group LLC*
  2009 WL 528564 (D. Del. Feb. 24, 2009)......................................................................3, 10

Federal Statutes

35 U.S.C. § 317(b) ...............................................................................................................5

## I. INTRODUCTION

Attempting to downplay the numerous efficiencies that would result from a stay, Plaintiffs (collectively, "IV") repeatedly gloss over and mischaracterize what has occurred thus far in the rapidly-proceeding ongoing reexaminations. The reality is that IV is seeking to use the reexaminations to re-write the scope of its purported inventions by introducing large numbers of new claims, by rewriting various existing claims, and by offering extensive argument to backdoor new limitations into the claims to save them from rejection.

The facts are as follows. Three of the five patents asserted by IV currently stand rejected *in their entirety*. A fourth is in reexamination, and the fifth is awaiting decision on a reexamination request. In an attempt to salvage its patents, IV has already proposed thirty-eight new claims, amended multiple existing ones, and petitioned the PTO for narrowing constructions of numerous others. There can be little doubt that many of IV's patent claims will be amended or canceled as a result of reexamination.

The prejudice to Defendants from proceeding to litigate the existing claims under these circumstances is substantial. Not only does the prospect exist of tremendous wasted resources, but Defendants will face a constantly moving target in the form of potential new claims, amended claims, and an evolving prosecution history. In contrast, reexamination is almost certain to simplify issues for discovery and trial. IV has failed to identify any specific prejudice arising from a stay that remotely justifies the burden of duplicative and wasteful litigation.

Instead of squarely addressing these points, IV suggests that by bringing a motion to transfer at the outset of the litigation followed by the present motion, Defendants have engaged in a "tactical" strategy of delay. That charge is incorrect. First, Defendants' motion to transfer is amply supported by the § 1404(a) factors. Second, Defendants moved for a stay as soon as the PTO commenced reexaminations on all but one patent-in-suit, the Office Actions reasonably

1

presaged the likely outcomes of reexamination, and IV's responses to the Office Actions made clear that waiting for resolution of the reexaminations would avoid wasted litigation. Furthermore, IV's own record of inaction undermines its professed sense of urgency. It has never taken even the modest step of requesting a Rule 26(f) conference with Defendants.

In sum, IV's accusations are entirely without merit, and its rhetoric should not deflect the Court from the efficiency interests that militate in favor of a stay.

## II. ARGUMENT

### A. A Stay Would Promote Judicial Efficiency.

#### 1. There is already good reason to believe that claims of the patents-in-suit will be canceled and/or narrowed.

A stay is appropriate because the claims of the five patents-in-suit—assuming any survive reexamination at all—are overwhelmingly likely to be altered. This proposition is not mere "speculation" as IV asserts (D.I. 83 ("IV Opp.") at 13), but is supported by actions that both IV and the PTO have already taken in reexamination: Every claim of three of the five patents at issue currently stands rejected. (D.I. 81 ("Mock Decl.") Exs. A, B, C.) Indeed, every Office Action issued to date has resulted in the rejection of every pending claim.[1] And even as it wrongly accuses Defendants of "false[ly]" characterizing the reexaminations (IV Opp. at 13), IV conveniently fails to inform the Court that it has proposed 38 new claims in the '646 and '669

---

[1] IV cites several cases purporting to establish that the ultimate outcome of a reexamination is inherently "speculative." (IV Opp. at 14.) But IV cites no case addressing the situation presented here, where (i) reexamination requests have been made as to every patent-in-suit, and (ii) the PTO has, to date, rejected every single claim presented to it. *Hoechst Celanese Corp. v. BP Chems. Ltd.*, 78 F.3d 1575, 1584 (Fed. Cir. 1996) (merely stating that "the grant . . . of a request for reexamination is not probative of unpatentability"); *Power Integrations Inc. v. Fairchild Semiconductor Int'l, Inc.*, 2008 WL 5335400, at *2 (D. Del. Dec. 19, 2008) (PTO denied reexamination request as to an asserted claim of one patent-in-suit); *Tesco Corp. v. Weatherford Int'l Inc.*, 599 F. Supp. 2d 848, 849 (S.D. Tex. 2009) (initial Office Action *confirmed* 12 claims).

