# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

INTELLECTUAL VENTURES I LLC and,  :
INTELLECTUAL VENTURES II LLC,     :
                                  :
      Plaintiffs,            :
                                  :
    v.                       : C.A. No. 10-1065-LPS
                                  :
ALTERA CORPORATION, MICROSEMI,    :
CORPORATION, LATTICE              :          UNSEALED ON
SEMICONDUCTOR CORPORATION and     :          JANUARY 24, 2012
XILINX, INC.                      :
                                  :
      Defendants.            :

## MEMORANDUM OPINION

Brian E. Farnan, Esquire of FARNAN LLP, Wilmington, DE.
John M. Desmarais, Esquire and Michael P. Stadnick, Esquire of DESMARAIS LLP, New York, NY.

    Attorneys for Plaintiffs.


Steven J. Balick, Esquire, Tiffany Geyer Lydon, Esquire, and Andrew C. Mayo, Esquire of ASHBY & GEDDES, Wilmington, Delaware.
Alan Blankenheimer, Esquire and Jo Dale Carothers, Esquire of COVINGTON & BURLING LLP, San Diego, CA.
Robert T. Haslam, Esquire and Kurt G. Calia, Esquire of COVINGTON & BURLING LLP, Redwood Shores, CA.

    Attorneys for Defendant Lattice Semiconductor Corporation.


Jack B. Blumenfeld, Esquire and Rodger D. Smith II, Esquire of MORRIS, NICHOLS, ARSHT & TUNNELL LLP, Wilmington, Delaware.
William F. Lee, Esquire and Lauren B. Fletcher, Esquire of WILMER CUTLER PICKERING HALE & DORR LLP, Boston, MA.
Mark D. Selwyn, Esquire, Joseph H. Haag, Esquire, and Evelyn Mak, Esquire of WILMER CUTLER PICKERING HALE & DORR LLP, Palo Alto, CA.

    Attorneys for Defendant Altera Corporation.

Frederick L. Cottrell III, Esquire and Anne Shea Gaza, Esquire of RICHARDS, LAYTON & FINGER, P.A., Wilmington, Delaware.
Mark A. Samuels, Esquire, Brian Berliner, Esquire, and Yixin Zhang, Esquire of O'MELVENY & MYERS LLP, Los Angeles, CA.
Michael Myers, Esquire of O'MELVENY & MYERS LLP, Newport Beach, CA.

      Attorneys for Defendant Microsemi Corporation.


Karen Jacobs Louden, Esquire and Ramy Hanna, Esquire, of MORRIS, NICHOLS, ARSHT & TUNNELL LLP, Wilmington, DE.
Behrooz Shariati, Esquire, of JONES DAY, Palo Alto, CA.

      Attorneys for Defendant Xilinx, Inc.

January 23, 2012
Wilmington, Delaware



**STARK, U.S. District Judge:**

Pending before the Court are three motions: (i) Defendant Xilinx Inc.'s ("Xilinx") Motion to Dismiss or Transfer in Favor of the First-Filed Action in the United States District Court for the Northern District of California (D.I. 36) ("Xilinx Transfer Motion"); (ii) Defendants Altera Corporation ("Altera"), Microsemi Corporation ("Microsemi"), and Lattice Semiconductor Corporation's ("Lattice") Motion to Transfer Venue to the Northern District of California (D.I. 43) ("Original Defendants' Transfer Motion"); and (iii) Defendant Xilinx's Motion to Dismiss or Consolidate ("Xilinx Motion to Dismiss") (D.I. 91). For the reasons set forth below, the Court will DENY the Xilinx Transfer Motion as well as the Original Defendants' Transfer Motion. The Court will GRANT IN PART the Xilinx Motion to Dismiss by ordering consolidation.[1]

**The Parties**

Plaintiffs, Intellectual Ventures I LLC ("IV I") and Intellectual Ventures II LLC ("IV II," and, collectively with IV I, hereinafter referred to as "Plaintiffs" or "IV"), are limited liability companies organized under the laws of Delaware. (D.I. 1 ¶¶ 1-2) IV's principal place of business is in Bellevue, Washington. (*Id.*) It also has an office in northern California, within the Northern District of California. (D.I. 37 at 3)

Defendant Xilinx is incorporated in Delaware and has its principal place of business in San Jose, California. (D.I. 37 at 3) None of Xilinx's accused products were developed in Delaware. (*Id.*) Xilinx has approximately 3,000 employees worldwide and in 2010 reported revenues of more than $1.8 billion. (D.I. 50 Ex. B)

---

[1] The requests for oral argument are denied. (D.I. 60, 71) The Court's ruling is based on the papers submitted.

Defendant Altera is incorporated in Delaware and has its principal place of business in San Jose, California. (D.I. 44 at 3) Altera has been a Delaware corporation since 1997. (D.I. 63 Ex. C at 46) Altera's allegedly infringing technology was developed outside of Delaware, including in San Jose and Santa Cruz, California as well as outside of the United States. (D.I. 44 at 3-4) Altera has over 2600 employees worldwide, including more than 1100 in the United States. (D.I. 63 Ex. C at 15) In 2010, Altera generated nearly $2 billion in net sales. (*Id.* at 25)

Defendant Microsemi is incorporated in Delaware and has its principal place of business in Irvine, California. (D.I. 44 at 4) Microsemi has been incorporated in Delaware since 1960. (D.I. 63 Ex. H at 4) Microsemi's allegedly infringing technology was developed in Mountain View, California. (D.I. 44 at 3) Microsemi has approximately 1,600 employees in the United States. (D.I. 63 Ex. H at 10) In 2010, Microsemi had net sales in excess of $500 million. (D.I. 63 Ex. H at 6)

