**MORRIS, NICHOLS, ARSHT & TUNNELL LLP**
1201 NORTH MARKET STREET
P.O. BOX 1347
WILMINGTON, DELAWARE 19899-1347
———
(302) 658-9200
(302) 658-3989 FAX

**KAREN JACOBS LOUDEN**
(302) 351-9227
(302) 425-4681 FAX
klouden@mnat.com

July 5, 2012

The Honorable Leonard P. Stark
United States District Court
844 N. King Street, Unit 26, Room 6124
Wilmington, DE 19801-3556

      Re: *Intellectual Ventures I & II LLC v. Altera Corp. et al.*, C.A. No. 10-1065-LPS

Dear Judge Stark:

      Defendants Altera Corp., Microsemi Corp., Lattice Semiconductor Corp., and Xilinx, Inc. ("Defendants") request that the Court resolve a dispute between Defendants and Plaintiffs Intellectual Ventures I and II, LLC ("IV," "Plaintiffs") regarding the proposed Protective Order. Although the parties have reached agreement on most terms of the Protective Order, and expect to resolve other minor disagreements after receiving the Court's ruling on this dispute, three general areas of disagreement remain: (1) the category "Highly Confidential – Source Code" materials, (2) provisions regarding competitive decision-makers, and (3) the patent acquisition bar. (*See* Ex. 1 setting the parties' competing proposals side by side.)

      **Highly Confidential – Source Code Materials (Section 2.7):** Each Defendant is in the business of designing, making, and selling programmable logic products (integrated circuits) based on unique hardware designs. These hardware designs, often in combination with software, are described and stored in a variety of electronic formats, such as Register Transfer Level (RTL) source code, CAD files, and schematics. Akin to software source code, this information is generated and maintained in electronic and hierarchical databases. This information can actually be used to replicate Defendants' proprietary products. Thus, it is among Defendants' most sensitive confidential material, and disclosure of these materials would cause significant competitive harm.

      To protect this information, Defendants propose to establish a category of discovery materials designated "HIGHLY CONFIDENTIAL – SOURCE CODE," defined as: "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES Only Information or Items representing computer code and associated comments and revision histories, formulas, engineering specifications, or schematics that define or otherwise describe in detail the algorithms or structure of software or hardware designs, disclosure of which to another Party or Non-Party would create a substantial risk of serious harm that could not be avoided by less restrictive means." (Ex. 1 § 2.7.) Special procedures for the protection and production of this material are set forth in Section 7.2 of the Protective Order.[1] (*Id.*)

---

[1] Courts, including this Court, have frequently approved protective orders that prescribe special procedures for making such materials available for inspection. *See, e.g.*, Ex. 4, *Xerox Corp. v. Google Inc. et al.*, C.A. No. 10-0136-LPS-MPT, D.I. 78 (D. Del. Sept. 23, 2010) (protective order containing detailed procedures for category of materials called Restricted Confidential—Source Code including inspection available at offices of producing party's outside counsel). *See also* "Default Standard for Access to Source Code," (available at http://www.ded.uscourts.gov/court-info/local-rules-and-orders/guidelines).

IV refuses to include any such category of discovery materials in the protective order, contending that only software source code (rather than Defendants' analogous hardware design source code and schematics) is entitled to such heightened protections. IV contends that, because "this is not a source code case," "Plaintiffs see no need for a 'Source Code' category." (Ex. 2, June 29, 2012 Email from IV's counsel to Defendant Xilinx's counsel.) IV also contends that Defendants should produce in the first instance, in "pdf form," this electronically stored and critically sensitive material. (*Id*.)

IV's position ignores both the critical nature of this highly sensitive information and the manner in which such information is maintained by Defendants. First, Defendants are semiconductor companies – not software companies – and their most sensitive and confidential information is not limited to software source code, but rather encompasses similar forms of electronically stored information such as hardware design files, CAD files and schematics. Second, the information that would be subject to the heightened degree of protection is maintained by the Defendants in complex hierarchical electronic databases. Production of this information in the first instance in "pdf form," as IV requests, would be both unmanageable and unduly burdensome for Defendants, as such production would likely constitute millions of pages. Moreover, in many instances the information would be unusable without accompanying review tools.

As IV well knows, there is nothing novel about Defendants' request. Numerous courts have recognized that the categories of information that Defendants seek to protect are properly subject to "source-code" type protocols as part of a protective order.[2] Indeed, Defendants' proposal copies the Northern District of California "model protective order" for definition of "Highly Confidential – Source Code" information. *See* http://www.cand.uscourts.gov/stipprotectorder. Given that the information in question can literally be used to copy Defendants' products, the same level of protection is warranted here.

**Competitive Decision-Making (Sections 7.4(a) and 7.5(a)):** Any inadvertent disclosure of Defendants' highly confidential information creates a serious risk of irreparable competitive harm to Defendants. Accordingly, Defendants propose that Outside Counsel be allowed access to highly confidential information "provided that such Outside Counsel is not involved in competitive decision-making, as defined by *U.S. Steel v. United States*, 730 F.2d 1465, 1468 n.3 (Fed. Cir. 1984), on behalf of a Party or a competitor of a Party." (*See* Ex. 1 §§ 7.4(a) & 7.5(a).) IV objects to this restriction on "competitive decision-makers."

