# EXHIBIT 1

## I. Definitions

### 2.7    *Disputed*

| Defendants' Proposal | Plaintiffs' Proposal |
|---|---|
| "HIGHLY CONFIDENTIAL – SOURCE CODE" Information or Items:  "HIGHLY CONFIDENTIAL -- ATTORNEYS' EYES ONLY" Information or Items representing computer code and associated comments and revision histories, formulas, engineering specifications, or schematics that define or otherwise describe in detail the algorithms or structure of software or hardware designs, disclosure of which to another Party or Non-Party would create a substantial risk of serious harm that could not be avoided by less restrictive means.  Documents designated "HIGHLY CONFIDENTIAL – SOURCE CODE" may be made available for review according to the procedures set forth in Section 7.2 and 7.5, *infra*. | [NONE – "HIGHLY CONFIDENTIAL – SOURCE CODE" category is not necessary] |

## II. ACCESS TO AND USE OF PROTECTED MATERIAL

### 7.2 (c) *Disputed*

| Defendants' Proposal | Plaintiffs' Proposal |
|---|---|
| The Producing Party shall make available a printer with commercially reasonable printing speeds for on-site printing during inspection of the information.  The Receiving Party may print portions of the information only when necessary to prepare any filing with the Court or to serve any pleadings or other papers on any other Party (including a testifying expert's expert report).  **The Receiving Party shall print only such portions as are reasonably necessary for the purposes for which any part of the information is printed at the time, but shall not request paper copies for** | [NONE – "HIGHLY CONFIDENTIAL – SOURCE CODE" category is not necessary]<br><br>In the alternative, should the Court elect to order a "HIGHLY CONFIDENTIAL – SOURCE CODE" category:<br><br>The Producing Party shall make available a printer with commercially reasonable printing speeds for on-site printing during inspection of the information.  The Receiving Party may print portions of SOURCE CODE information when reasonably necessary to prepare court |

**the purpose of reviewing Information in the first instance.  In no event may the Receiving Party print more than 20 consecutive pages and no more than 500 pages of information in aggregate during the duration of the case without prior written approval by the Producing Party.** Upon printing any such portions of information, the printed pages shall be collected by the Producing Party.  The Producing Party shall Bates number, copy, and label "HIGHLY CONFIDENTIAL – SOURCE CODE" any pages printed by the Receiving Party.  **If the Producing Party objects based on a good-faith belief that the printed portions are not necessary to prepare any filing with the Court or to serve any pleadings or other papers on any other Party (including a testifying expert's expert report) as described above, the Producing Party shall make such objection known to the Receiving Party within a reasonable period of time.  If, after meeting and conferring, the Producing Party and the Receiving Party cannot resolve the objection, at the option of either the Producing Party or the Receiving Party, the Parties shall immediately work together to seek Court intervention to resolve the dispute.  The burden shall be on the Receiving Party to demonstrate that such printed portions are no more than reasonably necessary for a permitted purpose and not merely printed for the purposes of review and analysis elsewhere.  Pending resolution of the dispute, the Receiving Party shall not remove the disputed materials from the secured room unless otherwise agreed by the Parties.  In the absence of any objection, or upon resolution of any such dispute by the Court, the Producing Party shall promptly provide one copy set of such pages to the Receiving Party and shall retain one copy set.**

filings or other papers (including a testifying expert's expert report).  Upon printing any such portions of information, the printed pages shall be collected by the Producing Party.  The Producing Party shall Bates number, copy, and label "HIGHLY CONFIDENTIAL - SOURCE CODE" any pages printed by the Receiving Party.  Within three (3) business days, the Producing Party shall either (i) send one copy set of such pages to the Receiving Party, for next day business delivery, or (ii) inform the Receiving Party that it objects that the printed portions are excessive and/or not done for a permitted purpose.  If, after meeting and conferring, the Producing Party and the Receiving Party cannot resolve the objection, the Producing Party shall be entitled to seek a Court resolution of whether the printed SOURCE CODE information in question was printed for a permitted purpose.

7.4     Disclosure of "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY"

Information or Items:  Unless otherwise ordered by the Court or permitted in writing by the

Designating Party, a Receiving Party may disclose any information or item designated

"HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" only to:

(a)     *Disputed.*

| Defendants' Proposal | Plaintiffs' Proposal |
|---|---|
| The Receiving Party's Outside Counsel of record in this action, **provided that such Outside Counsel is not involved in competitive decision-making, as defined by *U.S. Steel v. United States*, 730 F.2d 1465, 1468 n.3 (Fed. Cir. 1984),** on behalf of a Party or a competitor of a Party, as well as employees of said Outside Counsel to whom disclosure is reasonably necessary to conduct this action (by executing this Order, Outside Counsel acknowledges the obligation on behalf of all employees of Outside Counsel to abide by the terms and conditions of the Order, and will make appropriate disclosure of these terms and conditions to all employees who will have access to information pursuant to the Order); | The Receiving Party's Outside Counsel of record in this action, as well as employees of said Outside Counsel to whom disclosure is reasonably necessary to conduct this action (by executing this Order, Outside Counsel acknowledges the obligation on behalf of all employees of Outside Counsel to abide by the terms and conditions of the Order, and will make appropriate disclosure of these terms and conditions to all employees who will have access to information pursuant to the Order); |

7.5 Disclosure of "HIGHLY CONFIDENTIAL – SOURCE CODE" Information or

Items:  Unless otherwise ordered by the Court or permitted in writing by the Designating Party, a

Receiving Party may disclose any information or item designated "HIGHLY CONFIDENTIAL

– SOURCE CODE" in accordance with the provisions of Section 7.2 of this Order and only to:

(a)     *Disputed.*

| Defendants' Proposal | Plaintiffs' Proposal |
|---|---|
| The Receiving Party's Outside Counsel of record in this action, **provided that such Outside Counsel is not involved in competitive decision-making, as defined by** | [NONE – "HIGHLY CONFIDENTIAL – SOURCE CODE" category is not necessary] |

| | |
|---|---|
| ***U.S. Steel v. United States,* 730 F.2d 1465, 1468 n.3 (Fed. Cir. 1984), on behalf of a Party or a competitor of a Party,** as well as employees of said Outside Counsel to whom disclosure is reasonably necessary to conduct this action (by executing this Order, Outside Counsel acknowledges the obligation on behalf of all employees of Outside Counsel to abide by the terms and conditions of the Order, and will make appropriate disclosure of these terms and conditions to all employees who will have access to information pursuant to the Order); | |

## III.  LIMITATIONS ON PATENT PROSECUTIONS AND ACQUISITIONS

### 13.1  *Disputed*

| Defendants' Proposal | Plaintiffs' Proposal |
|---|---|
| Absent written consent from the Producing Party, any individual affiliated with a Receiving Party who reviews or otherwise learns of the Producing Party's technical information relating to one or more of the products accused of infringement in this litigation that has been produced in this case and designated as HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY or HIGHLY CONFIDENTIAL – SOURCE CODE shall not participate, directly or indirectly, in the prosecution of any patent or patent application anywhere in the world (including, without limitation, originally filed applications, provisionals, non-provisionals, continuations, divisions, continuations-in-part, reexaminations, or reissues)**, nor engage in the acquisition (either directly or indirectly) of any patent or patent application (including, without limitation, originally filed applications, provisionals, non-provisionals, continuations, divisions, continuations-in-part, reexaminations, or reissues) involving the technology at issue in this litigation**.  Notwithstanding the forgoing, these provisions are not intended and shall not | Absent written consent from the Producing Party, any person who reviews or otherwise learns of information that has been produced in this case and designated as HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY or HIGHLY CONFIDENTIAL – SOURCE CODE by a party shall not participate, directly or indirectly, in the prosecution of any patent or patent application anywhere in the world (including, without limitation, originally filed applications, provisionals, non-provisionals, continuations, divisions, continuations-in-part, or reissues) involving the technology at issue in this litigation. Notwithstanding the forgoing, these provisions are not intended and shall not preclude any Outside Counsel from participating in any reexamination proceedings involving the patents-in-suit, except that Outside Counsel shall not draft or assist in the drafting of any claim or amendment to any claim of the patents-in-suit for a period ending one year after the resolution of this litigation (including any appeals).  This Prosecution Bar shall begin when access to "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES |

| | |
|---|---|
| preclude any Outside Counsel from participating in any reexamination proceedings involving the patents-in-suit, except that Outside Counsel shall not draft or assist in the drafting of any claim or amendment to any claim of the patents-in-suit for a period ending one year after the resolution of this litigation (including any appeals).  This **prohibition** shall begin when access to "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" or "HIGHLY CONFIDENTIAL – SOURCE CODE" information is first received by the affected individual.  This prohibition shall extend from the time of receipt of such information through and including two (2) years following the entry of a final nonappealable judgment or order or the complete settlement of all claims against the Party or Parties whose information was received or reviewed. | ONLY" or "HIGHLY CONFIDENTIAL – SOURCE CODE" information is first received by the affected individual.  This prohibition shall extend from the time of receipt of such information through and including two (2) years following the entry of a final nonappealable judgment or order or the complete settlement of all claims against the Party or Parties whose information was received or reviewed. |

# EXHIBIT 2



Subject:
RE: IV v. Altera et al. - Protective Order

From:
Ameet Modi
07/03/2012 03:38 PM

To:
Joe C Liu, Michael Stadnick

Cc:
"Blankenheimer, Alan H", Brian Berliner, Behrooz Shariati, Henry L Welch, John Desmarais, "Selwyn, Mark", "Kennedy, Michael", Patrick Michael, "Mock, Tobias"
Show Details

2 Attachments

          

image001.gif  Plaintiffs' edits - Draft Exhibit 1 to Stark Letter re PO.docx

Joe,

At this point, we believe the disputes are sufficiently crystallized.  Plaintiffs' proposals are included in the attached edited version of Defendants' Draft Exhibit 1.

Regards,
Ameet

Ameet Modi
Desmarais LLP
230 Park Avenue
New York, New York 10169
T: 212-351-3405
F: 212-351-3401
amodi@desmaraisllp.com

**From:** Joe C Liu [mailto:jcliu@JonesDay.com]
**Sent:** Tuesday, July 03, 2012 10:12 AM
**To:** Michael Stadnick
**Cc:** Blankenheimer, Alan H; Ameet Modi; Brian Berliner; Behrooz Shariati; Henry L Welch; John Desmarais; Selwyn, Mark; Kennedy, Michael; Patrick Michael; Mock, Tobias

**Subject:** RE: IV v. Altera et al. - Protective Order

Mike,

Thanks for you email.  Responses in order of your points below:

1. We are not sure what concession you are referring to. In any event, we all know that "Source Code" provisions in protective orders frequently address materials beyond literal source code, and that courts around the country afford additional protections to materials, including hardware designs, schematics etc. under the category "source code."  We stated that this is not likely a <u>software</u> case - not that this is "not a source code case."  We do not intend to "mischaracterize" anything -- and expect that to be mutual.

2.  Defendants have never taken the position that they "should not have to produce [hardware designs] in the litigation."  And even assuming these materials could be produced as you suggest in PDF, the production will be unmanageable and unusable for your review.  We have attempted to engage in a discussion on reasonable production formats and procedures -- you have refused to engage in this discussion, taking the position that there should be no "source code" category, and thus, there is nothing to discuss about the formats and procedures for production.

3.  We do not have an obligation to demonstrate instances in other litigation matters, nor are they controlling.  And we have already offered you the NDCA model protective order, which clearly includes protections for hardware designs and should be more than sufficient.  In any event, on behalf of Xilinx and Altera, see attached protective orders that include some examples of greater protections for GDSII, RTL, HDL, design documentation etc.

4.  Again, your point is not relevant.  See no. 3 above.  And we have produced documents in a variety of formats, depending on what is requested, the format in which the materials is maintained and the meet and confer process.

5.  That is not the Defendants agreement, as you know from our last draft.  We agreed that prosecution bar does not apply to reexaminations <u>for the patents-in-suit</u>.  Otherwise, the prosecution bar does apply to reexaminations.

As for the "competitive decision-making" provision, we don't understand your objection here.  If your firm is not a competitive decision maker, as you state, or does not intend to engage in future competitive decision making activities, it would seem you would have no objection to this provision.  In any event, we believe Mr. Desmarais and others at your firm are competitive decision makers, and if motion practice is necessary to resolve this issue now or in the future, it will not be senseless.

Attached is an exhibit that we will be filing with our letter brief which sets forth side by side the parties positions for the current disputed issues.  We intend to submit our letter brief on Thursday.  Given the holiday, if you have any edits to the attached Exhibit or believe further discussion is necessary, lets plan to discuss by COB today.



Regards,

Joe

Joe C. Liu
JONES DAY - Silicon Valley
Telephone: (650) 739-3942
Email: jcliu@jonesday.com

From:    Michael Stadnick <MStadnick@desmaraisllp.com>

To:      Joe C Liu <jcliu@JonesDay.com>, Ameet Modi <AModi@desmaraisllp.com>

Cc:      Patrick Michael <pmichael@jonesday.com>, Behrooz Shariati <bshariati@JonesDay.com>, Henry L Welch <hlwelch@jonesday.com>,
         "Selwyn, Mark" <Mark.Selwyn@wilmerhale.com>, "Mock, Tobias" <Tobias.Mock@wilmerhale.com>, "Blankenheimer, Alan H"
         <ablankenheimer@cov.com>, "Kennedy, Michael" <MKennedy@cov.com>, Brian Berliner <bberliner@omm.com>, John Desmarais
         <JDesmarais@desmaraisllp.com>

Date:    06/29/2012 03:22 PM

Subject: RE: IV v. Altera et al. - Protective Order

Patrick/Behrooz/Joe:

To put in writing what we have already discussed at length by telephone:

1.  Plaintiffs see no need for a "Source Code" category – or any category of protection above "attorneys' eyes only" – since
(as you have conceded) this is not a source code case.  You expressly agreed not to mischaracterize my clients' position in
that regard, and I would appreciate it if you would abide by that commitment.  This is not a dispute about the scope of the
"Source Code" protective tier, but rather a dispute as to whether any such tier is needed at all.

2.  Defendants have the ability to generate and produce schematics, circuit diagrams, and other documents concerning
what you call "hardware designs."  Plaintiffs contend that Defendants should generate and produce those documents just
like any other documents (e.g., in pdf form).  Defendants contend that, simply because Defendants allegedly do not
routinely print out or create pdfs/print-outs of such documents in the ordinary course of business, Defendants should not
have to produce them in the litigation.

3.  Plaintiffs have asked Defendants to demonstrate any instances where they have previously secured the protections that
you are seeking.  Defendants have failed.

4.  Plaintiffs have asked Defendants to confirm whether they have produced such documents in other litigations without
the protections you are seeking.  Defendants have failed.

5.  Plaintiffs understand that the Defendants have agreed that any prosecution bar will not apply to reexaminations.
 Plaintiffs dispute that an acquisition bar is appropriate.

Finally, no basis exists for your newly proposed provision.  Neither Mr. Desmarais nor any other attorney at my firm is a
competitive decision maker for a party or any competitor of a party.  Nor have Mr. Desmarais's activities in connection with
Round Rock Research, LLC related in any way to Defendants.  And if it will help to avoid senseless motion practice, Mr.
Desmarais will even agree not to participate personally in any future Round Rock activities adverse to Defendants.

As we have discussed, in crafting your letter brief, please characterize the parties' disputes accurately so that we can
present those disputes to the Court efficiently.

Mike

**From:** Joe C Liu [mailto:jcliu@JonesDay.com]
**Sent:** Friday, June 29, 2012 2:50 PM
**To:** Michael Stadnick; Ameet Modi
**Cc:** Patrick Michael; Behrooz Shariati; Henry L Welch; Selwyn, Mark; Mock, Tobias; Blankenheimer, Alan H;

Kennedy, Michael; Brian Berliner
**Subject:** IV v. Altera et al. - Protective Order

Mike:

As a follow-up to our June 25th discussion on the protective order, Defendants propose replacing Defendants' proposed category "Highly Confidential - Core Technical Document" with the ND CA model protective order category "Highly Confidential - Source Code" and the corresponding definition "computer code and associated comments and revision histories, formulas, engineering specifications, or schematics that define or otherwise describe in detail the algorithms or structure of software or hardware designs."

Attached are a couple of examples of protective orders that have been entered by the courts, including the Delaware Court, and provide similar protections that Defendants are seeking in this case.

In addition, we are proposing to add the following bold and italicized language to sections 7.4 and 7.5 of the draft protective order:

Unless otherwise ordered by the Court or permitted in writing by the Designating Party, a Receiving Party may disclose any information or item designated "HIGHLY

CONFIDENTIAL – ATTORNEYS' EYES ONLY"  and "HIGHLY CONFIDENTIAL – Souce Code" only to:

"(a)       The Receiving Party's Outside Counsel of record in this action, ***provided that such Outside Counsel is not involved in competitive decision-making, as defined by U.S. Steel v. United States, 730 F.2d 1465, 1468 n.3 (Fed. Cir. 1984), on behalf of a Party or a competitor of a Party,*** as well as employees of said Outside Counsel to whom disclosure is reasonably necessary to conduct this action (by executing this Order, Outside Counsel acknowledges the obligation on behalf of all employees of Outside Counsel to abide by the terms and conditions of the Order, and will make appropriate disclosure of these terms and conditions to all employees who will have access to information pursuant to the Order);"
So we are clear, this new language is intended to preclude, at a minimum, John Desmarais from accessing Defendants' highly confidential information as he is involved in competitive decision-making on behalf of at least Round Rock Research.  Of course, to the extent other attorneys at Desmarais LLP or otherwise are competitive decision-makers, they would similarly be precluded from accessing Defendants' highly confidential information.

Please let us know if IV agrees to these proposed edits.  If not, we intend to include the following issues in Defendants' letter brief to the Court.

1. (a) Whether the scope of defendants' proposed category "Highly Confidential - Source Code" should be limited to "source code" documents; and (b) whether the procedures for reviewing the information and items listed in defendants' proposed category "Highly Confidential - Source Code" is appropriate.

2. Whether an acquisition bar (in addition to a prosecution bar) is appropriate.

3.  Whether Outside Counsel that are involved in competitive decision making should be precluded from accessing Defendants' highly confidential information.

Regards,

Joe

Joe C. Liu
JONES DAY - Silicon Valley
Telephone: (650) 739-3942
Email: jcliu@jonesday.com

=========

This e-mail (including any attachments) may contain information that is private, confidential, or protected by attorney-client or other privilege.  If you received this e-mail in error, please delete it from your system without copying it and notify sender by reply e-mail, so that our records can be corrected.
==========

This email may contain confidential and privileged material for the use of the intended recipient. Any review, use, or distribution by anyone other than the addressee is strictly prohibited. If you are not the intended recipient, please contact the sender by reply email and delete all copies of this message.

==========
This e-mail (including any attachments) may contain information that is private, confidential, or protected by attorney-client or other privilege.  If you received this e-mail in error, please delete it from your system without copying it and notify sender by reply e-mail, so that our records can be corrected.
==========

This email may contain confidential and privileged material for the use of the intended recipient. Any review, use, or distribution by anyone other than the addressee is strictly prohibited. If you are not the intended recipient, please contact the sender by reply email and delete all copies of this message.

# EXHIBIT 3



ATTORNEYS AT LAW
1200 SEVENTEENTH STREET, N.W. WASHINGTON, DC 20036
Tel:(202) 467-6300  Fax:(202) 466-2006  Web:www.adduci.com

August 12, 2011

V JAMES ADDUCI II

LOUIS S MASTRIANI

TOM M SCHAUMBERG

WILL E LEONARD

MUNFORD PAGE HALL II

MICHAEL L DOANE

SARAH E HAMBLIN

JAMIE D UNDERWOOD

ANDREW F PRATT *

WILLIAM C SJOBERG

JONATHAN J ENGLER

IAN A TARONJI

QIAN SHENG *

DAVID H HOLLANDER JR

KATHERINE R LAHNSTEIN

DANIEL F SMITH

ASHA ALLAM *

BEAU A JACKSON *

THOMAS R BURNS JR

ROWAN E MORRIS

EVAN H LANGDON *

PAUL M BARTKOWSKI


OF COUNSEL

JOHN C STEINBERGER

PAUL G HEGLAND

DEBORAH S STRAUSS

*admitted to a bar other
than DC; practice limited
to federal courts & agencies


HARVEY B FOX (1941-2010)


AFFILIATE

AM&S TRADE SERVICES LLC

CARLOS MOORE, PRESIDENT

**VIA HAND DELIVERY**

The Honorable James R. Holbein
Secretary
U.S. International Trade Commission
500 E Street, S.W.
Washington, DC 20436

      Re:    *Certain Dynamic Random Access Memory and*
                *NAND Flash Memory Devices and Products Containing*
                *Same,* ITC Inv. No. 337-TA-___ (Docket No. 2829)

Dear Secretary Holbein:

      On July 12, 2011, Complainants Intellectual Ventures Management, LLC, Invention Investment Fund I, L.P., Invention Investment Fund II, LLC, Intellectual Ventures I LLC and Intellectual Ventures II LLC ("Complainants") filed a Complaint and supporting materials in support of Complainants' request that the Commission commence an investigation pursuant to Section 337 of the Tariff Act of 1930, as amended. On August 10, 2011, the Commission granted Complainants' request to delay institution of an Investigation, giving Complainants until August 15, 2011, to file an Amended Complaint.

      With this letter, Complainants are submitting an Amended Complaint and supporting materials. The Amended Complaint adds two (2) new Proposed Respondents, adds five (5) new Exhibits, and amends one of the original Exhibits. The remainder of the original Exhibits, and all of the Appendices, are unchanged from the submission on July 12, 2011, and, accordingly, are not being re-submitted, with the exception of the two complete sets of exhibits submitted for service upon each of the new proposed respondents.

      Complainants submit the following documents for filing:

      1.     An original and twelve (12) copies of the verified Non-Confidential Amended Complaint, in two versions: a redlined version, showing changes from the original Complaint, and a clean version (Commission Rule 210.8(a)(1)(i));

U.S.C. § 1337(a)(1)(B)(i), in that they constitute infringement of the valid and enforceable Asserted Patents.

6.      Complainants seek relief from the Commission in the form of a limited exclusion order permanently excluding from entry into the United States DRAM and/or NAND Flash memory devices and a general exclusion order and/or a limited exclusion order permanently excluding from entry into the United States products containing such DRAM and/or NAND Flash memory devices.  Complainants further seek as relief cease and desist orders prohibiting the importation, sale, offer for sale, marketing, advertising, or the soliciting of any Accused Products owned, held, or stored by Proposed Respondents or their related companies.

## II.     THE PARTIES

### A.      Complainants

#### 1.      Background on the Intellectual Ventures Organization

7.      Complainant IV Management is a Washington limited liability company headquartered in Bellevue, Washington.  IV Management oversees the entire family of companies known in the industry, and referred to collectively in this Complaint, as "Intellectual Ventures."  Attached as Exhibit 1 is a Confidential Declaration describing the structure of the Intellectual Ventures organization.

8.      Complainants IV I and IV II are limited liability companies organized and existing under the laws of Delaware, with their principal place of business located in Bellevue, Washington.  IV I is an indirect, wholly-owned subsidiary of Complainant IIF I, a limited partnership organized and existing under the laws of Delaware, with its principal place of business located in Bellevue, Washington.  IV II is an indirect, wholly-owned subsidiary of Complainant IIF II, a limited liability company organized and existing under the laws of Delaware, with its principal place of business located in Bellevue, Washington.

9.     Intellectual Ventures is an invention capital organization founded on the core principle that ideas are valuable.  Since its creation in 2000, Intellectual Ventures has been a global leader in the business of invention.

10.     Intellectual Ventures conducts its operations through the efforts of more than 760 employees and dedicated service providers in offices around the world.  Over 680 of those employees and dedicated service providers work in the United States at Intellectual Ventures' offices in Bellevue, Washington, Austin, Texas, and Silicon Valley, California.

11.     Intellectual Ventures invests both expertise and capital in the development of inventions. Intellectual Ventures collaborates with leading inventors, and it partners with pioneering companies.  By providing access to its portfolio of patents, Intellectual Ventures helps its licensees innovate and reduce their risk by bridging the gap between the invention rights they currently have and the invention rights they need.  Intellectual Ventures' goal is to build an active, dynamic, and more efficient market for invention.

## 2.     Intellectual Ventures' Business Activities

12.     Intellectual Ventures pursues four main lines of business: (1) patent acquisition and licensing; (2) invention; (3) invention collaboration; and (4) using inventions to foster global good.

13.     Currently, the most significant and profitable components of Intellectual Ventures' business are its patent acquisition and licensing activities.  These efforts are carried out through Complainants IIF I and IIF II (referred to as "the Funds") and affiliated entities.  The Funds acquire patents, group them within appropriate portfolios, and seek to license those portfolios to major technology companies.  The Funds' licensing efforts include pre-assertion due diligence, market and industry research, reverse engineering of potentially infringing products, preparation of claim charts, face-to-face licensing negotiations, and preparations for litigation.

14.     The Funds acquire inventions from businesses as well as individual inventors and then license the inventions to those who need them.    Approximately 25% of the Funds' expenditures for the acquisition of patents have gone to individual inventors.    Through its acquisition and licensing activities, Intellectual Ventures allows companies and individual inventors to reap a financial reward from their innovations and to devote their creativity to new ideas, inventions, and patents.    By serving as a conduit between inventors and manufacturers, Intellectual Ventures helps the market achieve greater efficiencies in technology valuation and intellectual property rights transfer.

15.     Intellectual Ventures has earned substantial revenues by licensing the Funds' patents to some of the world's most innovative and successful technology companies.    These licensees, many of which are headquartered in the United States, use the licensed technology in making computer equipment, software, semiconductor devices, and a wide array of other commercially significant products.    The success of the Funds has confirmed Intellectual Ventures' core belief that ideas and inventions have real economic value.

16.     The invention component of Intellectual Ventures' business occurs within The Invention Science Fund ("ISF").    ISF employs approximately 60 scientists and engineers, and works with approximately 100 external advisors, to develop ideas in a broad range of fields, including agriculture, computer hardware, life sciences, medical devices, energy, financial services, consumer electronics, semiconductors, software, and many other fields.    From Intellectual Ventures' state--of-the-art laboratory facilities in Bellevue, Washington—three buildings totaling 43,100 square-feet—ISF develops and tests new ideas.    Through such activities, more than 5,000 inventions have been created, more than 2,734 patent applications filed, and approximately 330 patents have issued.

17.     Experts at ISF also helped launch TerraPower, an energy company.  TerraPower was created specifically to develop a new type of nuclear reactor that produces significantly smaller amounts of nuclear waste than conventional nuclear reactors and eliminates the need to enrich uranium.   The work of TerraPower has the chance of reducing carbon emissions substantially and producing power at a much lower cost.  Expected to go online by 2020, the TerraPower project has received funding from outside investors and is the first official spinout from Intellectual Ventures.

18.     Intellectual Ventures' Invention Development Fund ("IDF"), which has a staff of approximately 126 people, creates inventions by collaborating with inventors and over 400 research institutions around the world, including American universities.   IDF develops inventions by identifying a technical challenge, requesting proposals for inventions to solve the challenge, selecting the most promising ideas, rewarding the inventors and institutions for their contributions, and filing patent applications on the ideas.  Through such activities, more than 6,500 inventions have been created, more than 1,300 patent applications have been filed, approximately 300 patents have issued, and over $20 million has been awarded to inventors.  A large percentage of this activity takes place in the United States.

19.     The Global Good program at Intellectual Ventures seeks to help solve social, health, and other problems in the developing world and to address education issues in the United States.

20.     Intellectual Ventures uses its network of scientists and inventors to address neglected areas of research, many of which are connected to some of the world's most pressing problems.  For example, Intellectual Ventures has created innovative approaches for diagnosing malaria, a disease that annually sickens or kills millions around the world, and for targeting the

mosquitoes that spread the disease.   Already, Intellectual Ventures has helped develop the photonic fence, a tiny ultraviolet laser that tracks and destroys mosquitoes in flight.

21.     Intellectual Ventures is a forward-thinking organization that uses private sector resources to promote innovation.   By helping inventors capitalize on their creations and providing technology firms with better access to powerful ideas, Intellectual Ventures makes valuable contributions to the U.S. economy.

**B.     Proposed Respondents**

**1.     Memory Manufacturer Respondents**

**a)     Hynix Semiconductor Inc. and
Hynix Semiconductor America Inc.**

22.     On information and belief, Proposed Respondent Hynix Semiconductor Inc. ("HSI") is a corporation organized under the laws of Korea, with its principal place of business at San 136-1, Ami-ri, Bubal-eub Icheon-si, Gyeonggi-do, Korea.

23.     On information and belief, Proposed Respondent Hynix Semiconductor America Inc. ("HSA") is a corporation organized under the laws of California, having its principal place of business at 3101 North First Street, San Jose, California 95134.   On information and belief, HSA is a wholly-owned subsidiary of proposed Respondent HSI.   HSI and HSA are hereinafter referred to collectively as "Hynix."

24.     Hynix is one of the world's largest manufacturers of DRAM.   On information and belief, Hynix has made and sold billions of dollars worth of DRAM, with revenues of approximately $8.28 billion for 2010.   *See* Exhibit 2.

25.     Hynix also makes and sells NAND Flash memory devices.   On information and belief, Hynix has made and sold hundreds of millions of dollars of NAND Flash memory, with revenues of approximately $1.744 billion for 2010.   *See* Exhibit 2.

