# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

INTELLECTUAL VENTURES I LLC,  :
INTELLECTUAL VENTURES II LLC,  :
                                :
          Plaintiffs,           :
                                :     C.A. No. 10-1065-LPS
      v.                        :
                                :
ALTERA CORPORATION,             :
XILINX, INC.,                   :         Public Version
                                :      Released on July 25, 2013
          Defendants.           :

---

Brian E. Farnan, FARNAN LLP, Wilmington, DE

John M. Desmarais, Michael P. Stadnick, Justin P.D. Wilcox, Ameet A. Modi, Laurie Stempler, Eugene Chiu, DESMARAIS LLP, New York, NY

    Attorneys for Plaintiffs.

Jack B. Blumenfeld, Rodger D. Smith II, MORRIS, NICHOLS, ARSHT & TUNNELL LLP, Wilmington, DE

Harold J. McElhinny, MORRISON & FOERSTER, LLP, San Francisco, CA
Karl J. Kramer, Colette R. Verkuil, Eric C. Pai, MORRISON FOERSTER, LLP, Palo Alto, CA

    Attorneys for Defendant Altera Corporation.

Karen J. Louden, Michael J. Flynn, MORRIS, NICHOLS, ARSHT & TUNNELL LLP, Wilmington, DE

Laurie M. Charrington, Joe C. Liu, Kathleen D. Lynott, JONES DAY, Palo Alto, CA
Patrick T. Michael, JONES DAY, San Francisco, CA

    Attorneys for Defendant Xilinx, Inc.

---

## MEMORANDUM OPINION

July 12, 2013
Wilmington, Delaware.

STARK, U.S. District Judge:

Pending before the Court is Intellectual Ventures I LLC and Intellectual Ventures II LLC's (collectively, "Plaintiffs" or "IV") Motion for Protective Order Barring Discovery of Information Subject to the Attorney-Client Privilege and Work Product Doctrine. (D.I. 362)

## I.    BACKGROUND

On December 8, 2010, IV brought suit against Altera Corporation ("Altera") and Xilinx, Inc. ("Xilinx") (collectively, "Defendants") alleging infringement of the patents-in-suit.[1] Fact discovery closed on April 30, 2013.

On March 28, 2013, Xilinx wrote to Plaintiffs asserting that Plaintiffs improperly instructed Messrs. Ryan Morrison, Patrik Edenholm, and Mark Wilson not to answer questions on the basis of privilege. (D.I. 364 Ex. 1 at 1)  Xilinx requested that Plaintiffs produce the witnesses for supplemental deposition at Plaintiffs' expense. (Id. at 2)  The parties met and conferred on April 4, 2013 but were not able to resolve their dispute.

On April 10, Xilinx wrote to the Court seeking discovery related to IV's acquisition, due diligence, valuation, and licensing of the patents-in-suit and broadly requested an Order prohibiting Plaintiffs from improperly asserting privilege. (Id. Ex. 2)  The parties met and conferred on April 16 and the Court held a teleconference on April 17.  During the call, the Court requested that the parties meet and confer further to identify the specific assertions of privilege challenged by Xilinx. (Id. Ex. 3 at 36)  The Court also authorized Plaintiffs to file a motion for a

---

[1]U.S. Patent Nos. 5,687,325 (the "'325 patent"), 6,260,087 (the "'087 patent"), 6,272,646 (the "'646 patent"), 6,993,669 (the "'669 patent"), and 5,675,808 (the "'808 patent") (collectively, the "patents-in-suit").  IV amended its complaint in February 2011, alleging infringement against Xilinx. (D.I. 17)

1

protective order, now before the Court.

On April 18, Plaintiffs wrote to Xilinx requesting a list of all challenged assertions of privilege. (*Id.* Ex. 4) The following day, Xilinx provided a list of the challenged privilege assertions over several documents and specific portions of deposition testimony from five deponents: Messrs. Morrison, Edenholm, Wilson, Kenneth Dyer, and Don Merino. (*Id.* Ex. 5) On April 22, Altera identified four additional challenged documents, described as the Runway Reports.[2] (D.I. 378 Ex. 17)

