IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| INTELLECTUAL VENTURES I LLC and INTELLECTUAL VENTURES II LLC,<br><br>Plaintiffs,<br><br>v.<br><br>XILINX, INC.,<br><br>Defendant. | ) | C.A. No. 10-1065 (LPS)<br><br>REDACTED - PUBLIC VERSION |

**XILINX, INC.'S ANSWERING BRIEF IN OPPOSITION TO PLAINTIFFS' MOTION TO EXCLUDE TESTIMONY OF DEFENDANTS' EXPERT JULIE L. DAVIS**

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Karen Jacobs (#2881)
Michael Flynn (#5333)
1201 N. Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
kjacobs@mnat.com
mflynn@mnat.com
*Attorneys for Defendant Xilinx, Inc.*

OF COUNSEL:

Patrick T. Michael
JONES DAY
555 California Street, 26th Floor
San Francisco, CA 94104
(415) 875-5893

Laurie M. Charrington
Joe C. Liu
Kathleen D. Lynott
JONES DAY
1755 Embarcadero Road
Palo Alto, CA 94303
(650) 739-3939

David B. Cochran
JONES DAY
North Point
901 Lakeside Avenue
Cleveland, OH 44114
(216) 586-7029

William C. Rooklidge
JONES DAY
3161 Michelson Drive, Suite 800
Irvine, CA 92612-4408
(949) 553-7501

Original Filing Date: December 20, 2013
Redacted Filing Date: December 26, 2013

# TABLE OF CONTENTS

**Page**

NATURE AND STAGE OF PROCEEDINGS .......... 1

SUMMARY OF ARGUMENT .......... 1

STATEMENT OF FACTS .......... 3

The Patents-in-Suit .......... 3
IV's and Xilinx's Preexisting Relationship .......... 4
Mr. Wagner's Damages Opinion .......... 5
Ms. Davis's Rebuttal Report .......... 7

ARGUMENT .......... 10

1. Ms. Davis's rebuttal opinions on Mr. Wagner's failure to consider the sales prices of the asserted patents are admissible .......... 10

2. Ms. Davis's rebuttal opinions on the Georgia-Pacific factors are admissible .......... 13

CONCLUSION .......... 14

# TABLE OF AUTHORITIES

## CASES

*Allen v. International Business Machines Corp.*,
C.A. No. 94-264 JJF, 1997 WL 34501372 (D. Del. Dec. 18, 1997)................................12, 13

*Breidor v. Sears, Roebuck & Co.*,
722 F.2d 1134 (3d Cir. 1983).........................................................................................10

*Daubert v. Merrell Dow Pharms., Inc.*,
509 U.S. 579 (1993) .......................................................................................... 1, 3, 10, 13

*Georgia-Pacific Corp. v. U.S. Plywood Corp.*,
318 F. Supp. 1116 (S.D.N.Y. 1970). Application of the ...............................................Passim

*Integra Lifesciences I, Ltd. v. Merck KGaA*,
331 F.3d 860 (Fed. Cir. 2003), *rev'd on other grounds*, 545 U.S. 193 (2005).......................12

*WhitServe, LLC v. Computer Packages, Inc.*,
694 F.3d 10 (Fed. Cir. 2012) .........................................................................................10, 14

## RULES AND STATUTES

35 U.S.C. § 284..........................................................................................................................2

Fed. R. Civ. P. 26(a)(2)(D)(ii) ........................................................................................2, 3

## NATURE AND STAGE OF PROCEEDINGS

Intellectual Ventures I LLC and Intellectual Ventures II LLC (collectively, "IV") filed this patent infringement action on December 8, 2010, against Altera Corporation, Microsemi Corporation, and Lattice Semiconductor Corporation. On February 15, 2011, IV added Xilinx, Inc. as a defendant. Microsemi and Lattice were dismissed in early 2013 and Altera was dismissed in December 2013; Xilinx remains. IV asserts four patents against Xilinx—U.S. Patent Nos. 5,687,325 ("the '325 patent"); 6,260,087 ("the '087 patent"); 6,272,646 ("the '646 patent"); and 6,993,669 ("the '669 patent"). Fact and expert discovery is closed. (D.I. 111 at 2, 4.) Xilinx has filed a renewed motion to stay pending reexamination. (D.I. 447.)