patents in an effort to salvage its patents in the face of these rejections.[2] (*See* Mock Decl. Exs. A, B.) Thus, there can be no doubt that a stay would serve judicial efficiency by preventing the Court and the parties from wasting time addressing claims that will not survive reexamination in their present form if, contrary to present indications, they survive at all. *See, e.g., Wall Corp. v. BondDesk Group LLC*, 2009 WL 528564, at *1 (D. Del. Feb. 24, 2009) (granting stay in light of initial Office Action rejecting all claims).

Aside from dismissing what has actually happened as mere speculation, IV's only other response is to boast that it has "traversed" the PTO's rejections. (IV Opp. at 13–14.) This is hardly an achievement—"traversed" simply means that IV has *presented* arguments to the PTO as to why it should resurrect the rejected claims. There is nothing exceptional about IV's attempt to "traverse" the rejections nor any reason to believe that it will be successful. Moreover, IV's arguments consist of attempts to narrow the rejected claims substantially, demonstrating that the scope of the asserted claims remains in flux. None of IV's arguments has yet succeeded, and the PTO has given no indication that any of them will.

The PTO's rejections—and IV's proposal to add dozens of new claims in response—also confirm the conclusion already suggested by PTO statistics. In *inter partes* reexaminations, once the PTO finds a substantial new question of patentability, as it has done here, the claims are altered or canceled 87% of the time, with all claims canceled or disclaimed 44% of the time. (D.I. 80 ("Opening Br.") at 6; Mock Decl. Ex. G.) In *ex parte* reexaminations, claims are altered or canceled 77% of the time, with all claims canceled 11% of the time. (Opening Br. at 6; Mock Decl. Ex. F.) IV dismisses these statistics as "conjecture" (Opp. at 14), while simultaneously

---

[2] In both *Cooper* and *Xerox*, unlike here, the patentee agreed not to amend any claims during reexamination. *Cooper Notification, Inc. v. Twitter, Inc.,* 2010 WL 5140573, at *2–3 (D. Del. Dec. 13, 2010); *Xerox Corp. v. Google, Inc.* (D. Del. Feb. 28, 2011) (D.I. 84 ("Modi Decl.") Ex. O, at 21) Not only has IV made no such agreement, it has in fact amended and added claims.

3

relying on PTO statistics to "confirm[]" the purported prejudice from a stay. (*Id*. at 11). IV cannot have it both ways—either the PTO statistics are relevant to this motion, or they are not.

The fact that the PTO has not yet rejected the claims of two of the five patents-in-suit does not affect the analysis. The fourth patent in reexamination (the '325 patent) is similar to the '087 patent, all claims of which have been rejected. Thus, the only signal the PTO has yet given is consistent with the likelihood that it will reject the '325 patent claims as well. *See Progressive Cas. Ins. v. Allstate Ins.*, 2011 WL 3322767, at \*2 (N.D. Ohio Aug. 2, 2011) (granting motion to stay after PTO canceled claims of a related patent in reexamination). It is also immaterial that the PTO has not yet acted on the reexamination request for the fifth patent— the '808 patent. Courts can and do stay litigations when fewer than all of the patents in suit are in reexamination. *See, e.g., Pegasus Dev. Corp. v. DirecTV Inc.*, 2003 WL 21105073, at \*1 (D. Del. May 14, 2003) (granting stay when PTO had not yet granted reexamination for one of the two asserted patents).

### 2. It would be inefficient for the Court, and unfair to Defendants, to chase the moving target created by the ongoing reexaminations.

IV asserts that it would be more efficient to proceed with this litigation now, despite the ongoing reexaminations, because only this Court can address all possible invalidity arguments. (IV Opp. at 14–15.) This assertion overlooks several key points.