Defendant Lattice is incorporated in Delaware and has its principal place of business in Hillsboro, Oregon. (D.I. 44 at 5) Lattice has been a Delaware corporation since 1985. (D.I. 63 Ex. F at 4) Lattice also maintains a significant engineering facility in San Jose, California. (D.I. 44 at 5) The great majority of Lattice's development work on its accused products occurred in either Hillsboro or San Jose, although development on one accused product line is done in a smaller facility in Bethlehem, Pennsylvania. (*Id.*) Lattice employs nearly 750 people worldwide and had revenue in 2010 of approximately $297 million. (D.I. 63 Ex. F at 11, 27)

**Procedural Background**

Plaintiffs initially filed this patent infringement suit against Altera, Microsemi, and Lattice (hereinafter the "Original Defendants") on December 8, 2010. (D.I. 1) ("Complaint")

2

There are five patents-in-suit: U.S. Patent Nos. 5,675,808; 6,993,669; 6,687,325; 6,260,087; and 6,272,646. (*Id.*) IV I or IV II own each of the patents-in-suit. (D.I. 1 ¶¶ 11-20) Generally, IV alleges that Defendants infringe the patents-in-suit by making, using, selling, importing and/or offering for sale certain programmable logic device products. (D.I. 17)

On February 14, 2011, Defendant Xilinx filed a declaratory judgment action in the Northern District of California ("Northern District") for non-infringement and invalidity of sixteen patents allegedly owned by IV-related entities, including four of the five patents asserted by IV in the instant action. (D.I. 37 at 1; *see also Xilinx, Inc. v. Invention Investment Fund I LP*, No. C 11-0671 SI (N.D. Cal.) (hereinafter "Xilinx California Action")) On February 15, 2011, IV amended the Complaint to add Xilinx as a defendant. (D.I. 17)

On April 1, 2011, Xilinx filed its Xilinx Transfer Motion, seeking to dismiss or transfer IV's claims against Xilinx to the Northern District. (D.I. 36) On April 26, 2011, Altera, Microsemi, and Lattice filed the Original Defendants' Transfer Motion, also seeking transfer of this action to the Northern District. (D.I. 43) The transfer motions were fully briefed as of May 23, 2011. (D.I. 37, 44, 48, 57, 62, 67)

Thereafter, on July 27, 2011, the Northern District of California transferred the portions of the Xilinx California Action relating to the patents asserted in the instant action to the District of Delaware. (*See* D.I. 75; *see also Xilinx, Inc. v. Invention Investment Fund I LP*, C.A. No. 11-666-LPS D.I. 87 (D. Del. July 27, 2011))

On August 1, 2011, Defendants advised the Court of a fully-briefed petition for a writ of mandamus that was pending before the Federal Circuit, involving an issue that Defendants believed "may impact the Court's analysis of Defendants' pending motions to transfer." (D.I. 77

3

at 2) (citing *In re Link_A_Media Devices Corp.*, Fed. Circ. Misc. Docket No. 2011-M990)

Defendants therefore suggested that "it may be most efficient for the Court to defer deciding

Defendants' pending motions to transfer until the Federal Circuit decides the petition for writ of

mandamus in *Link_A_Media Devices*." (D.I. 77 at 2) On December 6, 2011, Defendant Altera

notified the Court that the Federal Circuit had granted the petition for mandamus in

*Link_A_Media Devices*. (D.I. 95)

On September 26, 2011, Xilinx moved to dismiss the portion of the Xilinx California

Action that was transferred from the Northern District on the grounds that it is duplicative of the

instant action. (D.I. 91) In the alternative, if the Court does not dismiss the transferred Xilinx

California Action, Xilinx requested that it be consolidated with the instant action. (*Id.*) Plaintiffs

do not oppose consolidation. (D.I. 93)

## Section 1404(a)

Defendants' requests to transfer arise under 28 U.S.C. § 1404(a), which provides: "For

the convenience of the parties and witnesses, in the interests of justice, a district court may

transfer any civil action to any other district or division where it might have been brought."

Specifically, Defendants jointly ask that the Court transfer the instant action to the Northern

District.

## Appropriateness of the Transferee Venue

In determining whether transfer is appropriate, the Court must first determine whether

this action could have been brought in the proposed transferee venue, which here is the Northern

District. "The party moving for transfer bears the burden of proving that the action properly

could have been brought in the transferee district in the first instance." *Mallinckrodt Inc. v. E-Z-*

4

*Em, Inc.*, 670 F. Supp. 2d 349, 356 (D. Del. 2009) (internal citations omitted). There does not appear to be any dispute that Plaintiffs' actions against all Defendants could have been brought in the Northern District.

## Applicable Legal Standards

As the Third Circuit has explained, Section 1404(a) "was intended to vest district courts with broad discretion to determine, on an individualized, case-by-case basis, whether convenience and fairness considerations weigh in favor of transfer." *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 883 (3d Cir. 1995); *see also Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988). The Third Circuit has also emphasized that "the plaintiff's choice of venue should not be lightly disturbed." *Jumara*, 55 F.3d at 879. As a result, "a transfer is not to be liberally granted." *Shutte v. Armco Steel Corp.*, 431 F.2d 22, 25 (3d Cir. 1970) (internal quotation marks omitted).

Consequently, the burden rests squarely on the party seeking a transfer "to establish that a balancing of proper interests weighs in favor of the transfer." *Id.*; *see also Jumara*, 55 F.3d at 879. That burden is a heavy one: "unless the balance of convenience of the parties is ***strongly*** in favor of defendant, the plaintiff's choice of forum should prevail." *Shutte*, 431 F.2d at 25 (internal quotation marks omitted) (emphasis in original); *see also CNH Am. LLC v. Kinzenbaw*, 2009 WL 3737653, at *2 (D. Del. Nov. 9, 2009). It follows that "transfer will be denied if the factors are evenly balanced or weigh only slightly in favor of the transfer." *Angiodynamics, Inc. v. Vascular Solutions, Inc.*, 2010 WL 3037478, at *2 (D. Del. July 30, 2010) (internal citations omitted); *see also Illumina, Inc. v. Complete Genomics, Inc.*, 2010 WL 4818083, at *2 (D. Del. Nov. 9, 2010).