Courts often impose restrictions in protective orders that deny certain persons, including attorneys, from accessing discovery materials. Where "counsel is a competitive decisionmaker, most all of the policy concerns underlying the rule allowing courts to deny attorneys' access to confidential information typically are present." *ST Sales Tech Holdings, LLC. v. Daimler Chrysler Co., LLC*, Civil Action No. 6:07-CV-346, 2008 WL 5634214, at *3 n.5 (E.D. Tex. Mar. 14, 2008); *see also U.S. Steel Corp. v. United States*, 730 F.2d 1465 (Fed. Cir. 1984).

Here, IV's lead outside counsel in this case, John Desmarais, is the President of Round Rock Research LLC, a non-practicing entity ("NPE"), that has acquired a portfolio of several thousand patents and patent applications that it "monetizes" through licensing demands and litigation. (*See* www.roundrockresearch.com) Thus, there is an unacceptably high risk that the confidential information received in this litigation by Mr. Desmarais (and perhaps others at his firm) will be used against Defendants in a future litigation on behalf of Round Rock.

---

[2] *See, e.g.*, Ex. 5, *John v. Xilinx, Inc.*, Case No. 2:05-cv-0048, D.I. 31 (E.D. Tex. July 11, 2006); Ex. 6, *Altera Corp. v. LSI Corp. et al.*, Case No. 4:11-cv-03139, D.I. 31 (N.D. Cal. Oct. 4, 2011); Ex. 7, *Lonestar Inventions, L.P. v. Xilinx, Inc.*, Case No. 6:07-cv-00393, D.I. 24 (E.D. Tex. Mar. 5, 2008).

The Honorable Leonard P. Stark
July 5, 2012
Page 3

In response, IV's counsel contends that "[n]either Mr. Desmarais nor any other attorney at my firm is a competitive decision maker for a party or any competitor of a party." (Ex. 2.) If so, this provision should not impact IV or its outside counsel. Yet IV refuses to include this provision in the protective order, making it apparent that, at the very least, IV and their counsel wish to keep this option open. Restricting attorneys who are "competitive decision-makers" from accessing Defendants' highly confidential information is consistent with the law and provides appropriate protections given the confidential nature of Defendants' materials.

**Patent Acquisition Bar (Section 13):** The parties agree that the protective order in this case should include a prosecution bar, but disagree on its scope. Defendants propose that the bar should cover patent acquisition activity. (*See* Ex. 1 § 13.1.) IV disagrees.

The Federal Circuit has authorized the use of a "prosecution bar" to restrict patent prosecution by trial attorneys who have access to confidential information. *In re Deutsche Bank Trust Co. Americas,* 605 F.3d 1373 (Fed. Cir. 2010). Likewise, courts have approved "acquisition bars" to limit the potential for inadvertent use or disclosure of confidential information by individuals regularly engaged in the acquisition of patents. *See, e.g.*, Ex. 8, *St. Clair Intellectual Prop. Consultants, Inc. v. Apple, Inc.*, C.A. No. 09-0804-JJF, D.I. 33, §6(b) (D. Del. May 13, 2010) ("any person employed by, related to, acting on behalf of, or representing [IV], who receives any Protected Material shall not be involved, directly or indirectly, in the acquisition of patents or patent applications . . . relating to [the technology of the accused products]."); Ex. 9, *E-Contact Techs., LLC v. Apple Inc. et al.*, Case No. 1:11-cv-00426, D.I. 344, at 4 (E.D. Tex. June 19, 2012) ("An acquisition bar should be included in the protective order.").

Plaintiffs are affiliates of Intellectual Ventures, a "NPE" that claim to have acquired rights to more than 30,000 patents and patent applications, which they then use to enforce, through licensing demands and litigation. *See* http://www.intellectualventures.com. IV describes its business activities as including "[p]urchasing inventions from individual inventors and businesses" (*Id.*) and has stated that the "most significant and profitable components of Intellectual Ventures' business are its patent acquisition and licensing activities." (Ex. 3 § II.A.2 ¶ 13.) Moreover, as noted above, Mr. Desmarais, is himself the President of Round Rock, another such NPE.

As numerous courts have found, where an NPE is in the business of acquiring and enforcing patents against other entities, they are considered competitors as "[t]here is little doubt" that the alleged infringer's confidential information could be of value to the NPE. *ST Sales Tech Holdings, LLC*, 2008 WL 5634214; Ex. 10, *Hyundai Motor Am. v. Clear With Computers, LLC*, Case No. 6:08-cv-00302, D.I. 71, (E.D. Tex. May 11, 2009) (holding that a patent holding entity is a "competitor" to defendant Hyundai Motor America).

Through discovery in this lawsuit, the attorneys and experts for IV, and the attorneys and President of Round Rock, will have access to an enormous volume of Defendants' highly confidential and sensitive information, providing a roadmap for patent acquisitions, prosecution, and future licensing demands and litigation against Defendants. Even IV recognizes the risk by agreeing to a prosecution bar. That same risk applies equally to patent acquisitions and should be addressed before any confidential information is produced.

Defendants respectfully request that the Court order the parties to submit a proposed Protective Order that includes Defendants' versions of Sections 2.7, 7.2(c), 7.4(a), 7.5(a) and 13.1.

The Honorable Leonard P. Stark
July 5, 2012
Page 4

                                      Respectfully,

                                      */s/ Karen Jacobs Louden*

                                      Karen Jacobs Louden (#2881)

cc:    Clerk of Court (by hand delivery)
        All Counsel of Record (by email)

6028332