# EXHIBIT 4

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

XEROX CORPORATION, )
)
   *Plaintiff-Counterclaim Defendant,* )
)
           v. )    C.A. No. 10-136-LPS-MPT
)
GOOGLE INC., YAHOO! INC., RIGHT )
MEDIA INC., RIGHT MEDIA LLC, )
YOUTUBE, INC., and YOUTUBE, LLC, )
)
   *Defendants-Counterclaim Plaintiffs.* )

## **PROTECTIVE ORDER**

To expedite the flow of discovery materials, to facilitate the prompt resolution of disputes

over confidentiality of discovery materials, to adequately protect information the parties are

entitled to keep confidential, to ensure that only materials the parties are entitled to keep

confidential are subject to such treatment, and to ensure that the parties are permitted reasonably

necessary uses of such materials in preparation for and in the conduct of trial, pursuant to Fed. R.

Civ. P. 26(c), it is hereby ORDERED THAT:

## 1.   **INFORMATION SUBJECT TO THIS ORDER**

Discovery materials produced in this case may be labeled as one of three categories:

CONFIDENTIAL, CONFIDENTIAL OUTSIDE COUNSEL ONLY and RESTRICTED

CONFIDENTIAL – SOURCE CODE, as set forth in Items A – C below. All three of the

identified categories of information shall be identified collectively in this Order by the title

"Protected Information."

### A.   **Information Designated as Confidential Information**

1.   For purposes of this Order, "CONFIDENTIAL INFORMATION" shall mean all

information or material produced for or disclosed to a receiving party that a producing party,

including any party to this action and any non-party producing information or material

voluntarily or pursuant to a subpoena or a court order, considers to constitute confidential

technical, sales, marketing, financial, or other commercially sensitive information (including,

without limitation, information obtained from a nonparty pursuant to a current Nondisclosure

Agreement ("NDA")), whether embodied in physical objects, documents, or the factual

knowledge of persons, and which has been so designated by the producing party. Any

CONFIDENTIAL INFORMATION obtained by any party from any person pursuant to

discovery in this litigation may be used only for purposes of this litigation.

      2.     Any document or tangible thing containing or including any CONFIDENTIAL

INFORMATION may be designated as such by the producing party by marking it

"CONFIDENTIAL" prior to or at the time copies are furnished to the receiving party.

      3.     All CONFIDENTIAL INFORMATION not reduced to documentary, tangible or

physical form or which cannot be conveniently designated as set forth in paragraph 1.A.2, shall

be designated by the producing party by informing the receiving party of the designation in

writing.

      4.     Any documents (including physical objects) made available for inspection to

counsel for the receiving party prior to producing copies of selected items shall initially be

considered, as a whole, to constitute CONFIDENTIAL INFORMATION (unless otherwise

designated at the time of inspection) and shall be subject to this Order. Thereafter, the

producing party shall have 15 days to review and designate the appropriate documents as

CONFIDENTIAL INFORMATION (or otherwise as appropriate) prior to furnishing copies to

the receiving party.

      5.     The following information is not CONFIDENTIAL INFORMATION:

           a.     Published advertising materials;

         b.      Any information that is or, after its disclosure to a receiving party,
becomes part of the public domain as a result of publication not involving a violation of any
obligation of confidentiality to the producing party by a party to this action;

         c.      Any information that the receiving party can show was already publicly
known prior to the disclosure;

         d.      Any information that the receiving party can show by written records was
received by it from a source who obtained the information lawfully and under no obligation of
confidentiality to the producing party.

    6.      Documents designated CONFIDENTIAL and information contained therein shall
be available only to:

         a.      Outside litigation counsel of record and supporting personnel employed
in the law firm(s) of outside litigation counsel of record, such as attorneys, paralegals, legal
translators, legal secretaries, legal clerks and shorthand reporters;

         b.      Technical advisers who have signed the form attached hereto as
Attachment A, and their necessary support personnel, subject to the provisions of paragraphs
3.A-F herein; the term "technical adviser" shall mean independent outside expert witnesses or
consultants with whom counsel may deem it necessary to consult;

         c.      Up to three in-house counsel with responsibility for managing this
litigation, except that, subject to Section 1.B.2(c) below, defendants' in-house counsel under
this paragraph shall not have access to any co-defendants' CONFIDENTIAL INFORMATION;
specifically, upon entry of this order, CONFIDENTIAL INFORMATION may be disclosed to
the following individuals for each party:

         (1)      In-house counsel Lou Faber, Michelle Waites and Paul Schnose
for Xerox Corporation;

(2)     In-house counsel John Labarre and Catherine Lacavera for Google Inc. and YouTube LLC (the "Google Defendants");

(3)     In-house counsel Kevin T. Kramer for Yahoo! Inc. and Right Media LLC (the "Yahoo Defendants");

d.     The Court, its personnel and stenographic reporters (under seal or with other suitable precautions determined by the Court);

e.     Independent legal translators retained to translate in connection with this action; independent stenographic reporters and videographers retained to record and transcribe testimony in connection with this action; graphics, translation, or design services retained by counsel for purposes of preparing demonstrative or other exhibits for deposition, trial, or other court proceedings in the actions; non-technical jury or trial consulting services not including mock jurors; and

f.     Litigation support vendors specifically retained to assist outside counsel of record with document review.

7.     Substitutions to the list of designated in-house counsel set forth in paragraph 1.A.6(c) shall be by order of the Court.

**B.     Information Designated Confidential Outside Counsel Only**

1.     The CONFIDENTIAL OUTSIDE COUNSEL ONLY designation is reserved for CONFIDENTIAL INFORMATION that constitutes proprietary marketing, financial, sales, web traffic, research and development, or technical data/information or commercially sensitive competitive information, including, without limitation, confidential information obtained from a nonparty pursuant to a current NDA, CONFIDENTIAL INFORMATION relating to future products not yet commercially released, strategic plans, and settlement agreements or settlement communications, the disclosure of which is likely to cause harm to the competitive position of

the producing party. Documents marked CONFIDENTIAL OUTSIDE ATTORNEYS' EYES ONLY shall be treated as if designated CONFIDENTIAL OUTSIDE COUNSEL ONLY. In determining whether information should be designated as CONFIDENTIAL OUTSIDE COUNSEL ONLY, each party agrees to use such designation only in good faith.

     2.    Documents designated CONFIDENTIAL OUTSIDE COUNSEL ONLY and information contained therein shall be available only to:

     a.    Outside litigation counsel of record and supporting personnel employed in the law firm(s) of outside litigation counsel of record, such as attorneys, paralegals, legal translators, legal secretaries, legal clerks and shorthand reporters;

     b.    Technical advisers who have signed the form attached hereto as Attachment A, and their necessary support personnel, subject to the provisions of paragraphs 3.A-F herein;

     c.    For each party, in-house counsel among those identified in paragraph 1.A.6(c) whose duties and activities do not include involvement in patent preparation, prosecution, or patent claim drafting activities of the party, but only to the extent that such counsel review unredacted versions of pleadings, briefs, motions or other papers filed and to be filed with the Court (and drafts thereof), expert reports (including drafts), Court orders, and written responses (including drafts) to interrogatories or requests for admission (except that, absent written consent of the designating party, this provision shall not permit in-house counsel for the Yahoo! Defendants and in-house counsel for the Google Defendants to review one another's Confidential Outside Counsel Only designated expert reports and interrogatory responses, unless such materials have been filed with the Court in connection with a motion other than a discovery motion);

     d.    The Court, its personnel and stenographic reporters (under seal or with

other suitable precautions determined by the Court);

      e.     Independent legal translators retained to translate in connection with this action; independent stenographic reporters and videographers retained to record and transcribe testimony in connection with this action; graphics, translation, or design services retained by counsel for purposes of preparing demonstrative or other exhibits for deposition, trial, or other court proceedings in the actions; non–technical jury or trial consulting services not including mock jurors; and

      f.     Litigation support vendors specifically retained to assist outside counsel of record with document review.

### C.    Information Designated Restricted Confidential - Source Code

1.     A party's confidential, proprietary and/or trade secret source code may be designated "RESTRICTED CONFIDENTIAL—SOURCE CODE," whether in electronic or hard copy form, and including where reproduced or excerpted in another document.

2.     All such source code shall be subject to the following provisions, except that Protected Information merely excerpting source code shall be subject only to subparagraphs (f), (g), (k) and (l) - (o):

      a.     Source code shall be made available in electronic format for inspection at the New York offices of the producing party's primary outside counsel of record in this action. Source code will be loaded onto no more than four non-networked computers that are password protected and maintained in a secure, locked area. Use or possession of any input/output device (e.g., USB memory stick, CDs, floppy disk, portable hard drive, etc.) or recording device (e.g., camera phone, video camera, laptop with video camera, PDA camera, etc.) is prohibited while accessing the computer containing the source code. Use or possession of any printer or other peripheral (e.g., monitor, projector, etc.) or printer paper is also prohibited while accessing the

computer containing the source code except to the extent provided by the producing party. The computers containing source code will be made available for inspection during regular business hours upon reasonable notice to the producing party (not less than three business days in advance with respect to the initial inspection of source code in a given location, and not less than two business days in advance with respect to inspections at such location thereafter). Inspection to take place outside regular business hours shall require advance notice of not less than two business days, and inspection on a weekend shall require notice made no later than the close of business of the preceding Wednesday. The parties agree that a receiving party's current acceptance of a single source-code review location shall not, in and of itself, be used against the receiving party should the receiving party subsequently move to modify this order to provide for additional source-code review locations.

           b.      The receiving party's outside counsel and/or experts may request that commercially available licensed software tools for viewing and searching source code be installed on the source code computers, which request shall not be unreasonably denied. The receiving party must provide the producing party with the CD or DVD containing such software tool(s) at least four business days in advance of the inspection to facilitate installation by the producing party. Nothing in this paragraph, however, shall prevent the producing party from providing and installing any such requested software tools itself at its own cost so long as those tools have not been altered in any way. The parties agree to divide the cost of the computers, peripherals and specifically requested software tools used to facilitate source code review equally between the producing party and the receiving party.

           c.      The receiving party's outside counsel and/or experts shall be entitled to take notes relating to the source code but may not copy the source code into the notes. All such notes will be taken on bound (spiral or other type of permanently bound) notebooks. No loose

paper or other paper that can be used in a printer may be brought into the secure facility specified in paragraph 1.C.2(a) by the receiving party or its experts. No copies of all or any portion of the source code may leave the room in which the source code is inspected except as otherwise provided herein. Further, no other written or electronic record of the source code is permitted except as otherwise provided herein.

    d.  No person shall copy, e-mail, transmit, upload, download, print, photograph or otherwise duplicate any portion of the designated source code, except that the receiving party may print a reasonable number of pages of source code, as provided herein, but only if and to the extent reasonably necessary for the preparation of its case. Upon a request made by the receiving party, outside counsel for the producing party will make arrangements for printers to be connected to the computers containing source code. The producing party shall provide printing paper that is pre-Bates stamped and that bears the appropriate confidentiality legend (*i.e.*, "RESTRICTED CONFIDENTIAL – SOURCE CODE"), but that is otherwise blank. Source code may be printed only on such paper via the designated printers. At the time of printing, the receiving party will provide the producing party with the printed source code. The producing party will make a copy of any source code printed by the receiving party and will provide that copy to the receiving party within 48 hours. If the printed source code exceeds 200 pages, the producing party will provide the copy to the receiving party within 72 hours. Printing and copying may not be done in such volume as to circumvent the purpose of this provision in protecting the parties' source code to the fullest extent possible.

    e.  The receiving party shall be entitled to print out at least 6,000 printed pages of source code in aggregate from each producing party (where each defendant group constitutes one producing party) during the duration of the case. The producing party may object, for good cause, to providing specific source code printouts to the receiving party. Any

objection to a specific printout request must be made within 120 hours of the producing party's receipt of that printout request pursuant to paragraph 1.C.2(d). Once the receiving party has printed out 6,000 pages of source code from a given producing party, if the producing party objects for good cause, the producing party may withhold the requested printouts from the receiving party pending resolution of its objection by the Court.

          f.      Any printed pages of source code, and any other documents or things quoting source code or excerpting source code, may not be copied, digitally imaged or otherwise duplicated, except in limited excerpts necessary to prepare exhibits for depositions, expert reports, or court filings as discussed below. However, the receiving party shall be entitled to up to two additional copies of the printed source code upon request, which copies shall be provided within the time limits stated in paragraph 1.C.2(d) above.

          g.      Any paper copies designated "RESTRICTED CONFIDENTIAL - SOURCE CODE" shall be stored or viewed only at (i) the offices of outside counsel for the receiving party, (ii) the offices of outside experts or consultants who have been approved to access source code; (iii) the site where any deposition is taken; (iv) the Court; or (v) any intermediate location necessary to transport the information to a hearing, trial or deposition. Any such paper copies shall be maintained at all times in a secure location under the direct control of an individual authorized to view RESTRICTED CONFIDENTIAL − SOURCE CODE materials pursuant to paragraph 1.C.2(k). When not in use, any such paper copies must be maintained in a locked room to which access is restricted to those individuals authorized to view RESTRICTED CONFIDENTIAL − SOURCE CODE materials pursuant to paragraph 1.C.2(k). The receiving party's outside counsel shall maintain a log of all copies of the source code (received from a producing party) that are delivered by the receiving party to any qualified person under paragraph 1.C.2(k). The log shall include the names of the custodians of all

copies of the printed source code, and the location where the copies are stored. The producing party will be entitled to a copy of the log upon request and reasonable notice.

        h.     A list of names of persons who will view the source code will be provided to the producing party in conjunction with any written (including email) notice requesting inspection. The receiving party shall maintain a daily log of the names of persons who enter the locked room containing the source code review computers and when they enter and depart. The producing party shall be entitled to have a person observe all entrances and exits from the source code viewing room, and to a copy of the log.

        i.     Unless otherwise agreed in advance by the parties in writing, following each inspection, the receiving party's outside counsel and/or experts shall remove all notes, documents, laptops, and all other materials from the room that may contain work product and/or attorney-client privileged information. The producing party shall not be responsible for any items left in the room following each inspection session.

        j.     The receiving party will not copy, remove, or otherwise transfer any source code from the source code computers including, without limitation, copying, removing, or transferring the source code onto any other computers or peripheral equipment. The receiving party will not transmit any source code in any way from the location of the source code inspection.

        k.     Only the following individuals shall have access to "RESTRICTED CONFIDENTIAL - SOURCE CODE" materials, absent the express written consent of the producing party or further court order:

        (1)     Outside counsel of record for the parties to this action, including any attorneys, paralegals, technology specialists and clerical employees of their respective law firms;

(2)     Up to six (6) outside experts or consultants per party, pre-approved in accordance with paragraphs 3.A-F and specifically identified as eligible to access source code, and their necessary support personnel;

(3)     The Court, its technical advisor (if one is appointed), the jury, court personnel, and court reporters or videographers recording testimony or other proceedings in this action;

(4)     While testifying at deposition or trial in this action only: (i) any current or former officer, director or employee of the producing party or original source of the information; (ii) any person designated by the producing party to provide testimony pursuant to Rule 30(b)(6) of the Federal Rules of Civil Procedure; and/or (iii) any person who authored, previously received, or was directly involved in creating, modifying, or editing the source code, as evident from its face or reasonably certain in view of other testimony or evidence. Persons authorized to view source code pursuant to this sub-paragraph shall not retain or be given copies of the source code except while so testifying. Upon request, the producing party shall make source code computers available for depositions, in which case such depositions will be held at the offices of the producing party's outside counsel.

(5)     Litigation support vendors specifically retained to assist outside counsel of record with document review.

l.     Except as provided in this paragraph, the receiving party may not create electronic images, or any other images, of the source code from the paper copy for use on a computer (e.g., may not scan the source code to a PDF, or photograph the code).  The receiving party may create electronic copies or images of excerpts of source code for use in pleadings, briefs, motions, exhibits, expert reports, discovery documents, deposition transcripts, other Court documents, or any drafts of these documents ("SOURCE CODE DOCUMENTS").  The

receiving party shall only include such excerpts as are reasonably necessary for the purposes for which such part of the source code is used, and no such excerpt shall exceed 100 consecutive lines of source code. Images or copies of source code shall not be included in correspondence between the parties (references to production numbers shall be used instead) and shall be omitted from pleadings and other papers except to the extent permitted herein. The receiving party may create an electronic image of a selected portion of the source code only when the electronic file containing such image has been encrypted using commercially reasonable encryption software including password protection. The communication and/or disclosure of electronic files containing any portion of source code shall at all times be limited to individuals who are authorized to see source code under the provisions of this Protective Order. The receiving party shall maintain a record of all electronic images of source code in its possession or in the possession of its retained consultants, including the names of the recipients and reviewers of any electronic or paper copies and the locations where the copies are stored, in accordance with paragraph 1.C.2(g) above.

       m.     To the extent portions of source code are quoted in a SOURCE CODE DOCUMENT, the entire document will be stamped and treated as CONFIDENTIAL OUTSIDE COUNSEL ONLY.

       n.     All paper copies of source code shall be securely destroyed if they are no longer in use. Copies of source code that are marked as deposition exhibits shall not be provided to the Court Reporter or attached to deposition transcripts; rather, the deposition record will identify the exhibit by its production numbers.

       o.     The receiving party's outside counsel may disclose a copy of the source code only to individuals specified in paragraph 1.C.2(k) above. Source code may not be disclosed to in-house counsel, except as provided in paragraph 1.B.2(c) above.

**D.  Use of Protected Information at Trial**

The parties will not oppose any request by the producing party that the courtroom should be sealed, if allowed by the Court, during the presentation of any testimony relating to or involving the use of any Protected Information.

**2.  PROSECUTION BAR**

A.  Any person reviewing any of an opposing party's CONFIDENTIAL materials, CONFIDENTIAL OUTSIDE COUNSEL ONLY materials or RESTRICTED CONFIDENTIAL—SOURCE CODE materials (all of which shall also be referred to as "Prosecution Bar Materials") shall not, for a period commencing upon receipt of such information and ending one year following the conclusion of this case (including any appeals) engage in any Prosecution Activity (as defined below) on behalf of a party asserting a patent in this case. Furthermore, any person reviewing Prosecution Bar Materials shall not, for a period commencing upon receipt of such information and ending one year following the conclusion of this case (including any appeals) engage in any Prosecution Activity involving any application in the same family as the patents-in-suit, or any other claims on a method, apparatus, or system that automatically generates queries based on the content of documents to retrieve related content, or claims on a method, apparatus, or system for integrating information from heterogeneous document and data sources. The provisions of this paragraph do not apply where a party discloses its own Prosecution Bar Materials to an invidividual not designated under this Order to receive such materials.

B.  The following documents and materials shall not be eligible for classification as Prosecution Bar Materials: (i) documents and information related only to damages or reasonable royalty rates; (ii) publications, including patents and published patent applications; (iii) materials regarding a third party system or product that is publicly known, on sale, or in public use unless

such materials are designated as Prosecution Bar Materials by that third party or are subject to confidentiality obligations owed to that third party; and (iv) information that is publicly available.

      C.    Except with respect to reexaminations of the patents-in-suit, Prosecution Activity shall mean: (1) prepare and/or prosecute any patent application (or portion thereof), whether design or utility, and either in the United States or abroad on behalf of a patentee or assignee of patentee's rights; (2) prepare patent claim(s) on behalf of a patentee or assignee of patentee's rights; (3) participate in any reissue proceedings on behalf of a patentee or assignee of patentee's rights; or (4) provide advice, counsel or suggestions regarding, or in any other way influencing, claim scope and/or language, embodiment(s) for claim coverage, claim(s) for prosecution, or products or processes for coverage by claim(s) on behalf of a patentee or assignee of patentee's rights. In addition, nothing in this paragraph shall prevent any attorney from sending Prior Art to an attorney involved in patent prosecution for purposes of ensuring that such Prior Art is submitted to the U.S. Patent and Trademark Office (or any similar agency of a foreign government) to assist a patent applicant in complying with its duty of candor. Prior Art shall mean (i) publications, including patents and published patent applications; and (ii) materials or information regarding a third party system or product that was publicly known, on sale, or in public use as of the relevant priority date, unless such materials are designated as Prosecution Bar Materials by that third party or are subject to confidentiality obligations owed to that third party.

## 3.    DISCLOSURE OF TECHNICAL ADVISERS

      A.    Information designated by the producing party under any category of Protected Information and such copies of this information as are reasonably necessary for maintaining, defending or evaluating this litigation may be furnished and disclosed to the receiving party's

{00442912;v1}01980.51645/3680944.1        14

technical advisers and their necessary support personnel.

      B.     No disclosure of Protected Information to a technical adviser or their necessary support personnel shall occur until that person has signed the form attached hereto as Attachment A, and a signed copy has been provided to the producing party; and to the extent there has been an objection under paragraph 3.D., that objection is resolved as discussed below.

      C.     A party desiring to disclose Protected Information to a technical adviser shall also give prior written notice by email to the producing party, who shall have five business days after such notice is given to object in writing. The party desiring to disclose Protected Information to a technical adviser must provide the following information for each technical adviser: name, address, curriculum vitae, current employer, employment history for the past five years, and a listing of cases in which the witness has testified as an expert at trial or by deposition within the preceding five years, and a identification of any patents or applications for patents in which the technical adviser is identified as an inventor or applicant, which the technical advisor is involved in the prosecution or maintenance thereof, or any patents or patent applications that the technical advisor has any pecuniary interest. No Protected Information shall be disclosed to such expert(s) or consultant(s) until after the expiration of the foregoing notice period.

      D.     A party objecting to disclosure of Protected Information to a technical adviser shall state with particularity the ground(s) for the objection and the specific categories of documents that are the subject of the objection. The objecting party's consent to the disclosure of Protected Information to a technical adviser shall not be unreasonably withheld, and its objection must be based on that party's good faith belief that disclosure of its Protected Information to the technical adviser will result in specific business or economic harm to that

{00442912;v1}01980.51645/3680944.1          15

party.

E.      If after consideration of the objection, the party desiring to disclose the Protected Information to a technical adviser refuses to withdraw the technical adviser, that party shall provide notice to the objecting party. Thereafter, the objecting party shall move the Court, within five business days of receiving such notice, for a ruling on its objection. A failure to file a motion within the five business day period shall operate as an approval of disclosure of the Protected Information to the technical adviser. The parties agree to cooperate in good faith to shorten the time frames set forth in this paragraph if necessary to abide by any discovery or briefing schedules.

F.      The objecting party shall have the burden of showing to the Court "good cause" for preventing the disclosure of its Protected Information to the technical adviser. This "good cause" shall include a particularized showing that: (1) the Protected Information is confidential commercial information, (2) disclosure of the Protected Information would result in a clearly defined and serious injury to the objecting party's business, and (3) that disclosure of Protected Information to the proposed technical advisor would likely result in Protected Information being disclosed to the objecting party's competitors, or other particularized, substantiated injury to the objecting party.

## 4.     CHALLENGES TO CONFIDENTIALITY DESIGNATIONS

A.      The parties shall use reasonable care when designating documents or information as Protected Information. Nothing in this Order shall prevent a receiving party from contending that any documents or information designated as Protected Information have been improperly designated. A receiving party may at any time request that the producing party cancel or modify the Protected Information designation with respect to any document or information contained therein.

B.     A party shall not be obligated to challenge the propriety of a designation of any category of Protected Information at the time of production, and a failure to do so shall not preclude a subsequent challenge thereto. Such a challenge shall be written, shall be served on counsel for the producing party, and shall particularly identify the documents or information that the receiving party contends should be differently designated. The parties shall use their best efforts to resolve promptly and informally such disputes. If an agreement cannot be reached, the receiving party shall request that the Court cancel or modify a designation. The burden of demonstrating the confidential nature of any information shall at all times be and remain on the designating party.

C.     Until a determination by the Court, the information in issue shall be treated as having been properly designated and subject to the terms of this Order.

**5.     LIMITATIONS ON THE USE OF PROTECTED INFORMATION**

A.     All Protected Information shall be held in confidence by each person to whom it is disclosed, shall be used only for purposes of this litigation, shall not be used for any business purpose, and shall not be disclosed to any person who is not entitled to receive such information as herein provided. All produced Protected Information shall be carefully maintained so as to preclude access by persons who are not entitled to receive such information.

B.     Except as may be otherwise ordered by the Court, any person may be examined as a witness at depositions and trial and may testify concerning all Protected Information of which such person has prior knowledge. Without in any way limiting the generality of the foregoing:

1.     A present director, officer, and/or employee of a producing party may be examined and may testify at his or her deposition or at trial concerning all Protected Information which has been produced by that party;

2.      A former director, officer, agent and/or employee of a producing party may be examined and may testify at his or her deposition or at trial concerning all Protected Information to which he or she had access in the course of his or her employment, including any Protected Information that refers to matters of which the witness has or reasonably may have personal knowledge, which has been produced by that party; and

3.      Non-parties may be examined or testify concerning any document containing Protected Information of a producing party which appears on its face or from other documents or testimony to have originated from the non-party or to have been communicated to the non-party by the producing party.  Any person other than the witness, his or her attorney(s), or any person qualified to receive Protected Information under this Order shall be excluded from the portion of the examination concerning such information, unless the producing party consents to persons other than qualified recipients being present at the examination.  If the witness is represented by an attorney who is not qualified under this Order to receive such information, then prior to the examination, the producing party shall request that the attorney provide a signed statement, in the form of Attachment A hereto, that he or she will comply with the terms of this Order and maintain the confidentiality of Protected Information disclosed during the course of the examination.  In the event that such attorney declines to sign such a statement prior to the examination, the parties, by their attorneys, shall jointly seek a protective order from the Court prohibiting the attorney from disclosing Protected Information.

4.      All transcripts of depositions, exhibits, answers to interrogatories, pleadings, briefs, and other documents submitted to the Court which have been designated as Protected Information, or which contain information so designated, shall be filed under seal in a manner prescribed by the Court for such filings.

5.      Outside attorneys of record for the parties are hereby authorized to be the

persons who may retrieve confidential exhibits and/or other confidential matters filed with the
Court upon termination of this litigation without further order of this Court, and are the persons
to whom such confidential exhibits or other confidential matters may be returned by the Clerk
of the Court, if they are not so retrieved. No material or copies thereof so filed shall be released
except by order of the Court, to outside counsel of record, or as otherwise provided for
hereunder. Notwithstanding the foregoing and with regard to material designated as
RESTRICTED CONFIDENTIAL – SOURCE CODE, the provisions of paragraph 1.C. are
controlling to the extent those provisions differ from this paragraph.

      6.    Protected Information shall not be copied or otherwise produced by a
receiving party, except for transmission to qualified recipients, without the written permission
of the producing party, or, in the alternative, by further order of a court of law or other tribunal
of competent jurisdiction, provided, however, that a receiving party who becomes subject to an
order to disclose a producing party's Protected Information shall promptly notify the producing
party of the order so that the producing party may have an opportunity to appear and be heard
on whether such Protected Information should be disclosed. Nothing herein shall, however,
restrict a qualified recipient from making working copies, abstracts, digests and analyses of
CONFIDENTIAL and CONFIDENTIAL OUTSIDE COUNSEL ONLY information for use in
connection with this litigation and such working copies, abstracts, digests and analyses shall be
deemed Protected Information under the terms of this Order. Further, nothing herein shall
restrict a qualified recipient from converting or translating CONFIDENTIAL and
CONFIDENTIAL OUTSIDE COUNSEL ONLY information into machine readable form for
incorporation into a data retrieval system used in connection with this action, provided that
access to that Protected Information, in whatever form stored or reproduced, shall be limited to
qualified recipients.

7.      At the request of any party, the original and all copies of any deposition transcript, in whole or in part, shall be marked "CONFIDENTIAL" or "CONFIDENTIAL OUTSIDE COUNSEL ONLY" by the reporter. This request may be made orally during the deposition or in writing within fifteen (15) days of receipt of the final certified transcript. Deposition transcripts shall be treated as CONFIDENTIAL OUTSIDE COUNSEL ONLY until the expiration of the time to make a confidentiality designation. Any portions so designated shall thereafter be treated in accordance with the terms of this Order.

## 6.      NON-PARTY USE OF THIS PROTECTIVE ORDER

A.      A non-party producing information or material voluntarily or pursuant to a subpoena or a court order may designate such material or information as Protected Information pursuant to the terms of this Protective Order.

B.      A non-party's use of this Protective Order to protect its Protected Information does not entitle that non-party to access to the Protected Information produced by any party in this case.

## 7.      NO WAIVER OF PRIVILEGE

Nothing in this Protective Order shall require production of information that a party contends is protected from disclosure by the attorney-client privilege, the work product immunity or other privilege, doctrine, right, or immunity. If information subject to a claim of attorney-client privilege, work product immunity, or other privilege, doctrine, right, or immunity is nevertheless inadvertently or unintentionally produced, such production shall in no way prejudice or otherwise constitute a waiver or estoppel as to any such privilege, doctrine, right or immunity. Any party that inadvertently produces materials protected by the attorney-client privilege, work product privilege, or other privilege, doctrine, right, or immunity may obtain the return of those materials by promptly notifying the recipient(s) and providing a privilege log for

{00442912;v1}01980.51645/3680944.1                 20

the inadvertently produced materials. The recipient(s) shall promptly gather and return all copies

of the privileged material to the producing party, except for any pages containing privileged

markings by the recipient, which pages shall instead be destroyed and certified as such by the

recipient to the producing party. Notwithstanding this provision, outside litigation counsel of

record are not required to delete information that may reside on their respective firm's electronic

back-up systems that are over-written in the normal course of business.

## 8. MISCELLANEOUS PROVISIONS

A. Any of the notice requirements herein may be waived, in whole or in part, but

only in writing signed by the attorney-in-charge for the party against whom such waiver will be

effective.