The parties completed briefing on the pending motion on June 11, 2013. (D.I. 363, 373, 377, 379, 381) Plaintiffs request that the Court issue a protective order barring Defendants from "(1) seeking additional testimony in response to the disputed deposition questions, and (2) seeking production of the documents identified on the privilege log of Richard Belgard" and production of the Runway Reports. (D.I. 377 at 1, 15)

## II. LEGAL STANDARDS

Pursuant to Federal Rule of Civil Procedure 26(c), "[t]he Court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Good cause may be "established on a showing that disclosure will work a clearly defined and serious injury to the party seeking closure." *Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 786 (3d Cir. 1994). The Third Circuit has recognized that "compelling a witness to disclose privileged information [may] result in an irreparable injury." *United States v. Sciarra*, 851 F.2d 621, 636 (3d Cir. 1988).

---

[2]The Runway Reports are created in the ordinary course of business for potential or actual patent acquisitions. (D.I. 374 Ex. 13 at 92)

"The attorney-client privilege protects communications between attorneys and clients from compelled disclosure. It applies to any communication that satisfies the following elements: it must be (1) a communication (2) made between privileged persons (3) in confidence (4) for the purpose of obtaining or providing legal assistance for the client." *In re Teleglobe Commc'ns Corp.*, 493 F.3d 345, 359 (3d Cir. 2007) (internal quotation marks omitted). "The purpose behind the attorney-client privilege is to encourage clients to make full disclosure of facts to counsel so that he may properly, competently, and ethically carry out his representation." *In re Chevron Corp.*, 633 F.3d 153, 164 (3d Cir. 2011) (internal quotation marks omitted). The burden of establishing the attorney-client privilege lies with the party asserting the privilege. *See Sampson v. Sch. Dist. of Lancaster*, 262 F.R.D. 469, 473 (E.D. Pa. 2008) (citing *In re Grand Jury Empanelled Feb. 14, 1978*, 603 F.2d 469, 474 (3d Cir. 1979)).

## III.   DISCUSSION

Plaintiffs argue that Xilinx very broadly, and improperly, contends that Plaintiffs cannot assert privilege over communications related to acquisition, due diligence, valuation, and licensing of the patents-in-suit because Plaintiffs' business model involves such activities. (D.I. 363 at 7) Plaintiffs contend that even if communications also relate to business advice, privilege remains intact if the communications are made primarily for purposes of providing legal advice. (*Id.*; *id.* n.6) Plaintiffs argue that the dispute between the parties relates only to a discrete number of privilege assertions specifically identified by Xilinx. (D.I. 364 Ex. 5) In each instance, according to Plaintiffs, the witness answered, or the assertion of privilege was proper, or – to the extent the Court concludes the assertion of privilege was not proper – the subject matter of the question was only marginally relevant, so supplemental depositions would be an inappropriate

remedy. (D.I. 363 at 8-9)

In response, Xilinx contends that the parties' dispute is not limited to a discrete set of questions but, rather, involves thematic matters. Generally, Xilinx opposes Plaintiffs' use of privilege to prevent testimony about Plaintiffs' pre- and post-acquisition evaluation process,[3] including the process for identifying patents and patent portfolios, determining the value of such portfolios, compiling patent history reports, and evaluating those reports. (D.I. 373 at 1) Xilinx argues that these matters are relevant to Plaintiffs' standing as well as to damages. (*Id.* at 2) Xilinx also contends that Plaintiffs improperly clawed back documents, which were later produced, obstructing Xilinx's ability to question witnesses meaningfully. Finally, Xilinx objects to Plaintiffs' exercise of privilege over communications with Mr. Belgard and the Runway Reports.

## A. Deposition Testimony

Xilinx seeks to reopen depositions of Messrs. Edenholm and Morrison, but not the other witnesses, so Plaintiffs' requests for protective orders with respect to Messrs. Dyer, Merino, and Wilson are moot.[4] (D.I. 373 at 2 n.1) Plaintiffs' requests for protective orders barring Xilinx from reopening depositions of Morrison and Edenholm are discussed below.