IV has moved to exclude portions of the report and testimony of Xilinx's damages rebuttal expert, Julie Davis, specifically her opinions on pages 30, 51-80, and 84-86 of her rebuttal report in which she (i) addresses the failure of IV's damages expert, Michael Wagner, to consider the sales prices and Xilinx's [redacted] of the asserted patents as the maximum amounts the parties to the hypothetical negotiations would consider, and (ii) evaluates the *Georgia-Pacific* factors and concludes that those factors do not alter her view of the relevance of those maximum amounts. Xilinx hereby opposes.

## SUMMARY OF ARGUMENT

IV's motion to exclude certain portions of Ms. Davis's report and testimony should be denied. IV bears the burden of proving any damages. As Xilinx has explained in its *Daubert* motion to exclude the testimony of Mr. Wagner, he does not address the established royalty in this case. Instead, he opines solely on a hypothetical negotiation. For that reason alone, his testimony should be excluded because it would not help the trier of fact to understand the evidence or to determine a fact in issue. (D.I. 471 at 6-10.) As Xilinx's motion further explains, even if the Court were to determine that a hypothetical negotiation is relevant to IV's damages

case, Mr. Wagner's hypothetical negotiation analysis should be excluded because it contains several independent errors, each one of which renders his analysis fundamentally flawed. (D.I. 471 at 10-20.) And because IV's damages case depends solely on Mr. Wagner's analysis, Xilinx has moved for summary judgment of no damages. (D.I. 473 at 5-6.) If the Court agrees that Mr. Wagner's testimony should be excluded and grants Xilinx's summary judgment motion of no damages, there will be no need for Ms. Davis to testify, as there will be no damages issues to address. If, however, IV is permitted to present Mr. Wagner's testimony or other damages evidence, Xilinx should be permitted to present Ms. Davis's opinions in response.[1]

To the extent Mr. Wagner's testimony is permitted, Ms. Davis has detailed numerous errors with Mr. Wagner's analysis and his conclusion that, for royalties running through March 2013, Xilinx would owe IV more than [REDACTED]. The two issues raised in IV's motion are proper subjects of Ms. Davis's rebuttal testimony and should be allowed.

1. As part of her analysis refuting Mr. Wagner's opinion, Ms. Davis points out that Mr. Wagner failed to consider the maximum amounts that the licensors to the hypothetical negotiations would charge to license the asserted patents to Xilinx. As Ms. Davis explains, the prices at which the original patent holders sold the asserted patents to IV, and the prices at which [REDACTED], are relevant to the hypothetical negotiations, and the parties would not agree to a royalty higher than those amounts. *See* 35 U.S.C. § 284. Such opinion is directly relevant to showing this fundamental flaw in Mr. Wagner's opinion on a reasonable royalty, which does not take this material information into account. *See* Fed. R. Civ. P. 26(a)(2)(D)(ii) (a party may submit rebuttal expert opinion to

[1] In its motion, IV purports to challenge Ms. Davis's "affirmative" opinion on damages, stating that she has opined on a royalty to be applied in this case. This is misleading and incorrect. Ms. Davis is a rebuttal witness.

"contradict or rebut evidence on the same subject matter identified" by a party who has the burden of proof on the issue). IV can fully test Ms. Davis's opinions on cross-examination. *See Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 596 (1993).