First, the patents IV proposes to litigate now *are already out-of-date*. All the new and amended claims introduced by IV will not be before the Court until the reexaminations conclude (to say nothing of any further changes to the claims that will occur). IV does not even attempt to explain why it would be efficient for the Court or the parties to spend time now litigating patents whose claims IV has already sought to alter in reexamination.

Second, it is immaterial that Defendants may raise grounds for invalidity in this litigation other than those at issue in the reexamination proceedings. (IV Opp. at 14, 15.) There would, of

4

course, be no need for the Court to consider these additional bases for invalidity as to claims that are canceled or amended by the PTO.[3]

Third, the reexaminations will aid the Court in considering issues aside from anticipation and obviousness, such as claim construction. *See Pegasus*, 2003 WL 21105073, at *1–2 (granting stay because, *inter alia*, reexamination will serve the purpose of "narrowing of the issues" concerning "claim construction, enablement, adequacy of written description, indefiniteness, and inequitable conduct"). Even if all five patents-in-suit somehow survive reexamination without any changes to the claims, a stay would still have been merited because "this action will be shaped by the richer prosecution history available to inform the claim construction process." *Microsoft Corp. v. TiVo Inc.*, 2011 WL 1748428, at *4 (N.D. Cal. May 6, 2011) (internal quotation marks and citation omitted). Statements during reexamination constitute intrinsic evidence that should be considered in the claim construction and infringement analyses. *See, e.g., Howmedica Osteonics Corp. v. Tranquil Prospects, Ltd.*, 401 F.3d 1367, 1372–73 (Fed. Cir. 2005). Nevertheless, IV seeks not only to lock this Court and the parties into adjudicating claims that likely will not survive reexamination in their present form, but to foreclose the benefit of additional prosecution history—which IV rightly fears will jeopardize its case and narrow any claims that do emerge.

### 3. IV's exaggerated time estimates provide no reason to deny a stay.

IV contends that a stay should be denied because this litigation would conclude more quickly than the reexaminations, which IV asserts will take 6 to 8 years. (IV Opp. at 10, 16.) This is wrong for numerous reasons. First, IV ignores that these reexaminations are progressing

---

[3] IV also asserts that denial of Defendants' motion to stay would not lead to judicial inefficiency because a judgment in this Court would moot the *inter partes* reexaminations. (IV Opp. at 15 (citing 35 U.S.C. § 317(b).) But section 317(b) does not apply to the three *ex parte* reexaminations, the results of which could still conflict with the judgment in this Court.

5

very rapidly. Two of the three initial Office Actions issued on the *same day* that reexamination was granted. (*See* Opening Br. at 3–4 (referring to the '646 and '669 reexaminations).) The third Office Action, rejecting all claims of the '087 patent, issued four months after reexamination was granted. (*Id.* at 4.) Second, as Defendants explained in their opening brief, the PTO provides expedited treatment for inter partes reexaminations of patents that are the subject of litigation; by contrast, the statistics cited by IV incorporate all *inter partes* reexaminations, including those not in litigation. (*Id.* at 9.) Third, no substantive proceedings have yet taken place in this Court, no discovery has been taken, and no trial date has been set. Indeed, in each of the cases upon which IV relies, the litigation was well advanced.[4] Fourth, IV pads its "6 to 8 years" estimate with time for two levels of appeals, but ignores the possibility of an appeal in *this* case which could add a year or more to the time to resolve this litigation.[5] (IV Opp. at 10, 16.) Fifth, IV's time estimates are misleading in another sense—the statistics IV proffers count the time from filing of the request to disposition. (*See* Modi Decl. Ex. P ¶ 7; Ex. Q ¶ 6.) Here, as noted above, Office Actions have already issued in three of the reexaminations.