Unless the defendant "is truly regional in character" – that is, it operates essentially

5

exclusively in a region that does not include Delaware – transfer is often inappropriate. *See Praxair, Inc. v. ATMI, Inc.*, 2004 WL 883395, at *1 (D. Del. Apr. 20, 2004). When transfer is sought by a defendant with operations on a national or international scale, that defendant "must prove that litigating in Delaware would pose a unique or unusual burden on [its] operations." *L'Athene, Inc. v. EarthSpring LLC*, 570 F. Supp. 2d 588, 592 (D. Del. 2008) (internal citations and quotation marks omitted); *see also In re TCW/Camil Holding, L.L.C.*, 2004 WL 1043193, at *1 (D. Del. Apr. 30, 2004).[2]

"A motion to transfer may also be granted if there is a related case which has been first filed or otherwise is the more appropriate vehicle to litigate the issues between the parties." *Praxair*, 2004 WL 883395, at *1; *see also Mallinckrodt*, 670 F. Supp. 2d at 357-58 ("In an instance where related litigation in a transferee forum involves the same parties, similar technologies, and a common field of prior art, this Court has previously held that transfer is appropriate in the interests of justice.").

Given the necessarily individualized, fact-specific, case-by-case nature of a decision whether to transfer venue, it is inevitable that the multitude of transfer opinions – including the many issued in this District – will not entirely harmonize with one another. As Chief Judge Sleet

---

[2]*See generally Intel v. Broadcom*:

> [Defendant] is a multi-billion dollar company that does business on an international scale. Furthermore, the conveniences of modern travel and communication technology have made it more difficult to argue that litigating in a particular forum is inconvenient for the parties and witnesses. Therefore, to meet its burden [defendant] must establish that litigating this case in Delaware will pose a unique or unusual burden on [its] business operations. It has not done so.

167 F. Supp. 2d 692, 706 (D. Del. 2001) (internal quotation marks and citations omitted).

has explained:

> By definition, a transfer analysis is a thoughtful weighing of interests. And, as an exercise of discretion, this process is, at least to some extent, subjective.
>
> Thus, while the Court can look to precedent for guidance, it reminds the parties that the weight which one court might afford to one factor on one day might very well differ from the weight afforded to that same factor by a different court, located in a different district, presiding over a different litigation, between different parties, concerning a different cause of action, involving different facts, different witnesses, and different documents on a different day.

*Affymetrix, Inc. v. Synteni, Inc.*, 28 F. Supp. 2d 192, 208 (D. Del. 1998). It bears emphasis that

such differences may also be evident even among different judges sitting in the same District.

**The *Jumara* Factors**

Since two proper venues have been identified, the Court must balance the appropriate

considerations and determine whether, under the particular facts of this case, the request to

transfer venue should be granted. The Third Circuit has observed that in undertaking such an

analysis "there is no definitive formula or list of the factors to consider." *Jumara*, 55 F.3d at

879. Instead, courts must analyze "all relevant factors to determine whether on balance the

litigation would more conveniently proceed and the interests of justice be better served by

transfer to a different forum." *Id.*

Nevertheless, the Third Circuit has also identified a set of private interest and public

interest factors for courts to consider. *See id.* at 879-80. The private factors to consider include:

(1) "the plaintiff's forum preference as manifested in the original choice;" (2) "the defendant's

preference;" (3) "whether the claim arose elsewhere;" (4) "the convenience of the parties as

7

indicated by their relative physical and financial condition;" (5) "the convenience of the witnesses – but only to the extent that the witnesses may actually be unavailable for trial in one of the fora;" and (6) "the location of books and records (similarly limited to the extent that the files could not be produced in the alternative forum)." The public interest factors to consider include: (1) "the enforceablity of the judgment;" (2) "practical considerations that could make the trial easy, expeditious, or inexpensive;" (3) "the relative administrative difficulty in the two fora resulting from court congestion;" (4) "the local interest in deciding local controversies at home;" and (5) "the familiarity of the trial judge with the applicable state law in diversity cases." *Id.* (internal citations omitted)

## The Federal Circuit's Mandamus Decision in *Link_A_Media*

As noted above, Defendants suggested that the Court defer ruling on their motions to transfer until after a decision was issued by the Federal Circuit in *Marvell International Ltd. v. Link_A_Media Devices Corp.* The Federal Circuit issued its decision on December 2, 2011. *See* 662 F.3d 1221 (Fed. Cir. 2011).

In *Link_A_Media*, the Federal Circuit granted a petition for a writ of mandamus and directed that a patent infringement action pending in the District of Delaware be transferred to the Northern District of California. In *Link_A_Media*, a Bermuda-based plaintiff, Marvell International Ltd. ("Marvell"), filed suit in the District of Delaware against Link_A_Media Devices Corp. ("LAMD"), a Delaware corporation. *See id.* at 1222. LAMD moved to transfer the case to the Northern District, where LAMD maintained its principal place of business and where nearly all of LAMD's 130 employees work. *See id.* Marvell itself evidently had no connection to Delaware. Instead, according to the Federal Circuit, Marvell supported its chosen

8

forum by relying on nothing beyond LAMD's incorporation in Delaware, LAMD's non-regional

nature, and the experience of this District's judges with patent litigation. *See id.* at 1222, 1224.[3]

"Marvell is a holding company that is incorporated in Bermuda and has its principal place

of business there." *Id.* at 1222. An affiliated entity, Marvell Semiconductor, Inc., which

employed the inventors of the patents-in-suit and "presumably houses all of Marvell's relevant

documents," is headquartered in the Northern District, "only three miles from LAMD." *Id.* at

1222, 1224.