B. Inadvertent or unintentional production of documents or things containing

Protected Information which are not designated as one or more of the three categories of

Protected Information at the time of production shall not be deemed a waiver in whole or in part

of a claim for confidential treatment. With respect to documents, the producing party shall

immediately notify the other parties of the error in writing and provide replacement pages

bearing the appropriate confidentiality legend. In the event of any unintentional or inadvertent

disclosure of Protected Information other than in a manner authorized by this Protective Order,

counsel for the party responsible for the disclosure shall immediately notify opposing counsel of

all of the pertinent facts, and make every effort to further prevent unauthorized disclosure

including, retrieving all copies of the Protected Information from the recipient(s) thereof, and

securing the agreement of the recipients not to further disseminate the Protected Information in

any form. Compliance with the foregoing shall not prevent the producing party from seeking

further relief from the Court.

C. Within sixty days after the entry of a final non-appealable judgment or order, or

the complete settlement of all claims asserted against all parties in this action, each party shall, at the option of the producing party, either return or destroy all physical objects and documents which embody Protected Information it has received, and shall destroy in whatever form stored or reproduced, all physical objects and documents, including but not limited to, correspondence, memoranda, notes and other work product materials, which contain or refer to any category of Protected Information. All Protected Information not embodied in physical objects and documents shall remain subject to this Order. In the event that a party is dismissed before the entry of a final non-appealable judgment or order, this same procedure shall apply to any Protected Information received from or produced to the dismissed party. Notwithstanding this provision, outside litigation counsel of record are not required to delete information that may reside on their respective firm's electronic back-up systems that are over-written in the normal course of business. Notwithstanding the foregoing, outside counsel shall be entitled to maintain copies of all pleadings, motions and trial briefs (including all supporting and opposing papers and exhibits thereto), written discovery requests and responses (and exhibits thereto), deposition transcripts (and exhibits thereto), trial transcripts, and exhibits offered or introduced into evidence at any hearing or trial, and their attorney work product which refers or is related to any CONFIDENTIAL and CONFIDENTIAL OUTSIDE COUNSEL ONLY information for archival purposes only. If a party opts to destroy CONFIDENTIAL or CONFIDENTIAL OUTSIDE COUNSEL ONLY information, the party must provide a Certificate of Destruction to the producing party.

D.      If at any time documents containing Protected Information are subpoenaed by any court, arbitral, administrative or legislative body, the person to whom the subpoena or other request is directed shall immediately give written notice thereof to every party who has produced such documents and to its counsel and shall provide each such party with an

{00442912;v1}01980.51645/3680944.1                  22

opportunity to object to the production of such documents. By entering this order and limiting the disclosure of information in this case, the Court does not intend to preclude another court from finding that information may be relevant and subject to disclosure in another case. Any person or party subject to this order who becomes subject to a motion to disclose another party's information designated CONFIDENTIAL or CONFIDENTIAL OUTSIDE COUNSEL ONLY pursuant to this Order shall promptly notify that party of the motion so that the party may have an opportunity to appear and be heard on whether that information should be disclosed. If a producing party does not take steps to prevent disclosure of such documents within ten business days of the date written notice of the motion is given, the party to whom the referenced motion is directed may produce such documents in response thereto.

E.    Testifying experts shall not be subject to discovery on any draft of their reports in this case and such draft reports, notes, outlines, or any other writings leading up to an issued report(s) in this litigation are exempt from discovery. In addition, all communications to and from a testifying expert, and all materials generated by a testifying expert with respect to that person's work, are exempt from discovery unless relied upon by the expert in forming any opinions in this litigation.

F.    Nothing in this Order shall prevent any party from disclosing materials in which all Protected Information has been redacted to an individual or third party not designated under this Order to receive Protected Information.

G.    Nothing herein precludes counsel for a party from providing advice or opinions to his or her client regarding this litigation based on his or her evaluation of Protected Information—provided that such rendering of advice and opinions shall not reveal the content of Protected Information except by prior written agreement with counsel for the producing party.

H.      No party shall be required to identify on their respective privilege log any document or communication dated on or after the filing of the lawsuit.

I.      This Order is entered without prejudice to the right of any party to apply to the Court at any time for additional protection, or to relax or rescind the restrictions of this Order, when convenience or necessity requires.  Furthermore, without application to this Court, any party that is a beneficiary of the protections of this Order may enter a written agreement releasing any other party hereto from one or more requirements of this Order even if the conduct subject to the release would otherwise violate the terms herein.

J.      The United States District Court for the District of Delaware is responsible for the interpretation and enforcement of this Protective Order.  After termination of this litigation, the provisions of this Protective Order shall continue to be binding except with respect to those documents and information that become a matter of public record.  This Court retains and shall have continuing jurisdiction over the parties and recipients of the Protected Information for enforcement of the provision of this Protective Order following termination of this litigation.  All disputes concerning Protected Information produced under the protection of this Protective Order shall be resolved by the United States District Court for the District of Delaware.

SIGNED this _23_ day of _September_ 2010.

UNITED STATES MAGISTRATE JUDGE

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| XEROX CORPORATION, | ) | |
| | ) | |
| *Plaintiff-Counterclaim Defendant,* | ) | |
| | ) | |
| v. | ) | C.A. No. 10-136-JJF-MPT |
| | ) | |
| GOOGLE INC., YAHOO! INC., RIGHT | ) | |
| MEDIA INC., RIGHT MEDIA LLC, | ) | |
| YOUTUBE, INC., and YOUTUBE, LLC, | ) | |
| | ) | |
| *Defendants-Counterclaim Plaintiffs.* | ) | |

## ATTACHMENT A TO THE PROTECTIVE ORDER

## CONFIDENTIAL AGREEMENT

I reside at _____.

1.  My present employer is _____.

2.  My present occupation or job description is _____.

3.  I have read the Protective Order dated _____, 2010, and have been

engaged as _____ on behalf of _____

_____ in the preparation and conduct of the above-captioned litigation.

4.  I am fully familiar with and agree to comply with and be bound by the provisions

of said Order. I understand that I am to retain all copies of any documents designated as

CONFIDENTIAL, CONFIDENTIAL OUTSIDE COUNSEL ONLY and/or RESTRICTED

CONFIDENTIAL-SOURCE CODE information in a secure manner, and that all copies are to

remain in my personal custody until I have completed my assigned duties, whereupon the copies

and any writings prepared by me containing any CONFIDENTIAL, CONFIDENTIAL

OUTSIDE COUNSEL ONLY and/or RESTRICTED CONFIDENTIAL-SOURCE CODE information are to be returned to counsel who provided me with such material.

     5.     I will not divulge to persons other than those specifically authorized by said Order, and will not copy or use except solely for the purpose of this action, any information obtained pursuant to said Order, except as provided in said Order. I also agree to notify any stenographic or clerical personnel who are required to assist me of the terms of said Order.

     6.     In accordance with paragraph 3.C of the Protective Order (if applicable), I have attached my resume, curriculum vitae or other information to this executed Confidentiality Agreement sufficient to identify my current employer and employment history for the past five (5) years, and the cases in which I have testified as an expert at trial or by deposition within the preceding five (5) years.

     7.     I state under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.


Executed on _____, 20____.

                                  _____

# EXHIBIT 5

# IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TEXAS
## MARSHALL DIVISION

| | |
|---|---|
| LIZY K. JOHN | § |
| | § |
| Plaintiff, | § |
| | § |
| vs. | §     Case No. 2:05-CV-481 (TJW) |
| | § |
| XILINX, INC. | § |
| | § |
| Defendant. | § |
| | § |
| | § |
| | § |

## PROTECTIVE ORDER

To expedite the flow of discovery material, to facilitate the prompt resolution of disputes over confidentiality of discovery materials, to adequately protect information the parties are entitled to keep confidential, to ensure that only materials the parties are entitled to keep confidential are subject to such treatment, and to ensure that the parties are permitted reasonably necessary uses of such materials in preparation for and in the conduct of trial, pursuant to Fed. R. Civ. P. 26(c), it is hereby **ORDERED THAT:**

## INFORMATION SUBJECT TO THIS ORDER

1.    For purposes of this Order, **"CONFIDENTIAL INFORMATION"** shall mean all information or material which is produced for or disclosed to a receiving party, which a producing party, including any party to this action and any non-party producing information or material voluntarily or pursuant to a subpoena or a court order, considers to constitute or to contain trade secrets or other confidential research, development, or commercial information,

Case 1:10-cv-01065-LPS   Document 37-1   Filed 07/05/12   Page 49 of 169 PageID #:
2768
Case 2:05-cv-00481-TJW   Document 31-1   Filed 07/11/05   Page 2 of 26 PageID #:177

whether embodied in physical objects, documents, or the factual knowledge of persons; and which has been so designated by the producing party. Any **CONFIDENTIAL INFORMATION** obtained by any party from any person pursuant to discovery in this litigation may be used only for purposes of preparation and litigation of this matter.

2.     Any document or tangible thing containing or including any **CONFIDENTIAL INFORMATION** may be designated as such by the producing party by marking it "**CONFIDENTIAL**" (or "**CONFIDENTIAL INFORMATION**") prior to or at the time copies are furnished to the receiving party. Information meeting the criteria in Paragraph 18 for **COUNSEL EYES ONLY CONFIDENTIAL INFORMATION** may likewise be so marked.

3.     At the request of any party, the original and all copies of any deposition transcript, in whole or in part, shall be marked "**CONFIDENTIAL**" (or "**CONFIDENTIAL INFORMATION**") or "**COUNSEL EYES ONLY CONFIDENTIAL INFORMATION**" (or "**COUNSEL EYES ONLY**") by the reporter. Any portions so designated shall thereafter be separated and treated in accordance with the terms of this Order.

4.     All **CONFIDENTIAL INFORMATION** or **COUNSEL EYES ONLY CONFIDENTIAL INFORMATION** not reduced to documentary, tangible or physical form or which cannot be conveniently designated as set forth in Paragraph 2, shall be designated by the producing party by informing the receiving party of the designation in writing.

5.     Any documents (including physical objects) made available for initial inspection by counsel for the receiving party prior to producing copies of selected items shall initially be considered, as a whole, to constitute **COUNSEL EYES ONLY CONFIDENTIAL INFORMATION** and shall be subject to this Order. Thereafter, the producing party shall have a reasonable time to review and designate the appropriate documents as **CONFIDENTIAL**

**INFORMATION** or **COUNSEL EYES ONLY CONFIDENTIAL INFORMATION** prior to furnishing copies to the receiving party.

6.    The following information is not **CONFIDENTIAL INFORMATION:**

(a)    any information which at the time of disclosure to a receiving party is in the public domain;

(b)    any information which after disclosure to a receiving party becomes part of the public domain as a result of publication not involving a violation of this Order;

(c)    any information which a receiving party can show was received by it, whether before or after the disclosure, from a source who obtained the information lawfully and under no obligation of confidentiality to the producing party; and

(d)    any information which a receiving party can show was independently developed by it after the time of disclosure by personnel who have not had access to the producing party's **CONFIDENTIAL INFORMATION** or **COUNSEL EYES ONLY CONFIDENTIAL INFORMATION.**

<u>**NO WAIVER OF PRIVILEGE**</u>

7.    Inspection or production of documents (including physical objects) shall not constitute a waiver of the attorney-client privilege or work product immunity or any other applicable privilege or immunity from discovery if, as soon as reasonably possible after the producing party becomes aware of any inadvertent or unintentional disclosure, the producing party designates any such documents as within the attorney-client privilege or work product immunity or any other applicable privilege or immunity and requests return of such documents to the producing party.  Upon request by the producing party, the receiving party shall promptly

3

3

return all copies of such inadvertently produced document(s). Nothing herein shall prevent the receiving party from challenging the propriety of the attorney-client privilege or work product immunity or other applicable privilege or immunity designation by submitting a written challenge to the Court.

## **DISCOVERY RULES REMAIN UNCHANGED**

8.       Nothing herein shall alter or change in any way the discovery provisions of the Federal Rules of Civil Procedure. Identification of any individual pursuant to this Protective Order does not make that individual available for deposition or any other form of discovery outside of the restrictions and procedures of the Federal Rules of Civil Procedure, the Rules of Practice for Patent Cases before the Honorable T. John Ward, United States District Court for the Eastern District of Texas (cited as "P.R."), and the Court's Deadlines for Docket Control Order and Discovery Order.

## **PERSONS AUTHORIZED TO RECEIVE CONFIDENTIAL INFORMATION**
### **Counsel**

9.       Counsel for a receiving party shall have access to the producing party's **CONFIDENTIAL INFORMATION** and **COUNSEL EYES ONLY CONFIDENTIAL INFORMATION**. The term "counsel" shall mean attorneys for the parties working on this litigation, including both outside and in-house counsel, and including supporting personnel employed by the attorneys, such as Technical Advisers, paralegals, legal translators, legal secretary, legal clerk and shorthand reporter, or an independent legal translator retained to translate in connection with this action, or an independent shorthand reporter retained to record and transcribe testimony in connection with this action.

SV1:\251305\01\5DWP01!.DOC\81879.0003

## Technical Advisers

10.    **CONFIDENTIAL INFORMATION** of a producing party, and such copies as are reasonably necessary for maintaining, defending or evaluating this litigation, may be furnished and disclosed to Technical Advisers, subject to the requirements of Paragraphs 11-13. **COUNSEL EYES ONLY CONFIDENTIAL INFORMATION** of a producing party, and such copies as are reasonably necessary for maintaining, defending or evaluating this litigation, may be furnished and disclosed to Technical Advisers, subject to the requirements of Paragraphs 11-13.  The term "Technical Adviser" shall mean any outside person (who is not an employee of a party) and their engineering, technical, accounting, or financial support personnel, including, but not limited to, a proposed expert witness or consultant with whom counsel may deem it necessary to consult concerning technical, financial, or other aspects of this case for the preparation or trial thereof.  Plaintiff Lizy K. John shall not qualify as a Technical Advisor under this paragraph or any other paragraph of this Protective Order.

11.    Should a receiving party find it necessary for maintaining, defending or evaluating this litigation to disclose a producing party's **CONFIDENTIAL INFORMATION** to a Technical Adviser or a member of his or her staff, or to disclose a producing party's **COUNSEL EYES ONLY CONFIDENTIAL INFORMATION** to a Technical Adviser or a member of his or her staff, whose function is to provide engineering, technical, accounting or financial expertise in support of the Technical Advisers, the receiving party shall first give written notice to the producing party, who shall have seven (7) days after such notice is given (plus three (3) days if notice is given other than by hand delivery, e-mail transmission or facsimile transmission) to object in writing.  The party desiring to disclose **CONFIDENTIAL INFORMATION** or **COUNSEL EYES ONLY CONFIDENTIAL INFORMATION** to a

Case 1:10-cv-01065-PSW Document 37-1 Filed 07/05/12 Page 53 of 169 PageID #:
Case 2:05-cv-00481-TJW Document 31-1 Filed 07/11/05 Page 6 of 26 PageID #: 181
2772

Technical Adviser shall provide the curriculum vitae of such individual and shall include the following information about such individual in the written notice:

     (a)    business address;

     (b)    business title;

     (c)    business or profession;

     (d)    any previous or current relationship (personal or professional) with any of the parties; and

     (e)    a listing of other cases in which the individual has testified (at trial or deposition), and all companies with which the individual has consulted or by which the individual has been employed, within the last four years.

12.    No **CONFIDENTIAL INFORMATION** or **COUNSEL EYES ONLY CONFIDENTIAL INFORMATION** shall be disclosed to such Technical Adviser until after the expiration of the foregoing notice period. The requirement of disclosure of a Technical Adviser, shall apply to all professionals working at the direction of counsel, whether testifying experts or consulting experts only, as well as their employees who provide technical, engineering, accounting or financial support services.

13.    If, however, during the notice period the producing party serves an objection upon the receiving party desiring to disclose **CONFIDENTIAL INFORMATION** or **COUNSEL EYES ONLY CONFIDENTIAL INFORMATION** to the Technical Adviser, there shall be no disclosure of **CONFIDENTIAL INFORMATION** or **COUNSEL EYES ONLY CONFIDENTIAL INFORMATION** to such individual pending resolution of the objection. The producing party objecting to disclosure of **CONFIDENTIAL INFORMATION** or **COUNSEL EYES ONLY CONFIDENTIAL INFORMATION** to the individual shall provide

6

Case 1:10-cv-01965-RSW   Document 137-1   Filed 07/05/12   Page 54 of 169 PageID #:
Case 2:05-cv-00481-TJW   Document 37-1   Filed 07/11/05   Page 7 of 26 PageID #: 182
2773

an explanation of the basis of its objection, and consent to the disclosure of **CONFIDENTIAL INFORMATION** or **COUNSEL EYES ONLY CONFIDENTIAL INFORMATION** to the individual shall not be unreasonably withheld.  If a producing party objects to the disclosure of **CONFIDENTIAL INFORMATION** or **COUNSEL EYES ONLY CONFIDENTIAL INFORMATION** to a Technical Adviser, the receiving party shall then have seven (7) days after such objection is served (plus three (3) days if the objection is served other than by hand delivery, e-mail transmission or facsimile transmission) to respond to the objection.  The producing party shall then have seven (7) days after such response is served (plus three (3) days if response is served other than by hand delivery, e-mail transmission or facsimile transmission) to file an objection with the court and seek disqualification of the Technical Adviser or other appropriate relief, if the parties cannot come to an agreement.  If the producing party fails to file an objection within the prescribed period, then any objection to the Technical Adviser is waived, and any **CONFIDENTIAL INFORMATION** or **COUNSEL EYES ONLY CONFIDENTIAL INFORMATION** may be thereafter disclosed to such individual.  No document designated by a producing party as **CONFIDENTIAL INFORMATION** or **COUNSEL EYES ONLY CONFIDENTIAL INFORMATION** shall be disclosed by a receiving party to a Technical Adviser until after the individual has signed the Confidentiality Agreement appended hereto as Attachment A stating that he or she has read and understands this Order and agrees to be bound by its terms.  Such written agreement shall be retained by counsel for the party that has retained the Technical Adviser but need not be disclosed to any other party.

## Parties and Employees of Parties

14.     Subject to the requirements set forth in this Order, including those of Paragraphs 9-10, 18-19, and 21, **CONFIDENTIAL INFORMATION** of a producing party, (but not **COUNSEL EYES ONLY CONFIDENTIAL INFORMATION),** and such copies as are

SV1:\251305\01\5DWP01!.DOC\81879.0003

reasonably necessary for maintaining, defending or evaluating this litigation, may be furnished and disclosed by counsel for a receiving party, to parties (where such receiving party is an individual) and to individuals who are employees of such receiving party with responsibility for maintaining, defending or evaluating this litigation (and supporting personnel). This Paragraph does not permit any information subject to the **PROSECUTION BARS** of Paragraph 21 to be shown to a party or an employee of a party, and any such information may not be shared with any party or employee of a party, except as expressly set forth in Paragraph 21.

15.     Should counsel for a receiving party find it necessary for maintaining, defending or evaluating this litigation to disclose a producing party's **CONFIDENTIAL INFORMATION** to an individual identified in Paragraph 14, counsel for the receiving party shall first obtain from such individual a Confidentiality Agreement, in the form attached hereto as Attachment A, stating that he or she has read and understands this Order and agrees to be bound by its terms. Such written agreement shall be retained by counsel for the receiving party but need not be disclosed to any other party.

### Data Processing Vendors and Graphics/Trial Consultants

16.     Subject to the requirements set forth in this Order, including those of Paragraphs 9-10, 18-19, and 21, **CONFIDENTIAL INFORMATION** and **COUNSEL EYES ONLY CONFIDENTIAL INFORMATION** of a producing party, and such copies as are reasonably necessary for maintaining, defending or evaluating this litigation, may be furnished and disclosed to data processing vendors; graphics or design services retained by counsel for purposes of preparing demonstrative or other exhibits for deposition, trial, or other court proceedings in this action; or non-technical jury or trial consulting services, including mock jurors, or other counsel retained by the client or by counsel who have not entered an appearance in the lawsuit. The term "data processing vendor" means any person (and supporting personnel) who is a member or staff

Case 1:10-cv-01065-LPS Document 37-1 Filed 07/05/12 Page 56 of 169 PageID #:
2775
Case 2:05-cv-00481-TJW Document 31-1 Filed 07/11/06 Page 9 of 26 PageID #: 184

of an outside data entry or data processing entity employed or retained by a receiving party or its counsel and who is assisting in the development or use of data retrieval systems in connection with this action. (Any counsel given access under this Paragraph must not have a degree in computer engineering, electrical engineering, physics or computer programming, and must not be a member of the Bar of the Patent & Trademark Office or engaged in the practice of applying for patents in any country, or for or issuing formal opinions for use in litigation on patents.)

17. Should counsel for a receiving party find it necessary for maintaining, defending or evaluating this litigation to disclose a producing party's **CONFIDENTIAL INFORMATION** or **COUNSEL EYES ONLY CONFIDENTIAL INFORMATION** to any of the persons or services described in Paragraph 16, counsel for the receiving party shall first obtain from such person or service a written Confidentiality Agreement, in the form attached hereto as Attachment A. Such written agreement shall be retained by counsel for the receiving party, but need not be disclosed to any other party.

## INFORMATION DESIGNATED COUNSEL EYES ONLY CONFIDENTIAL INFORMATION

18. **CONFIDENTIAL INFORMATION** may be additionally designated **COUNSEL EYES ONLY CONFIDENTIAL INFORMATION** (by labeling it **COUNSEL ONLY** or **HIGHLY CONFIDENTIAL** or **ATTORNEY'S EYES ONLY** or **RESTRICTED CONFIDENTIAL** or **OUTSIDE ATTORNEY'S EYES ONLY** or similar designation clearly transmitted in writing to the other parties). The **COUNSEL EYES ONLY CONFIDENTIAL INFORMATION** designation is reserved for information that constitutes proprietary financial or technical or commercially sensitive competitive information that the producing party maintains as highly confidential in its business, including information obtained from a nonparty pursuant to a current Nondisclosure Agreement ("NDA"), information relating to future products

not yet commercially released, strategic plans, computer code, technical documents that would reveal trade secrets, and settlement agreements or settlement communications, the disclosure of which is likely to cause harm to the competitive position of the producing party. Subject to the provisions of Paragraph 19 below, documents designated **COUNSEL EYES ONLY CONFIDENTIAL INFORMATION** and contents thereof shall be available only to counsel for the parties, including in-house counsel, plaintiff within the limits expressly set forth in Paragraph 21, the Technical Advisers who are assisting them, data processing vendors and graphics and trial consultants and other retained counsel.

19.     **COUNSEL EYES ONLY CONFIDENTIAL INFORMATION** obtained under this Order may only be used for assistance of counsel and retained experts for this litigation and may not be used for any other purpose whatsoever during or after this litigation. Counsel for any party shall be under a duty to report any potential violation of this provision of this Order to the other parties or the Court and are Ordered to do so in writing within three (3) business days of notice of facts that may show a potential violation of this Order. Prior to receiving any **COUNSEL EYES ONLY CONFIDENTIAL INFORMATION** such persons shall sign an undertaking agreeing to be bound by the terms and conditions of this Order and to appear in this Court on seven (7) days notice if Ordered to do so.

20.     Review of computer code and electronic design documentation:

(a)     Access to computer code and design documentation in electronic form shall only be provided to those under the highest level of confidentiality under this Order, and subject to the PROSECUTION BAR in Paragraph 21, and only on restricted-access servers at Xilinx-controlled facilities (for Xilinx information) or a "stand-alone" computer (that is, not connected to

10

a network, internet or peripheral device) at secure locations to be made available during regular business hours (9:00 a.m. to 5:00 p.m. local time) on 7 days notice. Beginning one week prior to the beginning of trial and continuing through the end of trial, access to the code or similarly sensitive information, shall be provided under the same conditions and with the same limitations and restrictions as provided in this Paragraph at counsel for the producing party in Marshall, Texas.

(b)     The producing party shall have the right to monitor the requesting party's access to the producing party's computer code and design documentation produced in accordance with this Paragraph, and the requesting party will not access any information that it is not authorized to view. The producing party must allow printing of paper copies of the materials at the time of inspection by the requesting party, which the requesting party may take when completing an inspection. The party receiving paper copies of such materials must keep them in a secured container or location at all times. Paper copies of materials printed in accordance with this Paragraph shall include bates numbers and confidentiality labels when printed, or shall have such labels added as soon as practicable. The producing party shall receive copies of all materials and information printed and/or taken by the requesting party.

(c)     The requesting party shall not manipulate, decompile, and/or reverse-engineer any materials obtained in accordance with the provisions of this Paragraph.

11

## PROSECUTION BAR

21.     Any Xilinx document, computer code, design documentation, or information designated as **COUNSEL EYES ONLY CONFIDENTIAL INFORMATION** may also be designated as subject to a PROSECUTION BAR as described in this paragraph.

      (a)     PROSECUTION BAR 1: **COUNSEL EYES ONLY CONFIDENTIAL INFORMATION** may be further designated as "PROSECUTION BAR 1" information.  Any person other than plaintiff Lizy K. John who receives any Xilinx document or information designated **COUNSEL EYES ONLY CONFIDENTIAL INFORMATION "PROSECUTION BAR 1"** shall not be involved in or associated with the preparation, filing or prosecution of any patent application relating to Field Programmable Gate Arrays (FPGAs, either hardware or software), BlockRAM or Block SelectRAM or word-width configurable memory,[1] or input/output control or connectivity related thereto from the time of receipt of such information through and including one (1) year following the entry of a final non-appealable judgment or order or the complete settlement of all claims against all parties in this action.  In addition, any person, other than Lizy K. John, subject to the PROSECUTION BAR 1 of this subparagraph shall not have any substantive involvement in the prosecution of any applications filed, or claiming priority from any application filed, prior to one (1) year following the entry of a final non-appealable judgment or

---

[1] The parties agree that this description is to be used for the sole purpose of defining PROSECUTION BAR 1 and 2 materials and shall not be used to argue that any materials so designated show word-width configurable memory.

12

order or the complete settlement of all claims against all parties in this action.  If and when plaintiff Lizy K. John receives any Xilinx document or information designated **COUNSEL EYES ONLY CONFIDENTIAL INFORMATION "PROSECUTION BAR 1"** the same provisions of this subparagraph apply except that the duration of this PROSECUTION BAR as it applies to her shall be (3) years rather than (1) year.

(b)  PROSECUTION BAR 2:  **COUNSEL EYES ONLY CONFIDENTIAL INFORMATION** may alternatively be designated as  **"PROSECUTION BAR 2"** information.  Any person other than plaintiff Lizy K. John who receives any "Category 2" Xilinx **COUNSEL EYES ONLY CONFIDENTIAL INFORMATION "PROSECUTION BAR 2"**, whether alone or in combination with "Category 1" information, shall not be involved in or associated with the preparation, filing or prosecution of any patent application relating to Field Programmable Gate Arrays (FPGAs, either hardware or software), BlockRAM Block SelectRAM or word-width configurable memory[2], or connectivity related thereto, Digital Signal Processing (DSP), Multi Gigabit Transceivers (MGT), or embedded processors from the time of receipt of such information through and including one (1) year following the entry of a final non-appealable judgment or order or the complete settlement of all claims against all parties in this action.  In addition, any person, other than Lizy K. John,

---

[2] The parties agree that this description is to be used for the sole purpose of defining PROSECUTION BAR 1 and 2 materials and shall not be used to argue that any materials so designated show word-width configurable memory.

SV1:\251305\01\5DWP01!.DOC\81879.0003

Case 1:05-cv-00651-LPS   Document 337-1   Filed 07/05/12   Page 61 of 169 PageID #:
Case 2:05-cv-00481-TJW   Document 37-1   Filed 07/17/05   Page 14 of 26 PageID #: 189
2780

subject to the PROSECUTION BAR 2 of this subparagraph shall not have any substantive involvement in the prosecution of any applications filed, or claiming priority from any application filed, prior to one (1) year following the entry of a final non-appealable judgment or order or the complete settlement of all claims against all parties in this action. If and when plaintiff Lizy K. John receives any Xilinx **COUNSEL EYES ONLY CONFIDENTIAL INFORMATION "PROSECUTION BAR 2"**, whether alone or in combination with "PROSECUTION BAR 1" information, the same provisions of this subparagraph apply except that the duration of this PROSECUTION BAR as it applies to her shall be (3) years rather than (1) year. Counsel for Plaintiff may propose redactions to material designated as **COUNSEL EYES ONLY CONFIDENTIAL INFORMATION "PROSECUTION BAR 2"** to bring it within the scope of **COUNSEL EYES ONLY CONFIDENTIAL INFORMATION "PROSECUTION BAR 1"** or lower levels of confidentiality, and counsel for Defendant agrees to work in good faith with counsel for Plaintiff to either accept the proposed redactions where appropriate or propose alternative redactions, where practicable.

(c)     Counsel for plaintiff Lizy K. John shall inform counsel for Xilinx in writing if and when Ms. John has elected to have access to "PROSECUTION BAR 1" information and if and when she has elected to have access to "PROSECUTION BAR 2" information. Prior to receiving any **COUNSEL EYES ONLY CONFIDENTIAL INFORMATION**

SV1:\251305\01\5DWP01!.DOC\81879.0003

plaintiff Lizy K. John shall sign an undertaking agreeing to be bound by the terms and conditions of this Order and to appear in this Court on seven (7) days notice if Ordered to do so.

(d)     Defendant shall label or otherwise appropriately identify the technical **COUNSEL EYES ONLY INFORMATION** that it produces in this litigation as falling into either PROSECTION BAR 1 or PROSECUTION BAR 2 according to the technical descriptions of those categories set forth above.

(e)     The parties are unable to reach an agreement at this time as to whether Technical Advisors who are provided technical **COUNSEL EYES ONLY INFORMATION** should be subject to the above-described Prosecution Bars and will seek resolution of this issue from the Court if and when necessary.  In the meanwhile, nothing in this order shall be construed as either requiring or not requiring such Prosecution Bars for Technical Advisors.  Neither party shall disclose technical **COUNSEL EYES ONLY INFORMATION** to a Technical Advisor unless and until either an agreement has been reached by the parties as to whether the Technical Advisor will be subject to such Prosecution Bars or the Court has decided the issue if an agreement cannot be reached.