---

[3]Mr. Edenholm and Mr. Morrison are 30(b)(6) witnesses designated to address "[a]ll transfers of rights in or to the Asserted Patents or Related Patents . . . including . . . (i) the circumstances relating to those transfers, (ii) analyses or assessments by any person of the value of the patents-in-suit and/or of the inventions claimed therein, (iii) the decision to acquire the patents-in-suit; and (iv) all documents relating to the foregoing." (D.I. 374 Ex. 7 at 6-7)

[4]Plaintiffs' assertion of work product protection relates only to Messrs. Dyer, Merino, and Wilson and, therefore, need not be addressed. (D.I. 373 at 2 n.1)

4

### i.   Edenholm

Patrik Edenholm works as a consultant to Plaintiffs, locating potential patents for acquisition and negotiating the terms of such acquisitions. (D.I. 364 Ex. 11 at 16-17) Plaintiffs contend that Mr. Edenholm's refusal to answer questions concerning (1) his understanding of the process that Plaintiffs' valuation teams follow in evaluating potential patents for acquisition (D.I. 363 at 16 (citing D.I. 364 Ex. 11 at 106)), and (2) his understanding of how patents and patent portfolios come under consideration for acquisition by Plaintiffs' valuation group (D.I. 363 at 16 (citing D.I. 364 Ex. 11 at 120-21)) were proper. Mr. Edenholm's understanding of the two topics comes entirely from communications from counsel made for the purpose of providing legal advice as part of his "finder" duties to Plaintiffs. (D.I. 364 Ex. 11 at 33-38, 121) Mr. Edenholm also testified that it was his understanding that the valuation process was done "at the behest of attorneys, and that information is privileged." (Id. at 35) Although he refused to testify on the above topics based on an assertion of privilege, Mr. Edenholm did testify as to his understanding of what makes a patent "high value" (id. at 152), and also as to his understanding of the process of identifying "good patents" (D.I. 374 Ex. 8 at 40).

Xilinx argues that Plaintiffs' assertion of privilege with respect to Mr. Edenholm was improper. Xilinx points out that even though Mr. Edenholm stated that the valuation process is subject to privilege because it is conducted at the request of attorneys, Mr. Edenholm was not able to identify any attorneys who direct the process. (Id. at 35) Xilinx also argues that Plaintiffs improperly clawed back documents during the deposition (see, e.g., id. at 115), preventing

Defendants from questioning the witness on the substance of the documents.[5] (D.I. 373 at 5)

The Court agrees with Plaintiffs that the assertion of privilege was proper. Additionally, although Xilinx argues it was not able to obtain discovery on Plaintiffs' valuation process, Mr. Edenholm explained, at length, his understanding of the valuation process. (*See, e.g.*, D.I. 364 Ex. 11 at 28-32, 36-38, 41-45 (describing valuation process but declining to answer specifically what valuation manager considers during process), 48-52 (describing circumstance in which valuation committee/manager provides additional input on price, including types of additional metrics considered in valuation)) When Mr. Edenholm declined to answer questions related to the valuation process – for example, whether patents within a portfolio are rated by the valuation group – it was because this analysis constituted legal communications protected by privilege. Indeed, patent valuation, while in this instance tied to business decisions of patent acquisition, may be intertwined with legal analysis, including considerations of claim scope, validity, and licensing power. (D.I. 377 at 9; D.I. 364 Ex. 11 at 152) *See generally In re Ford Motor Co.*, 110 F.3d 954, 966 (3d Cir. 1997), *abrogated on other grounds by*, *Mohawk Indus. Inc. v. Carpenter*, 558 U.S. 100 (2009) (concluding that meeting minutes were privileged even when ultimately categorized as business decision because decision was made based on legal implications).

### ii.   Morrison

Ryan Morrison is a transactional attorney who provides legal advice related to patent acquisition deals. (D.I. 364 Ex. 12 at 16-17) Plaintiffs contend that Mr. Morrison's legal analyses would have been revealed by answering questions related to the contents of reports

---

[5]It is unclear whether Xilinx seeks discovery related to the later-produced clawed-back documents. Should Xilinx wish to do so, Xilinx is permitted to take a deposition solely related to the clawed-back documents. Such deposition shall be limited to a maximum of one hour.

prepared for the purpose of seeking legal advice concerning patent assets under consideration for purchase (D.I. 363 at 17 (citing D.I. 364 Ex. 12 at 76-86, 90, 98-99)), and his thought processes in formulating and providing legal advice concerning patent due diligence, including review of prior licenses or when certain searches are performed (*id.* (citing D.I. 364 Ex. 12 at 65-69, 71, 115-16)).