2. Also as part of her analysis, Ms. Davis considered the *Georgia-Pacific* factors and any effect of those factors on her view that the patents' sales prices and [redacted] provide maximum royalties that the parties to the hypothetical negotiations would consider. *See Georgia-Pacific Corp. v. U.S. Plywood Corp.*, 318 F. Supp. 1116 (S.D.N.Y. 1970). Application of the *Georgia-Pacific* factors is routine. Ms. Davis's consideration of the factors is directly relevant to her testimony rebutting Mr. Wagner's analysis. *See* Fed. R. Civ. P. 26(a)(2)(D)(ii). Indeed, if Mr. Wagner is permitted to testify about his arbitrary doubling of a royalty rate under the *Georgia-Pacific* factors, Ms. Davis's testimony is a critical counterpart to demonstrate the flaws in Mr. Wagner's analysis. IV's sole complaint is that the factors did not affect Ms. Davis's opinion, but IV ignores that Ms. Davis opines on a *maximum* royalty, not on a specific amount that the parties would ultimately agree upon. Her confirmation that the sales and [redacted] remain the relevant maximums after application of the *Georgia-Pacific* factors is unremarkable, and in any event these opinions can be fully tested on cross-examination. *See Daubert*, 509 U.S. at 596.

**STATEMENT OF FACTS**

***The Patents-in-Suit.*** IV accuses Xilinx of infringing four patents: the '325, '087, '646, and '669 patents. IV is not the original holder of the patents. Instead, it acquired the rights to the asserted patents between 2004 and 2009 in the following transactions:

- In November 2008, Web Chang sold his '325 and '087 patents and a patent application [redacted]. *See* D.I. 476, Ex. 12 (Web Chang/Chin Capital Patent Purchase Agreement); *id.*, Ex. 1 (Wagner Opening Report) at ¶¶ 134, 173.

- In November 2009, Cypress Semiconductor Corporation sold its '646 patent and ten others [REDACTED] *See* D.I. 476, Ex. 13 (Cypress/Formus Two Patent Purchase Agreement); *id.*, Ex. 1 (Wagner Opening Report) at ¶¶ 135, 173.

- In August 2004, AirIP sold its '669 application, [REDACTED] *See* D.I. 476, Ex. 14 (AirIP/Gallitzin Allegheny Patent Purchase Agreement); *id.*, Ex. 1 (Wagner Opening Report) at ¶¶ 136, 173.

IV acquired the patents and over [REDACTED] others in support of its business model of licensing patents. *See* D.I. 476, Ex. 1 (Wagner Opening Report) at ¶ 30. IV does not practice the patents; the plaintiffs do not make or sell programmable logic devices or any other products. *See* D.I. 476, Ex. 1 (Wagner Opening Report) at ¶¶ 169, 218; Declaration of Kathleen D. Lynott in Support of Xilinx, Inc.'s Opposition to Plaintiffs' Motion for Partial Summary Judgment ("Lynott Dec."), Ex. Y (Wagner Dep. Tr.) at 339:15-340:13, 341:20-342:2. Xilinx, by contrast, is the market leader for the products at issue in this case. *See* D.I. 476, Ex. 1 (Wagner Opening Report) at ¶¶ 22–23. Xilinx began selling the accused products in February 2005 (for the '325 and '087 patents), in April 2006 (for the '646 patent), and in January 2006 (for the '669 patent). *See* D.I. 476, Ex. 2 (Davis Report) at 53; Lynott Dec., Ex. Y (Wagner Dep. Tr.) at 280:9-284:13.

***IV's and Xilinx's Preexisting Relationship.*** Outside of litigation, IV and Xilinx have a preexisting contractual relationship in which [REDACTED] *See* D.I. 476, Ex. 7 (Fund I Subscription Agreement); Ex. 8 (Fund II Subscription Agreement); Ex. 1 (Wagner Opening Report) at ¶¶ 54-58; Lynott Dec., Ex. Y (Wagner Dep. Tr.) at 193:2-8; 333:9-334:12. The

asserted patents are assets in these funds, and each plaintiff is a wholly-owned subsidiary of the correspondingly named fund. (D.I. 11.)

As an investor,

*See, e.g.*, D.I. 476, Exs. 9-11 (IV acquisition notices). Under the IV-Xilinx agreements,

As Xilinx has explained, these contractual terms establish a royalty ceiling that governs this case, without the need to conduct hypothetical negotiations. (D.I. 471 at 6-10.)