---

[4] In *Cooper* (IV Opp. at 15), unlike here, the parties and the Court had already devoted "significant resources . . . to formulating a schedule." 2010 WL 5140573, at *3. In *Belden Techs. Inc. v. Superior Essex Comm. LP* (IV Opp. at 15), the defendant requested stay *thirteen days before trial*, and long after the reexaminations were originally requested. 2010 WL 3522327, at *2 (D. Del. Sept 2, 2010). In *Oracle Corp. v. Parallel Networks, LLP* (IV Opp. at 8 n.2), "[f]act and expert discovery [were] completed for two years. . . . Claim construction and summary judgment have been completed and the court's opinion has been vetted through the Federal Circuit." 2010 WL 3613851, at *2 (D. Del. Sept. 8, 2010). Finally, in *Life Techs. Corp. v. Illumina, Inc.* (IV Opp. at 15, 16), discovery was underway, a trial date set, and the movant requested a litigation stay as to only four of the seven patents at issue. 2010 WL 2348737, at *3 (D. Del. June 7, 2010). Thus, unlike here, granting the stay would *itself* have led to duplicative proceedings in the district court (one proceeding for the non-stayed patents, and then a second proceeding after reexamination for the remaining patents).

[5] *See* Median Time to Disposition in Cases Terminated After Hearing or Submission, *at* http://www.cafc.uscourts.gov/images/stories/the-court/statistics/Median_Dispositon_Time_for_Cases_Terminated_after_Hearing_or_Submission_Detailed_Table_of_Data_2001-2010.pdf (last visited August 30, 2011).

6

### B. Plaintiffs Fail To Articulate Any Prejudice Beyond That Generally Associated With A Delay In Proceedings.

IV claims two sources of "undue prejudice" that would be caused by a stay: an alleged adverse impact on its licensing activities and the prospect of "stale evidence." (IV Opp. at 9-10.) Both arguments are inconsistent with the facts and unsupported by law.

#### 1. A stay will not affect IV's licensing activity.

IV's claim that a stay will adversely affect its ability to license the patents-in-suit to companies other than Defendants is pure conjecture. (IV Opp. at 9); *See Enhanced Sec'y Res. LLC v. Cisco Sys. Inc.*, 2010 WL 2573925, at *3 (D. Del. June 25, 2010) ("Plaintiffs' contention that a stay pending reexamination will prejudice their rights to enforce the exclusivity of the [asserted] patents is largely speculative . . ."). IV does not suggest, much less present evidence to demonstrate, that it is otherwise trying to license the patents-in-suit.[6] *See Gioello Enters. Ltd. v. Mattel, Inc.*, 2001 WL 125340, at *2 (D. Del. Jan. 29, 2001) (issuing stay where plaintiffs were "not selling or actively licensing goods or services" related to the asserted patent). That is no surprise, because Defendants collectively constitute the overwhelming majority of the market for the accused Field Programmable Gate Array ("FPGA") products.

Moreover, IV has failed to establish that the impact of a stay on its licensing activities would constitute the requisite "undue prejudice." The two Delaware cases that IV cites in support of its claim of prejudice present very different circumstances. In both cases, the plaintiffs developed and were apparently actively seeking to license the relevant technology, and had stipulated that they would *not* amend the claims under reexamination. *Cooper*, 2010 WL 5149351, at *3; *Xerox*, Modi Decl. Ex O, at 21, 28. Discovery was also at a substantially advanced stage. Cooper, 2010 WL 5149351, at *3; Xerox, Modi Decl. Ex. O, at 26. In addition,

---

[6] IV's (unsupported) assertion that "Plaintiffs and their affiliates do in fact engage in research and technology development" is no reason to deny a stay given that IV has not connected such R&D activity to the technology at issue. (IV Opp. at 10 n.4.)