After the District Court denied LAMD's motion to transfer, LAMD filed its petition for

a writ of mandamus. Applying Third Circuit law, and concluding that the District Court decision

"amounted to a failure to meaningfully consider the merits of the transfer motion," the Federal

Circuit granted the petition. *Id.* at 1222-23. Specifically, the Federal Circuit stated that "the

district court failed to balance those factors [i.e., the various private and public interest factors]

fairly and instead elevated two considerations to overriding importance. With respect to private

interests, the district court's fundamental failure was making Marvell's choice of forum and the

fact of LAMD's incorporation in Delaware effectively dispositive of the transfer inquiry." *Id.* at

1223. In concluding that the District Court had committed a clear abuse of discretion, the

Federal Circuit also observed that the District Court had "refused to consider two of the private

interest factors in a Third Circuit venue inquiry: the convenience of the witnesses and the

---

[3]*See also Marvell Int'l Ltd. v. Link_A_Media Devices Corp.*, 2011 WL 2293999, at *1 (D. Del. June 8, 2011) ("Marvell opposes transfer, arguing that the court should defer to its choice of forum because: (1) LAMD is incorporated in Delaware; (2) LAMD has not met its burden to compel the court to transfer the case as LAMD is unable to point to any witness or document that could not be produced in Delaware; and (3) Delaware is known for its expertise in patent litigation.").

location of the books and records." *Id.* at 1224.

The Court has carefully considered the Federal Circuit's ruling in *Link_A_Media* and offers three general observations. First, while *Link_A_Media* certainly contains guidance for how this Court must conduct its review of a motion to transfer, the decision has not altered the fundamental fact that "Section 1404(a) is intended to place discretion in the district court to adjudicate motions for transfer according to an 'individualized, case-by-case consideration of convenience and fairness.'" *Stewart*, 487 U.S. at 29 (quoting *Van Dusen v. Barrack*, 376 U.S. 612, 622 (1964)). Second, the plaintiff in *Link_A_Media* was not a Delaware entity and, as far as can be discerned from the opinions in the case, had no connection to Delaware whatsoever. By contrast, here, Plaintiffs are Delaware entities. Finally, the Federal Circuit believed the District Court in *Link_A_Media* had accorded dispositive weight to a single private factor (the defendant's state of incorporation) and had refused to consider two other private factors (convenience of witnesses and location of books and records). Here, in deciding the pending motions to transfer, the Court has endeavored to evaluate each of the many private and public interest factors identified by the Third Circuit, and has also considered whether any additional interests are pertinent. *See Jumara*, 55 F.3d at 879 ("[T]here is no definitive formula or list of the factors to consider . . . .").

Below, the Court considers and weighs each of these public and private interest factors, to the extent relevant in the particular circumstances presented here. *Link_A_Media* is discussed further at various points in the analysis that follows.

10

**Private Interest Factors**

**Plaintiff's choice of forum**

"It is black letter law that a plaintiff's choice of a proper forum is a paramount consideration in any determination of a transfer request, and that choice should not be lightly disturbed." *Shutte,* 431 F.2d at 25 (internal citations and quotation marks omitted). Thus, "courts normally defer to a plaintiff's choice of forum." *Jumara,* 55 F.3d at 880. Indeed, "[t]he deference afforded plaintiff's choice of forum will apply as long as plaintiff has selected the forum for some legitimate reason." *Cypress Semiconductor Corp. v. Integrated Circuit Sys., Inc.,* 2001 WL 1617186, at *2 (D. Del. Nov. 28, 2001) (internal citations omitted).

The parties dispute the amount of weight to be accorded IV's choice of Delaware as its preferred forum. IV insists that its choice of Delaware is entitled to "paramount" consideration, citing a long line of decisions from the Third Circuit and this District. *See, e.g., Shutte,* 431 F.2d at 25; *Gielata v. Heckmann,* 2010 WL 3940815, at *3 (D. Del. Oct. 6, 2010). Defendants counter, however, by asserting that because IV's headquarters is in the State of Washington, and it has an office in the Northern District but none in Delaware, Delaware is not IV's "home turf," so IV's choice to sue outside of its "home turf" is not entitled to substantial weight. (D.I. 44 at 9) ("The sole private factor ordinarily weighing against transfer – IV's choice of forum – should be afforded little deference here given that the District of Delaware is not IV's home forum and there is no connection between the operative facts and this district."); *see also In re TCW/Camil Holdings L.L.C.,* 2004 WL 1043193, at *2 ("[P]laintiff is incorporated under the laws of the State of Delaware. Nevertheless, the District of Delaware is not plaintiff's 'home turf,' since it maintains its principal place of business in New York."); *Waste Distillation Tech., Inc. v. Pan*

11

*Am. Res., Inc.*, 775 F. Supp. 759, 764 (D. Del. 1991) (stating that where plaintiff chooses to litigate outside its principal place of business, its choice of forum is entitled to less deference).

While there are cases supporting Defendants' view that Delaware is not IV's "home turf," there are likewise cases from this District in which a plaintiff's "home turf" has been construed to include its state of incorporation, which here is Delaware. *See, e.g., Praxair*, 2004 WL 883395, at *1-2 (holding Delaware is "home turf" as long as company is incorporated in Delaware, regardless of location of principal place of business). The Court agrees with those cases that include a corporate entity's state of incorporation as part of its "home turf." Accordingly, because IV has sued Defendants in Plaintiff's "home turf," its choice of Delaware as a litigation forum is entitled to paramount consideration.

Even if Delaware were not considered to be among IV's "home turf," Plaintiffs nevertheless had a legitimate and rational basis for suing Defendants in Delaware. This Court has explained: "The movant's burden in overcoming the plaintiff's choice of forum is somewhat lessened where, as here, the plaintiff has not filed suit in its 'home turf.' . . . [T]he Court still accords Plaintiff's choice of forum substantial weight because the choice of this forum relates to Plaintiff's legitimate, rational concerns as a Delaware corporation." *Angiodynamics*, 2010 WL 3037478, at *2. Plaintiffs have chosen to avail themselves of the rights, benefits, and obligations that Delaware law affords. The same is true of all four Defendants, each of which is a Delaware corporation. Additionally, each of the Defendants have sold or offered for sale their accused products and services in Delaware. There is no dispute that this District has personal jurisdiction over all Defendants. All of these are legitimate and rational reasons for suing in Delaware. Hence, Plaintiff's choice of Delaware as its preferred forum is entitled to, at minimum,

"significant deference." *Mallinckrodt*, 670 F. Supp. 2d at 356.