## CHALLENGES TO CONFIDENTIALITY DESIGNATIONS

22.    The parties will use reasonable care when designating documents or information as **CONFIDENTIAL INFORMATION** or **COUNSEL EYES ONLY CONFIDENTIAL INFORMATION** (whether marked **ATTORNEYS' EYES ONLY**, **HIGHLY**

**CONFIDENTIAL**, or **RESTRICTED CONFIDENTIAL-OUTSIDE COUNSEL EYES ONLY**). Nothing in this Order shall prevent a receiving party from contending that any or all documents or information designated as **CONFIDENTIAL INFORMATION** or **COUNSEL EYES ONLY CONFIDENTIAL INFORMATION** have been improperly designated. A receiving party may at any time request that the producing party cancel or modify the confidentiality designation with respect to any document or information contained therein.

23.     A party shall not be obligated to challenge the propriety of a **CONFIDENTIAL INFORMATION** or **COUNSEL EYES ONLY CONFIDENTIAL INFORMATION** designation at the time made, and a failure to do so shall not preclude a subsequent challenge thereto. Such a challenge shall be written, shall be served on counsel for the producing party, and shall particularly identify the documents or information that the receiving party contends should be differently designated. The parties shall use their best efforts to resolve promptly and informally such disputes. If agreement cannot be reached, the receiving party shall request that the Court cancel or modify a **CONFIDENTIAL INFORMATION** or **COUNSEL EYES ONLY CONFIDENTIAL INFORMATION** designation.

<u>LIMITATIONS ON THE USE OF CONFIDENTIAL INFORMATION AND
COUNSEL ONLY CONFIDENTIAL INFORMATION</u>

24.     **CONFIDENTIAL INFORMATION** and **COUNSEL EYES ONLY CONFIDENTIAL INFORMATION** shall be held in confidence by each person to whom it is disclosed, shall be used only for purposes of this litigation, shall not be used for any business or patent-prosecution purpose, and shall not be disclosed to any person who is not entitled to receive such information as herein provided. All produced **CONFIDENTIAL INFORMATION** and **COUNSEL EYES ONLY CONFIDENTIAL INFORMATION** shall be carefully maintained so as to preclude access by persons who are not entitled to receive such

information. However, nothing in this Order shall prevent any court reporter, videographer, mediator, or their employees, or the Court, any employee of the Court or any juror from reviewing any evidence in this case for the purpose of these proceedings. Further, nothing in this Order shall impact one way or another on the admissibility of any document or other evidence at any hearing or at trial. Court reporters and videographers not employed by the Court must execute a written Confidentiality Agreement, in the form attached hereto as Attachment A.

25.   Except as may be otherwise ordered by the Court, any person may be examined as a witness at depositions and trial and may testify concerning all **CONFIDENTIAL INFORMATION** and **COUNSEL EYES ONLY CONFIDENTIAL INFORMATION** of which such person has prior knowledge. Without in any way limiting the generality of the foregoing:

(a)   A producing party and any of its present directors, officers, and/or employees may be examined and may testify concerning all **CONFIDENTIAL INFORMATION** or **COUNSEL EYES ONLY CONFIDENTIAL INFORMATION** which has been produced by that party;

(b)   A former director, officer, agent and/or employee of a producing party may be interviewed, examined and may testify concerning all **CONFIDENTIAL INFORMATION** and **COUNSEL EYES ONLY CONFIDENTIAL INFORMATION** of which he or she has prior knowledge, including any **CONFIDENTIAL INFORMATION** and **COUNSEL EYES ONLY CONFIDENTIAL INFORMATION** that refers to matters of which the witness has personal knowledge, which has been produced by that party and which pertains to the period or periods of his or her employment; and

Case 1:05-cv-00651-PSW   Document 337-1   Filed 07/05/12   Page 65 of 169   PageID #:
2784
Case 2:05-cv-00481-TJW   Document 337-1   Filed 07/17/06   Page 18 of 26   PageID #: 193

(c)     Non-parties may be examined or testify concerning any document containing **CONFIDENTIAL INFORMATION** or **COUNSEL EYES ONLY CONFIDENTIAL INFORMATION** of a producing party which appears on its face or from other documents or testimony to have been received from or communicated to the non-party as a result of any contact or relationship with the producing party, or a representative of such producing party.  Any person other than the witness, his or her attorney(s), and any person qualified to receive **CONFIDENTIAL INFORMATION** or **COUNSEL EYES ONLY CONFIDENTIAL INFORMATION** under this Order shall be excluded from the portion of the examination concerning such information, unless the producing party consents to persons other than qualified recipients being present at the examination.  If the witness is represented by an attorney who is not qualified under this Order to receive such information, then prior to the examination, the attorney shall be requested to provide a Confidentiality Agreement, in the form of Attachment A hereto, that he or she will comply with the terms of this Order and maintain the confidentiality of **CONFIDENTIAL INFORMATION** or **COUNSEL EYES ONLY CONFIDENTIAL INFORMATION** disclosed during the course of the examination.  In the event that such attorney declines to sign such a Confidentiality Agreement, prior to the examination, the parties, by their attorneys, shall jointly seek a protective Order from the Court prohibiting such attorney from disclosing such **CONFIDENTIAL INFORMATION** or **COUNSEL EYES ONLY CONFIDENTIAL INFORMATION**.

SV1:\251305\01\5DWP01!.DOC\81879.0003

(d)     In addition to the restrictions on the uses of all types of **CONFIDENTIAL INFORMATION** set forth in this Order, including those of Paragraphs 9-10, 18-19, and 21, the following shall apply to use of documents a party has designated **COUNSEL EYES ONLY CONFIDENTIAL INFORMATION** (whether **RESTRICTED CONFIDENTIAL-OUTSIDE COUNSEL EYES ONLY** or **CONFIDENTIAL-ATTORNEYS' EYES ONLY** or other like label) at a deposition:

(i)     A witness who previously had access to a document designated **COUNSEL EYES ONLY CONFIDENTIAL INFORMATION**, but who is not under a present non-disclosure agreement with the producing party that covers that document, may be shown the document if a copy of this protective order is attached to any subpoena or notice or request served on the witness for the deposition; and the witness is advised on the record of the existence of the protective order and that the protective order requires the parties to keep confidential any questions, testimony or documents that are designated as **CONFIDENTIAL INFORMATION** or **COUNSEL EYES ONLY CONFIDENTIAL INFORMATION.**

(ii)     The witnesses may not copy, take notes on or retain copies of any **CONFIDENTIAL INFORMATION** or **COUNSEL EYES ONLY CONFIDENTIAL INFORMATION** used or reviewed at the deposition.  The witness may not take out of the deposition room any exhibit that is marked **CONFIDENTIAL INFORMATION** or

19

**COUNSEL EYES ONLY CONFIDENTIAL INFORMATION.** The producing party of any **CONFIDENTIAL INFORMATION** or **COUNSEL EYES ONLY CONFIDENTIAL INFORMATION** used at the deposition may also require that the transcript and exhibits not be copied by the witness or his counsel, that no notes may be made of the transcript or the exhibits, and that the transcript and exhibits may only be reviewed by the witness in the offices of one of the counsel representing a party in this case (or another firm acting for one of the counsel representing a party in his case and under the supervision of one of the lawyers who is bound by the terms of the order).

26.   All transcripts of depositions, exhibits, answers to interrogatories, pleadings, briefs, and other documents submitted to the Court which have been designated as **CONFIDENTIAL INFORMATION** or **COUNSEL EYES ONLY CONFIDENTIAL INFORMATION** or which contain information so designated, shall be filed in sealed envelopes or other appropriate sealed containers on which shall be endorsed the title of this matter, an indication of the nature of the contents of such sealed envelope or other container, the words **"CONFIDENTIAL [OR COUNSEL EYES ONLY] INFORMATION - UNDER PROTECTIVE ORDER"** and a statement substantially in the following form:

> **This envelope contains confidential information filed in this case by (name of party) and is not to be opened nor the contents thereof to be displayed or revealed except by order of the Court presiding over this matter.**

27.   Nothing in this Order shall prohibit the transmission or communication of **CONFIDENTIAL INFORMATION** or **COUNSEL EYES ONLY CONFIDENTIAL INFORMATION** between or among qualified recipients

    (a)   by hand-delivery;

       (b)     in sealed envelopes or containers via the mails or an established freight, delivery or messenger service; or

       (c)     by telephone, telegraph, facsimile or other electronic transmission system; where, under the circumstances, there is no reasonable likelihood that the transmission will be intercepted or misused by any person who is not a qualified recipient.

28.    **CONFIDENTIAL INFORMATION** or **COUNSEL EYES ONLY CONFIDENTIAL INFORMATION** shall not be copied or otherwise reproduced by a receiving party, except for transmission to qualified recipients, without the written permission of the producing party, or, in the alternative, by further order of the Court. Nothing herein shall, however, restrict a qualified recipient from making working copies, abstracts, digests and analyses of **CONFIDENTIAL INFORMATION** or **COUNSEL EYES ONLY CONFIDENTIAL INFORMATION** for use in connection with this litigation and such working copies, abstracts, digests and analyses shall be deemed to be the same level of **CONFIDENTIAL INFORMATION** or **COUNSEL EYES ONLY CONFIDENTIAL INFORMATION** under the terms of this Order as the original documents upon which such work product was based. Further, nothing herein shall restrict a qualified recipient from converting or translating **CONFIDENTIAL INFORMATION** or **COUNSEL EYES ONLY CONFIDENTIAL INFORMATION** into machine readable form for incorporation into a data retrieval system used in connection with this action, provided that access to **CONFIDENTIAL INFORMATION** or **COUNSEL EYES ONLY CONFIDENTIAL INFORMATION**, in whatever form stored or reproduced, shall be limited to qualified recipients.

## NONPARTY USE OF THIS PROTECTIVE ORDER

29.     A nonparty producing information or material voluntarily or pursuant to a subpoena or a court order may designate such material or information in the same manner and shall receive the same level of protection under this Protective Order as any party to this lawsuit.

30.     A nonparty's use of this Protective Order to protect its **CONFIDENTIAL INFORMATION** or **COUNSEL EYES ONLY CONFIDENTIAL INFORMATION** does not entitle that nonparty access to **CONFIDENTIAL INFORMATION** or **COUNSEL EYES ONLY CONFIDENTIAL INFORMATION** produced by any party in this case.

## DISCOVERY FROM EXPERTS

31.     Testifying experts shall not be subject to discovery on any draft of his or her report in this case and his or her staff are also exempt from discovery.  Drafts of expert reports need not be produced.

32.     Discovery of materials provided to testifying experts shall be limited to those materials, facts, consulting expert opinions, and other matters actually relied upon by the testifying expert in forming his final report, trial or deposition testimony or any opinion in this case.  No discovery can be taken from any consulting expert except to the extent that consulting expert has provided information, opinions or other materials to a testifying expert, who then relies upon such information, opinions or other materials in forming his final report, trial or deposition testimony or any opinion in this case.

33.     No conversations or communications between counsel and any testifying or consulting expert will be subject to discovery unless the conversations or communications are relied upon by such experts in formulating opinions that are presented in reports or trial or deposition testimony in this case.

Case 1:05-cv-00651-PSW   Document 337-1   Filed 07/05/12   Page 70 of 169 PageID #:
2789
Case 2:05-cv-00481-TJW   Document 337-1   Filed 07/05/12   Page 23 of 26 PageID #: 198

34. Materials, communications and other information exempt from discovery under the foregoing Paragraphs shall be treated as attorney-work product for the purposes of this litigation and protective order.

35. Nothing in Paragraphs 31-34 shall alter or change in any way the requirements in Paragraph 20 regarding the treatment of materials covered by that paragraph.

## MISCELLANEOUS PROVISIONS

36. Any of the notice requirements herein may be waived, in whole or in part, but only by a writing signed by the attorney of record for the party against whom such waiver will be effective.

37. Within sixty (60) days after the entry of a final non-appealable judgment or order, or the complete settlement of all claims asserted against all parties in this action, each party shall, at its option, either return to the producing party or destroy all physical objects and documents which embody **CONFIDENTIAL INFORMATION** or **COUNSEL EYES ONLY CONFIDENTIAL INFORMATION** which were received from the producing party, and shall destroy in whatever form stored or reproduced, all other physical objects and documents, including but not limited to, correspondence, memoranda, notes and other work product materials, which contain or refer to **CONFIDENTIAL INFORMATION** or **COUNSEL EYES ONLY CONFIDENTIAL INFORMATION;** provided, that all **CONFIDENTIAL INFORMATION** or **COUNSEL EYES ONLY CONFIDENTIAL INFORMATION,** not embodied in physical objects and documents, shall remain subject to this Order. Notwithstanding the foregoing, counsel shall be entitled to maintain copies of all pleadings, motions and trial briefs (including all supporting and opposing papers and exhibits thereto),

written discovery requests and responses (and exhibits thereto), deposition transcripts (and exhibits thereto) trial transcripts, and exhibits offered or introduced into evidence at trial.

38.     This Order is entered without prejudice to the right of any party to apply to the Court at any time for additional protection, or to relax or rescind the restrictions of this Order, when convenience or necessity requires.  The Court shall take appropriate measures to protect **CONFIDENTIAL INFORMATION** and **COUNSEL EYES ONLY CONFIDENTIAL INFORMATION** at trial and any hearing in this case.

39.     The United States District Court for the Eastern District of Texas, Marshall Division, is responsible for the interpretation and enforcement of this Protective Order.  All disputes concerning **CONFIDENTIAL INFORMATION** or **COUNSEL EYES ONLY CONFIDENTIAL INFORMATION** produced under the protection of this Protective Order shall be resolved by the United States District Court for the Eastern District of Texas, Marshall Division.

SO AGREED AND STIPULATED:


By:___/s/  Steven S. Cherensky              By:____/s/  Christopher A. LaVoy
Steven S. Cherensky                         Christopher A. LaVoy
Lead Attorney                               Lead Attorney
CA State Bar No. 168275                     AZ State Bar No. 016609
steven.cherensky@weil.com                   cal@lavcoychernoff.com
Matthew D. Powers                           LAVOY & CHERNOFF, P.C.
CA State Bar No. 104795                     Bank One Center
matthew.powers@weil.com                     201 N. Central Ave., Suite 3300
Weil, Gotshal & Manges LLP                  Phoenix, AZ 85004
201 Redwood Shores, CA 94065                Telephone: 602 253-3337
Telephone:  650-802-3000                    Facsimile: 602-253-3389
Facsimile:  650-802-3100

OF COUNSEL

David Healey
State Bar No. 09327980
david.healey@weil.com
Russell S. Wheatley
State Bar No. 24003158
russell.wheatley@weil.com
Weil, Gotshal & Manges LLP
700 Louisiana, Suite 1600
Houston, Texas  77002
Telephone: 713-546-5000
Facsimile: 713-224-9511

OF COUNSEL

Joseph R. Meaney
AZ State Bar No. 017371
jmeaney@ellisvenable.com
Michael F. Campillo
AZ State Bar No. 019014
mccampillo@ellisvenable.com
ELLIS & VENABLE, P.C.
101 N. First Avenue, Suite 1875
Phoenix, AZ 85003
Telephone: 602-631-9100
Facsimile: 602-631-9796

ATTORNEYS FOR PLAINTIFF,
LIZY K. JOHN

Tom Lavelle
Keith Chanroo
Xilinx, Inc.
2100 Logic Drive
San Jose, CA  95124
Telephone:  408-559-7778
Facsimile:  408-559-7114

ATTORNEYS FOR DEFENDANT,
XILINX, INC.

## SIGNATURE ATTESTATION

I hereby attest that I have on file all holograph signatures for any signatures indicated by a "conformed" signature (/S/) within this efiled document.

_____ /s/ Steven Cherensky _____

IT IS SO ORDERED, with the consent of the parties, this ___11___ of _July_, 2006.

_T. John Ward_____
Honorable T. John Ward
United States District Court

.

Case 1:05-cv-00651-LPS   Document 337-1   Filed 07/05/12   Page 73 of 169 PageID #:
Case 2:05-cv-00481-TJW   Document 34-1   Filed 07/17/06   Page 26 of 26 PageID #: 201
2792

# CONFIDENTIALITY AGREEMENT

I, _____ , state:

1.      I reside at _____;

2.      My               present               employer               is
_____;

3.      My present occupation or job description is _____;

4.      I agree to keep confidential all information provided to me in the matter of
Lizy K. John v. Xilinx, Inc., and to be subject to the authority of the United States
District Court for the Eastern District of Texas, Marshall Division in the event of any
violation of this agreement or dispute related to this agreement.

5.      I have been informed of or read the Stipulated Protective Order
dated_____, 2006, and I will not divulge any confidential information to persons
other than those specifically authorized by said Order.

6.      I state under penalty of perjury under the laws of the United States of
America that the foregoing is true and correct.

Executed on _____200__.


_____

# EXHIBIT 6

Case 1:10-cv-01065-LPS Document 137-1 Filed 07/05/12 Page 75 of 169 PageID #:
Case4:11-cv-03139-CW Document51 Filed05/04/11 Page1 of 19
2794

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALTERA CORPORATION, | Case No. 11-03139-CW |
| Plaintiff, | **STIPULATED PROTECTIVE ORDER FOR LITIGATION INVOLVING PATENTS, HIGHLY SENSITIVE CONFIDENTIAL INFORMATION AND/OR TRADE SECRETS** |
| v. | |
| LSI CORPORATION AND AGERE SYSTEMS, INC., | |
| Defendant. | |

1.    <u>PURPOSES AND LIMITATIONS</u>

Disclosure and discovery activity in this action are likely to involve production of confidential, proprietary, or private information for which special protection from public disclosure and from use for any purpose other than prosecuting this litigation may be warranted. Accordingly, the parties hereby stipulate to and petition the court to enter the following Stipulated Protective Order. The parties acknowledge that this Order does not confer blanket protections on all disclosures or responses to discovery and that the protection it affords from public disclosure and use extends only to the limited information or items that are entitled to confidential treatment under the applicable legal principles. The parties further acknowledge, as set forth in Section 14.4, below, that this Stipulated Protective Order does not entitle them to file confidential information under seal; Civil Local Rule 79-5 sets forth the procedures that must be followed and the standards that will be applied when a party seeks permission from the court to file material under seal.

2.    DEFINITIONS

  2.1 Challenging Party: a Party or Non-Party that challenges the designation of information or items under this Order.

  2.2 "CONFIDENTIAL" Information or Items: information (regardless of how it is generated, stored or maintained) or tangible things that qualify for protection under Federal Rule of Civil Procedure 26(c).

  2.3 Counsel (without qualifier): Outside Counsel of Record and House Counsel (as well as their support staff).

  2.4 Designating Party: a Party or Non-Party that designates information or items that it produces in disclosures or in responses to discovery as "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" or "HIGHLY CONFIDENTIAL – SOURCE CODE".

  2.5 Disclosure or Discovery Material: all items or information, regardless of the medium or manner in which it is generated, stored, or maintained (including, among other things, testimony, transcripts, and tangible things), that are produced or generated in disclosures or responses to discovery in this matter.

  2.6 Expert: a person with specialized knowledge or experience in a matter pertinent to the litigation who (1) has been retained by a Party or its counsel to serve as an expert witness or as a consultant in this action, (2) is not a past employee of an opposing party or current employee of a Party or a competitor of a Party and (3) at the time of retention, is not anticipated to become an employee of a Party or of a Party's competitor.

  2.7 "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" Information or Items: extremely sensitive "Confidential Information or Items," disclosure of which to another Party or Non-Party would create a substantial risk of serious harm that could not be avoided by less restrictive means.

  2.8 "HIGHLY CONFIDENTIAL – SOURCE CODE" Information or Items: extremely sensitive "Confidential Information or Items" representing computer code and associated comments and revision histories, formulas, engineering specifications, or schematics

that define or otherwise describe in detail the algorithms or structure of software or hardware designs, disclosure of which to another Party or Non-Party would create a substantial risk of serious harm that could not be avoided by less restrictive means.

2.9     House Counsel: attorneys who are employees of a party to this action. House Counsel does not include Outside Counsel of Record or any other outside counsel.

2.10     Non-Party: any natural person, partnership, corporation, association, or other legal entity not named as a Party to this action.

2.11     Outside Counsel of Record: attorneys who are not employees of a party to this action but are retained to represent or advise a party to this action and have appeared in this action on behalf of that party or are affiliated with a law firm which has appeared on behalf of that party.

2.12     Party: any party to this action, including all of its officers, directors, employees, consultants, retained experts, and Outside Counsel of Record (and their support staffs).

2.13     Producing Party: a Party or Non-Party that produces Disclosure or Discovery Material in this action.

2.14     Professional Vendors: persons or entities that provide litigation support services (e.g., photocopying, videotaping, translating, preparing exhibits or demonstrations, and organizing, storing, or retrieving data in any form or medium) and their employees and subcontractors.

2.15     Protected Material: any Disclosure or Discovery Material that is designated as "CONFIDENTIAL," or as "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY." or as "HIGHLY CONFIDENTIAL – SOURCE CODE."

2.16     Receiving Party: a Party that receives Disclosure or Discovery Material from a Producing Party.

2.17     Source Code: is human-readable software code (instructions and data), describing computing operations, that is written in a programming language that must be

1   converted to object code or machine language by a compiler before a computer can execute those

2   computing operations.

3       3.      SCOPE

4           The protections conferred by this Stipulation and Order cover not only Protected

5   Material (as defined above), but also (1) any information copied or extracted from Protected

6   Material; (2) all copies, excerpts, summaries, or compilations of Protected Material; and (3) any

7   testimony, conversations, or presentations by Parties or their Counsel that might reveal Protected

8   Material. However, the protections conferred by this Stipulation and Order do not cover the

9   following information: (a) any information that is in the public domain at the time of disclosure

10  to a Receiving Party or becomes part of the public domain after its disclosure to a Receiving

11  Party as a result of publication not involving a violation of this Order, including becoming part

12  of the public record through trial or otherwise; and (b) any information known to the Receiving

13  Party prior to the disclosure or obtained by the Receiving Party after the disclosure from a source

14  who obtained the information lawfully and under no obligation of confidentiality to the

15  Designating Party. Any use of Protected Material at trial shall be governed by a separate

16  agreement or order.

17      4.      DURATION

18          Even after final disposition of this litigation, the confidentiality obligations

19  imposed by this Order shall remain in effect until a Designating Party agrees otherwise in writing

20  or a court order otherwise directs. Final disposition shall be deemed to be the later of (1)

21  dismissal of all claims and defenses in this action, with or without prejudice; and (2) final

22  judgment herein after the completion and exhaustion of all appeals, rehearings, remands, trials,

23  or reviews of this action, including the time limits for filing any motions or applications for

24  extension of time pursuant to applicable law.

25      5.      DESIGNATING PROTECTED MATERIAL

26          5.1     Exercise of Restraint and Care in Designating Material for Protection.

27  Each Party or Non-Party that designates information or items for protection under this Order

28  must take care to limit any such designation to specific material that qualifies under the

appropriate standards. To the extent it is practical to do so, the Designating Party must designate for protection only those parts of material, documents, items, or oral or written communications that qualify – so that other portions of the material, documents, items, or communications for which protection is not warranted are not swept unjustifiably within the ambit of this Order.

Mass, indiscriminate, or routinized designations are prohibited. Designations that are shown to be clearly unjustified or that have been made for an improper purpose (e.g., to unnecessarily encumber or retard the case development process or to impose unnecessary expenses and burdens on other parties) expose the Designating Party to sanctions.

If it comes to a Designating Party's attention that information or items that it designated for protection do not qualify for protection at all or do not qualify for the level of protection initially asserted, that Designating Party must promptly notify all other parties that it is withdrawing the mistaken designation.

5.2 <u>Manner and Timing of Designations</u>. Except as otherwise provided in this Order (see, e.g., second paragraph of section 5.2(a) below), or as otherwise stipulated or ordered, Disclosure or Discovery Material that qualifies for protection under this Order must be clearly so designated before the material is disclosed or produced.

Designation in conformity with this Order requires:

(a) <u>for information in documentary form</u> (e.g., paper or electronic documents, but excluding transcripts of depositions or other pretrial or trial proceedings), that the Producing Party affix the legend "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" or "HIGHLY CONFIDENTIAL – SOURCE CODE" to each page that contains protected material. If only a portion or portions of the material on a page qualifies for protection, the Producing Party also must clearly identify the protected portion(s) (e.g., by making appropriate markings in the margins) and must specify, for each portion, the level of protection being asserted.

A Party or Non-Party that makes original documents or materials available for inspection need not designate them for protection until after the inspecting Party has indicated which material it would like copied and produced. During the inspection and before the

5

designation, all of the material made available for inspection shall be deemed "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY." After the inspecting Party has identified the documents it wants copied and produced, the Producing Party must determine which documents, or portions thereof, qualify for protection under this Order. Then, before producing the specified documents, the Producing Party must affix the appropriate legend ("CONFIDENTIAL" or "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" or "HIGHLY CONFIDENTIAL – SOURCE CODE) to each page that contains Protected Material. If only a portion or portions of the material on a page qualifies for protection, the Producing Party also must clearly identify the protected portion(s) (e.g., by making appropriate markings in the margins) and must specify, for each portion, the level of protection being asserted.

(b)  for testimony given in deposition or in other pretrial or trial proceedings, that the Designating Party identify on the record, before the close of the deposition, hearing, or other proceeding, all protected testimony and specify the level of protection being asserted. When it is impractical to identify separately each portion of testimony that is entitled to protection and it appears that substantial portions of the testimony may qualify for protection, the Designating Party may invoke on the record (before the deposition, hearing, or other proceeding is concluded) a right to have up to 21 days to identify the specific portions of the testimony as to which protection is sought and to specify the level of protection being asserted. Only those portions of the testimony that are appropriately designated for protection within the 21 days shall be covered by the provisions of this Stipulated Protective Order. Alternatively, a Designating Party may specify, at the deposition or up to 21 days afterwards if that period is properly invoked, that the entire transcript shall be treated as "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY."

Parties shall give the other parties notice if they reasonably expect a deposition, hearing or other proceeding to include Protected Material so that the other parties can ensure that only authorized individuals who have signed the "Acknowledgment and Agreement to Be Bound" (Exhibit A) are present at those proceedings. The use of a document as an exhibit at a

6

1  deposition shall not in any way affect its designation as "CONFIDENTIAL" or "HIGHLY

2  CONFIDENTIAL – ATTORNEYS' EYES ONLY."

3              Transcripts containing Protected Material shall have an obvious legend on the title

4  page that the transcript contains Protected Material, and the title page shall be followed by a list

5  of all pages (including line numbers as appropriate) that have been designated as Protected

6  Material and the level of protection being asserted by the Designating Party. The Designating

7  Party shall inform the court reporter of these requirements. Any transcript that is prepared before

8  the expiration of a 21-day period for designation shall be treated during that period as if it had

9  been designated "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" in its entirety

10  unless otherwise agreed. After the expiration of that period, the transcript shall be treated only as

11  actually designated.

12              (c)  for information produced in some form other than documentary and for any

13  other tangible items, that the Producing Party affix in a prominent place on the exterior of the

14  container or containers in which the information or item is stored the legend "CONFIDENTIAL"

15  or "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" or "HIGHLY

16  CONFIDENTIAL – SOURCE CODE". If only a portion or portions of the information or item

17  warrant protection, the Producing Party, to the extent practicable, shall identify the protected

18  portion(s) and specify the level of protection being asserted.

19          5.3    Inadvertent Failures to Designate. If timely corrected, an inadvertent

20  failure to designate qualified information or items does not, standing alone, waive the

21  Designating Party's right to secure protection under this Order for such material. Upon timely

22  correction of a designation, the Receiving Party must make reasonable efforts to assure that the

23  material is treated in accordance with the provisions of this Order.

24      6.    CHALLENGING CONFIDENTIALITY DESIGNATIONS

25          6.1    Timing of Challenges. Any Party or Non-Party may challenge a

26  designation of confidentiality at any time. Unless a prompt challenge to a Designating Party's

27  confidentiality designation is necessary to avoid foreseeable, substantial unfairness, unnecessary

28  economic burdens, or a significant disruption or delay of the litigation, a Party does not waive its

1   right to challenge a confidentiality designation by electing not to mount a challenge promptly

2   after the original designation is disclosed.

3              6.2    <u>Meet and Confer</u>. The Challenging Party shall initiate the dispute

4   resolution process by providing written notice of each designation it is challenging and

5   describing the basis for each challenge. To avoid ambiguity as to whether a challenge has been

6   made, the written notice must recite that the challenge to confidentiality is being made in

7   accordance with this specific paragraph of the Protective Order. The parties shall attempt to

8   resolve each challenge in good faith and must begin the process by conferring directly (in voice

9   to voice dialogue; other forms of communication are not sufficient) within 14 days of the date of

10   service of notice. In conferring, the Challenging Party must explain the basis for its belief that

11   the confidentiality designation was not proper and must give the Designating Party an

12   opportunity to review the designated material, to reconsider the circumstances, and, if no change

13   in designation is offered, to explain the basis for the chosen designation. A Challenging Party

14   may proceed to the next stage of the challenge process only if it has engaged in this meet and

15   confer process first or establishes that the Designating Party is unwilling to participate in the

16   meet and confer process in a timely manner.

17              6.3    <u>Judicial Intervention</u>. If the Parties cannot resolve a challenge without

18   court intervention, the Challenging Party shall file and serve a motion to challenge

19   confidentiality under Civil Local Rule 7 (and in compliance with Civil Local Rule 79-5, if

20   applicable) within 21 days of the initial notice of challenge or within 14 days of the parties

21   agreeing that the meet and confer process will not resolve their dispute, whichever is earlier.