Xilinx argues that Plaintiffs improperly asserted privilege preventing questioning on (1) the type of information contained in the patent history reports collected by Plaintiffs (D.I. 374 Ex. 9 at 77-78, 82, 98-99), (2) the type of documents used in those reports (*id.* at 83-86), (3) Mr. Morrison's analysis on licenses reviewed when conducting due diligence (*id.* at 71), (4) ▮▮▮▮ ▮▮▮▮▮▮ (*id.* at 67-68), (5) ▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮ (*id.* at 65-67, 90), (6) ▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮ (*id.* at 115-16), (7) ▮▮▮▮▮▮ (*id.* at 116, 162-64), (8) ▮▮▮▮▮▮▮▮▮▮ (*id.* at 143-44), (9) ▮▮▮▮▮▮▮▮▮▮▮▮ (*id.* at 86), and (10) whether Plaintiffs perform a technical analysis before moving forward with patent acquisitions (*id.* at 179). (D.I. 373 at 5-6)

The Court agrees with Plaintiffs that Mr. Morrison properly declined to answer based on privilege. As a threshold matter, the record supports Plaintiffs' assertion that "▮▮▮▮▮ ▮▮▮▮▮ are plainly privileged because they involve analyses performed by attorneys . . . under the direction of attorneys regarding the legal issues surrounding the patents considered for purchase." (D.I. 377 at 6) Mr. Morrison explained that as a part of due diligence, under the direction of counsel, a paralegal and an attorney ▮▮▮▮▮▮▮▮▮▮▮▮

7

(D.I. 364 Ex. 12 at 74-76) ███████████████████████████

███████████████████████████████████████████

████████████████████████ (*Id.* at 75-76) ████████████████

████████████████████████████████████ (*Id.*) Moreover, the

deposition transcript makes clear that Mr. Morrison answered questions as to the type of issues

that would be in a ██████████████. (*See, e.g., id.* at 78-80)

To the extent that Mr. Morrison declined to answer questions related to, for example,

█████████████████████████████, Plaintiffs have met their burden to show

that privilege was properly asserted. Plaintiffs' position is that Mr. Morrison is "an attorney; he

works in his daily capacity as an attorney; and what he does, in his subjective judgments, you

know, are privileged." (D.I. 364 Ex. 12 at 68; *see also id.* at 71 (Xilinx's counsel confirming

Plaintiffs' position that "the scope of Mr. Morrison's review of those agreements and what he's

looking for and how he performs this due diligence is covered by the attorney-client privilege");

*id.* at 67 (asserting privilege in response to question related to circumstances in which Mr.

Morrison █████████████████; *id.* at 115-16 (refusing to answer why Plaintiffs would

███████████████████████ but answering ████████████████████

█████████; *id.* at 179 (refusing to answer whether Plaintiffs performed technical analysis on

scope of Web Chang patents and potential licenses)) The Court is satisfied that Plaintiffs'

assertion of privilege over Mr. Morrison's work and analyses were proper.[6] To the extent that

Mr. Morrison's work and analyses also include business advice, this does not, under the

---

[6]Even if Plaintiffs' assertion of privilege were improper, the Court is not persuaded by
Xilinx's general argument that its inability to obtain discovery on due diligence and valuation is
highly relevant to standing as well as to damages.

circumstances, vitiate the attorney-client privilege. *See generally Se. Pa. Transp. Auth. v. CaremarkPCS Health, L.P.*, 254 F.R.D. 253, 257-58 (E.D. Pa. Dec. 9, 2008) (stating that even when communications involve business, as well as legal advice, if purpose of communication is to provide legal advice, privilege still applies).[7]

### B.    Documents

Plaintiffs argue that Xilinx's request for fifteen documents that have been withheld as privileged should be denied. Plaintiffs argue that any disclosure to Mr. Belgard did not vitiate privilege because he was acting as Plaintiffs' agent and, therefore, is a "privileged person." (D.I. 363 at 19-20) Alternatively, Plaintiffs argue that Mr. Belgard shares a common interest with Plaintiffs such that their communications with him are protected by the common interest doctrine. Plaintiffs also seek protection from having to produce the Runway Reports.