***Mr. Wagner's Damages Opinion.*** For its damages case, IV presents expert Michael Wagner, who opines solely on a hypothetical negotiation for a reasonable royalty in exchange for a non-exclusive license to the asserted patents. Mr. Wagner submitted an opening report on June

26, 2013, and a reply report on September 6, 2013, and was deposed October 8-9, 2013. *See* D.I. 476, Ex. 1 (Wagner Opening Report); Ex. 4 (Wagner Reply Report); Ex. 3 (Wagner Dep. Tr.).

Mr. Wagner posits a single negotiation in January 2006, solely between IV and Xilinx as the licensor and licensee. *See* D.I. 476, Ex. 1 (Wagner Opening Report) at ¶¶ 88-89. The only agreements that Mr. Wagner considers relevant to the hypothetical negotiation are [REDACTED] *See id.* (Wagner Opening Report) at ¶¶ 104, 115-122, 156-157, 163, 277. [REDACTED] *See* D.I. 476, Ex. 5 (Microsemi Agreement); Ex. 6 (Lattice Agreement).

In Mr. Wagner's opinion, the parties to the hypothetical negotiation would initially agree on a .44% royalty rate for each asserted patent, which Mr. Wagner extrapolated from an ostensible [REDACTED].[2] Mr. Wagner then recites the *Georgia-Pacific* factors and, without explanation, arbitrarily concludes that the parties would agree to more than double that rate, for a

---

[2] Mr. Wagner calculated his baseline 0.44% rate by [REDACTED] *See* D.I. 476, Ex. 1 (Wagner Opening Report) at ¶¶ 109, 113, 125; Lynott Dec., Ex. Y (Wagner Dep. Tr.) at 23:21-37:17, 331:11-332:6. Using that scheme, Mr. Wagner identified the [REDACTED] is .44%. *See* D.I. 476, Ex. 1 (Wagner Opening Report) at ¶¶ 126-130.

final running royalty of 1% for each asserted patent. *See* D.I. 476, Ex. 1 (Wagner Opening Report) at ¶ 296. Applying that rate to his opinion that the royalty base should be the entirety of the sales revenue of Xilinx's accused products, Mr. Wagner concludes that, for royalties running through March 2013, Xilinx would owe IV approximately [REDACTED] *See* D.I. 476, Ex. 1 (Wagner Opening Report) at ¶¶ 298, 300.

***Ms. Davis's Rebuttal Report.*** In response to Mr. Wagner's analysis, Xilinx presents rebuttal expert Julie Davis. Ms. Davis submitted her rebuttal report on August 9, 2013, and she was deposed on October 14-15, 2013. In her report, she details thirteen "serious flaws in Mr. Wagner's analysis, each one of which undermines his conclusions as to the appropriate amount of damages." D.I. 476, Ex. 2 (Davis Report) at 30-51. For instance, Ms. Davis explains that Mr. Wagner improperly uses a single hypothetical negotiation between IV and Xilinx when in fact there are three separate negotiations involving additional parties because the dates of first infringement differ for the various asserted patents. The three hypothetical negotiations are between:

- Web Chang and Xilinx for the '325 and '087 patents in February 2005;
- Cypress and Xilinx for the '646 patent in April 2006; and
- IV and Xilinx for the '669 patent in January 2006.

*Id.* (Davis Report) at 44-46, 52-53.

Ms. Davis further explains the unreliability of Mr. Wagner's reliance on the [REDACTED] *See id.* (Davis Report) at 34-40. As Ms. Davis explains, "[t]hese agreements should not be considered for purposes of the hypothetical negotiations" because,

among other things, those agreements: "were not entered into by either of the parties to Xilinx's negotiation with Web Chang or Cypress" and thus "do not provide any evidence as to the state of mind of the parties to the hypothetical negotiations for" the '325, '087, and '646 patents; [REDACTED] and thus are poor indicators of the economic value of the patents; [REDACTED] *Id.* (Davis Report) at 34-35 (emphasis in original).