7

in *Cooper*, contrary to IV's assertion, the parties were competitors and injunctive relief was considered by the court as an available remedy. *Cooper*, 2010 WL 5149351, at *4–5. Because IV does not seek a remedy in this case other than money damages, its "claims of prejudice basically boil down to [its] inconvenience in delaying [any] collection of monetary award." *Sorensen Research & Dev. Trust v. Black & Decker Corp.*, 2007 WL 2696590, at *4 (S.D. Cal. Sept. 10, 2007); *Gioello*, 2001 WL 125340, at *2. Courts consistently hold that such inconvenience can be adequately compensated with damages and prejudgment interest accrued during the stay.[7] *Gioello*, 2001 WL 125340, at *2.

### 2. IV does not identify any specific risk of evidentiary prejudice.

IV further speculates that memories could fade and evidence could be lost during the period of a stay. (IV Opp. at 12.) In support, IV argues that the risk of prejudice is particularly prevalent due to the alleged "rapidly evolving technology" at issue. (*Id.* at 7.) But IV does not point to any "evolving technology" relevant to its infringement claims. To the contrary, the subject matter of the asserted patents, which claim priority dates as early as 1994 and no later than 2001, relate to old technologies. Similarly, IV's assertion that an abnormal amount of evidentiary proof exists exclusively in the minds of witnesses is unfounded. (Id. at 12.) While IV points to Defendants' identification of relevant witnesses in support of its theory, it has failed to set forth any facts unique to this case that would suggest a particular importance of such witness testimony to its infringement claims. Accordingly, "[t]he mere possibility that memories

---

[7] Moreover, it is hard to believe how IV, which boasts it has more than 30,000 patents and patent applications in its portfolio, will be unduly prejudiced by a stay of its licensing activities relating to the five patents in suit. IV's contention also assumes, improbably, that there are other potential licensees who would be willing to take a license while the patents were still in reexamination (and hence while their scope, not to mention their continued existence, remain in doubt), but would otherwise be dissuaded from taking a license merely because this litigation has been stayed.

8

could fade is not enough to outweigh the benefits of staying these proceedings." *Alltech, Inc. v. Agra-Partners, Ltd.*, 2007 WL 3120085, at *2 (W.D. Ky. Oct. 23, 2007).

Beyond those vague and misleading characterizations, IV has failed to articulate any facts to support its conclusion that a stay would present an unusual "risk of stale evidence." (IV Opp. at 12.) All Defendants are preserving documents that describe the design, operation, and structure of the accused products, and will have ample numbers of engineers who can explain them after the period of any stay. IV's sheer speculation about "stale evidence" does not outweigh the efficiency benefits of a stay in the circumstances here.

### 3. Although Defendants are not required to make a special showing of hardship, they will be prejudiced absent a stay.

IV's contention that "Defendants will suffer no hardship" in the absence of a stay disregards not only the substantial burden that will result from proceeding with duplicative and wasteful litigation, but the prejudice to Defendants from having to litigate a moving target. (Supra § B.1; IV Opp. at 12.) In any event, contrary to IV's assertion, Defendants need not make a "special showing" of undue hardship, and any failure to do so does not weigh against a stay where, as here, IV has failed to make a threshold showing that there exists "a fair possibility that the stay . . . will work damage to someone else." *See Cooper*, 2010 WL 5149351, at *2 (quoting *St. Clair Intell. Prop. Consultants, Inc. v. Fujifilm Holding Corp.*, 2009 WL 192457, at *2 (D. Del. Jan. 27, 2009)).

### C. Defendants Have Not Engaged In A "Campaign To Obtain An Unjust Tactical Advantage."

IV repeatedly attacks Defendants' motion as an alleged dilatory strategy aimed at gaining an "unjust tactical advantage," going so far as to accuse Defendants of "abuse and manipulation" of the reexamination process. (IV Opp. at 6, 7–9, 12.) IV's accusation is incorrect, and wholly inconsistent with the procedural record. Defendants filed this motion, and their earlier motion

9

for transfer, before discovery has begun, before a Case Management Conference has been set, and before a pre-trial schedule has issued. Defendants filed this motion promptly after it became evident that the reexaminations were likely to result in rejection (or change) of many or all the asserted patent claims. There is nothing unusual, inappropriate, or "tactical" about such timing.