In *Link_A_Media*, the Federal Circuit concluded that "the district court placed far too much weight on the plaintiff's choice of forum," where a non-Delaware entity, with seemingly no connection to Delaware, filed suit in this District. 662 F.3d at 1223. In the instant case, by contrast, Plaintiffs are Delaware entities. For the reasons explained above, the Court finds that Delaware is, therefore, Plaintiffs "home turf" and, even if it were not, its choice of Delaware as its preferred forum – having a legitimate and rational basis – is still entitled to deference.

Hence, the Court concludes that Delaware is IV's "home turf" and, further, that IV has legitimate and rational reasons for filing suit in this District. Accordingly, IV's preference to litigate its dispute in Delaware is entitled to substantial, indeed "paramount," weight.

### Defendants' forum preference

Defendants all prefer an alternative forum, the Northern District. The Original Defendants offer several reasons for this preference:

> All the parties are headquartered on the West Coast, and two out of three of the Defendants are headquartered in California. All Defendants have research and development facilities in the Northern District of California, where most of the development activities of Defendants' various accused products occurred. The vast majority of Defendants' documents and witnesses are located on the West Coast, and substantially within the Northern District of California. IV itself has an office in the Northern District of California. Third-party witnesses – including many of the inventors and prosecuting attorneys of the patents-in-suit – appear to be concentrated in California.

(D.I. 44) Defendant Xilinx makes essentially the same points. (D.I. 37 at 2, 14-15) It also observes that there have been multiple in-person meetings between IV and Xilinx in Palo Alto, California. (*Id.* at 5)

Defendants have legitimate and rational reasons for their preference for an alternative forum. The specifics of the bases for this preference are addressed further below. Under Third Circuit law, Defendants' preference for an alternative forum is not given the same weight as Plaintiff's preference.

### Location of operative events

"[I]f there are significant connections between a particular venue and the events that gave rise to a suit, this factor should be weighed in that venue's favor." *In re Hoffman-La Roche Inc.*, 587 F.3d 1333, 1338 (Fed. Cir. 2009). Here, the allegedly infringing products are sold nationwide, including in Delaware and the Northern District. The record so far indicates that at least some of the research and development activities relating to the allegedly infringing products occurred in the Northern District, and none in Delaware. (*See generally* D.I. 44 at 16-17) This factor weighs in favor of transfer.

### Convenience of the parties

The next factor to be considered is "the convenience of the parties as indicated by their relative physical and financial condition." *Jumara*, 55 F.3d at 879. All of the parties are headquartered in or relatively close to the Northern District, with Plaintiffs in Washington, Lattice in Oregon, and Altera, Microsemi, and Xilinx in California. IV also has an office in the Northern District and Lattice has an engineering facility there. In terms of relative financial condition, however, there is nothing in the record to indicate that litigating in Delaware would impose an undue financial burden on Defendants. Each of the Defendants operates throughout the United States, and at least three Defendants also appear to have extensive operations outside of the U.S. All of the Defendants employ hundreds or thousands of employees and each has

14

annual sales of at least $250 million, with two of the Defendants having annual sales of more than $1 billion.

In assessing the convenience of the parties factor, the Court views it as important that in this case all of the parties – Plaintiffs as well as all four Defendants – are Delaware corporations. As the Federal Circuit has stated in affirming a denial of a motion to transfer, "Given that both parties were incorporated in Delaware, they had both willingly submitted to suit there, which weighs in favor of keeping the litigation in Delaware." *Micron Technology, Inc. v. Rambus Inc.*, 645 F.3d 1311, 1332 (Fed. Cir. 2011). Likewise, "as the judges of this court have noted, one aspect of a company's decision to incorporate in Delaware is that under our jurisdictional and venue statutes it is agreeing to submit itself to the jurisdiction of the courts in this state for the purposes of resolving this type of commercial dispute." *ADE Corp. v. KLA-Tencor Corp.*, 138 F. Supp. 2d 565, 572 (D. Del. 2001). Thus, "absent some showing of a unique or unexpected burden, a company should not be successful in arguing that litigation in its state of incorporation is inconvenient." *Id.* at 573; *see also Mallinckrodt,* 670 F. Supp. 2d at 357 ("[W]hen a corporation chooses to incorporate in Delaware and accept the benefits of incorporating in Delaware, it cannot complain once another corporation brings suit against it in Delaware.").

As is evident from the foregoing discussion, the Court considers it appropriate to factor in the parties' states of incorporation in evaluating the convenience of the parties private interest. This is warranted under Third Circuit law – which stresses that convenience of the parties is generally measured just by the parties' "relative physical and financial condition," *Jumara*, 55 F.3d at 879 – and a long line of decisions from this District, which make plain that a Delaware corporation must expect an uphill climb in proving that it is, in any meaningful sense,

15

"inconvenient" to defend its actions in the forum in which the corporation has freely chosen to create itself. The Court recognizes that in *Link_A_Media* the Federal Circuit faulted the District Court for seeming to believe that defendant's incorporation in Delaware was essentially "a dispositive fact in the venue transfer analysis." 662 F.3d at 1224; *see also id.* at 1223 ("The [district] court's heavy reliance on the fact that LAMD was incorporated in Delaware was similarly inappropriate."); *id.* at 1224 ("The defendant's state of incorporation, however, should not be dispositive of the public interest analysis."). In the instant case, while the Court is placing substantial weight on the incorporation of all four Defendants in Delaware, the Court understands that incorporation in Delaware is not to be given dispositive weight. The Court has not done so.