22   Each such motion must be accompanied by a competent declaration affirming that the movant

23   has complied with the meet and confer requirements imposed in the preceding paragraph. In

24   addition, the Designating Party may file to retain a confidentiality designation at any time if there

25   is good cause for doing so, including to retain the designation of a deposition transcript or any

26   portions thereof. Any motion brought pursuant to this provision must be accompanied by a

27   competent declaration affirming that the movant has complied with the meet and confer

28   requirements imposed by the preceding paragraph.

The burden of persuasion in any such challenge proceeding shall be on the Designating Party. Frivolous challenges and those made for an improper purpose (e.g., to harass or impose unnecessary expenses and burdens on other parties) may expose the Challenging Party to sanctions. Unless the Designating Party has waived the confidentiality designation, all parties shall continue to afford the material in question the level of protection to which it is entitled under the Producing Party's designation until the court rules on the challenge.

7.  ACCESS TO AND USE OF PROTECTED MATERIAL

7.1  Basic Principles. A Receiving Party may use Protected Material that is disclosed or produced by another Party or by a Non-Party in connection with this case only for prosecuting, defending, or attempting to settle this litigation. Such Protected Material may be disclosed only to the categories of persons and under the conditions described in this Order. When the litigation has been terminated, a Receiving Party must comply with the provisions of section 15 below (FINAL DISPOSITION).

Protected Material must be stored and maintained by a Receiving Party at a location and in a secure manner that ensures that access is limited to the persons authorized under this Order.

7.2  Disclosure of "CONFIDENTIAL" Information or Items. Unless otherwise ordered by the court or permitted in writing by the Designating Party, a Receiving Party may disclose any information or item designated "CONFIDENTIAL" only to:

(a) the Receiving Party's Outside Counsel of Record in this action, as well as employees of said Outside Counsel of Record to whom it is reasonably necessary to disclose the information for this litigation;

(b) the officers, directors, and employees (including House Counsel) of the Receiving Party to whom disclosure is reasonably necessary for this litigation and who have signed the "Acknowledgment and Agreement to Be Bound" (Exhibit A);

(c) Experts (as defined in this Order) of the Receiving Party to whom disclosure is reasonably necessary for this litigation and who have signed the "Acknowledgment and Agreement to Be Bound" (Exhibit B);

9

Case 1:10-cv-01065-LPS Document 137-1 Filed 07/05/12 Page 84 of 169 PageID #:
Case4:11-cv-03139-CW Document31 Filed10/04/11 Page10 of 22
2803

1           (d)  the court and its personnel;

2           (e)  court reporters and their staff, professional jury or trial consultants, and

3 Professional Vendors to whom disclosure is reasonably necessary for this litigation and who

4 have signed the "Acknowledgment and Agreement to Be Bound" (Exhibit A);

5           (f)  during their depositions, witnesses in the action to whom disclosure is

6 reasonably necessary and who have signed the "Acknowledgment and Agreement to Be Bound"

7 (Exhibit A), unless otherwise agreed by the Designating Party or ordered by the court. Pages of

8 transcribed deposition testimony or exhibits to depositions that reveal Protected Material must be

9 separately bound by the court reporter and may not be disclosed to anyone except as permitted

10 under this Stipulated Protective Order.

11           (g)  the author or recipient of a document containing the information or a

12 custodian or other person who otherwise possessed or knew the information.

13           7.3     Disclosure of "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES

14 ONLY" and "HIGHLY CONFIDENTIAL – SOURCE CODE" Information or Items. Unless

15 otherwise ordered by the court or permitted in writing by the Designating Party, a Receiving

16 Party may disclose any information or item designated "HIGHLY CONFIDENTIAL –

17 ATTORNEYS' EYES ONLY" or "HIGHLY CONFIDENTIAL – SOURCE CODE" only to:

18           (a)  the Receiving Party's Outside Counsel of Record in this action, as well as

19 employees of said Outside Counsel of Record to whom it is reasonably necessary to disclose the

20 information for this litigation;

21           (b)  Experts of the Receiving Party (1) to whom disclosure is reasonably

22 necessary for this litigation, (2) who have signed the "Acknowledgment and Agreement to Be

23 Bound" (Exhibit B), and (3) as to whom the procedures set forth in paragraph 7.4(a)(2), below,

24 have been followed;

25           (c)  the court and its personnel;

26           (d)  court reporters and their staff, professional jury or trial consultants, and

27 Professional Vendors to whom disclosure is reasonably necessary for this litigation and who

28 have signed the "Acknowledgment and Agreement to Be Bound" (Exhibit A); and

(e) the author or recipient of a document containing the information or a custodian or other person who otherwise possessed or knew the information.

7.4     Procedures for Approving or Objecting to Disclosure of "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" or "HIGHLY CONFIDENTIAL – SOURCE CODE" Information or Items to Experts.

(a)(1) Unless otherwise ordered by the court or agreed to in writing by the Designating Party, a Party that seeks to disclose to an Expert (as defined in this Order) any information or item that has been designated "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" or "HIGHLY CONFIDENTIAL – SOURCE CODE" pursuant to paragraph 7.3(c) first must make a written request to the Designating Party that (1) identifies the general categories of "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" or "HIGHLY CONFIDENTIAL – SOURCE CODE" information that the Receiving Party seeks permission to disclose to the Expert, (2) sets forth the full name of the Expert and the city and state of his or her primary residence, (3) attaches a copy of the Expert's current resume, (4) identifies the Expert's current employer(s), (5) identifies each person or entity from whom the Expert has received compensation or funding for work in his or her areas of expertise or to whom the expert has provided professional services, including in connection with a litigation, at any time during the preceding five years, and (6) identifies (by name and number of the case, filing date, and location of court) any litigation in connection with which the Expert has offered expert testimony, including through a declaration, report, or testimony at a deposition or trial, during the preceding five years.

(b)  A Party that makes a request and provides the information specified in the preceding respective paragraphs may disclose the subject Protected Material to the identified Expert unless, within 7 days of delivering the request, the Party receives a written objection from the Designating Party. Any such objection must set forth in detail the grounds on which it is based.

(c)  A Party that receives a timely written objection must meet and confer with the Designating Party (through direct voice to voice dialogue) to try to resolve the matter by

1   agreement within seven days of the written objection. If no agreement is reached, the Party

2   seeking to make the disclosure to the Expert may file a motion as provided in Civil Local Rule 7

3   (and in compliance with Civil Local Rule 79-5, if applicable) seeking permission from the court

4   to do so. Any such motion must describe the circumstances with specificity, set forth in detail the

5   reasons why the disclosure to the Expert is reasonably necessary, assess the risk of harm that the

6   disclosure would entail, and suggest any additional means that could be used to reduce that risk.

7   In addition, any such motion must be accompanied by a competent declaration describing the

8   parties' efforts to resolve the matter by agreement (i.e., the extent and the content of the meet and

9   confer discussions) and setting forth the reasons advanced by the Designating Party for its refusal

10   to approve the disclosure.

11         In any such proceeding, the Party opposing disclosure to the Expert shall bear the

12   burden of proving that the risk of harm that the disclosure would entail (under the safeguards

13   proposed) outweighs the Receiving Party's need to disclose the Protected Material to its Expert.

14       8.      PROSECUTION BAR

15         Absent written consent from the Producing Party, any individual who receives

16   access to "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" or "HIGHLY

17   CONFIDENTIAL – SOURCE CODE" information shall not be involved in the prosecution of

18   patents or patent applications relating to electronic design automation software, semiconductor

19   packaging, I/O of integrated circuits, clocking, and/or digital signal processing, including

20   without limitation the patents asserted in this action and any patent or application claiming

21   priority to or otherwise related to the patents asserted in this action, before any foreign or

22   domestic agency, including the United States Patent and Trademark Office ("the Patent Office").

23   For purposes of this paragraph, "prosecution" includes directly or indirectly drafting, amending,

24   advising, or otherwise affecting the scope or maintenance of patent claims. To avoid any doubt,

25   "prosecution" as used in this paragraph does not include representing a party challenging a patent

26   before a domestic or foreign agency (including, but not limited to, a reissue protest, ex parte

27   reexamination or inter partes reexamination). This Prosecution Bar shall begin when access to

28   "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" or "HIGHLY CONFIDENTIAL

1 – SOURCE CODE" information is first received by the affected individual and shall end two (2)

2 years after final termination of this action.

3      9.     <u>SOURCE CODE</u>

4      (a) To the extent production of Source Code becomes necessary in this case, a

5 Producing Party may designate Source Code as "HIGHLY CONFIDENTIAL - SOURCE

6 CODE" if it comprises or includes confidential, proprietary or trade secret Source Code.

7      (b) Protected Material designated as "HIGHLY CONFIDENTIAL – SOURCE

8 CODE" shall be subject to all of the protections afforded to "HIGHLY CONFIDENTIAL –

9 ATTORNEYS' EYES ONLY" information, and may be disclosed only to the individuals to

10 whom "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" information may be

11 disclosed, as set forth in Paragraphs 7.3 and 7.4.

12      (c) Any Source Code produced in discovery shall be made available for inspection,

13 in a format allowing it to be reasonably reviewed and searched, during normal business hours or

14 at other mutually agreeable times, at an office of the Producing Party's counsel or another

15 mutually agreed upon location. The Source Code shall be made available for inspection on a

16 secured computer in a secured room without Internet access or network access to other

17 computers, and the Receiving Party shall not copy, remove, or otherwise transfer any portion of

18 the Source Code onto any recordable media or recordable device. The Producing Party may

19 visually monitor the activities of the Receiving Party's representatives during any Source Code

20 review, but only to ensure that there is no unauthorized recording, copying, or transmission of

21 the Source Code.

22      (d) The Receiving Party may request paper copies of limited portions of Source

23 Code that are reasonably necessary for the preparation of court filings, pleadings, expert reports,

24 or other papers, or for deposition or trial, but shall not request paper copies for the purposes of

25 reviewing the Source Code other than electronically as set forth in paragraph (c) in the first

26 instance. The Producing Party shall provide all such Source Code in paper form including bates

27 numbers and the label "HIGHLY CONFIDENTIAL - SOURCE CODE." The Producing Party

28 may challenge the amount of Source Code requested in hard copy form pursuant to the dispute

13

1  resolution procedure and timeframes set forth in Paragraph 6 whereby the Producing Party is the

2  "Challenging Party" and the Receiving Party is the "Designating Party" for purposes of dispute

3  resolution.

4         (e) The Receiving Party shall maintain a record of any individual who has

5  inspected any portion of the Source Code in electronic or paper form. The Receiving Party shall

6  maintain all paper copies of any printed portions of the Source Code in a secured, locked area.

7  The Receiving Party shall not create any electronic or other images of the paper copies and shall

8  not convert any of the information contained in the paper copies into any electronic format. The

9  Receiving Party shall only make additional paper copies if such additional copies are (1)

10  necessary to prepare court filings, pleadings, or other papers (including a testifying expert's

11  expert report), (2) necessary for deposition, or (3) otherwise necessary for the preparation of its

12  case. Any paper copies used during a deposition shall be retrieved by the Producing Party at the

13  end of each day and must not be given to or left with a court reporter or any other individual.

14         (f) The Receiving Party shall provide notice to the Producing Party before

15  including "HIGHLY CONFIDENTIAL – SOURCE CODE" information in a court filing,

16  pleading, or expert report.  The Receiving Party shall provide such notice, in writing, at least five

17  business days prior to service or filing of such court filing, pleading, or expert report.

18         10.    PROTECTED MATERIAL SUBPOENAED OR ORDERED PRODUCED IN

19  OTHER LITIGATION

20         If a Party is served with a subpoena or a court order issued in other litigation that

21  compels disclosure of any information or items designated in this action as "CONFIDENTIAL"

22  or "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" or "HIGHLY

23  CONFIDENTIAL – SOURCE CODE" that Party must:

24         (a) promptly notify in writing the Designating Party. Such notification shall include

25  a copy of the subpoena or court order;

26         (b) promptly notify in writing the party who caused the subpoena or order to issue

27  in the other litigation that some or all of the material covered by the subpoena or order is subject

28

1    to this Protective Order. Such notification shall include a copy of this Stipulated Protective

2    Order; and

3            (c) cooperate with respect to all reasonable procedures sought to be pursued by the

4    Designating Party whose Protected Material may be affected.

5            If the Designating Party timely seeks a protective order, the Party served with the

6    subpoena or court order shall not produce any information designated in this action as

7    "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" or

8    "HIGHLY CONFIDENTIAL – SOURCE CODE" before a determination by the court from

9    which the subpoena or order issued, unless the Party has obtained the Designating Party's

10   permission. The Designating Party shall bear the burden and expense of seeking protection in

11   that court of its confidential material – and nothing in these provisions should be construed as

12   authorizing or encouraging a Receiving Party in this action to disobey a lawful directive from

13   another court.

14         11.      A NON-PARTY'S PROTECTED MATERIAL SOUGHT TO BE PRODUCED IN

15   THIS LITIGATION

16         (a) The terms of this Order are applicable to information produced by a Non-

17   Party in this action and designated as "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL –

18   ATTORNEYS' EYES ONLY" or "HIGHLY CONFIDENTIAL – SOURCE CODE".  Such

19   information produced by Non-Parties in connection with this litigation is protected by the

20   remedies and relief provided by this Order. Nothing in these provisions should be construed as

21   prohibiting a Non-Party from seeking additional protections.

22         (b) In the event that a Party is required, by a valid discovery request, to produce

23   a Non-Party's confidential information in its possession, and the Party is subject to an

24   agreement with the Non-Party not to produce the Non-Party's confidential information, then

25   the Party shall:

26            1.      promptly notify in writing the Requesting Party and the Non-Party

27   that some or all of the information requested is subject to a confidentiality agreement with a

28   Non-Party;

Case 1:10-cv-01065-LPS Document 137-1 Filed 07/05/12 Page 90 of 169 PageID #:
Case4:11-cv-03139-CW Document31 Filed10/04/11 Page16 of 22
2809

2.     promptly provide the Non-Party with a copy of the Stipulated
Protective Order in this litigation, the relevant discovery request(s), and a reasonably specific
description of the information requested; and

3.     make the information requested available for inspection by the
Non-Party.

(c) If the Non-Party fails to object or seek a protective order from this court within
14 days of receiving the notice and accompanying information, the Receiving Party may produce
the Non-Party's confidential information responsive to the discovery request.  If the Non-Party
timely seeks a protective order, the Receiving Party shall not produce any information in its
possession or control that is subject to the confidentiality agreement with the Non-Party before a
determination by the court.  Absent a court order to the contrary, the Non-Party shall bear the
burden and expense of seeking protection in this court of its Protected Material.

12.     <u>UNAUTHORIZED DISCLOSURE OF PROTECTED MATERIAL</u>

If a Receiving Party learns that, by inadvertence or otherwise, it has disclosed
Protected Material to any person or in any circumstance not authorized under this Stipulated
Protective Order, the Receiving Party must immediately (a) notify in writing the Designating
Party of the unauthorized disclosures, (b) use its best efforts to retrieve all unauthorized copies of
the Protected Material, (c) inform the person or persons to whom unauthorized disclosures were
made of all the terms of this Order, and (d) request such person or persons to execute the
"Acknowledgment and Agreement to Be Bound" that is attached hereto as Exhibit A.

13.     <u>INADVERTENT PRODUCTION OF PRIVILEGED OR OTHERWISE
PROTECTED MATERIAL</u>

When a Producing Party gives notice to Receiving Parties that certain inadvertently
produced material is subject to a claim of privilege or other protection, the obligations of the
Receiving Parties are those set forth in Federal Rule of Civil Procedure 26(b)(5)(B).

Any inadvertent disclosure or production of any document(s) shall not be deemed
a waiver of any privilege with respect to such document(s) or of any work product doctrine or
immunity that may attach thereto, provided that the Producing Party notifies the Receiving Party

16

Case 1:10-cv-01065-LPS Document 37-1 Filed 07/05/12 Page 91 of 169 PageID #:
Case4:11-cv-03139-CW Document31 Filed10/04/11 Page17 of 22
2810

of such disclosure in writing and within a reasonable time after the date that the inadvertent

production is discovered.  The Producing Party may demand the return of such document(s), in

which case all copies of such document(s) shall be returned to the Producing Party within seven

(7) days of the demand.

If a dispute arises concerning the privileged nature of the document(s) demanded

or returned, the Receiving Party shall file and serve a motion to challenge the privileged nature

of the document under Civil Local Rule 7 (and in compliance with Civil Local Rule 79-5, if

applicable) within 21 days of the initial notice of challenge or within 14 days of the parties

agreeing that the meet and confer process will not resolve their dispute, whichever is earlier.

Each such motion must be accompanied by a competent declaration affirming that the movant

has complied with the meet and confer requirements imposed in the preceding paragraph.  Until

and unless such dispute is resolved, the Receiving Party will not use or refer to any privileged

information at issue, except to the extent such information is reflected in any applicable privilege

log.

14.  **MISCELLANEOUS**

14.1  <u>Right to Further Relief</u>. Nothing in this Order abridges the right of any

person to seek its modification by the court in the future.

14.2  <u>Right to Assert Other Objections</u>. By stipulating to the entry of this

Protective Order no Party waives any right it otherwise would have to object to disclosing or

producing any information or item on any ground not addressed in this Stipulated Protective

Order. Similarly, no Party waives any right to object on any ground to use in evidence of any of

the material covered by this Protective Order.

14.3 <u>Export Control</u>. Disclosure of Protected Material shall be subject to all

applicable laws and regulations relating to the export of technical data contained in such

Protected Material, including the release of such technical data to foreign persons or nationals in

the United States or elsewhere. The Producing Party shall be responsible for identifying any such

controlled technical data, and the Receiving Party shall take measures necessary to ensure

compliance.

Case 1:10-cv-01065-LPS Document 137-1 Filed 07/05/12 Page 92 of 169 PageID #:
Case 4:11-cv-03139-CW Document 31 Filed 10/04/11 Page 23 of 22
2811

14.4    <u>Filing Protected Material</u>.  Without written permission from the

Designating Party or a court order secured after appropriate notice to all interested persons, a

Party may not file in the public record in this action any Protected Material. A Party that seeks to

file under seal any Protected Material must comply with Civil Local Rule 79-5. Protected

Material may only be filed under seal pursuant to a court order authorizing the sealing of the

specific Protected Material at issue. Pursuant to Civil Local Rule 79-5, a sealing order will issue

only upon a request establishing that the Protected Material at issue is privileged, protectable as a

trade secret, or otherwise entitled to protection under the law.  If a Receiving Party's request to

file Protected Material under seal pursuant to Civil Local Rule 79-5(d) is denied by the court,

then the Receiving Party may file the Protected Material in the public record pursuant to Civil

Local Rule 79-5(e) unless otherwise instructed by the court.

15.    <u>FINAL DISPOSITION</u>

Within 60 days after the final disposition of this action, as defined in paragraph

4, each Receiving Party must return all Protected Material to the Producing Party or destroy

such material. As used in this subdivision, "all Protected Material" includes all copies,

abstracts, compilations, summaries, and any other format reproducing or capturing any of the

Protected Material. Whether the Protected Material is returned or destroyed, the Receiving

Party must submit a written certification to the Producing Party (and, if not the same person

or entity, to the Designating Party) by the 60 day deadline that (1) identifies (by category,

where appropriate) all the Protected Material that was returned or destroyed and (2) affirms

that the Receiving Party has not retained any copies, abstracts, compilations, summaries or

any other format reproducing or capturing any of the Protected Material. Notwithstanding

this provision, Counsel are entitled to

retain an archival copy of all pleadings, motion papers, trial, deposition, and hearing

transcripts, legal memoranda, correspondence, deposition and trial exhibits, expert reports,

attorney work product, and consultant and expert work product, even if such materials

contain Protected Material. Any such archival copies that contain or constitute Protected

Material remain subject to this Protective Order as set forth in Section 4 (DURATION).

18

1   IT IS SO STIPULATED, THROUGH COUNSEL OF RECORD.

2

3   DATED: October 3, 2011                              _____/s/ Karl Kramer_____

4                                                       Karl Kramer
                                                        Attorneys for Plaintiff
5

6   DATED: October 3, 2011                          _____/s/ Matthew Rawlinson_____

7                                                       Matthew Rawlinson
                                                        Attorneys for Defendant
8

9                              **ATTESTATION CLAUSE**

10          I, Matthew Rawlinson, hereby attest in accordance with General Order No. 45.X(B) that

11   Karl J. Kramer, counsel for Plaintiff Altera Corporation, has provided his concurrence with the

12   electronic filing of the foregoing document entitled STIPULATED PROTECTIVE ORDER FOR

13   LITIGATION INVOLVING PATENTS, HIGHLY SENSITIVE CONFIDENTIAL

14   INFORMATION AND/OR TRADE SECRETS.

15   Dated: October 3, 2011

16                                           By: _____/s/_____

17                                                        Matthew Rawlinson

18

19   PURSUANT TO STIPULATION, IT IS SO ORDERED.

20

21   DATED: ____**10/4/2011**____        _____

22                                                    Hon. Claudia Wilken
                                                      United States District Judge
23

24

25

26   / / /

27   / / /

28   / / /

19

1    <u>EXHIBIT A</u>

2    <u>ACKNOWLEDGMENT AND AGREEMENT TO BE BOUND</u>

3        I, _____ [print or type full name], of _____

4    [print or type full address], declare under penalty of perjury that I have read in its entirety and

5    understand the Stipulated Protective Order that was issued by the United States District Court for

6    the Northern District of California on [date] in the case of *Altera Corporation v. LSI Corporation*

7    *and Agere Systems, Inc.*, 11cv03139-CW. I agree to comply with and to be bound by all the

8    terms of this Stipulated Protective Order and I understand and acknowledge that failure to so

9    comply could expose me to sanctions and punishment in the nature of contempt. I solemnly

10   promise that I will not disclose in any manner any information or item that is subject to this

11   Stipulated Protective Order to any person or entity except in strict compliance with the

12   provisions of this Order.

13

14       I further agree to submit to the jurisdiction of the United States District Court for the

15   Northern District of California for the purpose of enforcing the terms of this Stipulated

16   Protective Order, even if such enforcement proceedings occur after termination of this action.

17       I hereby appoint _____ [print or type full name] of

18   _____ [print or type full address and telephone

19   number] as my California agent for service of process in connection with this action or any

20   proceedings related to enforcement of this Stipulated Protective Order.

21   Date: _____

22   City and State where sworn and signed: _____

23   Printed name: _____
24                         [printed name]

25   Signature: _____
26                         [signature]

27   / / /

28   / / /

20

<u>EXHIBIT B</u>

<u>EXPERT ACKNOWLEDGMENT AND AGREEMENT TO BE BOUND</u>

I, _____ [print or type full name], of _____ [print or type full address], declare under penalty of perjury that I have read in its entirety and understand the Stipulated Protective Order that was issued by the United States District Court for the Northern District of California on [date] in the case of *Altera Corporation v. LSI Corporation and Agere Systems, Inc.*, 11cv03139-CW. I agree to comply with and to be bound by all the terms of this Stipulated Protective Order and I understand and acknowledge that failure to so comply could expose me to sanctions and punishment in the nature of contempt. I solemnly promise that I will not disclose in any manner any information or item that is subject to this Stipulated Protective Order to any person or entity except in strict compliance with the provisions of this Order.

I further acknowledge that I do not, and will not, work in any capacity for a Party in this case other than my engagement as an expert witness or as a consultant in this action.

I further agree to submit to the jurisdiction of the United States District Court for the Northern District of California for the purpose of enforcing the terms of this Stipulated Protective Order, even if such enforcement proceedings occur after termination of this action.

I hereby appoint _____ [print or type full name] of _____ [print or type full address and telephone number] as my California agent for service of process in connection with this action or any proceedings related to enforcement of this Stipulated Protective Order.

Date: _____

City and State where sworn and signed: _____

Printed name: _____
                        [printed name]

Signature: _____
                        [signature]

# EXHIBIT 7

Case 4:10-cv-04965-DES Document 127-1 Filed 07/05/19 Page 97 of 169 PageID #:
Case 6:07-cv-00393-LED Document 248 Filed 03/05/08 Page 96 of 24 PageID #:
2816

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | | |
|---|---|---|
| LONESTAR INVENTIONS, L.P. | § | |
| Plaintiff | § | |
| | § | |
| v. | § | CASE NO. 6:07-CV-393 |
| | § | PATENT CASE |
| XILINX, INC. | § | |
| Defendant | § | JURY TRIAL DEMANDED |

**AGREED PROTECTIVE ORDER**

Whereas pretrial discovery in this action involving Lonestar Inventions, L.P.

("Lonestar") and Xilinx, Inc. ("Xilinx") shall necessarily involve the disclosure of trade

secrets or confidential research, development, or commercial information of the parties

and of non-parties from whom discovery may be sought; and

Whereas Lonestar and Xilinx stipulate pursuant to Rule 26(c) of the Federal Rules

of Civil Procedure -- subject to the approval of the Court -- to the following Protective

Order:

    **1.**     **Scope of Protection.**

    1.1     This Protective Order shall govern any information, document or thing

designated pursuant to paragraph 2 of this Protective Order, produced in this case,

including all designated deposition testimony, all designated testimony taken at a hearing

or other proceeding, all designated interrogatory answers, documents and other discovery

materials and things, whether produced informally or in response to interrogatories,

requests for admissions, requests for production of documents or other formal method of

discovery.

1.2     This Protective Order shall also govern any designated information, document or thing produced in this case pursuant to required disclosures under any federal procedural rule, Eastern District of Texas local or patent rule, and any supplementary disclosures thereto.

1.3     This Protective Order shall apply to the parties and any non-party from whom discovery is sought and who desires the protection of this Protective Order.

1.4     This Protective Order shall be binding upon the parties and their attorneys, successors, executors, personal representatives, administrators, heirs, legal representatives, assigns, subsidiaries, divisions, employees, agents, independent contractors, or other persons or organizations over which they have control.

**2.      Designation.**

2.1     Each party shall have the right to designate as "Confidential" and subject to this Protective Order any information, document or thing produced by it in this case which contains, reflects, or otherwise discloses confidential technical, business and/or financial information. This designation shall be made by marking each page or thing containing Confidential information with the legend CONFIDENTIAL (or like designation) prior to its production or, if inadvertently produced without such legend, pursuant to the procedure set forth in paragraph 14.

2.2     Each party shall have the right to designate as "Attorneys' Eyes Only," restricted to review by outside attorneys and others specified in Paragraph 4.2 only and subject to this Protective Order, any information, document or thing produced in this case which contains, reflects or otherwise discloses trade secrets, current research and development or other competitively sensitive information. Such "Attorneys' Eyes Only"

information, documents and things may include, without limitation, currently competitive trade secrets, confidential technical information, technical practices, methods, or other know-how, minutes of Board meetings, pricing data, financial data, sales information, customer-confidential information, agreements or relationships with non-parties, market projections or forecasts, strategic business plans, selling or marketing strategies or new product development, testing, manufacturing costs or information about employees. This designation shall be made by marking each page or thing containing Attorneys' Eyes Only information with the legend ATTORNEYS' EYES ONLY (or like designation) prior to its production or, if inadvertently produced without such legend, pursuant to the procedure set forth in paragraph 14. If a document has more than one designation, then the more restrictive or higher confidentiality designation applies.

      2.3    The parties will use reasonable care to avoid designating any information, documents or things Confidential that are generally available to the public. The parties will also use reasonable care to avoid designating any information, documents or things "Confidential" or "Attorneys' Eyes Only" for which the designating party does not have a good faith belief that the information, documents or things satisfy the criteria set forth in this paragraph. To the extent that material is marked "Confidential" or "Attorneys' Eyes Only" (collectively "Designated Information"), such material shall be revealed to or used only by persons authorized to receive Designated Information pursuant to Paragraph 4 and shall not be communicated in any manner, either directly or indirectly, to any person or entity not permitted disclosure pursuant to this Protective Order. Any copies of such material, abstracts, summaries or information derived therefrom, and any notes or other records regarding the contents thereof shall also be deemed Confidential or Attorneys'

Eyes Only and the same terms regarding confidentiality of these materials shall apply as apply to the originals.

2.4     With respect to all materials provided for inspection by a party's counsel, designation need not be made until copies of the materials are requested after inspection and selection by counsel. Making documents and things available for inspection shall not constitute a waiver of any claim of confidentiality, and all materials provided for inspection by a party's counsel shall be treated as though designated Attorneys' Eyes Only from the time of the inspection until otherwise designated pursuant to this Protective Order or produced without a designation.

**3.      Limit On Use And Disclosure Of Designated Information.**

3.1     All recipients of Confidential or Attorneys' Eyes Only information pursuant to this Protective Order shall use any Designated Information governed by this Protective Order only in connection with the prosecution or defense of this case, and for no other purpose whatsoever, except by consent of the parties or order of the Court and shall maintain the Designated Information as strictly confidential with appropriate safeguards. No party or other person shall disclose or release to any person not authorized under this Protective Order any Designated Information governed by this Protective Order for any purpose, or to any person authorized under this Protective Order for any other purpose. The party or parties receiving Designated Information shall not under any circumstances sell, offer for sale, advertise, or publicize Designated Information or any information contained therein.

3.2     Counsel for a party may give advice and opinions to his or her client regarding this litigation based on his or her evaluation of designated "Confidential" or

"Attorneys' Eyes Only" information received by the party -- provided that such rendering of advice and opinions shall not reveal the content of such Designated Information except by prior written agreement with counsel for the producing party. Counsel receiving "Confidential" or "Attorneys' Eyes Only" information may not use such Designated Information to provide advice or opinions to facilitate prosecution of any patents or to otherwise attempt to secure patent claims *(e.g.,* reissue, reexamination, and certificates of correction).

3.3    The attorneys of record for the parties and other persons receiving Designated Information governed by this Protective Order shall exercise reasonable care to ensure that the Designated Information governed by this Protective Order is (a) used only for the purposes specified herein and (b) disclosed only to authorized persons.