### i.    Belgard

#### a.    Privileged Person

Mr. Peter Detkin described Mr. Belgard as a consultant to IV. (D.I. 364 Ex. 15 at 47) Mr. Belgard acted as a "finder," helping Mr. Detkin review and negotiate deals. (*Id.* at 226) In his role, Mr. Belgard was privy to a number of privileged communications, including

███████████████████████████

---

[7]Xilinx relies heavily on *Diagnostics Sys. Corp. v. Symantec Corp.*, 2008 WL 9396387, at *6 (C.D. Cal. Aug. 12, 2008), in which the court held that a non-practicing entity could not assert privilege to withhold a presentation prepared by an attorney. The presentation detailed the process of evaluating potential patent acquisitions; the court concluded that, given the plaintiff's business, the presentation was not privileged. *See id.* Although the instant case involves a non-practicing entity, here Plaintiffs have carefully tailored their assertions of privilege on a question-by-question, document-by-document basis. The Court is making its rulings on the same particularized basis, rather than broad-brush.

██████████████████████████████████████████ (D.I. 363 at 20;

D.I. 364 Ex. 14) Plaintiffs contend that each one of these communications meet the requirements

of privilege. (D.I. 363 at 20)

Xilinx disputes that Mr. Belgard is a "privileged person." Xilinx notes that Mr. Detkin

described Mr. Belgard as "an independent contractor" (D.I. 374 Ex. 3 at 224), and Mr. Belgard

perceived his relationship with Plaintiffs as "at arm's length" (id. Ex. 12). Thus, Xilinx argues

that Mr. Belgard is not "the functional equivalent of an employee" and any disclosure to Mr.

Belgard vitiated attorney-client privilege. (D.I. 373 at 15 (citing In re Flonase Antitrust Litig.,

879 F. Supp. 2d 454, 459 (E.D. Pa. 2012)))

The Court concludes that Plaintiffs have failed to make the "detailed factual showing

[that] is necessary to establish the relationship between the client and a third party that is sought

to be included within the protection of the attorney-client privilege." Energy Capital Corp. v.

United States, 45 Fed. Cl. 481, 492 (2000). In In re Flonase, the Court concluded that an

independent contractor was within the attorney-client privilege because he was "an integrated

member of the . . . team," "play[ed] a crucial role in the team," and "assiste[ed] in an

administrative, managerial, and analytic capacity." 879 F. Supp. 2d at 459-60. The record here,

unlike In re Flonase, does not support a finding that Mr. Belgard was a functional equivalent of

an employee. Plaintiffs state that Mr. Belgard was an "integrated member of Plaintiffs' patent

acquisition team." (D.I. 377 at 11) However, upon examination of the record, the Court finds

inadequate support for such a finding. (See D.I. 364 Ex. 15 at 47 (stating generally that Mr.

Belgard is consultant who worked with Mr. Detkin for many years), 223-24 (citing single 2003

email exchange between Mr. Detkin and Mr. Belgard), 225 (discussing confidentiality agreement

between Mr. Belgard and IV but unable to identify Mr. Belgard's signature), 226 (stating

generally that Mr. Belgard helped review and negotiate deals upon request)) Indeed, as

mentioned above, Mr. Detkin described Mr. Belgard as an "independent contractor," and Mr.

Belgard appeared to have a similar understanding of his relationship with IV, describing it as "at

arm's length." Thus, the Court concludes that Mr. Belgard is not a privileged person.

### b. Common Interest

Plaintiffs next argue that even if Mr. Belgard is not a "privileged person," Mr. Belgard

and IV's common legal interest protects privilege. (D.I. 363 at 21) Plaintiffs contend that they

share the common interest in properly acquiring patents, and that all communications with Mr.

Belgard relate to seeking or providing legal advice to further this interest.