Instead, as Ms. Davis explains, the prices at which Web Chang and Cypress in fact sold their patents to IV (or an intermediary) evidence their expectation of the value of those patents during their hypothetical negotiations with Xilinx. *See id.* (Davis Report) at 19-21, 42-43, 55-58, 77-79. As Ms. Davis opines, "it seems reasonable that the valuation judgment by the original inventors, or their employers, who obviously were skilled in and knowledgeable of the relevant technology and the industries in which those technologies are employed, would at least be a significant factor" in the hypothetical negotiations for the '325, '087, and '646 patents. *Id.* (Davis Report) at 42. Accordingly, she opines that Web Chang, Cypress, and Xilinx "would start by considering" the prices at which Web Chang and Cypress negotiated for their patents when they sold them to IV, because those amounts "provide[] the only data point as to value that [the original patent holders] placed on their patents." *Id.* (Davis Report) at 77-78. Then, given that Web Chang and Cypress sold the entirety of the patent rights to IV but their hypothetical negotiations with Xilinx would be only for a non-exclusive license, Ms. Davis opines that a reasonable way to approach the determination of a royalty for Xilinx "would be to apply Xilinx's market share to the purchase price." *Id.* Applying Xilinx's 51% worldwide market share results

in [REDACTED] *Id.* Ms. Davis criticizes Mr. Wagner's failure to take these prices into account. *Id.* (Davis Report) at 55-58, 77-80.

Ms. Davis also opines that Mr. Wagner should have considered the prices at which Xilinx—the licensee in the hypothetical negotiations for the Web Chang and Cypress—could have [REDACTED] *Id.* (Davis Report) at 58. [REDACTED].[3] *Id.* (Davis Report) at 77-78. Accordingly, the parties to the hypothetical negotiations for the '325, '087, and '646 patents would not be willing to license those patents for more than those amounts. *Id.* (Davis Report) at 77-78, 80.

For the '669 patent, the parties to the hypothetical negotiation are IV and Xilinx. Ms. Davis thus opines that those parties would consider [REDACTED] to the '669 patent. *Id.* (Davis Report) at 79. [REDACTED].[4] *Id.* (Davis Report) at 59. When the hypothetical negotiation for the '669 patent took place in January 2006, [REDACTED]. *Id.* (Davis Report) at 79. Based on these factors, if Xilinx had elected a license at that time, it would have paid at most a net royalty of [REDACTED]. *Id.* (Davis Report) at 79-80. Ms. Davis thus opines

3 [REDACTED]

4 *See* note 2, *supra*.

that IV and Xilinx would not be willing to license the '669 patent for an amount higher than that. *Id.* (Davis Report) at 79-80.

Accordingly, in rebutting Mr. Wagner's testimony that the hypothetical negotiators would agree to a royalty of over [redacted], Ms. Davis concludes that they would instead consider these amounts as a maximum royalty: [redacted] *Id.* at 80. If called to testify, Ms. Davis will rebut Mr. Wagner's refusal to consider this relevant information.

**ARGUMENT**

Neither of IV's complaints about Ms. Davis's opinions demonstrates that those opinions are unreliable. To the contrary, if the Court admits Mr. Wagner's testimony notwithstanding its fundamental flaws, Ms. Davis's rebuttal testimony is critical to educating the jury about those flaws. IV's objections can be addressed through "[v]igorous cross examination, presentation of contrary evidence, and careful instruction on the burden of proof." *Daubert*, 509 U.S. at 596; *Breidor v. Sears, Roebuck & Co.*, 722 F.2d 1134, 1138-39 (3d Cir. 1983) ("Where there is a logical basis for an expert's opinion testimony, the credibility and weight of that testimony is to be determined by the jury, not the trial judge.").

***1. Ms. Davis's rebuttal opinions on Mr. Wagner's failure to consider the sales prices of the asserted patents are admissible.*** This testimony is reliable and critical to exposing Mr. Wagner's erroneous testimony, which fails to consider this relevant evidence and is therefore "out of line with economic reality." *WhitServe, LLC v. Computer Packages, Inc.*, 694 F.3d 10, 33 (Fed. Cir. 2012). As Xilinx's *Daubert* motion explains, Mr. Wagner's hypothetical negotiations analysis errs at the outset by using the wrong date and parties. In doing so, he brings into the hypothetical negotiation agreements ([redacted]

[redacted]) that would not be known to any of the parties to the '325, '087, and '646 hypothetical negotiations: Web Chang, Cypress, and Xilinx. Instead, as Ms. Davis explains in rebuttal, Mr. Wagner should have considered the prices at which Web Chang and Cypress sold their patents and the prices at which [redacted] Similarly, for the '669 patent, for which IV and Xilinx are the parties to the hypothetical negotiation, Mr. Wagner should have considered [redacted] *See* D.I. 476, Ex. 2 (Davis Report) at 30, 55-59, 84-86.