Nor does the fact that Xilinx submitted the reexamination requests after IV brought suit evidence an "abuse" of the reexamination process. (IV Opp. at 12.) *See, e.g., Pegasus*, 2003 WL 21105073, at *1 (reexamination requests filed three years after plaintiff filed suit); *Wall Corp.*, 2009 WL 528564, at *2; (reexamination request filed six months after plaintiff filed suit). To the contrary, it is IV that is trying to obtain an unjust tactical advantage by pushing forward with litigation on claims rejected by the PTO and already sought to be amended by IV, and by insisting on litigating against Defendants based on a moving target.

Furthermore, in no way have Defendants prevented IV from initiating discovery. IV could have requested a Rule 26(f) Conference and subsequently served discovery upon Defendants. But IV has not done so, and instead blames Defendants for its own lack of initiative. IV's complacency belies its claim that it would be prejudiced by a stay.

## III. CONCLUSION

For the reasons stated in their opening brief and herein, Defendants respectfully request that the Court grant their motion to stay this litigation until the reexamination proceedings for all five asserted patents are concluded.

| | |
|---|---|
| MORRIS, NICHOLS, ARSHT & TUNNELL LLP | RICHARDS, LAYTON & FINGER, P.A. |
| */s/ Jack B. Blumenfeld* | */s/ Frederick L. Cottrell* |
| Jack B. Blumenfeld (#1014)<br>1201 North Market Street<br>P.O. Box 1347<br>Wilmington, DE 19899-1347<br>(302) 658-9200<br>jblumenfeld@mnat.com<br><br>*Attorneys for Altera Corporation* | Frederick L. Cottrell (#2555)<br>Anne Shea Gaza (#4093)<br>Jason James Rawnsley (#5379)<br>920 North King Street<br>Wilmington, DE 19801<br>(302) 651-7700<br>cottrell@rlf.com<br>gaza@rlf.com<br>rawnsley@rlf.com<br><br>*Attorneys for Microsemi Corporation* |
| ASHBY & GEDDES | MORRIS, NICHOLS, ARSHT & TUNNELL LLP |
| */s/ Steven J. Balick* | */s/ Karen Jacobs Louden* |
| Steven J. Balick (#2114)<br>Tiffany Geyer Lydon (#3950)<br>Andrew C. Mayo (#5207)<br>500 Delaware Avenue – 8th Floor<br>P.O. Box 1150<br>Wilmington, DE 19899<br>sbalick@ashby-geddes.com<br>tlydon@ashby-geddes.com<br>amayo@ashby-geddes.com<br><br>*Attorneys for Lattice Semiconductor Corporation* | Karen Jacobs Louden (#2881)<br>Richard J. Bauer (#4828)<br>1201 North Market Street<br>P.O. Box 1347<br>Wilmington, DE 19899-1347<br>(302) 658-9200<br>klouden@mnat.com<br>rbauer@mnat.com<br><br>*Attorneys for Xilinx, Inc.* |

September 6, 2011

## CERTIFICATE OF SERVICE

I hereby certify that on September 6, 2011, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to:

> Brian E. Farnan, Esquire
> FARNAN LLP

I further certify that I caused copies of the foregoing document to be served on September 6, 2011, upon the following in the manner indicated:

Brian E. Farnan, Esquire                                              VIA ELECTRONIC MAIL
FARNAN LLP
919 North Market Street
12th Floor
Wilmington, DE  19801
*Attorneys for Plaintiffs*

John M. Desmarais, Esquire                                            VIA ELECTRONIC MAIL
Michael P. Stadnick, Esquire
DESMARAIS LLP
230 Park Avenue
New York, NY  10169
*Attorneys for Plaintiffs*

*/s/ Jack B. Blumenfeld*

Jack B. Blumenfeld (#1014)