In sum, the convenience to the parties factor favors transfer, but only slightly.

**Convenience for the witnesses**

The next factor is "the convenience of the witnesses – but only to the extent that the witnesses may actually be unavailable for trial in one of the fora." *Jumara*, 55 F.3d at 879. "[I]n reviewing a motion to transfer, courts frequently look to the availability of witnesses as an important factor, as it can be relevant to protecting a defendant's opportunity to put on its case with witnesses who will appear in person at the trial." *ADE Corp.*, 138 F. Supp. 2d at 569; *see also id.* at 574 ("The court does have an interest in seeing that a plaintiff's choice of a forum does not deprive a defendant of its ability to put on a defense that effectively communicates the matters in issue to the judge and the jury.").

The Court agrees with Chief Judge Sleet, who held that the weight to be accorded to concerns about convenience for the witnesses varies depending on the type of witness at issue:

> Party witnesses or witnesses who are employed by a party carry no weight in the "balance of convenience" analysis since each party is able, indeed, obligated to procure the attendance of its own employees for trial. Expert witnesses or witnesses who are retained by a party to testify carry little weight in determining where the "balance of convenience" lies (especially in an action for patent infringement) because they are usually selected [on the basis] of their reputation and special knowledge without regard to their residences and are presumably well compensated for their attendance, labor and inconvenience, if any. Fact witnesses who possess first-hand knowledge of the events giving rise to the lawsuit, however, have traditionally weighed quite heavily in the "balance of convenience" analysis.

*Affymetrix*, 28 F. Supp.2d at 203 (internal citations and quotation marks omitted). With respect to the last category – fact witnesses with first-hand knowledge – the Court should be particularly concerned not to countenance undue inconvenience to third-party witnesses, who have no direct connection to the litigation. *See generally id.* (explaining that non-party fact witnesses weigh heavily in analysis); *see also Headon v. Colo. Boys Ranch*, 2005 WL 1126962, at *7 (E.D. Pa. May 5, 2005) (noting that convenience of non-party witnesses is "perhaps the most important factor"); 8 Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure*, § 3851 (3d ed. 2008) ("Often cited as the most important factor in passing on a motion to transfer under Section 1404(a) of Title 28 of the United States Code, and the one most frequently mentioned by the courts, . . . is the convenience of witnesses, most particularly nonparty witnesses who are important to the resolution of the case.").

Defendants contend that "all named inventors appear to reside either in the Northern District of California or in Texas" and "numerous potential third party witnesses having knowledge relevant to invalidity issues appear to reside in the Northern District of California."

(D.I. 44 at 13-15) Defendants further insist that none of the inventors, prosecuting attorneys, or likely third-party invalidity witnesses reside in Delaware or even within the subpoena power of this Court. (D.I. 44 at 15) Plaintiffs, by contrast, identify "numerous potential non-party witnesses having knowledge related to the engineering and sales of the accused products" who "appear to be located closer to Delaware;" primarily, these witnesses appear to be distributors for Defendants' products. (D.I. 62 at 14)

Defendants assert that "the touchstone for witness availability is whether a witness is within the court's subpoena power." (D.I. 67 at 8) However, the extent of the Court's subpoena power is relevant only to ensuring that witnesses come to Delaware to testify *at trial*. Every witness' deposition testimony can be compelled by some court. *See generally* Fed. R. Civ. Proc. 45(b)(2) (providing that subpoena may be served at any place within the district of the issuing court or outside that district within 100 miles of the place specified for the deposition, hearing, trial, production, or inspection).

It is overwhelmingly likely, however, that any federal civil litigation – including the instant case – will *not* actually go to trial. For instance, during the twelve-month period ending June 30, 2010, of the 295,499 federal civil cases that were terminated, only 3,321 reached trial. *See* U.S. Courts, Statistical Tables for the Federal Judiciary, June 30, 2010, Table C-4 at 37.[4] That is, only 1.1% of federal civil cases had a trial. The same data show that among these federal civil cases, 2,766 were patent cases, and of these only 86 – or 3.1% – reached trial. *See id.* at 39; *see also Improving Federal Court Adjudication of Patent Cases: Hearing Before the Subcomm.*

---

[4]Available at
http://www.uscourts.gov/uscourts/Statistics/StatisticalTablesForTheFederalJudiciary/2010/C04Jun10.pdf (last visited June 9, 2011).

*on Courts, the Internet, and Intellectual Property of the House Comm. on the Judiciary*, 109th Cong. 6-7 (2005) (statement of Kimberly A. Moore, noting about 3000 patent cases are filed annually and only 3% go to trial).

If this case turns out to be one of the statistically rare cases to go to trial, it is always possible, if not likely, that third-party fact witnesses with material, non-cumulative evidence will voluntarily appear at trial. *See ADE Corp.*, 138 F.Supp.2d at 570 ("Previous decisions in this court have suggested that the better approach is to recognize that witnesses have and will appear here without having to be subpoenaed.").[5] Here, there is no evidence from which the Court can conclude that necessary trial witnesses will refuse to appear in Delaware for trial without a subpoena. If such witnesses will not appear at trial, their testimony can always be compelled through a deposition, by service of a notice of deposition and enforcement of such by a court with jurisdiction over the witness at issue. While deposition testimony is not a complete substitute for live trial testimony, *see In re DVI Inc.*, 2004 WL 1498593, at *2 (D. Del. June 23, 2004) ("[T]he Court notes that it has previously rejected the argument made by Plaintiff that deposition testimony may serve as an adequate substitute for material non-party witnesses that a party is unable to procure for trial."), it is a fallback that in almost all instances will prevent a miscarriage of justice.