**4.    Disclosure Of Designated Information.**

4.1    Information, documents or things designated "Confidential" shall be disclosed by the recipient thereof only to:

a.    the outside attorneys of record for the parties, including outside counsel retained for this litigation by any parent of Xilinx, and their partners, attorney employees, and their authorized secretarial, clerical and legal assistant staff;

b.    up to five (5) employees of Lonestar having responsibility for providing oversight of or assistance in the litigation;

c.    up to five (5) employees of Xilinx or a parent of Xilinx having responsibility for providing oversight of or assistance in the litigation;

d.    consultants or experts and their staffs retained by the parties or their attorneys for purposes of this case, subject to the procedures of paragraph 4.3;

e.    the Court and Court personnel;

f.    court reporters employed in connection with this case;

g.    outside copying and computer services necessary for document handling, and other litigation support personnel (e.g., graphic designers and animators), who are contractually bound not to disclose such documents and information by the parties retaining them ; and

h.    translation services necessary for translating documents in this case.

4.2    Information, documents or things designated "Attorneys' Eyes Only" shall be disclosed only to:

a.    the outside attorneys of record for the parties, and their partners, attorney employees, and their authorized secretarial, clerical and legal assistant staff;

b.    up to two (2) in-house counsel for Lonestar, and necessary secretarial staff, having responsibility for providing oversight of or assistance in the litigation.

c.    up to two (2) in-house counsel for Xilinx, and necessary secretarial staff, having responsibility for providing oversight of or assistance in the litigation.

d.    consultants or experts and their staffs retained by the parties or their attorneys for purposes of this case, subject to the procedures of paragraph 4.3;

e.    the Court and Court personnel;

f.    court reporters employed in connection with this case;

g.    outside copying and computer services necessary for document handling, and other litigation support personnel (e.g., graphic designers and animators),

who are contractually bound not to disclose such documents and information by the

parties retaining them ; and

                h.      translation services necessary for translating documents in this

case.

4.3     Should a receiving party find it necessary for

maintaining, defending, or evaluating this litigation to disclose the Designated

Information of a producing party or a third party to an Outside Consultant, the receiving

party shall first give written notice to the producing party at least five (5) business days

before the Designated Information is shown to such Outside Consultant.  As part of the

written notice, the receiving party seeking to disclose the Designated Information to an

Outside Consultant shall provide a signed copy of the Confidential Undertakings attached

hereto as Exhibit A, a curriculum vitae of such individual, and the following

information:  (A) business address; (B) business title; (C) business or profession; (D) any

previous or current relationship (personal or professional) with any of the parties; (E) a

listing of other cases in which the individual has testified (at trial or deposition), a listing

of all current companies for which the individual is currently consulting or is being

employed by unless subject to a confidentiality agreement in which case they shall so state,

and a listing of all publications by that individual within the preceding ten

(10) years.  Separate Confidentiality Undertakings shall not be required for staff members

working under the supervision of an individual signing a Confidentiality Undertaking. An

individual signing a Confidentiality Undertaking, however, shall accept full responsibility

for taking measures to ensure that staff members working under his or her supervision

comply with the terms of this Protective Order.

The producing party shall have five (5) business days after notice is given to

object in writing, stating with particularity the reasonable basis for such objection.  A

failure to object shall operate as an approval.  The receiving party shall then have five (5)

business days to respond to the objection or withdraw the Outside Consultant.  If the

Outside Consultant is not withdrawn, the producing party shall have five (5) business

days to move the Court for a ruling on the objection.  A failure to request a ruling within five (5) business days shall operate as an approval.  These time periods are not intended to restrict any party from moving for a court order earlier if the circumstances so require. No Designated Information shall be disclosed to an Outside Consultant pending resolution of an objection.

4.4     If any Designated Information is disclosed to any person other than in a manner authorized by this Protective Order, the party responsible for the disclosure or knowledgeable of such disclosure shall, immediately on discovery of that disclosure, inform the producing party of all facts pertinent to the disclosure and make all reasonable efforts to prevent further disclosures by each unauthorized person who received such information.

**5.     Computer Source and Other Code.**

5.1     Each party shall have the right to designate any computer source code, executable code, microcode, GDS-II, RTL, HDL or other hardware description language documents that describe encoding or decoding algorithms used in computer source code, and copies thereof under the provisions of paragraph 5.3, as HIGHLY SENSITIVE CODE. Information, documents and things so designated will be subject to all of the restrictions as material designated as Attorneys' Eyes Only and further will be subject to the following additional restrictions and provisions.

5.2     Any source code or other materials designated under paragraph 5.1 shall not be provided to any person designated under 4.2(b) or (c).

5.3     Code or other materials designated under paragraph 5.1 shall be produced in one of two ways as set forth below in subsections (a) and (b), at the election of the producing party:

a.      The producing party shall provide any source code or other materials designated under paragraph 5.1 on CD-ROM (or on such other format as may be necessary and agreed to by the requesting party), organized on the CD-ROM by software release version. One copy of the CD-ROM shall be produced to the requesting trial counsel, and kept at the offices of trial counsel, maintained in a locked cabinet or the like. In addition, one copy for each qualified consultant or expert pursuant to paragraph 4.3 designated by trial counsel to review the materials may be made and may be maintained in a locked cabinet or the like at the expert's worksite. No additional copies shall be made. Counsel of record and each qualified consultant or expert receiving materials designated under paragraph 5.1 (together, the reviewing parties) may load the materials onto a stand-alone, non-networked, password protected computer, which shall not be connected to any peripheral device other than a monitor, keyboard, and mouse. While in use, the computer and such designated materials shall not be left unattended by a reviewing party. When not in use, the computer shall be stored securely in a locked cabinet or room. Should the CD-ROM become damaged, the producing party shall exchange the damaged CD-ROM for an undamaged CD-ROM.

b.      Alternatively, the producing party may at its own expense provide a convenient secure facility or facilities at which the reviewing parties may conduct their review. Facilities will be provided in not more than two locations such that the material will be made available in an agreed location or locations proximate and convenient to the

10

location of (1) trial counsel and (2) one qualified consultant or expert pursuant to paragraph 4.3 designated by trial counsel to review the materials. These locations may be changed by mutual agreement of the producing and receiving party in the event of changed circumstances, which agreement will not be unreasonably withheld. The materials designated under paragraph 5.1 shall be made available for inspection at any time during normal business hours, or, with twenty-four hours advance notice, at any other time during which reviewing parties may wish to conduct their review. The producing party shall provide a stand-alone computer system deemed suitable by the requesting party for use in reviewing and analyzing the designated materials. The producing party shall permit the reviewing party to load any special software that he or she may deem necessary to conduct an appropriate inspection or analysis of the materials, such software to be provided by the requesting party. The requesting party agrees that it will not use software not reasonably necessary to efficiently conduct an appropriate review and analysis of the materials designated under paragraph 5.1. The reviewing party will identify for the producing party prior to loading it into the computer any special software to be used to conduct an inspection or analysis of the designated materials. No electronic copies of the materials designated under paragraph 5.1 and produced at the secure facility may be made and removed from the secure facility by a reviewing party without the express written consent of the producing party.

   5.4  A reviewing party shall be entitled to make printouts in paper form of as many lines of source code as they deem reasonably necessary for use as an exhibit at deposition, to prepare an expert report, as an exhibit to a filing with the Court, or as an exhibit at trial. If the producing party has elected to use the procedure set out in

paragraph 5.3(b) then the secure facility shall include a means for a reviewing party to make printouts promptly at the time of his or her inspection. The producing party may, at the producing party's election, either (a) permit the reviewing party to immediately remove such printouts, in which case it shall be the responsibility of the requesting party to promptly have such printouts marked with a legend designating them as "HIGHLY SENSITIVE CODE," or (b) retain and mark such printouts with a legend designating them as "HIGHLY SENSITIVE CODE" and produce them to the reviewing party by hand delivery within no longer than 24 hours after printing. All such printouts shall be stored securely in a locked cabinet when not in use. No further copies shall be made except as set out below in paragraph 5.5.

     5.5.    The receiving party is permitted to make such copies as are necessary for reasonable consultation between counsel and/or qualified consultants or experts, for use as an exhibit at deposition, to prepare an expert report, as an exhibit to a filing with the Court, or as an exhibit at trial. The receiving party shall avoid such use except as necessary to meet its burden of proof, and shall take all reasonable steps necessary to restrict the dissemination of such copies. If a producing party so requests, any materials designated under paragraph 5.1 and used as exhibits in a deposition shall not be appended to the transcript of the deposition, in which case any objection is waived by any party as to the identity of the deposition exhibit if cited or relied upon in any subsequent expert report, motion, or at trial. At the conclusion of each day of a deposition in which any materials designated under paragraph 5.1 and used as exhibits in a deposition shall not be appended to the transcript of the deposition, in which case any objection is waived by any party as to the identity of the deposition exhibit if cited or relied upon in any subsequent

expert report, motion, or at trial. At the conclusion of each day of a deposition in which any materials designated under paragraph 5.1 are used, the receiving party shall collect each copy of the materials, including the copy marked by the court reporter if the producing party has so requested, and no one other than the receiving and producing party may remove copies of materials designated under paragraph 5.1 from the deposition room.

5.6     If any party intends to file or otherwise submit to the Court any material designated under paragraph 5.1, or offer any evidence at trial based on the materials designated under paragraph 5.1, the party shall request that the Court take appropriate measures to preserve the confidentiality of the designated material including but not limited to filing such material under seal.

5.7     Within thirty (30) days of the conclusion of the litigation:

   a.     All copies of materials designated under paragraph 5.1 must be returned to the producing party.

   b.     Notwithstanding the provisions above, outside counsel may retain for archive purposes one (1) magnetic and one (1) paper copy of all pleadings exchanged by the parties or filed with the Court that contain excerpts of materials designated under paragraph 5.1.

**6.     Limitation On Expert Discovery.**

6.1     A testifying expert's draft reports, notes, outlines, and any other writings leading to his or her final report in this case are exempt from discovery. In addition, all communications with, and all materials generated by, a testifying expert with respect to

his or her work are exempt from discovery unless relied upon by the expert in forming his or her opinions.

**7.      Related Documents.**

7.1      Information, documents or things designated "Confidential" or "Attorneys' Eyes Only" may include (a) portions of documents, copies, extracts, and complete or partial summaries prepared from or containing such information; (b) portions of deposition transcripts and exhibits thereto which contain or reflect the content of any such documents, copies, extracts or summaries; (c) portions of briefs, memoranda or any other papers filed with the Court and exhibits thereto which contain or reflect the content of any such documents, copies, extracts, or summaries; and/or (d) deposition testimony designated in accordance with paragraph 8.

**8.      Designation Of Hearing Transcripts And Deposition Transcripts And Exhibits.**

8.1      Deposition transcripts, or portions thereof, may be designated as containing Confidential or Attorneys' Eyes Only information subject to this Protective Order either (a) at the time of such deposition, in which case the transcript of the designated testimony shall be marked by the reporter with the appropriate legend (see paragraphs 2.1 and 2.2) as the designating party may direct, or (b) within ten (10) business days after receipt of the official transcript of the deposition by providing written notice to the reporter and all counsel of record of the specific pages and lines that contain Confidential or Attorneys' Eyes Only information, in which case all counsel receiving such notice shall mark the copies or portions of the designated transcript in their possession or under their control as directed by the designating party.

8.2    All deposition transcripts not previously designated shall be deemed to be, and shall be treated as, Attorneys' Eyes Only for a period of fifteen (15) business days after receipt of the official transcript of the deposition, and the transcript shall not be disclosed by a non-designating party to persons other than those persons named or approved according to paragraph 4.2 during that period. Any portions of such transcripts not designated within this time frame shall not thereafter be treated as Confidential or Attorneys' Eyes Only information, except by order of the Court.

8.3    Any party may mark any document or thing containing Confidential or Attorneys' Eyes Only information as an exhibit to a deposition, hearing or other proceeding, provided the witness is qualified under the terms of this Protective Order to have access to such designated material.

8.4    The designating party shall have the right to exclude from a deposition, before the taking of testimony which the designating party designates Confidential or Attorneys' Eyes Only and subject to this Protective Order, all persons other than those persons previously qualified to receive such information pursuant to paragraph 4.

8.5    At any court hearing or proceeding no party is prevented by this Protective Order from moving the Court to close the hearing and designate all or portions of the transcript as Confidential or Attorneys' Eyes Only information.

**9.    Disclosure. To Author Or Recipient.**

9.1     Notwithstanding any other provisions of

this Protective Order, nothing herein shall prohibit counsel or a party from disclosing a

document containing information designated Confidential or Attorneys' Eyes Only to any

current employee of the producing party. Counsel or a party may disclose a document

containing information designated Confidential or Attorneys' Eyes Only to any person or

non-employee that the document clearly identifies as an author, addressee, or recipient of

such document or who can be shown by appropriate foundation (without disclosing the

contents of the document) would have received the particular document or would have

been expected to know the contents of particular document based on his/her position only

if the person or non-employee executes the Confidential Undertakings attached hereto as

Exhibit A. Regardless of the designation pursuant to this Protective Order, if a document

or testimony makes reference to the actual or alleged conduct or statements of a person

who is a potential witness, counsel may discuss the subject matter of such conduct or

statements with such witness without revealing any portion of the contents of the document

or testimony, and such discussion shall not constitute disclosure in violation of this Protective

Order.

## 10.    Confidentiality Of Party's Own Documents.

10.1    Nothing herein shall affect the right of the designating party to disclose to its officers, directors, employees, attorneys, consultants or experts, or to any other person, its own information. Such disclosure shall not waive the protections of this Protective Order and shall not entitle other parties or their attorneys to disclose such information in violation of it, unless by such disclosure by the designating party the information becomes public knowledge. Similarly, the Protective Order shall not preclude a party from showing its own information to its officers, directors, employees, attorneys, consultants or experts, or to any other person, which information has been filed under seal by the opposing party.

## 11.    Designation Of Documents Under Seal.

11.1    Any information designated Confidential or Attorneys' Eyes Only, if filed with the Court, shall be filed under seal and shall be made available only to the Court and to persons authorized by the terms of this Protective Order. The party filing any paper which reflects, contains or includes any other party's Confidential or Attorneys' Eyes Only information subject to this Protective Order shall file such paper in compliance with and pursuant to the pertinent local rules where the paper is being filed.

## 12.    Challenge To Confidentiality.

12.1    This Protective Order shall not preclude any party from seeking and obtaining, on an appropriate showing, such additional protection with respect to the confidentiality of documents or other discovery materials as that party may consider

appropriate. Nor shall any party be precluded from (a) claiming that any matter designated hereunder is not entitled to the protections of this Protective Order, (b) applying to the Court for an order permitting the disclosure or use of Designated Information otherwise prohibited by this Protective Order, or (c) applying for a further order modifying this Protective Order in any respect. No party shall be obligated to challenge the propriety of any designation, and failure to do so shall not preclude a subsequent challenge to the propriety of such designation.

12.2   If a party seeks de-designation of particular items the following procedure shall be utilized:

a.   The party seeking such de-designation shall give counsel of record for the designating party written notice thereof specifying the Designated Information as to which such removal is sought and the reasons for the request; and

b.   If, after conferring, the parties cannot reach agreement concerning the matter within five (5) business days after the delivery and receipt of the notice, then the party requesting the de-designation of particular items may file and serve a motion for a further order of this Court directing that the designation shall be so removed. On any such motion, the burden of proof shall lie with the producing party to establish that the information is, in fact, properly designated as Confidential or Attorneys' Eyes Only information and the receiving party shall establish that the information is an appropriate target of discovery.

**13.   Inadvertent Disclosure Of Privileged Information.**

13.1   The procedures set forth in Federal Rule of Civil Procedure 26(b)(5)(B) shall govern in the event of a claim of inadvertently produced privileged information.

Production of privileged material without an express written notice of intent to waive the attorney-client or work product protection shall not be deemed a waiver of the attorney-client privilege or work product protection so long as the producing party timely informs the receiving party of the identity of the materials mistakenly produced after learning of the mistaken production.

**14.     Inadvertent Failure To Designate.**

14.1     A producing party or nonparty that inadvertently fails to designate information, documents or things pursuant to this Protective Order at the time of production may thereafter make a designation pursuant to this Protective Order by serving notice thereof in writing, accompanied by substitute copies of each item, appropriately designated, to the receiving party within five (5) business days of discovery that the information, documents or things were not properly designated. The receiving party shall not be in violation of this Protective Order for disclosures made prior to receipt of notification. Those individuals who reviewed the information, documents or things prior to the notice of misdesignation or failure to designate by the producing party shall return to counsel for the producing party or destroy and certify destruction of all copies of the misdesignated information, documents or things within ten (10) business days after receipt of such notification.

**15.     Prior Or Public Knowledge.**

15.1     This Protective Order shall not apply to information that, prior to disclosure, is public knowledge, and the restrictions contained in this Protective Order shall not apply to information that is, or after disclosure becomes, public, was in the possession of the party to whom disclosure is made prior to disclosure or is public

knowledge other than by an act or omission of the party to whom such disclosure is made, or that is legitimately and independently acquired from a source not subject to this Protective Order.

### 16. Limitation Of Protective Order.

16.1    Nothing in this Protective Order is intended to alter the discovery provisions of the Federal Rules of Civil Procedure, the Local Rules of the Eastern District of Texas, or any Discovery Order issued by the Court. This Protective Order is not intended to address discovery objections to produce, answer, or respond on the grounds of attorney-client privilege, work product immunity, and/or other immunity, or to preclude any party from seeking further relief or protective orders from the Court as may be appropriate under the Federal Rules of Civil Procedure.

### 17. Other Proceedings.

17.1    If Designated Information in the possession, custody or control of any receiving party is sought by subpoena, request for production of documents, interrogatories, or any other form of discovery request or compulsory process, the receiving party to whom the discovery request or compulsory process is directed shall within three (3) business days after receipt thereof give written notice by hand, certified mail, facsimile or electronic transmission of such discovery request or compulsory process to the producing party, and provide the producing party with a copy of the discovery request or compulsory process. If the producing party timely makes a motion to quash, and to the extent permitted by law, the receiving party shall withhold such Designated Information until disposition of any such motion to quash.

### 18. Non-Party Material.

18.1    The terms of this Protective Order are applicable to Confidential, Attorneys' Eyes Only or Highly Sensitive Code information provided by a non-party. Information provided by a non-party in connection with this case and designated Confidential, Attorneys' Eyes Only or Highly Sensitive Code pursuant to the terms of this Protective Order shall be protected by the remedies and relief provided by this Protective Order.

**19.    Return Of Designated Information.**

19.1    Within ninety (90) calendar days after the final termination of this action by unappealable judgment, exhaustion of all appeals or settlement, unless otherwise agreed to in writing by an attorney of record for the designating party, each party shall assemble and return, or certify destruction of, all Designated Information and all other materials containing Designated Information, including all copies, extracts and summaries thereof, to the party from whom the designated material was obtained, except that any documents or copies which contain, constitute or reflect attorney work product, attorney-client privilege communications, and/or other immune communications may be retained by counsel, subject to a continuing obligation to protect Designated Information pursuant to this Protective Order.

**20.    Waiver Or Termination Of Protective Order.**

20.1    No part of the restrictions imposed by this Protective Order may be waived or terminated, except by written stipulation executed by counsel of record for each designating party, or by an order of the Court for good cause shown. After termination of the last pending action involving the patent-in-suit, the provisions of this Order shall continue to be binding, except with respect to those documents and

information that become a matter of public record. This Court retains and shall have continuing jurisdiction over the parties and recipients of the Designated Information for enforcement of the provisions of this Order following termination of the last pending action involving the patent-in-suit.

**21.      Modification Of Protective Order; Prior Agreements.**

21.1      This Protective Order may be modified, and any matter related to it may be resolved, by written stipulation of the parties without further order of the Court. This Protective Order supersedes any agreements between the parties regarding the confidentiality of Designated Information entered into before the date of this Protective Order.

**22.      Treatment Prior to Entry of  Order**

22.1      Each party agrees to be bound by the  terms of this Agreed Protective Order as of the date it is submitted to the Court continuing until entry of the Order by the Court.

**23.      Section Captions.**

23.1      The title captions for each section of this Protective Order are for convenience only and are not intended to affect or alter the text of the sections or the substance of the Protective Order.

**24.      Days.**

24.1      All references to "days" in this Protective Order shall be construed as calendar days, unless otherwise specifically indicated.

## EXHIBIT A

### UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF TEXAS
### TYLER DIVISION

| | | |
|---|---|---|
| LONESTAR INVENTIONS, L.P., | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | CASE NO. 6:07-CV-393 |
| | ) | PATENT CASE |
| XILINX, INC., | ) | |
| | ) | JURY TRIAL |
| Defendant | ) | |
| | ) | |

### CONFIDENTIALITY UNDERTAKING

I have read the Protective Order concerning the confidentiality of information in the above-captioned litigation. I understand that the Protective Order is a Court order designed to preserve the confidentiality of certain confidential information. I also understand that the Protective Order restricts the use, disclosure and retention of such confidential information and also requires the safeguarding and return of documents and other materials containing confidential information.

I agree to comply with all provisions of the Protective Order described above with respect to any information designated Confidential or Attorneys' Eyes Only that is furnished to me. I hereby consent to the personal jurisdiction of the United States District Court, Eastern District of Texas, for any proceedings involving the enforcement of that Protective Order.

EXECUTED this ___ day of _____, 200____

_____
Name

_____
Signature

_____
Present Employer or Other Business Affiliation

_____

_____
Business Address

**So ORDERED and SIGNED this 5th day of March, 2008.**

_____
**LEONARD DAVIS**
**UNITED STATES DISTRICT JUDGE**

# EXHIBIT 8

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| ST. CLAIR INTELLECTUAL PROPERTY CONSULTANTS, INC., | § § § § | |
| Plaintiff, | § § | |
| v. | § § § | Civil Action No. 09-804-JJF |
| APPLE INC., | § § | |
| Defendants. | § § § § § | |

## PROTECTIVE ORDER
## REGARDING THE DISCLOSURE AND USE OF DISCOVERY MATERIALS

Plaintiff St. Clair Intellectual Property Consultants, Inc. ("Plaintiff") and Defendant Apple Inc. ("Defendant") anticipate that documents, testimony, or information containing or reflecting confidential, proprietary, trade secret, and/or commercially sensitive information are likely to be disclosed or produced during the course of discovery, initial disclosures, and supplemental disclosures in this case and request that the Court enter this Order setting forth the conditions for treating, obtaining, and using such information.

Pursuant to Rule 26(c) of the Federal Rules of Civil Procedure, the Court finds good cause for the following Agreed Protective Order Regarding the Disclosure and Use of Discovery Materials ("Order" or "Protective Order").

1.  **PURPOSES AND LIMITATIONS**

(a)     Protected Material designated under the terms of this Protective Order shall be used by a Receiving Party solely for this case, and shall not be used directly or indirectly for any other purpose whatsoever.

(b)     The Parties acknowledge that this Order does not confer blanket protections on all disclosures during discovery, or in the course of making initial or supplemental disclosures under Rule 26(a). Designations under this Order shall be made with care and shall not be made absent a good faith belief that the designated material satisfies the criteria set forth below. If it comes to a Producing Party's attention that designated material does not qualify for protection at all, or does not qualify for the level of protection initially asserted, the Producing Party must promptly notify all other Parties that it is withdrawing or changing the designation.

2.      **DEFINITIONS**

(a)     "Discovery Material" means all items or information, including from any non-party, regardless of the medium or manner generated, stored, or maintained (including, among other things, testimony, transcripts, or tangible things) that are produced, disclosed, or generated in connection with discovery or Rule 26(a) disclosures in this case.

(b)     "Outside Counsel" means (i) outside counsel who appear on the pleadings as counsel for a Party, (ii) partners and associates of such counsel to whom it is reasonably necessary to disclose the information for this litigation, and (iii) outside, independent attorneys contracted to provide legal advice to a Party in connection with this action.

(c)     "Patents-in-suit" means U.S. Patent Nos. "5,138,459," "6,094,219," "6,233,010," and "6,323,899," and any other patent asserted in this action, as well as any related patents, patent applications, provisional patent applications, continuations, and/or divisionals.

(d)     "Party" means any party to this case, including all of its officers, directors, employees, consultants, retained experts, and outside counsel and their support staffs.

(e)     "Producing Party" means any Party or non-party entity that discloses or produces any Discovery Material in this case.

(f)     "Protected Material" means any Discovery Material that is designated as "CONFIDENTIAL," "HIGHLY CONFIDENTIAL - OUTSIDE COUNSEL ONLY," or "CONFIDENTIAL - OUTSIDE ATTORNEYS' EYES ONLY - SOURCE CODE," as provided for in this Order.  Protected Material shall not include: (i) advertising materials that have been actually published or publicly disseminated; and (ii) materials that show on their face they have been disseminated to the public.

(g)     "Receiving Party" means any Party who receives Discovery Material from a Producing Party.

(h)     "Source Code" means computer code, formulas, or source code specifications that define or otherwise describe in detail the algorithms or structure of software. Source code includes, without limitation, computer code, scripts, assembly, object code, source code listings, object code listings, Hardware Description Language (HDL) or Register Transfer Level (RTL) files that describe the hardware design of any ASIC or other chip.

3.     **COMPUTATION OF TIME**

The computation of any period of time prescribed or allowed by this Order shall be governed by the provisions for computing time set forth in Federal Rules of Civil Procedure 6.

4.     **SCOPE**

(a)     The protections conferred by this Order cover not only Discovery Material governed by this Order as addressed herein, but also any information copied or extracted therefrom, as well as all copies, excerpts, summaries, or compilations thereof, plus testimony, conversations, or presentations by Parties or their counsel in court or in other settings that might reveal Protected Material.

(b)     Nothing in this Protective Order shall prevent or restrict a Producing Party's own disclosure or use of its own Discovery Material for any purpose, and nothing in this Order shall preclude any Producing Party from showing its Discovery Material to an individual who prepared the Discovery Material.

(c)     Nothing in this Order shall be construed to prejudice any Party's right to use any Protected Material in court or in any court filing with consent of the Producing Party or by order of the Court.

(d)     This Order is without prejudice to the right of any Party to seek further or additional protection of any Discovery Material or to modify this Order in any way, including, without limitation, an order that certain matter not be produced at all.

5.     **DURATION**

Even after the termination of this case, the confidentiality obligations imposed by this Order shall remain in effect until a Producing Party agrees otherwise in writing or a court order otherwise directs.

6.     **ACCESS TO AND USE OF PROTECTED MATERIAL**

(a)     Basic Principles.  All Protected Material shall be used solely for this case or any related appellate proceeding, and not for any other purpose whatsoever, including without limitation any other litigation, patent prosecution or acquisition, patent reexamination or reissue proceedings, or any business or competitive purpose or function.  Protected Material shall not be distributed, disclosed or made available to anyone except as expressly provided in this Order.

(b)     Patent Prosecution and Acquisition Bar.  Notwithstanding any other provision of this Protective Order, any Protected Material produced by Apple shall not be disclosed to any person who is involved, directly or indirectly, in: (i) any *ex parte* or *inter partes*

proceedings before the United States Patent and Trademark Office ("PTO") or any foreign or domestic agency responsible for issuing patents or (ii) consulting on, preparing, prosecuting, drafting, editing, and/or amending of patent applications, specifications, claims, and/or responses to office actions, or otherwise affecting the disclosure in patent applications or specifications or the scope of claims in patents or patent applications. Such bar shall only apply to patents and patent applications relating to the functionality, operation, and design of "digital cameras"[1] and/or any feature, functionality, operation, design or technology used in the products accused in the above-captioned case and shall apply during the pendency thereof and for a period of two years thereafter. Such bar does not prevent Plaintiff's trial counsel who have received Protected Material from advising counsel prosecuting any reexamination or reissue of a Patent-in-Suit, *provided* that (i) Plaintiff will retain separate counsel for prosecuting any such reexamination or reissue, (ii) Plaintiff's trial counsel will not prosecute any such reexamination or reissue, (iii) Plaintiff's trial counsel will not reveal any Protected Material to counsel prosecuting any such reexamination or reissue; and (iv) Plaintiff's trial counsel will have no involvement, direct or indirect, in the drafting or amendment of patent claim language. Further, any person employed by, related to, acting on behalf of, or representing Plaintiff, who receives any Protected Material shall not be involved, directly or indirectly, in the acquisition of patents or patent applications, or the rights to any patents or patent applications with the right to sublicense, relating to the functionality, operation, and design of "digital cameras" and/or any feature, functionality, operation, design or technology used in the products accused in the above-captioned case. Notwithstanding the foregoing, this patent prosecution and acquisition bar shall not apply to

---

[1]     As defined in Plaintiffs' First Set of Requests for Documents and Things to Defendant and Plaintiff's First Set of Interrogatories to Defendant, both dated March 31, 2010, *viz.*, "[t]he term 'digital camera' includes cameras, camcorders, personal digital assistants ("PDAs"), mobile, cellular, and smart phones, portable media players, and/or components thereof, that can capture and store an image in digital form, including, without limitation, the iPhone, iPhone 3G, iPhone 3GS, and iPod."

**PROTECTIVE ORDER – PAGE 5**

individuals who have only received documents designated "HIGHLY CONFIDENTIAL - OUTSIDE COUNSEL ONLY" that the parties agree in writing contain information of a purely financial and/or sales nature or documents and/or materials disclosed pursuant to Federal Rules of Evidence 408.

(c)     Secure Storage. Protected Material must be stored and maintained by a Receiving Party at a location and in a secure manner that ensures that access is limited to the persons authorized under this Order.