Xilinx argues that Plaintiffs' common interest theory is inapplicable here because the

common interest doctrine applies only when "attorneys representing different clients with similar

legal interests . . . share information." *In re Teleglobe*, 493 F.3d at 364. Analyzing the

community-of-interest privilege, the Third Circuit has stated that "to be eligible for continued

protection, the communication must be shared with the ***attorney*** of the member of the

community of interest . . . [and] all members of the community must share a common legal

interest in the shared communication." *Id.* (emphasis in original). Thus, "the privilege only

applies when clients are represented by separate counsel." *See id.* at 365. Xilinx argues that

because there is no evidence that Mr. Belgard was represented by an attorney, the common

interest doctrine does not apply. Even if he was so represented, Xilinx argues that there is no

evidence that Mr. Belgard and Plaintiffs had "coordinate[d] legal strategies." (D.I. 373 at 17

(citing *In re Teleglobe*, 493 F.3d at 365)) Finally, Xilinx argues that the confidentiality

11

agreement signed by Mr. Belgard does not protect privilege. "[V]oluntary disclosure to a third party waives the attorney-client privilege even if the third party agrees not to disclose the communications to anyone else." *Westinghouse Elec. Corp. v. Republic of Philippines*, 951 F.2d 1414, 1427 (3d Cir. 1991).

The Court concludes that Xilinx's application of the common interest doctrine is too narrow. The Third Circuit has stated, "[t]he presence of a third party will not vitiate the attorney-client privilege, if the third party is the attorney's or client's agent or possesses a commonality of interest with the client." *In re Grand Jury Investigation*, 918 F.2d 374, 386 n.20 (3d Cir. 1990). Here, there is sufficient evidentiary support to conclude that Mr. Belgard and Plaintiffs share a common interest. As discussed above, Mr. Belgard served as a "finder" for Plaintiffs, helping review, evaluate, and negotiate deals in order to assist IV in acquiring patents. (D.I. 377 at 13)

███████████████████████████████████████████████

████████████ (D.I. 378 Ex. 19) *Cf. Xerox Corp. v. Google Inc.*, 801 F. Supp. 2d 293, 303-04 (D. Del. 2011) (stating that ████████ between parties supported finding of common interest). Finally, Mr. Detkin provided a sworn statement that Mr. Belgard performed his duties to Plaintiffs "under an expectation and obligation of confidentiality to Intellectual Ventures." (D.I. 378 Ex. 16 at ¶ 6; *see also* D.I. 364 Ex. 15 at 225)

In sum, the Court is satisfied that there is a sufficient common interest between Plaintiffs and Mr. Belgard and will, therefore, grant the protective motion.

### ii. Runway Reports

Xilinx argues that Plaintiffs have failed to move for a protective order to cover the redaction of the Runway Reports. (D.I. 373 at 7) Xilinx also contends that Plaintiffs have

improperly redacted an overwhelming majority of the Runway Reports. (*Id.*)

Plaintiffs argue that the Court should reject Xilinx's arguments because Xilinx failed to meet and confer with respect to its newly-alleged challenges to the redacted Runway Reports. (D.I. 377 at 1) These challenges were not discussed during any of the meet and confers between the parties. Instead, Plaintiffs argue, the report challenges were asserted for the first time in Xilinx's brief in opposition to the protective order. (*Id.*)

The Court specifically ordered the parties to communicate so that neither party would waste time or effort briefing unchallenged privilege assertions or redactions. (D.I. 364 Ex. 3 at 36) The Court concludes, regrettably, that the parties have failed to adequately communicate with each other to ensure that all parties were sufficiently apprised of all of the ripe privilege issues. For instance, Xilinx failed to meet and confer with Plaintiffs to inform them that the challenges with respect to Messrs. Wilson, Dyer, and Merino were being dropped. The parties also failed to meet and confer to discuss Xilinx and Altera's April 22 identification of the Runway Reports as challenged redactions. This is particularly troubling since the Court directed the parties to work together so that their briefing would not be "underinclusive and not brief for [the Court] all of the assertions of privilege that are being challenged." (D.I. 364 Ex. 3 at 36)

While both sides are to blame for the lack of communication, the Court concludes that Plaintiffs were on sufficient notice that the Runway Reports were being put at issue by Xilinx (or Altera) based on the April 22 email identifying the documents. Plaintiffs have not met their burden of establishing privilege with respect to the Runway Reports. The Court is not persuaded by Plaintiffs' conclusory statement that the Runway Reports contain "attorney notes, attorney-client communications, and work product information." (D.I. 377 at 14) Accordingly, the Court

13

will deny the requested protective order with respect to the Runway Reports.

## IV.   CONCLUSION

For the foregoing reasons, the Court will deny Plaintiffs' request for a protective order with respect to the Runway Reports. In all other respects, Plaintiffs' request for a protective order will be granted. An appropriate Order follows.