IV does not challenge Ms. Davis's identification of the three separate hypothetical negotiation dates or that the parties to those negotiations would be Web Chang, Cypress, and IV each negotiating with Xilinx. Nor does IV contend that the sales prices or [redacted] are irrelevant—[redacted] (D.I. 475 at 6), and IV concedes that the sales prices reflect "the number that the original owners of the patents-in-suit accepted from IV" (D.I. 475 at 9).[5] IV nonetheless faults Ms. Davis for opining on this evidence without providing specific, picayune background details that IV conjures up. According to IV, Ms. Davis must identify underlying "evidence as to how the parties to those sales valued the patents-in-suit" or "arrived at the purchase prices," establish that the patent holders did not "accept a low purchase price" for reasons unrelated to the economic value of the patents, and account for an illiquid market for patents. (D.I. 475 at 10-11.)

---

[5] IV repeatedly mischaracterizes Ms. Davis's testimony as opining on the "purchase prices" of the asserted patents, thereby minimizing the relevance of those prices particularly for the '325, '087, and '646 hypothetical negotiations. In those negotiations, Web Chang and Cypress are the willing licensors. Accordingly, the prices at which they would later sell their patents reflect the value of those patents that they would have in mind during the hypothetical negotiation. [redacted] Framing the inquiry in terms of IV's "purchase price" is inaccurate.

IV presents no authority whatsoever for its demands. Whether as part of the first, fourth, or fifteenth *Georgia-Pacific* factors, payments received by the patentee for the licensing or sale of the patents-in-suit can be relevant. *See Georgia-Pacific*, 318 F. Supp. at 1120; *see also Integra Lifesciences I, Ltd. v. Merck KGaA*, 331 F.3d 860, 871 (Fed. Cir. 2003) (finding relevant the original patent holder's sale of its patents-in-suit and other assets to the plaintiff for $20 million, so that the $15 million jury award "seems unbalanced in view of the overall acquisition price" and therefore warranted vacatur and remand), *rev'd on other grounds*, 545 U.S. 193 (2005). IV's argument that Ms. Davis must present other evidence on the value of the patents to the original patent holders and address the illiquid patent market is supported by no authority and is misplaced. The sales prices are the only data reflecting how Web Chang and Cypress (and AirIP) valued their own patents. Lynott Dec., Ex. Z (Davis Dep. Tr.) at 363:23-364:2. That alone makes the sales prices relevant. *Id.*; *see also* 246:9-12. IV's disagreement with Ms. Davis's analysis is not a basis for exclusion.

IV also argues that Ms. Davis has not offered testimony based on sales prices in the past and did not cite peer-reviewed articles on this issue. (D.I. 475 at 11.) But peer-reviewed studies are unnecessary; Ms. Davis opines on evidence squarely relevant to the reasonable royalty analysis. *See Georgia-Pacific*, 318 F. Supp. at 1120. Moreover, as Ms. Davis testified, she has not previously offered testimony on sales prices because she has not been presented with a case with the current set of facts—*i.e.*, where the plaintiff had acquired the patent from someone else. Lynott Dec., Ex. Z (Davis Dep. Tr.) at 477-79. Although IV (at p. 4) cites *Allen v. International Business Machines Corp.*, C.A. No. 94-264 JJF, 1997 WL 34501372, at *17-19 (D. Del. Dec. 18, 1997), that case is inapposite. In *Allen*, a products liability case, the plaintiffs proffered an expert to opine on the relationship between the design and use of keyboards and cumulative trauma

disorders. *See id.* at *10. The literature was inconsistent, and in reaching his conclusions, the expert used his own judgment to determine the particular studies on which he would rely, and he could not say whether any others in the ergonomics field would have made the same choices. *See id.* at *11-17. The Court determined that, regardless whether any of the studies had been peer reviewed, the expert's own "uncertain[ty] whether his methodology has been followed within his profession" militated against admissibility. *Id.* at *17 n.20. In contrast to the expert's unreliable use of studies in *Allen*, Ms. Davis's opinions fall squarely within the reasonable royalty analysis.