On the whole, the convenience to the witnesses favors transfer, but the Court will give

---

[5] *But see Nilssen v. Everbrite, Inc.*, 2001 WL 34368396, at *2 (D. Del. Feb. 16, 2001) ("A party need not allege that a witness definitely will be unavailable for trial; rather, it is sufficient for purposes of venue transfer analysis if the witness is not subject to a court's subpoena power.") (internal citations omitted).

this factor little weight.[6] *See generally Micron*, 645 F.3d at 1332 ("The district court also pointed out that the convenience of the witnesses did not favor either forum, because most of the witnesses were employees of or consultants to the parties and could therefore be encouraged to testify in either forum, even if they could not be compelled to testify in Delaware. This was correct.").

### Location of relevant evidence

Next the Court considers "the location of books and records (similarly limited to the extent that the files could not be produced in the alternative forum)." *Jumara*, 55 F.3d at 879. "In patent infringement cases, the bulk of the relevant evidence usually comes from the accused infringer. Consequently, the place where the defendant's documents are kept weighs in favor of transfer to that location." *In re Genentech, Inc.*, 566 F.3d 1338, 1345 (Fed. Cir. 2009). Yet this factor is often not entitled to much weight, given the combination of the Third Circuit's emphasis on whether the files could be produced in each of the fora at issue and "recent technological advances." *Affymetrix*, 28 F. Supp. 2d at 208. "With new technologies for storing and transmitting information, the burden of gathering and transmitting documents 3,000 miles is probably not significantly more than it is to transport them 30 miles." *ADE Corp.*, 138 F. Supp. 2d at 571; *see also Cypress Semiconductor*, 2001 WL 1617186, at *3 ("Advances in technology have significantly lessened the burden of litigating in a distant district. These technologies have

---

[6]There are decisions from this District that accord this factor much greater weight. *See, e.g., In re DVI, Inc.*, 2004 WL 1498593, at *2 ("[T]he Court concludes that the presence of . . . witnesses . . . [who] reside outside of the subpoena power of the Court, weighs heavily in favor of transferring this action."); *Affymetrix*, 28 F. Supp.2d at 204 (stating that interests of witnesses who were residents of California, and thus outside scope of this Court's subpoena power, "weigh heavily in favor of transfer").

shortened the time it takes to transfer information, reduced the bulk or size of documents or things on which information is recorded . . . and have lowered the cost of moving that information from one place to another.") (internal citations and quotations omitted).

Here, Defendants contend that "the relevant documents and witnesses are almost entirely located in or close to the Northern District of California." (D.I. 44 at 18) Further, in Defendants' view, because "all the parties are headquartered either in California or on the West Coast," transfer to the Northern District will "lessen the expense and disruption to the parties' business operations." (*Id.*) In response, Plaintiffs emphasize that Defendants have not identified any evidence that will be especially difficult to transport. (D.I. 62 at 15) Plaintiffs also contend that many relevant documents will be found closer to Delaware than to California. (*Id.* at 15-16)

In *Link_A_Media*, the Federal Circuit stated: "While advances in technology may alter the weight given to these factors, it is improper to ignore them entirely." 662 F.3d at 1224. After considering the location of the relevant evidence, the absence of any indication (particularly given technological advances) that it will be burdensome to bring relevant evidence to Delaware or the Northern District, and the Third Circuit's characterization of this factor, the Court concludes that here the location of relevant evidence favors transfer, but this factor should be given little weight.

**Public Interest Factors**

### Enforceability of judgment

There is no suggestion that a judgment would be unenforceable in either the District of Delaware or the Northern District.

**Practical considerations**

The Court also takes account of "practical considerations that could make the trial easy, expeditious, or inexpensive." *Jumara*, 55 F.3d at 879. In this case, the only practical consideration that merits discussion is the status of the Xilinx California Action. Xilinx had its opportunity to persuade the Northern District that its case should proceed in the Northern District, rather than here. In deciding, instead, to transfer the California Action here, the Northern District considered some of the same factors this Court is now being asked to consider. At this point, all of the issues relating to Plaintiffs' patent infringement claims against all four Defendants are pending in this District, some having been transferred here from the Northern District. In this posture, practical considerations favor keeping these cases here rather than transferring them to (and in some respect back to) the Northern District.

**Administrative difficulties in getting case to trial**

The Court next turns to the "relative administrative difficulty in the two fora resulting from court congestion." *Jumara*, 55 F.3d at 879. Particularly given that this Court – for the first time in nearly five years – no longer has a judicial vacancy, the Court is not persuaded that administrative difficulties due to court congestion favor transfer. *See Textron Innovations, Inc. v. The Toro Co.*, 2005 WL 2620196, at *3 (D. Del. Oct. 14, 2005) ("[T]he court is not persuaded that any disparity in court congestion, to the extent there is any, will be so great as to weigh strongly in favor of a transfer."). Instead, this factor is neutral.

**Local interests in dispute**

In patent litigation, the local interest factor is typically neutral, "because patent issues do not give rise to a local controversy or implicate local interests." *TriStrata Tech., Inc. v. Emulgen*

22

*Labs., Inc.*, 537 F. Supp. 2d 635, 643 (D. Del. 2008); *see also In re Hoffman-La Roche Inc.*, 587

F.3d 1333, 1338 (Fed. Cir. 2009) ("While the sale of an accused product offered nationwide does

not give rise to a substantial interest in any single venue, if there are significant connections

between a particular venue and the events that gave rise to a suit, this factor should be weighed in

that venue's favor."); *Praxair*, 2004 WL 883395, at *2 ("Patent cases are explicitly federal issues

and the rights determined thereunder are national in scope.").

Delaware has a strong interest in adjudicating disputes among its corporate citizens. The

instant case involves litigation solely among Delaware corporations. *See generally Autodesk*

*Can. v. Assimilate, Inc*, 2009 WL 3151026, at *9 (D. Del. Sep. 29, 2009) ("Delaware clearly has

a substantial interest in addressing lawsuits brought against Delaware corporations.");

*Mallinckrodt*, 670 F. Supp. 2d at 357 (same). The Northern District also has an interest in this

litigation, given the presence of all of the parties in that District, either through maintenance of

offices or other facilities and sales of the accused products there. In the Court's view, this factor

is neutral.