(d)     Legal Advice Based on Protected Material. Nothing in this Protective Order shall be construed to prevent counsel from advising their clients with respect to this case based in whole or in part upon Protected Materials, provided counsel does not disclose the Protected Material itself except as provided in this Order.

(e)     Licenses.   Two in-house counsel not involved in competitive decision-making shall also be permitted access to all licenses to the patents-in-suit, including all underlying settlement agreements, the amounts collected, expected or scheduled to be collected under each such license and/or agreement, and the royalty rates applicable to each such license and/or agreement (collectively, the "Patents-in-Suit Licensing Material").   To the extent that the Patents-in-Suit Licensing Material may include confidential information of a third party and/or is subject to a protective order or a confidentiality provision, the producing party shall (a) produce such Patents-in-Suit Licensing Material subject to applicable confidentiality provisions; (b) indicate in writing the designation and manner in which such Patents-in-Suit Licensing Material should be treated under this Protective Order; or (c) promptly seek permission to produce such Patents-in-Suit Licensing Material, if required by its terms.

(f)     Limitations.  Nothing in this Order shall restrict in any way a Producing Party's use or disclosure of its own Protected Material.  Nothing in this Order shall restrict in any way the use or disclosure of Discovery Material by a Receiving Party: (i) that is or has become publicly known through no fault of the Receiving Party; (ii) that is lawfully acquired by or known to the Receiving Party independent of the Producing Party; (iii) previously produced, disclosed and/or provided by the Producing Party to the Receiving Party or a non-party without an obligation of confidentiality and not by inadvertence or mistake; (iv) with the consent of the Producing Party; or (v) pursuant to Order of the Court.

7.     **DESIGNATING PROTECTED MATERIAL**

(a)     Available Designations.  Any Producing Party may designate Discovery Material with any of the following designations, provided that it meets the requirements for such designations as provided for herein:   "CONFIDENTIAL," "HIGHLY CONFIDENTIAL - OUTSIDE COUNSEL ONLY," or "CONFIDENTIAL – OUTSIDE ATTORNEYS' EYES ONLY - SOURCE CODE."

(b)     Written Discovery and Documents and Tangible Things.   Written discovery, documents (which include "electronically stored information," as that phrase is used in Federal Rule of Procedure 34), and tangible things that meet the requirements for the confidentiality designations listed in Paragraph 7(a) may be so designated by placing the appropriate designation on every page of the written material prior to production.  For digital files being produced, the Producing Party may mark each viewable page or image with the appropriate designation, and mark the medium, container, and/or communication in which the digital files were contained.  In the event that original documents are produced for inspection, the

original documents shall be presumed "HIGHLY CONFIDENTIAL - OUTSIDE COUNSEL ONLY" during the inspection and re-designated, as appropriate during the copying process.

(c)     Depositions and Testimony.     Parties or testifying persons or entities may designate depositions and other testimony with the appropriate designation by indicating on the record at the time the testimony is given or by sending written notice of how portions of the transcript of the testimony is designated within thirty (30) days of receipt of the transcript of the testimony.  If no indication on the record is made, all information disclosed during a deposition shall be deemed "HIGHLY CONFIDENTIAL - OUTSIDE COUNSEL ONLY" until the time within which it may be appropriately designated as provided for herein has passed.  Any Party that wishes to disclose the transcript, or information contained therein, may provide written notice of its intent to treat the transcript as non-confidential, after which time, any Party that wants to maintain any portion of the transcript as confidential must designate the confidential portions within fourteen (14) days, or else the transcript may be treated as non-confidential.  Any Protected Material that is used in the taking of a deposition shall remain subject to the provisions of this Protective Order, along with the transcript pages of the deposition testimony dealing with such Protected Material.  In such cases the court reporter shall be informed of this Protective Order and shall be required to operate in a manner consistent with this Protective Order.  In the event the deposition is videotaped, the original and all copies of the videotape shall be marked by the video technician to indicate that the contents of the videotape are subject to this Protective Order, substantially along the lines of "This videotape contains confidential testimony used in this case and is not to be viewed or the contents thereof to be displayed or revealed except by order of the Court, or pursuant to written stipulation of the parties."   Counsel for any Producing Party shall have the right to exclude from oral depositions, other than the

**PROTECTIVE ORDER – PAGE 8**

deponent, deponent's counsel, the reporter and videographer (if any), any person who is not authorized by this Protective Order to receive or access Protected Material based on the designation of such Protected Material. Such right of exclusion shall be applicable only during periods of examination or testimony regarding such Protected Material.

8.    **DISCOVERY MATERIAL DESIGNATED AS "CONFIDENTIAL"**

(a)    A Producing Party may designate Discovery Material as "CONFIDENTIAL" if it contains or reflects confidential, proprietary, and/or commercially sensitive information.

(b)    Unless otherwise ordered by the Court, Discovery Material designated as "CONFIDENTIAL" may be disclosed only to the following:

(i)    The Receiving Party's Outside Counsel;

(ii)    Outside Counsel's immediate paralegals and staff, and any copying or clerical litigation support services working at the direction of such counsel, paralegals, and staff;

(iii)    Electronic discovery consultants and jury consultants selected by counsel in preparation for trial;

(iv)    Not more than three (3) representatives of the Receiving Party who are officers or employees of the Receiving Party, who may be, but need not be, in-house counsel for the Receiving Party, as well as their immediate paralegals and staff, to whom disclosure is reasonably necessary for this case, provided that:  (a) each such person has agreed to be bound by the provisions of the Protective Order by signing a copy of Exhibit A; and (b) no unresolved objections to such disclosure exist after proper notice has been given to all Parties as set forth in Paragraph 12 below;

PROTECTIVE ORDER – PAGE 9

(v)     Any outside expert or consultant retained by the Receiving Party to assist in this action, provided that disclosure is only to the extent necessary to perform such work; and provided that: (a) such expert or consultant has agreed to be bound by the provisions of the Protective Order by signing a copy of Exhibit A; (b) such expert or consultant is not a current officer, director, or employee of a Party or of a competitor of a Party, nor anticipated at the time of retention to become an officer, director or employee of a Party or of a competitor of a Party; and (c) no unresolved objections to such disclosure exist after proper notice has been given to all Parties as set forth in Paragraph 12 below;

(vi)     Court reporters, stenographers and videographers retained to record testimony taken in this action;

(vii)     The Court, jury, and court personnel;

(viii)     Graphics, translation, design, and/or trial consulting services, having first agreed to be bound by the provisions of the Protective Order by signing a copy of Exhibit A;

(ix)     Mock jurors who have signed an undertaking or agreement agreeing not to publicly disclose Protected Material and to keep any information concerning Protected Material confidential;

(x)     Witnesses for the party producing the document who are being examined on the subject of the document;

(xi)     Authors and recipients (as identified on the document) of such designated material;

**PROTECTIVE ORDER – PAGE 10**

(xii)    Any mediator who is assigned to hear this matter, and his or her staff, subject to their agreement to maintain confidentiality to the same degree as required by this Protective Order; and

(xiii)    Any other person with the prior written consent of the Producing Party.

## 9.    DISCOVERY    MATERIAL    DESIGNATED    AS    "HIGHLY CONFIDENTIAL - OUTSIDE COUNSEL ONLY"

(a)    A Producing Party may designate Discovery Material as "HIGHLY CONFIDENTIAL - OUTSIDE COUNSEL ONLY" if it contains or reflects information that is extremely confidential and/or sensitive in nature and the Producing Party reasonably believes that the disclosure of such Discovery Material is likely to cause economic harm or significant competitive disadvantage to the Producing Party.    The Parties agree that the following information, if non-public, shall be presumed to merit the "HIGHLY CONFIDENTIAL - OUTSIDE COUNSEL ONLY" designation:  trade secrets, pricing information, financial data, sales information, sales or marketing forecasts or plans, business plans, licensing materials, sales or marketing strategy, product development information, engineering documents, testing documents, employee information, and other non-public information of similar competitive and business sensitivity.

(b)    Unless otherwise ordered by the Court, Discovery Material designated as "HIGHLY CONFIDENTIAL - OUTSIDE COUNSEL ONLY" may be disclosed only to:

(i)    The Receiving Party's Outside Counsel,, except that unless otherwise agreed no Outside Counsel who is involved in competitive decision-making, as defined by *U.S. Steel v. United States*, 730 F.2d 1465, 1468 n.3 (Fed. Cir. 1984), shall have

PROTECTIVE ORDER – PAGE 11

access to Discovery Material designated as "HIGHLY CONFIDENTIAL - OUTSIDE COUNSEL ONLY";

(ii)     Outside Counsel's immediate paralegals and staff, and any copying or clerical litigation support services working at the direction of such counsel, paralegals, and staff;

(iii)    Any outside expert or consultant retained by the Receiving Party to assist in this action, provided that disclosure is only to the extent necessary to perform such work; and provided that: (a) such expert or consultant has agreed to be bound by the provisions of the Protective Order by signing a copy of Exhibit A; (b) such expert or consultant is not a current officer, director, or employee of a Party or of a competitor of a Party, nor anticipated at the time of retention to become an officer, director or employee of a Party or of a competitor of a Party; (c) such expert or consultant is not involved in competitive decision-making, as defined by *U.S. Steel v. United States*, 730 F.2d 1465, 1468 n.3 (Fed. Cir. 1984), on behalf of a Party or a competitor of a Party; and (d) no unresolved objections to such disclosure exist after proper notice has been given to all Parties as set forth in Paragraph 12 below;

(iv)    Witnesses for the party producing the document who are being examined on the subject of the document;

(v)     Authors and recipients (as identified on the document) of such designated material;

(vi)    Court reporters, stenographers and videographers retained to record testimony taken in this action;

(vii)   The Court, jury, and court personnel;

(viii) Graphics, translation, design, and/or trial consulting services, having first agreed to be bound by the provisions of the Protective Order by signing a copy of Exhibit A;

(ix) Any mediator who is assigned to hear this matter, and his or her staff, subject to their agreement to maintain confidentiality to the same degree as required by this Protective Order; and

(x) Any other person with the prior written consent of the Producing Party.

10.   **DISCOVERY MATERIAL DESIGNATED AS "CONFIDENTIAL – OUTSIDE ATTORNEYS' EYES ONLY - SOURCE CODE"**

(a) To the extent production of Source Code becomes necessary to the prosecution or defense of the case, a Producing Party may designate Source Code as "CONFIDENTIAL – OUTSIDE ATTORNEYS' EYES ONLY - SOURCE CODE" if it comprises or includes confidential, proprietary, and/or trade secret Source Code.

(b) Nothing in this Order shall be construed as a representation or admission that Source Code is properly discoverable in this action, or to obligate any Party to produce any Source Code.

(c) Unless otherwise ordered by the Court, Discovery Material designated as "CONFIDENTIAL – OUTSIDE ATTORNEYS' EYES ONLY - SOURCE CODE" shall be subject to the provisions set forth in Paragraph 11 below, and may be disclosed, subject to Paragraph 11 below, solely to:

(i) The Receiving Party's Outside Counsel, except that unless otherwise agreed no Outside Counsel who is involved in competitive decision-making, as defined by *U.S. Steel v. United States*, 730 F.2d 1465, 1468 n.3 (Fed. Cir. 1984), shall have

access to Discovery Material designated as "CONFIDENTIAL – OUTSIDE ATTORNEYS' EYES ONLY - SOURCE CODE";

(ii)    Outside Counsel's immediate paralegals and staff, and any copying or clerical litigation support services working at the direction of such counsel, paralegals, and staff;

(iii)    Any outside expert or consultant retained by the Receiving Party to assist in this action, provided that disclosure is only to the extent necessary to perform such work; and provided that: (a) such expert or consultant has agreed to be bound by the provisions of the Protective Order by signing a copy of Exhibit A; (b) such expert or consultant is not a current officer, director, or employee of a Party or of a competitor of a Party, nor anticipated at the time of retention to become an officer, director or employee of a Party or of a competitor of a Party; (c) such expert or consultant is not involved in competitive decision-making, as defined by *U.S. Steel v. United States*, 730 F.2d 1465, 1468 n.3 (Fed. Cir. 1984), on behalf of a Party or a competitor of a Party; and (d) no unresolved objections to such disclosure exist after proper notice has been given to all Parties as set forth in Paragraph 12 below;

(iv)    Witnesses for the party producing the document who are being examined on the subject of the document;

(v)    Authors and recipients (as identified on the document) of such designated material;

(vi)    Court reporters, stenographers and videographers retained to record testimony taken in this action;

(vii)    The Court, jury, and court personnel;

(viii) Graphics, translation, trial preparation and/or design services, having first agreed to be bound by the provisions of the Protective Order by signing a copy of Exhibit A, and for the avoidance of doubt, this provision does not permit jury consultants to view Discovery Material designated "CONFIDENTIAL – OUTSIDE ATTORNEYS' EYES ONLY - SOURCE CODE";

(ix) Any mediator who is assigned to hear this matter, and his or her staff, subject to their agreement to maintain confidentiality to the same degree as required by this Protective Order; and

(x) Any other person with the prior written consent of the Producing Party.

11. **DISCLOSURE AND REVIEW OF SOURCE CODE**

(a) Any Source Code that is produced by Plaintiff shall be made available for inspection in electronic format at the Minneapolis office of its outside counsel, Robins, Kaplan, Miller & Ciresi L.L.P., or any other location mutually agreed by the Parties. Any Source Code that is produced by Apple Inc. will be made available for inspection at the Palo Alto office of its outside counsel, Simpson Thacher & Bartlett LLP, or any other location mutually agreed by the Parties. Source Code will be made available for inspection between the hours of 8 a.m. and 6 p.m. on business days (i.e., weekdays that are not Federal holidays), although the Parties will be reasonable in accommodating reasonable requests to conduct inspections at other times.

(b) Prior to the first inspection of any requested Source Code, the Receiving Party shall provide thirty (30) days notice of the Source Code that it wishes to inspect. The Receiving Party shall provide fourteen (14) days notice prior to any additional inspections.

(c)     Source Code that is designated "CONFIDENTIAL – OUTSIDE ATTORNEYS' EYES ONLY - SOURCE CODE" shall be produced for inspection and review subject to the following provisions, unless otherwise agreed by the Producing Party:

(i)     All Source Code shall be made available by the Producing Party to the Receiving Party's outside counsel and/or experts in a secure room on a secured computer without Internet access or network access to other computers, as necessary and appropriate to prevent and protect against any unauthorized copying, transmission, removal or other transfer of any Source Code outside or away from the computer on which the Source Code is provided for inspection (the "Source Code Computer" in the "Source Code Review Room"). The Producing Party shall install tools that are sufficient for viewing and searching the code produced, on the platform produced, if such tools exist and are presently used in the ordinary course of the Producing Party's business. The Receiving Party's outside counsel and/or experts may request that commercially available software tools for viewing and searching Source Code be installed on the secured computer, provided, however, that (a) the Receiving Party possesses an appropriate license to such software tools; (b) the Producing Party does not unreasonably object to such software tools; and (c) such other software tools are reasonably necessary for the Receiving Party to perform its review of the Source Code consistent with all of the protections herein. The Receiving Party must provide the Producing Party with the CD or DVD containing such licensed software tool(s) at least fourteen (14) days in advance of the date upon which the Receiving Party wishes to have the additional software tools available for use on the Source Code Computer.

(ii)     Prior to the first inspection of any request to review Source Code, the Producing Party shall provide a directory listing of the Source Code stored on the Source

Code Computer. This directory listing, which shall be provided in electronic form, will list the name and location of every file for the Source Code stored on the Source Code Computer. The Producing Party will also provide sufficient information to identify the software development tools used to create the Source Code stored on the Source Code Computer.

(iii)    No recordable media or recordable devices, including without limitation sound recorders, computers, cellular telephones, peripheral equipment, cameras, CDs, DVDs, or drives of any kind, shall be permitted into the Source Code Review Room.

(iv)    The Producing Party shall make available within close proximity of the secure room a location with Internet access where the receiving party may make use of electronic devices including without limitation computers, cellular telephones, and PDAs.

(v)    The Receiving Party's outside counsel and/or experts shall be entitled to take notes relating to the Source Code but may not copy the Source Code into the notes and may not take such notes electronically on the Source Code Computer itself or any other computer.

(vi)    The Producing Party may visually monitor the activities of the Receiving Party's representatives during any Source Code review, but only to ensure that no unauthorized electronic records of the Source Code and no information concerning the Source Code are being created or transmitted in any way.

(vii)    No copies of all or any portion of the Source Code may leave the room in which the Source Code is inspected except as otherwise provided herein. Further, no other written or electronic record of the Source Code is permitted except as otherwise provided herein. The Producing Party shall make available a laser printer with commercially reasonable printing speeds for on-site printing during inspection of the Source Code. The Receiving Party

may print limited portions of the Source Code only when necessary to prepare court filings or pleadings or other papers (including a testifying expert's expert report) and for use within depositions. Printed portions shall be limited to no more than ten (10) consecutive pages of continuous Source Code. The Receiving Party may request to print additional consecutive pages of continuous Source Code. Such requests shall not be unreasonably denied by the Producing Party. In addition, printed portions shall be limited to no more than a cumulative eighty (80) pages in total of Source Code. The Receiving Party may request to print additional pages of Source Code. Such requests shall not be unreasonably denied by the Producing Party. The Receiving Party shall not print Source Code in order to review blocks of Source Code elsewhere in the first instance, i.e., as an alternative to reviewing that Source Code electronically on the Source Code Computer, as the Parties acknowledge and agree that the purpose of the protections herein would be frustrated by printing portions of code for review and analysis elsewhere. Upon printing any such portions of Source Code, the printed pages shall be collected by the Producing Party. The Producing Party shall Bates number, copy, and label "CONFIDENTIAL – OUTSIDE ATTORNEYS' EYES ONLY - SOURCE CODE" any pages printed by the Receiving Party. Within fourteen (14) days, the Producing Party shall either (i) provide one copy set of such pages to the Receiving Party or (ii) inform the Requesting Party that it objects that the printed portions are excessive and/or not done for a permitted purpose. If, after meeting and conferring, the Producing Party and the Receiving Party cannot resolve the objection, the Receiving Party shall be entitled to seek a Court resolution of whether the printed Source Code should be produced. The printed pages shall constitute part of the Source Code produced by the Producing Party in this action.

(viii)    All persons who will review a Producing Party's Source Code on behalf of a Receiving Party, including members of a Receiving Party's outside law firm, shall be identified in writing to the Producing Party at least five (5) days in advance of the first time that such person reviews such Source Code. Such identification shall be in addition to any other disclosure required under this Order. All persons viewing Source Code shall sign on each day they view Source Code a log that will include the names of persons who enter the locked room to view the Source Code and when they enter and depart. The Producing Party shall be entitled to a copy of the log upon five (5) day advance notice to the Receiving Party.

(ix)    Unless otherwise agreed in advance by the Parties in writing, following each day on which inspection is done under this Order, the Receiving Party's outside counsel and/or experts shall remove all notes, documents, and all other materials from the Source Code Review Room. The Producing Party shall not be responsible for any items left in the room following each inspection session.

(x)    Other than as provided above, the Receiving Party will not copy, remove, or otherwise transfer any Source Code from the Source Code Computer including, without limitation, copying, removing, or transferring the Source Code onto any recordable media or recordable device. The Receiving Party will not transmit any Source Code in any way from the Producing Party's facilities or the offices of its outside counsel of record.

(xi)    The Receiving Party's outside counsel of record may make no more than five (5) additional paper copies of any portions of the Source Code received from a Producing Party pursuant to Paragraph 11(c)(vii), not including copies attached to court filings or used at depositions, and shall maintain a log of all paper copies of the Source Code. The log shall include the names of the reviewers and/or recipients of paper copies and locations where

the paper copies are stored. Upon five (5) day advance notice to the Receiving Party by the Producing Party, the Receiving Party shall provide a copy of this log to the Producing Party.

(xii)     The Receiving Party's outside counsel of record and any person receiving a copy of any Source Code shall maintain and store any paper copies of the Source Code at their offices in a manner that prevents duplication of or unauthorized access to the Source Code, including, without limitation, storing the Source Code in a locked room or cabinet at all times when it is not in use.

(xiii)     Copies of Source Code that are marked as deposition exhibits shall not be provided to the Court Reporter or attached to deposition transcripts; rather, the deposition record will identify the exhibit by its production numbers. All paper copies of Source Code brought at the deposition shall be securely destroyed in a timely manner following the deposition.

(xiv)     Except as provided in this sub-paragraph, absent express written permission from the Producing Party, the Receiving Party may not create electronic images, or any other images, or make electronic copies, of the Source Code from any paper copy of Source Code for use in any manner (including by way of example only, the Receiving Party may not scan the Source Code to a PDF or photograph the code). Images or copies of Source Code shall not be included in correspondence between the Parties (references to production numbers shall be used instead), and shall be omitted from pleadings and other papers whenever possible. Nothing in this section shall prevent the Receiving Party from creating an electronic copy or image of selected portions of Source Code when necessary for any filing with the Court or service of any pleading or service of other papers. All such pleadings and other papers containing Source Code shall, when filed with the Court, be filed under seal pursuant to Local

**PROTECTIVE ORDER – PAGE 20**

Rules 5.1.3 and 5.2. When any such document or pleading containing portions of source code is served upon another party, that document shall be encrypted using encryption software agreeable in writing to all Parties. The Receiving Party shall maintain a log of all such electronic copies of any portion of Source Code in its possession or in the possession of its retained consultants, including the names of the reviewers and/or recipients of any such electronic copies, and the location where the electronic copies are stored. Additionally, any such electronic copies must be labeled "CONFIDENTIAL – OUTSIDE ATTORNEYS' EYES ONLY - SOURCE CODE."

12.     **NOTICE OF DISCLOSURE**

(a)     Prior to disclosing any Protected Material to any person described in Paragraphs 8(b)(iii), 8(b)(iv), 8(b)(v), 9(b)(iii), or 10(c)(iii) (referenced below as "Person"), the Party seeking to disclose such information shall provide the Producing Party with written notice that includes: (i) the name of the Person; (ii) the present employer and title of the Person; (iii) an identification of all of the Person's past or current employment or consulting relationships, including direct relationships and relationships through entities owned or controlled by the Person; (iv) an up-to-date curriculum vitae of the Person; and (v) a list of the cases in which the Person has testified at deposition or trial within the last five (5) years. Said written notice shall include an identification of any individual or entity with or for whom the person is employed or to whom the person provides consulting services relating to the design, development, operation, or patenting of "digital cameras" as defined in Plaintiffs' First Set of Requests for Documents and Things to Defendant and Plaintiff's First Set of Interrogatories to Defendant, both dated March 31, 2010, or relating to the acquisition of intellectual property assets relating to "digital cameras" as defined in Plaintiffs' First Set of Requests for Documents and Things to Defendant and Plaintiff's First Set of Interrogatories to Defendant, both dated March 31, 2010. The Party

seeking to disclose Protected Material shall provide such other information regarding the Person's professional activities reasonably requested by the Producing Party for it to evaluate whether good cause exists to object to the disclosure of Protected Material to the outside expert or consultant. During the pendency of and for a period of two (2) years after the final resolution of this action, including all appeals, the Party seeking to disclose Protected Material shall immediately provide written notice of any change with respect to the Person's involvement in the design, development, operation or patenting of "digital cameras" as defined in Plaintiffs' First Set of Requests for Documents and Things to Defendant and Plaintiff's First Set of Interrogatories to Defendant, both dated March 31, 2010, or the acquisition of intellectual property assets relating to "digital cameras" as defined in Plaintiffs' First Set of Requests for Documents and Things to Defendant and Plaintiff's First Set of Interrogatories to Defendant, both dated March 31, 2010.

(b)     Within ten (10) days of receipt of the disclosure of the Person, the Producing Party or Parties may object in writing to the Person for good cause. In the absence of an objection at the end of the ten (10) day period, the Person shall be deemed approved under this Protective Order. There shall be no disclosure of Protected Material to the Person prior to expiration of this ten (10) day period. If the Producing Party objects to disclosure to the Person within such ten (10) day period, the Parties shall meet and confer via telephone or in person within seven (7) days following the objection and attempt in good faith to resolve the dispute on an informal basis. If the dispute is not resolved, the Party objecting to the disclosure will have seven (7) days from the date of the meet and confer to seek relief from the Court. If relief is not sought from the Court within that time, the objection shall be deemed withdrawn. If relief is

sought, designated materials shall not be disclosed to the Person in question until the Court resolves the objection.

(c)     For purposes of this section, "good cause" shall include an objectively reasonable concern that the Person will, advertently or inadvertently, use or disclose Discovery Materials in a way or ways that are inconsistent with the provisions contained in this Order.

(d)     Prior to receiving any Protected Material under this Order, the Person must execute a copy of the "Agreement to Be Bound by Protective Order" (Exhibit A hereto) and serve it on all Parties.

(e)     An initial failure to object to a Person under this Paragraph 12 shall not preclude the nonobjecting Party from later objecting to continued access by that Person for good cause.  If an objection is made, the Parties shall meet and confer via telephone or in person within seven (7) days following the objection and attempt in good faith to resolve the dispute informally.  If the dispute is not resolved, the Party objecting to the disclosure will have seven (7) days from the date of the meet and confer to seek relief from the Court.  The designated Person may continue to have access to information that was provided to such Person prior to the date of the objection.  If a later objection is made, no further Protected Material shall be disclosed to the Person until the Court resolves the matter or the Producing Party withdraws its objection.  Notwithstanding the foregoing, if the Producing Party fails to move for a protective order within seven (7) business days after the meet and confer, further Protected Material may thereafter be provided to the Person.

PROTECTIVE ORDER – PAGE 23

## 13.   **CHALLENGING DESIGNATIONS OF PROTECTED MATERIAL**

(a)   A Party shall not be obligated to challenge the propriety of any designation of Discovery Material under this Order at the time the designation is made, and a failure to do so shall not preclude a subsequent challenge thereto.

(b)   Any challenge to a designation of Discovery Material under this Order shall be written, shall be served on outside counsel for the Producing Party, shall particularly identify the documents or information that the Receiving Party contends should be differently designated, and shall state the grounds for the objection. Thereafter, further protection of such material shall be resolved in accordance with the following procedures:

(i)   The objecting Party shall have the burden of conferring either in person, in writing, or by telephone with the Producing Party claiming protection (as well as any other interested party) in a good faith effort to resolve the dispute. The Producing Party shall have the burden of justifying the disputed designation;

(ii)   Failing agreement, the Receiving Party may bring a motion to the Court for a ruling that the Discovery Material in question is not entitled to the status and protection of the Producing Party's designation. The Parties' entry into this Order shall not preclude or prejudice either Party from arguing for or against any designation, establish any presumption that a particular designation is valid, or alter the burden of proof that would otherwise apply in a dispute over discovery or disclosure of information;

(iii)   Notwithstanding any challenge to a designation, the Discovery Material in question shall continue to be treated as designated under this Order until one of the following occurs: (a) the Party who designated the Discovery Material in question withdraws

such designation in writing; or (b) the Court rules that the Discovery Material in question is not entitled to the designation.

### 14.    **SUBPOENAS OR COURT ORDERS**

(a)    If at any time Protected Material is subpoenaed by any court, arbitral, administrative, or legislative body, the Party to whom the subpoena or other request is directed shall immediately give prompt written notice thereof to every Party who has produced such Discovery Material and to its counsel and shall provide each such Party with an opportunity to move for a protective order regarding the production of Protected Materials implicated by the subpoena.

### 15.    **FILING PROTECTED MATERIAL**

(a)    Absent written permission from the Producing Party or a court Order secured after appropriate notice to all interested persons, a Receiving Party may not file in the public record any Protected Material.

(b)    Any Receiving Party is authorized under Local Rules 5.1.3 and 5.2 to file under seal with the Court any brief, document or materials that are designated as Protected Material under this Order. Nothing in this section shall in any way limit or detract from this Order's requirements as to Source Code.

### 16.    **INADVERTENT DISCLOSURE OF PRIVILEGED MATERIAL**

(a)    The inadvertent production by a Party of Discovery Material subject to the attorney-client privilege, work-product protection, or any other applicable privilege or protection, despite the Producing Party's reasonable efforts to prescreen such Discovery Material prior to production, will not waive the applicable privilege and/or protection if a request for

return of such inadvertently produced Discovery Material is made promptly after the Producing Party learns of its inadvertent production.

(b)     Upon a request from any Producing Party who has inadvertently produced Discovery Material that it believes is privileged and/or protected, each Receiving Party shall immediately return such Protected Material or Discovery Material and all copies to the Producing Party, except for any pages containing privileged markings by the Receiving Party which shall instead be destroyed and certified as such by the Receiving Party to the Producing Party.

(c)     Nothing herein shall prevent the Receiving Party from preparing a record for its own use containing the date, author, addresses, and topic of the inadvertently produced Discovery Material and such other information as is reasonably necessary to identify the Discovery Material and describe its nature to the Court in any motion to compel production of the Discovery Material.

17.     **INADVERTENT FAILURE TO DESIGNATE PROPERLY**

(a)     The inadvertent failure by a Producing Party to designate Discovery Material as Protected Material with one of the designations provided for under this Order shall not waive any such designation provided that the Producing Party notifies all Receiving Parties that such Discovery Material is protected under one of the categories of this Order within fourteen (14) days of the Producing Party learning of the inadvertent failure to designate. The Producing Party shall reproduce the Protected Material with the correct confidentiality designation within seven (7) days upon its notification to the Receiving Parties.  Upon receiving the Protected Material with the correct confidentiality designation, the Receiving Parties shall destroy all Discovery Material that was not designated properly.

(b)     A Receiving Party shall not be in breach of this Order for any use of such Discovery Material before the Receiving Party receives the Protected Material with the correct confidentiality designation, unless an objectively reasonable person would have realized that the Discovery Material should have been appropriately designated with a confidentiality designation under this Order. Once a Receiving Party has received the Protected Material with the correct confidentiality designation, the Receiving Party shall treat such Discovery Material (subject to the exception in Paragraph 17(c) below) at the appropriately designated level pursuant to the terms of this Order.