In short, IV may pursue its objections at trial, but they do not implicate the Court's gate-keeping role under *Daubert*. IV presents no basis for excluding Ms. Davis's testimony rebutting Mr. Wagner's erroneous refusal to consider the patents' sales prices, whether reflected in the prices at which the original patent holders sold their patents to IV or the election prices agreed upon between IV and Xilinx.

***2. Ms. Davis's rebuttal opinions on the <u>Georgia-Pacific</u> factors are admissible.*** As Xilinx has shown in its motion to exclude Mr. Wagner's testimony, Mr. Wagner's application of the *Georgia-Pacific* factors is wholly arbitrary, and his testimony should be excluded on that basis alone. (D.I. at 471 at 19-20.) But if he is nonetheless permitted to testify, Ms. Davis's opinions on whether the *Georgia-Pacific* factors affect the maximum amounts that Mr. Wagner should have considered are plainly relevant and admissible. *See* D.I. 476, Ex. 2 (Davis Report) at 51-80. IV's sole complaint about Ms. Davis's testimony on this issue is that her ultimate opinion did not change after applying the *Georgia-Pacific* factors. (D.I. 475 at 12-14.) This is nonsensical and unsupported.

Unlike Mr. Wagner, who more than doubled his royalty rate without any analysis of how any or all of the *Georgia-Pacific* factors led him to quantify that conclusion (and for that reason alone his testimony should be excluded), Ms. Davis qualitatively considered all of the factors and then unremarkably concluded that as a whole they did not affect her opinion that Mr. Wagner should have considered the patents' sales prices and [REDACTED] as a *maximum* reasonable royalty. D.I. 476, Ex. 2 (Davis Report) at 54-80; Lynott Dec., Ex. Z (Davis Dep. Tr.) at 303:2-8, 311:3-5, 391:10-12 (instead of trying "to quantify the impact of any specific" *Georgia-Pacific* factor, using these "qualitative" factors "to frame" her review of the relevant evidence); *see also id.* at 444:23-446:1 (identifying the first and fifteenth factors as the most important in this case). *WhitServe* compels exclusion of Mr. Wagner's arbitrary jump in his royalty rate, not Ms. Davis's reasonable determination that the sales prices should be considered the maximum royalty in this case. *See WhitServe*, 694 F.3d at 31-32 (vacating jury's damages award where plaintiff's expert opined that a factor would either "increase" the royalty rate, "decrease" it, or have a "neutral" impact, but "did not explain how much each factor affected the rate"). And if Mr. Wagner is nonetheless permitted to testify, Ms. Davis's analysis under the *Georgia-Pacific* factors is critical to Xilinx's ability to refute Mr. Wagner's arbitrary analysis.

**CONCLUSION**

For the foregoing reasons, the Court should deny IV's motion to exclude portions of the reports and testimony of Ms. Davis.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Michael Flynn*

Karen Jacobs (#2881)
Michael Flynn (#5333)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
kjacobs@mnat.com
mflynn@mnat.com

*Attorneys for Xilinx, Inc.*

OF COUNSEL:

Patrick T. Michael
David L. Wallach
JONES DAY
555 California Street, 26th Floor
San Francisco, CA 94140
(415) 626-3939

William C. Rooklidge
JONES DAY
3161 Michelson Drive, Suite 800
Irvine, CA 92612-4408
(949) 553-7501

David B. Cochran
JONES DAY
North Point
901 Lakeside Avenue
Cleveland, OH 44114-1190
(216) 586-7029

Laurie M. Charrington
Joe C. Liu
Kathleen D. Lynott
JONES DAY
Silicon Valley Office
1755 Embarcadero Road
Palo Alto, CA 94303
(650) 739-3939

December 20, 2013