**Public policy**

As this Court has recently stated, "[t]he public policy of Delaware encourages the use by

Delaware corporations of Delaware as a forum for resolution of business disputes." *Wacoh Co.*

*v. Kianix Inc.*, 2012 WL 70673, at *6 (D. Del. Jan. 9, 2012); *see also id.* at *6 n.9. This factor

disfavors transfer, although the Court gives it minimal weight.

**Judges' familiarity with state law in diversity cases**

This is not a diversity case. Instead, as the Federal Circuit has observed, "[p]atent claims

are governed by federal law, and as such both [courts are] capable of applying patent law to

23

infringement claims." *In re TS Tech USA Corp.*, 551 F.3d 1315, 1320 (Fed. Cir. 2008) (internal

quotation marks omitted). This factor, then, is neutral.

## Defendants Have Failed To Prove the Factors Strongly Favor Transfer

Overall, the following interests weigh against transfer: Plaintiff's choice of forum,

practical considerations, and public policy. The following interests weigh in favor of transfer:

Defendants' choice of forum, location of operative events, convenience of the parties,

convenience to witnesses, and location of relevant evidence. Other factors are neutral. On the

whole, then, recognizing the appropriate weight to be granted to each factor, the Court concludes

that Defendants have failed to satisfy their burden of showing that the balance of convenience

factors and interests of justice weigh strongly in favor of transfer. *See In re Xoft, Inc.*, 435 Fed.

Appx. 948, 2011 WL 3606847, at *1 (Fed. Cir. Aug. 17, 2011) (non-precedential) (denying

mandamus and stating, "The Third Circuit has held that 'unless the balance of convenience of the

parties is strongly in favor of defendant, the plaintiff's choice of forum should prevail.'")

(quoting *Shutte*, 431 F.2d at 25).[7]

---

[7]In addition to *Link_A_Media*, several other recent opinions from the Federal Circuit have found an abuse of discretion in a district court's denial of a motion to transfer a patent infringement action. *See In re Microsoft Corp.*, 630 F.3d 1361 (Fed. Cir. 2011) (granting mandamus); *In re Acer America Corp.*, 626 F.3d 1252 (Fed. Cir. 2010) (same); *In re Hoffman-La Roche Inc.*, 587 F.3d 1333 (Fed. Cir. 2009) (same); *In re Genentech, Inc.*, 566 F.3d 1338 (Fed. Cir. 2009) (same); *In re TS Tech USA Corp.*, 551 F.3d 1315 (Fed. Cir. 2009) (same). The Court has considered these cases and concludes that they do not affect the foregoing analysis. Each of these cases arose in the context of a petition for mandamus to the Eastern District of Texas. Each, therefore, applied Fifth Circuit law. *See generally Micron*, 645 F.3d at 1331 ("This Court reviews this issue [i.e., transfer] under the law of the relevant regional circuit."). Transfer analysis under the law of the Third Circuit differs from that in the Fifth Circuit in at least the following significant respects: (i) plaintiff's choice of forum is explicitly a factor to be weighed (and weighed heavily) in the Third Circuit, while in the Fifth Circuit it is error to consider plaintiff's preference as a separate factor, *see TS Tech*, 551 F.3d at 1320 ("Fifth Circuit precedent clearly forbids treating the plaintiff's choice of venue as a distinct factor in the § 1404(a)

**Xilinx Transfer Motion**

At the time Xilinx filed its Xilinx Motion to Transfer, it argued that the Xilinx California Action was "first filed" and, accordingly, Plaintiffs' claims pending in this District against Xilinx should have been transferred to the Northern District.  (D.I. 37)  Subsequently, however, portions of the Xilinx California Action were transferred here.  (D.I. 75)  In Defendants' letter addressing the impact of that transfer on the Xilinx Transfer Motion, Defendants, while asserting that the Xilinx Transfer Motion is not moot, provided no argument for the continued relevance of Xilinx's first-to-file contention.  (D.I. 77)  At this point the Court finds no basis to treat the Xilinx Motion to Transfer any differently than the Original Defendants' Motion to Transfer.  For the reasons already explained, both motions will be denied.

**Xilinx Motion To Dismiss**

Xilinx has moved to dismiss the action transferred from the Northern District, which is pending at C.A. No. 11-666-LPS.  (D.I. 91)  In the alternative, Xilinx seeks consolidation of that transferred action with the instant action.  (*Id.*)  Plaintiffs do not oppose consolidation.  (D.I. 93)[8]  Accordingly, because the two actions pending before this Court involve mirror-image claims

---

analysis."); (ii) in the recent Federal Circuit cases, the parties generally were not incorporated in Texas, whereas here the Plaintiffs and Defendants are Delaware corporations, *see Micron*, 645 F.3d at 1332 ("[G]iven that both parties were incorporated in Delaware, they had both willingly submitted to suit there, which weighs in favor of keeping the litigation in Delaware."); and (iii) the Fifth Circuit has endorsed a "100-mile rule," which provides that "when the distance between a plaintiff's chosen venue for trial and the potential transferee venue is more than 100 miles, the factor of inconvenience to witnesses increases in direct relationship to the additional distance to be traveled," *TS Tech*, 551 F.3d at 1320 (internal citations and quotation marks omitted); *see also Genentech*, 566 F.3d at 1343, while no such rule has been recognized in the Third Circuit.

[8]Plaintiffs did express concern that consolidation not be a basis to delay entering a Scheduling Order.  (D.I. 93)

between the same parties, concern four of the same patents, and involve the same counsel, the Court will order that they be consolidated. *See* Fed. R. Civ. Proc. 42(a).

**Conclusion**

Accordingly, the Court will exercise its discretion and deny Defendants' motions to transfer. Further, the Court will grant Xilinx's request to consolidate. An appropriate Order follows.