(c)     Protected   Material   produced   without   the   designation   of "CONFIDENTIAL," "HIGHLY CONFIDENTIAL - OUTSIDE COUNSEL ONLY" or "CONFIDENTIAL – ATTORNEYS' EYES ONLY – SOURCE CODE" may be so designated subsequent to production when the Producing Party failed to make such designation at the time of production through inadvertence or error.  If Discovery Material is designated subsequent to production, the Receiving Party promptly shall collect any copies that have been provided to individuals so that they can be re-labeled with the "CONFIDENTIAL," "HIGHLY CONFIDENTIAL - OUTSIDE COUNSEL ONLY" or "CONFIDENTIAL – ATTORNEYS' EYES ONLY – SOURCE CODE" designation.  Notwithstanding the above, such subsequent designation of "CONFIDENTIAL," "HIGHLY CONFIDENTIAL - OUTSIDE COUNSEL ONLY" or "CONFIDENTIAL – ATTORNEYS' EYES ONLY – SOURCE CODE" shall apply on a going forward basis and shall not disqualify anyone who reviewed "CONFIDENTIAL," "HIGHLY CONFIDENTIAL - OUTSIDE COUNSEL ONLY" or "CONFIDENTIAL – ATTORNEYS' EYES ONLY – SOURCE CODE" materials while the materials were not marked "HIGHLY CONFIDENTIAL - OUTSIDE COUNSEL ONLY" or "CONFIDENTIAL –

ATTORNEYS' EYES ONLY – SOURCE CODE" from engaging in the activities set forth in Paragraph 6(a).

18.    **INADVERTENT DISCLOSURE NOT AUTHORIZED BY ORDER**

(a)    In the event of a disclosure of any Discovery Material pursuant to this Order to any person or persons not authorized to receive such disclosure under this Protective Order, the Party responsible for having made such disclosure, and each Party with knowledge thereof, shall immediately notify counsel for the Producing Party whose Discovery Material has been disclosed and provide to such counsel all known relevant information concerning the nature and circumstances of the disclosure. The responsible disclosing Party shall also promptly take all reasonable measures to retrieve the improperly disclosed Discovery Material and to ensure that no further or greater unauthorized disclosure and/or use thereof is made

(b)    Unauthorized or inadvertent disclosure does not change the status of Discovery Material or waive the right to hold the disclosed document or information as Protected.

19.    **FINAL DISPOSITION**

(a)    Not later than ninety (90) days after the Final Disposition of this case, each Party shall return all Discovery Material of a Producing Party to the respective outside counsel of the Producing Party or destroy such Material, at the option of the Producing Party. For purposes of this Order, "Final Disposition" occurs after an order, mandate, or dismissal finally terminating the above-captioned action with prejudice, including all appeals.

(b)    All Parties that have received any such Discovery Material shall certify in writing that all such materials have been returned to the respective outside counsel of the Producing Party or destroyed. Notwithstanding the provisions for return of Discovery Material,

outside counsel may retain one set of pleadings, correspondence and attorney and consultant work product (but not document productions) for archival purposes. With exception of any retained pleading or correspondence as allowed under this paragraph, all parties shall destroy any documents containing Source Code, including any consultant or attorney work product documents that contain Source Code, and shall provide a certification in writing to the Producing Party not later than ninety (90) days after the final disposition of this Case that such destruction has been completed.

20. **DISCOVERY FROM EXPERTS OR CONSULTANTS**

(a) Testifying experts shall not be subject to discovery with respect to any draft of his or her report(s) in this case. Draft reports, notes, or outlines for draft reports developed and drafted by the testifying expert and/or his or her staff are also exempt from discovery.

(b) Discovery of materials provided to testifying experts shall be limited to those materials, facts, consulting expert opinions, and other matters actually relied upon by the testifying expert in forming his or her final report, trial, or deposition testimony or any opinion in this case. No discovery can be taken from any non-testifying expert except to the extent that such non-testifying expert has provided information, opinions, or other materials to a testifying expert relied upon by that testifying in forming his or her final report(s), trial, and/or deposition testimony or any opinion in this case.

(c) No conversations or communications between counsel and any testifying or consulting expert will be subject to discovery unless the conversations or communications are relied upon by such experts in formulating opinions that are presented in reports or trial or deposition testimony in this case.

PROTECTIVE ORDER – PAGE 29

(d)     Materials, communications, and other information exempt from discovery
under the foregoing Paragraphs 20(a)–(c) shall be treated as attorney-work product for the
purposes of this litigation and Order.

(e)     Nothing in Paragraphs 20(a)–(c) shall alter or change in any way the
requirements in Paragraph 11 regarding printing of Source Code, and Paragraph 11 shall control
in the event of any conflict.

21.     **MISCELLANEOUS**

(a)     <u>Right to Further Relief</u>. Nothing in this Order abridges the right of any
person to seek its modification by the Court in the future. By stipulating to this Order, the
Parties do not waive the right to argue that certain material may require additional or different
confidentiality protections than those set forth herein.

(b)     <u>Termination of Matter and Retention of Jurisdiction</u>. The Parties agree
that the terms of this Protective Order shall survive and remain in effect after the Final
Determination of the above-captioned matter. The Court shall retain jurisdiction after Final
Determination of this matter to hear and resolve any disputes arising out of this Protective Order.

(c)     <u>Successors</u>. This Order shall be binding upon the Parties hereto, their
attorneys, and their successors, executors, personal representatives, administrators, heirs, legal
representatives, assigns, subsidiaries, divisions, employees, agents, retained consultants and
experts, and any persons or organizations over which they have direct control.

(d)     <u>Right to Assert Other Objections</u>. By stipulating to the entry of this
Protective Order, no Party waives any right it otherwise would have to object to disclosing or
producing any information or item. Similarly, no Party waives any right to object on any ground
to use in evidence of any of the material covered by this Protective Order. This Order shall not

constitute a waiver of the right of any Party to claim in this action or otherwise that any Discovery Material, or any portion thereof, is privileged or otherwise non-discoverable, or is not admissible in evidence in this action or any other proceeding.

(e)     Burdens of Proof.     Notwithstanding anything to the contrary above, nothing in this Protective Order shall be construed to change the burdens of proof or legal standards applicable in disputes regarding whether particular Discovery Material is confidential, which level of confidentiality is appropriate, whether disclosure should be restricted, and if so, what restrictions should apply.

(f)     Modification by Court.     This Order is subject to further court order based upon public policy or other considerations, and the Court may modify this Order *sua sponte* in the interests of justice. The United States District Court for the District of Delaware is responsible for the interpretation and enforcement of this Order. All disputes concerning Protected Material, however designated, produced under the protection of this Order shall be resolved by the United States District Court for the District of Delaware.

(g)     Discovery Rules Remain Unchanged.     Nothing herein shall alter or change in any way the discovery provisions of the Federal Rules of Civil Procedure, the Local Rules for the United States District Court for the District of Delaware, or the Court's own orders. Identification of any individual pursuant to this Protective Order does not make that individual available for deposition or any other form of discovery outside of the restrictions and procedures of the Federal Rules of Civil Procedure, the Local Rules for the United States District Court for the District of Delaware, or the Court's own orders.

SO ORDERED this $\frac{13}{}$ day of ____ May ____ 2010.

_____
United States District Judge

**PROTECTIVE ORDER – PAGE 31**

# EXHIBIT 9



# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
### BEAUMONT DIVISION

| | | |
|---|---|---|
| **E-CONTACT TECHNOLOGIES, LLC,** | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| **v.** | § | **CIVIL ACTION NO. 1:11-CV-426** |
| | § | **(LED/KFG)** |
| **APPLE, INC.,** *et al.,* | § | |
| | § | |
| *Defendants.* | § | |

## ORDER REGARDING DISPUTED PROTECTIVE ORDER PROPOSALS

Pursuant to 28 U.S.C. § 636(b)(1)(A) and the Local Rules for the United States District Court, Eastern District of Texas, Appendix B, the District Court referred this matter to the undersigned United States Magistrate Judge for consideration of and recommended disposition on pretrial matters and proceedings.  Pending before the Court is the parties *Joint Motion for Entry of Disputed  Protective Order* (doc. #303).

**Applicable Law**

Federal Rule of Civil Procedure 26 provides that

"[a] party or any person from whom discovery is sought may move for a protective order in the court where the action is pending. . . [t]he court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following:

(A)  forbidding the disclosure or discovery;

(B) specifying terms, including time and place, for the disclosure or discovery;

(C) prescribing a discovery method other than the one selected by the party seeking discovery;

(D) forbidding inquiry into certain matters, or limiting the scope of disclosure or discovery to certain matters;

(E) designating the persons who may be present while the discovery is conducted;

(F) requiring that a deposition be sealed and opened only on court order;

(G) requiring that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a specified way; and

(H) requiring that the parties simultaneously file specified documents or information in sealed envelopes, to be opened as the court directs.

FED. R. CIV. P. 26(c).  "As a general proposition, a district court can exercise its sound discretion in determining how far to restrict discovery; and, in particular, the decision whether to grant or deny a request for a protective order is entrusted to the district court's sound discretion." *Nguyen v. Excel Corp.*, 197 F.3d 200, 209 n.27 (5th Cir. 1999) (internal citations omitted).

**Acquisition Bar Dispute**

The parties disagree as to whether the patent prosecution bar should also include advising or counseling clients on the acquisition of patent, patent applications, or the right to sub-license any such patent or patent applications (a patent acquisition bar).  Defendants have proposed barring anyone that has received confidential information from being involved with the acquisition of patents that are related to the subject matter of the patents in suit.  Plaintiff contends that there is no reason to include such an acquisition bar other than to punish individuals involved in this lawsuit. Defendants respond that Plaintiff is a non-practicing patent assertion entity which sues multiple defendants for infringement.  Defendants contend that Plaintiff's access to Defendants' highly confidential and sensitive information will be extremely useful in future acquisition, licensing, and litigation decisions, thereby exposing Defendants to litigation in the future.

2

The Federal Circuit recently addressed the issue of under what circumstances should a trial attorney be subject to a patent prosecution bar in a protective order. *See In re Deutsche Bank Trust Co. Americas*, 605 F.3d 1373 (Fed. Cir. 2010). The Federal Circuit noted that patent prosecution can encompass a range of activities and not every patent prosecution attorney is necessarily involved in competitive decision making, which, in turn, may lead to inadvertent disclosure. *Id.* at 1379. Some attorneys involved in patent litigation may do little more than reporting office actions or filing ancillary paperwork. *Id.* In those instances, there is little risk that those attorneys would inadvertently rely on or be influenced by information that they may learn during the course of the litigation, because the opportunity such attorneys have to engage with the client in any competitive decisionmaking in connection with such patent prosecution activities is remote. *Id.* at 1380. Other attorneys make be more substantially engaged in patent prosecution and, for these attorneys, competitive decisionmaking may be a regular part of their representation. *Id.* The risk of inadvertent disclosure of competitive information is much greater for these attorneys and a patent prosecution bar is proper. *Id.*

Counsel for Plaintiff has acquiesced to the imposition of a patent prosecution bar, and, therefore, apparently agrees that there could possibly be a risk of inadvertent disclosure of Defendants' confidential information in the course of representing their client before the PTO. Therefore, it is hard to conceive that there would be little or no risk of inadvertent disclosure when these same attorneys advise their client in matters regarding acquisitions of patents.

However, that is not the end of the inquiry. This Court must balance the interests in this case. *Id.* Defendants possess an enormous amount of confidential and proprietary information and the inadvertent disclosure of such information has very significant financial consequences. This Court

3

finds that the potential harm of inadvertent disclosure outweighs the restriction imposed on counsel for Plaintiff. An acquisition bar should be included in the protective order.

**Patent Prosecution Bar Scope Dispute**

Plaintiff's proposed prosecution bar limits the scope of the prosecution bar to prosecution related to "auto-complete functionality", which, they allege, is the generally used term for the functionality of defendants' products that are accused of infringement in this lawsuit. Plaintiff complains that Defendants' inclusion of technologies relating to "electronic or computer diary", "address and text entry as well as related functionalities", "device and data authentication" and "storage of time-stamped data" have nothing to do with the technology that is being accused of infringement in this case - namely, the "auto-complete" functionality of Defendants' e-mail programs.

Defendants respond that the scope of their prosecution bar is properly limited to the technology disclosed in the patent and the confidential information disclosed in the discovery process. They contend that they would have been justified in requesting that the subject matter covered by the prosecution bar be email generally, as that is the only accused product identified in the complaint.

In determining the scope of a prosecution bar, the relevant question is "not to which field the accused products are currently limited, but instead in which fields the patented technology could reasonably be used, i.e. the areas of technology where there is a risk that individuals may inadvertently exploit their new knowledge in future patent prosecution." *Applied Signal Tech., Inc. v. Emerging Markets Commc'ns, Inc.*, No. C-09-02180, 2011 U.S. Dist. LEXIS 97403, 2011 WL 197811, at *5 (N.D. Cal. Jan 20, 2011). Accordingly, the proper subject matter of the proposed

prosecution bar "should be coextensive with the subject matter of the patents-in-suit[.]"  *Id.*   *See also Cheah IP LLC v. Plaxo, Inc.*, No. C-08-4872, 2009 U.S. Dist. LEXIS 40823, 2009 WL 1190331, at *2-3 (N.D. Cal. May 4, 2009) (citing *Cummins-Allison Corp. v. Glory, Ltd.*, No. 02 C 7008, 2003 U.S. Dist. LEXIS 23653, at *31-32 (N.D. Ill. Dec. 31, 2003)  for the proposition that "a bar against prosecution 'relating to the subject matter of the patents-in-suit is the language routinely employed by the courts when imposing a patent prosecution bar").  Therefore, it is the subject matter of the patent-in-suit which the Court must focus on, rather than on the scope of any individual claim asserted.

Plaintiff asserts that, on September 13, 1994, the PTO issued United States Patent No. 5,347,579 ("the '579 patent") for an invention entitled "Personal Computer Diary".  Plaintiff contends that it is the rightful owner of this patent and that Defendants infringed one or more of its claims.  According to Plaintiff, attempts have been made to provide a computer diary which is tamper-proof so that its contents may be considered authentic.  ('579 patent, col. 1, ll. 24-63).  In that regard, Plaintiff's patent covers an invention that relates to archived record keeping systems, such as a diary, for computers.  ('579 patent, col. 1, ll. 20-22).  A "computer diary" archives a diary entry by creating, time stamping, authenticating and permanently storing a reference data block along with each diary entry.  ('579 patent, abstract).

This Court must first determine the subject matter of the '579 patent.  In the Summary of the Invention, the inventor states that his invention is summarized in a computer system for archiving data blocks wherein a working version of an original data block is stored along with a write-once read-many record containing the original data, a stripped version of the original data, or a hash signature of the original data together with the present date.  ('579 patent, col. 1, ll. 65-68; col. 2, ll.

5

Case 1:11-cv-01266-ELD-RFG   Document 344   Filed 06/15/12   Page 6 of 8 PageID #: 2709
Case 1:10-cv-01266-LPS   Document 133-1   Filed 07/05/12   Page 159 of 169 PageID
#: 2878

1-3).  Modifications to the working data blocks are made and the corresponding original data blocks are recreated.  The *authenticity of the original data* with its original entry date can easily be determined along with the subsequent modifications to the original data block.  ('579 patent, col. 2, ll. 3-9).

In another aspect of the invention, the invention is summarized in a *computer diary* wherein the *input of diary entries* are monitored to identify certain text entries having corresponding lists of previously stored identifying terms.  ('579 patent, col. 2, ll. 15-20).  A further object of the invention is a computer diary with *text time-stamping and authentication*, in addition to secure archiving.  ('579 patent, col. 2, ll. 45-47).

The Court agrees with Defendants' position regarding the scope of the proposed patent prosecution/acquisition bar.  Having considered the arguments and the scope of discovery, the Court finds that the patent prosecution/acquisition bar in this case should extend beyond prosecution only related to the "auto-complete functionality," as proposed by Plaintiff.  It should extend to all matters relating to the subject matter of '579 patent, which includes defendants' proposals.  These are areas of technology where there is a risk that individuals may inadvertently exploit their new knowledge in future patent prosecution or acquisition.  *See Applied Signal Tech.,,* 2011 WL 197811 at *2.

It is necessary to impose a broader prosecution bar to protect Defendants' confidential information which will be exchanged in this case.  The Court is not suggesting that any information will be disclosed in bad faith, but the undersigned is more concerned with the inadvertent disclosure issue presented by Defendants in support of their proposal.  Under the scope of this case, the Court finds it appropriate to impose the broader patent prosecution bar suggested by Defendants which covers give specific areas of technology: (a) auto-compete functionality, (b) an electronic or

computer diary, (c) address and text entry as well as related functionalities within email programs, (d) device and data authentication based on time-stamping or time signals, and/or (e) storage of time-stamped date. *See Joint Motion*, at p. 8.

### Dispute over Source Code Provision

Plaintiff and defendants Yahoo! and AT&T[1] cannot agree on the scope and extent of Plaintiff's review of those defendants' source code. Plaintiff wishes to print out the entirety of the source code that relates to the "auto-complete" functionality of Defendants' accused products. Defendants Yahoo! and AT&T argue that Plaintiff should only be able to print 10 consecutive pages and 500 aggregate pages of source code. Yahoo! and AT&T represent to this Court that they will not unreasonably withhold consent for additional pages should Plaintiff request permission to do so. Defendants contend that restriction will prevent the risk of inadvertent disclosure of its source code.

This Court will adopt Defendants' proposal. Although Defendants' proposal may make the process more time-consuming, the Court balances this cost against Defendants' interest in the confidentiality of their source code and permits reasonable accountability for the review and printing of the source code. However, Defendants are strongly advised to not unreasonably withhold consent for the printing of additional pages of source code as needed by Plaintiff relating to the auto-complete functionality and to work with Plaintiff to efficiently complete this process.

Plaintiff argues that it should be allowed to view the screen of the source code computer while taking notes on a laptop during the source code review. Defendants contend that the screen of the Source Code Computer should not be visible from the laptop to prevent the copying of all

---

[1] The Court notes that since the parties filed the disputed protective order, the District Court dismissed Yahoo! as a party defendant pursuant to the plaintiff's agreed dismissal of that defendant. *See Order* (doc. #322). There is also a pending unopposed motion to substitute AT&T Mobility LLC as the real party in interest in place of the current named defendant, AT&T, Inc. (doc. #343).

source code into the notes. According to Defendants, Plaintiff can print the source code from the source code computer, take the printed pages to the laptop, and then prepare charts, notes, or other work product. Again, any inconvenience to Plaintiff is outweighed by Defendants' interest in the confidential nature of their source code. The Court adopts Defendants' proposal.

The remainder of the proposed protective order is agreed. Accordingly, the Court **ORDERS** that the *Joint Motion for Entry of Disputed Protective Order* (doc. #303) is **GRANTED**, subject to the Court's rulings stated in this order. The Court orders the parties to submit a stipulated protective order for the undersigned's signature which complies with this Court's rulings within ten (10) days.

It is so ordered.

**SIGNED this the 19th day of June, 2012.**

_____
KEITH F. GIBLIN
UNITED STATES MAGISTRATE JUDGE

# EXHIBIT 10

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
### TYLER DIVISION

| | | |
|---|---|---|
| **HYUNDAI MOTOR AMERICA** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **vs.** | § | **CASE NO. 6:08 CV 302** |
| | § | |
| **CLEAR WITH COMPUTERS, LLC** | § | |
| **Defendant.** | § | |

## MEMORANDUM OPINION AND ORDER ON
## CROSS MOTIONS FOR PROTECTIVE ORDER

Before the Court are the parties' cross motions for protective order (Docket Nos. 39, 46). After considering the parties' written submissions, the Court **DENIES** Clear With Computers, LLC's ("CWC") motion (Docket No. 39) and **GRANTS** Hyundai Motor America's ("Hyundai") motion (Docket No. 46).

## BACKGROUND

This suit arises out of prior litigation. In 6:05cv322, Orion (now known as CWC) sued Hyundai and others for infringement of U.S. Patent Nos. 5,367,627 and 5,615,342 (the "Orion litigation"). The case went to trial, and the jury found Hyundai did not infringe the '342 patent, Hyundai did infringe the '627 patent, and the '627 patent was not invalid. Hyundai brought this suit seeking a declaratory judgment that its redesigned websites do not infringe the '627 patent. CWC counterclaimed that Hyundai's redesigned websites infringe the '627 and '342 patents and infringe U.S. Patent No. 5,493,490, which was not asserted in the Orion litigation.

Erich Spangenberg owns and controls a number of patent holding entities including CWC (formerly Orion). These entities are in the business of holding intellectual property for litigation and

pre-litigation activities. Attorney David Pridham represents these entities. Pridham represented

Orion in the Orion litigation, and he continues to represent CWC in this litigation. During the Orion

litigation, Pridham had access to Hyundai's Attorneys' Eyes Only ("AEO") documents.

In another case involving another Spangenberg entity, ST Sales Tech Holdings, LCC, that

had sued Hyundia (and others), the defendants moved to prevent Pridham from viewing their AEO

documents. *See ST Sales Tech Holdings, LLC v. Diamler Chrysler Co.*, 6:07cv346-LED-JDL, 2008

WL 5634214 (E.D. Tex. March 14, 2008) (Love, Mag. J.). Judge Love analyzed Pridham's

relationship with Spangenberg and Spangenberg's entities and determined that

> In looking at the totality of the facts surrounding Pridham's role in Spangenberg's
> businesses, from patent acquisition to active involvement in litigation and licensing,
> all of the concerns prior courts have found critical in denying certain attorneys access
> to confidential information are present. The Court founds that Pridham is a
> competitive decision maker, and that his close relationship with Spangenberg
> presents a high risk for inadvertent disclosure that bears great potential to
> significantly harm Defendants through continued litigation.

*Id.* at *7. In weighing the risk of disclosure against the potential harm to Plaintiff if Pridham was

screened from seeing AEO documents, the Court decided that

> Pridham's relationship with Spangenberg and his role in Spangenberg's business
> enterprise presents an unacceptable risk of inadvertent disclosure that could
> significantly harm Defendants. While the Court notes that Plaintiff will be harmed
> by having one of its counsel screened from accessing certain information in the case,
> that harm is minor compared to the risk of continued harm to Defendants since Sales
> Tech has other highly competent attorneys that have been involved since the
> beginning of the case.

*Id.* at *8.

Both CWC and Hyundai now move for entry of a Protective Order in this case. The parties'

proposed Protective Orders raise three main disputes: (1) whether Pridham may view Hyundai's

confidential or AEO documents, (2) whether "others similarly situated" to Pridham may view the

AEO documents, and (3) whether there should be a two year ban on those who see AEO documents from participating, advising, or assisting in the acquisition of patent rights and asserting infringement claims related to the producing party's technical information against the producing party.  In arguing that Pridham should be screened from AEO documents, Hyundai heavily relies on *ST Sales Tech*. CWC does not contend Pridham's relationship to Spangenberg and Spangenberg's business has changed since *ST Sales Tech*, but distinguishes that case because ST Sales Tech had "other highly competent attorneys that have been involved since the beginning of the case," whereas here, Pridham is the only attorney representing CWC that also represented Orion in the Orion litigation.

## APPLICABLE LAW

A party or any person from whom discovery is sought may move for a protective order in the court where the action is pending . . . .  The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following:

(A) forbidding the disclosure or discovery;

(B) specifying terms, including time and place, for the disclosure or discovery;

(C) prescribing a discovery method other than the one selected by the party seeking discovery;

(D) forbidding inquiry into certain matters, or limiting the scope of disclosure or discovery to certain matters;

(E) designating the persons who may be present while the discovery is conducted;

(F) requiring that a deposition be sealed and opened only on court order;

(G) requiring that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a specified way; and

(H) requiring that the parties simultaneously file specified documents or information in sealed envelopes, to be opened as the court directs.

FED. R. CIV. P. 26(c).  "As a general proposition, a district court can exercise its sound discretion in determining how far to restrict discovery; and, in particular, the decision whether to grant or deny a request for a protective order is entrusted to the district court's sound discretion."  *Nguyen v. Excel Corp.*, 197 F.3d 200, 209 n.27 (5th Cir. 1999).  Access to discovery can be denied to competitive

3

decision makers who may inadvertently use the material for inappropriate purposes. *U.S. Steel Corp. v. United States*, 730 F.2d 1465 (1984); *ST Sales Tech*, 2008 WL 5634214. Courts weigh the risk of inadvertent or accidental disclosure of the confidential information against the receiving party's need for the material to prosecute or defend its claims. *ST Sales Tech*, 2008 WL 5634214 at *3; *see also U.S. Steel*, 730 F.2d at 1468. Courts consider the factual circumstances relating the receiving person's activities, association, and relationship with the receiving party, whether the person receiving the confidential information is involved in competitive decision making or scientific research, the risk of inadvertent disclosure, the hardship imposed by the restriction, the timing, and the scope of the relief sought. *ST Sales Tech*, 2008 WL 5634214 at *3–*4 (citing *Infosint S.A. v. H. Lundbeck A.S.*, 2007 WL 1467784 at *2 (S.D.N.Y. 2007)).

## ANALYSIS

### Pridham's access to Attorneys' Eyes Only documents

CWC argues Pridham is not a competitive decision maker because CWC and Hyundai are not competitors. Judge Love rejected this argument in *ST Sales Tech*. *ST Sales Tech*, 2008 WL 5634214 at *3–7. CWC does not contend that Pridham's relationship to Spangenberg or Spangenberg's entities has changed such that this Court's analysis should change.

Similar to the situation in *ST Sales Tech*, CWC and Hyundai are competitors. *See id.* at *6. CWC and Hyundai both "seek to utilize, in one manner or another, intellectual property as part of a business model for pecuniary gain." *See id.* "Spangenberg's entire business model with his patent-holding companies . . . revolves around the acquisition, enforcement (through litigation), and licensing of patents." *Id.* at *5. As general counsel and outside counsel to Spangenberg's entities, Pridham is extensively involved in Spangenberg's business dealings. Pridham counsels Spangenberg

4

and Spangenberg's entities on litigation, licensing (through litigation), and patent acquisition. *See id.* at *4.

As such, if Pridham is allowed to see Hyundai's confidential documents, Hyundai is at a considerable risk that its confidential information may be inadvertently used against it in other litigation. Once Pridham has knowledge of how Hyundai's systems work, he cannot compartmentalize that knowledge when later advising Spangenberg on whether particular patents should be acquired or asserted against Hyundai. As this suit is the fourth time a Spangenberg entity has asserted infringement claims against Hyundai, it is clear that Spangenberg is willing to bring repeated suits against the same defendants.

That Pridham has already seen some of Hyundai's confidential documents in the Orion litigation does not weigh in favor of allowing Pridham to see Hyundai's confidential documents now. Hyundai contends that it has changed its systems such that they no longer infringe. Additionally, CWC has asserted a new patent in this suit that was not at issue in the Orion litigation. Thus, the Court expects that new documents and new information will be exchanged in this suit.

Hyundai's risk of inadvertent disclosure of it confidential documents must be balanced against the potential prejudice to CWC. CWC will be prejudiced by having one of its attorneys screened from AEO documents. Further, Pridham is the only attorney from the Orion litigation still representing CWC. Thus, CWC will face some prejudice by the exclusion.

Hyundai's risk of harm if its confidential documents are inadvertently used against it outweighs CWC's prejudice if Pridham is excluded. Hyundai has already faced other litigation by Spangenberg's other entities. Hyundai's harm would be great if Hyundai's confidential information were used against Hyundai in other litigation. Given the history of litigation between Spangenberg's

entities and Hyundai, this risk is not insignificant.  This risk is greater than CWC's prejudice.  The other highly competent members of CWC's legal team will have ample opportunity to prepare for this litigation.  CWC argues that Hyundai purposefully waited to move to exclude Pridham only after CWC had changed its representation such that Pridham is the only team member left from the Orion litigation.  However, it was CWC's choice to change its representation, and the disadvantage—if any—this places on CWC does not outweigh the risk to Hyundai.

**"Others similarly situated" access to Attorneys' Eyes Only documents**

In addition to excluding Pridham from viewing AEO documents, Hyundai seeks to exclude "others similarly situated" as well.  CWC argues this exclusion is vague and improper.

It would be nonsensical to exclude Pridham from AEO documents only to let Spangenberg fill Pridham's role with someone else, placing Hyundai at the same risk of inadvertent misuse of its confidential documents.  Accordingly, the Court will exclude "others similarly situated" as Pridham from viewing AEO documents.  Thus, this exclusion applies to those who counsel Spangenberg or any of his entities on patent acquisition and asserting patents through litigation.  If the parties are unclear whether this exclusion applies to a particular individual, they may seek clarification from the Court.

**Two-year ban**

Hyundai's proposed Protective Order includes a two year ban on those who see AEO documents from participating, advising, or assisting in the acquisition of patent rights and asserting infringement claims related to the producing party's technical information against the producing party.

The Court grants this relief as well with the condition that it only apply to counsel who views

the AEO documents.  Denying this relief would allow Spangenberg to designate an attorney to view Hyundai's AEO documents who does not—at this time—counsel Spangenberg or his entities on patent acquisition or assertion, only to elevate that attorney to such status once this litigation is over. Such an end-run around the terms of the protective order and Court's serious concerns about the risk of inadvertent misuse of Hyundai's confidential materials should not be permitted.

## CONCLUSION

The Court **DENIES** CWC motion and **GRANTS** Hyundai's motion for protective order. Accordingly, the Court will enter Hyundai's proposed protective order.

**So ORDERED and SIGNED this 11th day of May, 2009.**

_____
**LEONARD DAVIS**
**UNITED STATES DISTRICT JUDGE**