IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| INTELLECTUAL VENTURES I LLC and<br>INTELLECTUAL VENTURES II LLC,<br><br>           Plaintiffs,<br><br>   v.<br><br>XILINX, INC.,<br><br>           Defendant. | )<br>)<br>)<br>)<br>)   C.A. No. 10-1065 (LPS)<br>)<br>)   REDACTED -<br>)   PUBLIC VERSION<br>)<br>)<br>) |

**XILINX, INC.'S ANSWERING BRIEF IN OPPOSITION TO PLAINTIFFS' MOTION
TO EXCLUDE THE TESTIMONY OF XILINX'S EXPERT DR. CARL SHAPIRO**

                                                      MORRIS, NICHOLS, ARSHT & TUNNELL LLP
                                                      Karen Jacobs (#2881)
                                                      Michael Flynn (#5333)
                                                      1201 N. Market Street
                                                      P.O. Box 1347
                                                      Wilmington, DE 19899
                                                      (302) 658-9200
                                                      kjacobs@mnat.com
                                                      mflynn@mnat.com

OF COUNSEL:                             *Attorneys for Defendant Xilinx, Inc.*

Patrick T. Michael                    David B. Cochran
JONES DAY                                    JONES DAY
555 California Street, 26th Floor      North Point
San Francisco, CA 94104               901 Lakeside Avenue
(415) 875-5893                           Cleveland, OH 44114
                                                  (216) 586-7029
Laurie M. Charrington
Joe C. Liu                                          William C. Rooklidge
Kathleen D. Lynott                     JONES DAY
JONES DAY                                    3161 Michelson Drive, Suite 800
1755 Embarcadero Road              Irvine, CA 92612-4408
Palo Alto, CA 94303                    (949) 553-7501
(650) 739-3939

Original Filing Date: December 20, 2013
Redacted Filing Date: December 26, 2013

# **TABLE OF CONTENTS**

Page

I. NATURE AND STAGE OF PROCEEDINGS ............................................................................1

II. SUMMARY OF ARGUMENT ..................................................................................................1

III. STATEMENT OF FACTS .........................................................................................................2

IV. ARGUMENT ..............................................................................................................................4

    A. Legal Standard .................................................................................................................5

    B. IV Confuses the Legal Standard Regarding
       the Admissibility of Expert Testimony ...........................................................................6

       1. Dr. Shapiro Is Highly Qualified ...............................................................................6

       2. Dr. Shapiro's Opinions Are Reliable ........................................................................7

       3. Dr. Shapiro's Opinions Fit the Facts of This Case ...................................................8

       4. Dr. Shapiro's Opinions Are Not Improperly Duplicative .......................................10

       5. Dr. Shapiro's Opinions Do Not Unfairly Disparage IV ..........................................10

V. CONCLUSION .........................................................................................................................11

# **TABLE OF AUTHORITIES**

**CASES** **PAGES**

*Apple v. Samsung Elecs. Co.*,
   No. 11-cv-01846-LHK, 2012 WL 2571332 (N.D. Cal. June 30, 2012)...................................9

*B. Braun Melsungen AG v. Terumo Medical Corp.*,
   749 F. Supp. 2d 210 (D. Del. 2010) .........................................................................................5

*Breidor v. Sears, Roebuck & Co.*,
   722 F.2d 1134 (3d Cir. 1983)...................................................................................................5

*Daubert v. Merrell Dow Pharms.*,
   509 U.S. 579 (1993) ................................................................................................. 5, 6, 7, 10

*Elcock v. Kmart Corp.*,
   233 F.3d 734 (3d. Cir. 2000) ...................................................................................................6

*Georgia-Pacific Corp. v. U.S. Plywood Corp.*,
   318 F. Supp. 1116 (S.D.N.Y. 1970)................................................................................ 7, 8, 9

*HTC Corp. v. Tech. Props. Ltd.*,
   No. 08-cv-00882-PSG, 2013 WL 4782598 (N.D. Cal. Sept. 6, 2013)...................................11

*LG Display Co. v. AU Optronics*,
   265 F.R.D. 189 (D. Del. 2010) ................................................................................................7

*Lindemann Maschinenfabrik GmbH v. Am. Hoist & Derrick Co.*,
   895 F.2d 1403 (Fed. Cir. 1990)...............................................................................................4

*Lucent Techs. v. Gateway*,
   580 F.3d 1301 (Fed. Cir. 2009)...............................................................................................4

*Pineda v. Ford Motor Co.*,
   520 F.3d 237 (3d. Cir. 2008) ...................................................................................................5

*ResQNet.com v. Lansa*,
   594 F.3d 860 (Fed. Cir. 2010)..................................................................................................4

*St. Clair Intellectual Prop. Consultants v. Acer*,
   935 F. Supp. 2d 779 (D. Del. 2013) ........................................................................ 2, 5, 9, 10

*Whitserve v. Computer Packages*,
   694 F.3d 10 (Fed. Cir. 2012) ...................................................................................................7

**RULES AND STATUTES**

Fed. R. Civ. P. 26(a)(2)(D)(ii) ...................................................................................................2

Fed. R. Evid. 702 ....................................................................................................................1, 5

I.     **NATURE AND STAGE OF PROCEEDINGS**

Plaintiffs Intellectual Ventures I LLC and Intellectual Ventures II LLC (collectively, "IV") filed this patent infringement action on December 8, 2010 against Altera Corporation, Microsemi Corporation, and Lattice Semiconductor Corporation.  On February 15, 2011, IV added Xilinx, Inc. ("Xilinx") as a defendant.  Microsemi and Lattice were dismissed in early 2013, and Altera was dismissed in November 2013.  Xilinx remains.  IV asserts four patents against Xilinx—U.S. Patent Nos. 5,687,325 ("the '325 patent"); 6,260,087 ("the '087 patent"); 6,272,646 ("the '646 patent"); and 6,993,669 ("the '669 patent").  Fact and expert discovery is closed.  (D.I. 111 at 2, 4.)  Xilinx has filed a renewed motion to stay pending reexamination.  (D.I. 447.)

On November 20, 2013, IV moved to exclude the report and testimony of Xilinx's expert Dr. Carl Shapiro as unreliable under Rule 702 of the Federal Rules of Evidence ("IV's Motion"). IV seeks to exclude Dr. Shapiro's opinions based on IV's assertions that they (1) are not properly tied to any relevant issues in this case; (2) are improperly duplicative of those set forth by Ms. Julie Davis, another of Xilinx's experts; and (3) seek to disparage IV and risk unfair prejudice and jury confusion.  IV is wrong on all counts.  Dr. Shapiro's is relevant and probative and should be permitted.  This is Xilinx's answering brief in opposition to IV's Motion.[1]

II.    **SUMMARY OF ARGUMENT**

Dr. Shapiro's opinions in this case are based on pleadings, expert reports, depositions, interviews, and documents IV produced, and they apply reliable economic principles to the reasonableness of the royalty IV demands through its damages expert Michael Wagner.  Dr.

---

[1]   Since the filing of IV's Motion, Altera Corp. has been dismissed from this litigation.  As such, although IV's Motion is directed at "Defendants," Xilinx is the only defendant that remains to address IV's arguments.

1

Shapiro's testimony would help the jury understand the economic realities Xilinx would face as a "willing licensee" in any hypothetical negotiation, especially in a hypothetical negotiation with a large patent collector and holder such as IV.  IV's Motion disputes the weight of Dr. Shapiro's opinions, not their admissibility. *St. Clair Intellectual Prop. Consultants v. Acer*, 935 F. Supp. 2d 779, 781-82 (D. Del. 2013) (denying motion to exclude accused infringer's damages expert and ruling plaintiff's objections went to weight, not admissibility, of testimony).  The jury's role is to weigh Dr. Shapiro's testimony—which IV will have the opportunity to test on cross examination—in evaluating the evidence presented by IV and Xilinx, including the unreliable testimony of IV's damages expert Mr. Wagner.  Dr. Shapiro's testimony rebuts Mr. Wagner's testimony and adds, not duplicates, important analysis to that of Ms. Davis.  Dr. Shapiro's testimony is relevant to the "reasonable" royalty[2] IV seeks in this case, and it does not "simply seek to disparage IV." As such, IV's Motion should be denied.

## III.   STATEMENT OF FACTS

***The Patents-in-Suit.***  IV accuses Xilinx of infringing four patents: the '325, '087, '646, and '669 patents.  IV is not the original owner of the patents.  Instead, IV acquired the rights to the asserted patents between 2004 and 2009 along with over ▇▇▇ others in support of its business model of licensing patents.  *See*  D.I. 476, Ex. 1 (Wagner Opening Report at ¶ 30.)  IV does not practice the patents.  *See id.* (Wagner Opening Report at ¶ 169.)  Xilinx, by contrast, is

---

[2]   Xilinx has moved to exclude as improper Mr. Wagner's testimony that 1% per patent is a reasonable royalty.  (D.I. 471 at 6-10.)  Among other fatal errors, Mr. Wagner does not address the established royalty between IV and Xilinx and opines solely on a hypothetical negotiation.  Should the Court deny Xilinx's Motion to Exclude the opinions of Mr. Wagner, Xilinx should be permitted to rebut Mr. Wagner's opinions with the expert testimony of Dr. Shapiro.  *See* Fed. R. Civ. P. 26(a)(2)(D)(ii)(a party may submit rebuttal expert opinion to "contradict or rebut evidence on the same subject matter identified" by a party who has the burden of proof on the issue).

the market leader for the products at issue in this case. *See id.* (Wagner Opening Report at ¶¶ 22–23.) Xilinx began selling products that allegedly infringe the patents in February 2005 (for the '325 and '087 patents), in April 2006 (for the '646 patent), and in January 2006 (for the '669 patent). *See id.*, Ex. 2 (Davis Report at 53); Declaration of Kathleen D. Lynott ("Lynott Dec."), Ex. Y (Wagner Dep. Tr.) at 280:9-284:13.

*Royalty Stacking in the Semiconductor Industry.* Royalty stacking exists where a single product is potentially covered by numerous patents, and thus, runs the risk of being burdened by royalties to many separate patentees. Lynott Dec., Ex. AA (Shapiro Report at 6.) This is a particularly difficult issue in the semiconductor industry where a single product may include hundreds or even thousands of separate components. The Patents-in-Suit are just four of potentially ▬▬ or more semiconductor patents held by many different parties. (*Id.* at 18.) Thus, royalty stacking is an economic reality that would constrain both Xilinx and potential licensors (including IV) in any royalty negotiation.

*Mr. Wagner's Damages Opinions.* IV's damages expert Mr. Wagner relies on IV materials for his analysis of IV and its role in the patent marketplace. *See* D.I. 476, Ex. 1 (Wagner Opening Report) at ¶¶ 27–43, 145–152 and Ex. 4 (Wagner Reply Report) at ¶¶ 32–37, 63–64. IV, through the expert report of Mr. Wagner, seeks a running royalty of 1% for *each asserted patent*, which, for royalties running through March 2013, would amount to approximately ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ for four patents. *See* D.I. 476, Ex. 1 (Wagner Opening Report) at ¶¶ 298, 300.

Mr. Wagner also opines on why royalty stacking purportedly is not a problem here. D.I. 476, Ex. 4 (Wagner Reply Report) at ¶¶ 54-60. His assertion, however, is belied by the very

3

███████████████ on which Mr. Wagner relies. Those agreements granted a license with a ███████████████████████, while Mr. Wagner calls reasonable a royalty of 1% for *each* of the *four* patents asserted against Xilinx. *See* Lynott Dec., Ex. Y (Wagner Dep. Tr.) at 243:13-246:17.

**Dr. Shapiro's Rebuttal.** It is well established that "[t]he burden of proving damages falls on [IV]," *Lucent Techs. v. Gateway*, 580 F.3d 1301, 1324 (Fed. Cir. 2009), and Xilinx has "no burden to rebut until [IV] met its burden with reliable and sufficient evidence." *ResQNet.com v. Lansa*, 594 F.3d 860, 872 (Fed. Cir. 2010). Thus in response to Mr. Wagner's claim that 1% for each of the four asserted patents is a reasonable royalty in view of comparable licensees paying ███████████████, Xilinx presented rebuttal expert Dr. Carl Shapiro. Dr. Shapiro submitted his rebuttal report on August 9, 2013 and was deposed on October 18, 2013. Dr. Shapiro opines that parties to the single hypothetical negotiation posited by Mr. Wagner face certain business and economic realities, including the potential ██████ patent-or-more royalty stack Xilinx's accused products face. Lynott Dec., Ex. AA (Shapiro Report) at 18. Dr. Shapiro rebuts Mr. Wagner's opinions by explaining the economic realities that would face the parties, including the royalty stack compared to its reasonable return on investment. (*Id.* at 17–18.) No reasonable licensee would pay 1% *per patent* when facing a royalty stack of ██████ or more.

## IV. ARGUMENT

Dr. Shapiro's opinions are proper rebuttal to Mr. Wagner's failure to address royalty stacking in his damages analysis. As a matter of economics, a reasonable aggregate royalty cannot exceed the profits that the hypothetical licensee would expect to earn. *See, e.g., Lindemann Maschinenfabrik GmbH v. Am. Hoist & Derrick Co.*, 895 F.2d 1403, 1408 (Fed. Cir. 1990) (affirming award of damages and rejecting testimony of patentee's damages expert that reasonable royalty would have exceeded infringer's anticipated net profit, stating that his

4

"opinion that [infringer] 'would agree to pay a royalty in excess of what it expected to make in profit' was, in light of all the evidence in this case, absurd"). Royalty stacking would be a fundamental economic concern for a hypothetical negotiator in Xilinx's position, and Mr. Wagner's failure to even address that concern renders his opinion unreliable and necessitates Dr. Shapiro's rebuttal evidence.

IV's Motion appears to dispute the extent to which Dr. Shapiro's testimony fits the facts of the case. *See* IV's Motion at 4 (arguing Dr. Shapiro's opinions are not tied in any reliable way to the issue of damages *in this case*) (emphasis original). IV is incorrect. Xilinx has presented competent evidence of the economic realities facing Xilinx and others similarly situated in the semiconductor industry. Dr. Shapiro's testimony is tied directly to the issue of damages in this case. Moreover, IV's objections can be addressed through "[v]igorous cross examination, presentation of contrary evidence, and careful instruction on the burden of proof." *See Daubert v. Merrell Dow Pharms.*, 509 U.S. 579, 596 (1993); *Breidor v. Sears, Roebuck & Co.*, 722 F.2d 1134, 1138-39 (3d Cir. 1983) ("Where there is a logical basis for an expert's opinion testimony, the credibility and weight of that testimony is to be determined by the jury, not the trial judge."). IV's disagreement with Dr. Shapiro's opinions is not a basis for exclusion.

### A. Legal Standard

Dr. Shapiro's testimony should not be excluded unless it "is so fundamentally flawed as to be unreliable and unhelpful to the fact finder." *St. Clair*, 935 F. Supp. 2d at 782; Fed. R. Evid. 702. This is because Rule 702 embodies a "liberal policy of admissibility." *B. Braun Melsungen AG v. Terumo Medical Corp.*, 749 F. Supp. 2d 210, 222 (D. Del. 2010) (citing *Pineda v. Ford Motor Co.*, 520 F.3d 237, 243 (3d. Cir. 2008).

5

### B. IV Confuses the Legal Standard Regarding the Admissibility of Expert Testimony

IV's Motion fails to apply the *Daubert* standard to its critique of Dr. Shapiro. *Daubert* seeks to prevent unqualified, unreliable, and/or unrelated testimony from being presented at trial. *See Daubert*, 509 U.S. at 592, n.10; *see also Elcock v. Kmart Corp.*, 233 F.3d 734, 741 (3d. Cir. 2000) (describing these "three distinct substantive restrictions on the admission of expert testimony: qualifications, reliability, and fit").

IV has made no claim that Dr. Shapiro's testimony is unqualified. *See* IV's Motion. Nor does IV claim that the data on which Dr. Shapiro relies in forming his testimony is unreliable. *See* IV's Motion. Instead, IV's Motion seeks to exclude Dr. Shapiro's opinions because they purportedly "are not properly tied to any relevant issue in this case." *See* IV's Motion at 2. IV's complaints, however, at best go to the weight, and not the admissibility, of Dr. Shapiro's testimony. Aside from relevance, IV fails to advance any proper basis under *Daubert* for excluding these opinions. *See Daubert*, 509 U.S. at 596. Contrary to IV's assertions, however, Dr. Shapiro's opinions are plainly relevant to issues IV raised in this case, and they are neither duplicative nor disparaging (which are not grounds for exclusion under *Daubert* in any event).

Dr. Shapiro offers qualified and reliable opinions that rebut Mr. Wagner's opinion that Xilinx would be willing to pay a 1% running royalty per asserted patent.

#### 1. Dr. Shapiro Is Highly Qualified

Dr. Carl Shapiro is a prominent economist who received his PhD in Economics from M.I.T. and is currently the Transamerica Professor of Business Strategy at the Haas School of Business at the University of California at Berkeley, where he has taught since 1990. Lynott Dec., Ex. AA, (Shapiro Report) at 1. From 2011-2012, Dr. Shapiro served as a Member of the President's Council of Economic Advisors, offering the President objective economic advice on

6

the formulation of economic policy. (*Id.*) For the two years prior to that, Dr. Shapiro was the Deputy Assistant Attorney General for Economics at the Antitrust Division of the U.S. Department of Justice, where he supervised more than fifty PhD economists in the Antitrust Division's Economic Analysis Group. (*Id.*) Dr. Shapiro has also served as the Director of the Institute of Business and Economic Research at U.C. Berkeley from 1998 to 2008 and has authored over 104 publications in the field of economics, many of which relate to antitrust, innovation, and competitive strategy. (*Id.*) IV does not dispute that Dr. Shapiro is qualified.

### 2. Dr. Shapiro's Opinions Are Reliable

Dr. Shapiro opines on patent thickets and related royalty stacking in context of the 1% royalty per patent IV demands from Xilinx in this case. Dr. Shapiro's opinions rely on sound facts and data such as USPTO and other publications, FTC Reports, deposition testimony given in this case, discovery served in this case, patent license agreements IV produced , interviews with witnesses , and the expert reports of Mr. Wagner. *See, e.g.*, Lynott Dec., Ex. AA (Shapiro Report) at 8-11. Contrary to IV's Motion, Dr. Shapiro was not required to apply the *Georgia-Pacific* factors for his opinions to be helpful and reliable. *See id.* (citing *Whitserve v. Computer Packages*, 694 F.3d 10, 31 (Fed. Cir. 2012) ("We do not require that witnesses use any or all of the *Georgia-Pacific* factors when testifying about damages in patent cases."); *compare* IV's Motion at 2 ("[Dr. Shapiro]. . . . did not perform a *Georgia-Pacific* analysis . . . . His opinions therefore bear no relationship to—and will not assist the jury in performing—the actual calculation of damages in this case.").

To the extent IV disputes the reliability of Dr. Shapiro's testimony, that is not clear from IV's Motion, and more importantly, any such objections would go to the weight of Dr. Shapiro's testimony. *See LG Display Co. v. AU Optronics*, 265 F.R.D. 189, 195 (D. Del. 2010) (refusing

to strike testimony of damages experts and instead ruling that the reliability objections raised would go to the weight of the expert's testimony).

### 3. Dr. Shapiro's Opinions Fit the Facts of This Case

Dr. Shapiro's opinions are directly tied to the issue of damages in this case. Dr. Shapiro opines that Mr. Wagner's application of a 1% running royalty per asserted patent is unreasonable and out of touch with the economic realities facing companies, like Xilinx, who cannot ignore that there are potentially thousands of patents that cover components of the FPGA products they sell.[3]

The term "patent thicket" refers to the universe of hundreds, thousands, and often hundreds of thousands of patents that cover a single commercial product sold by companies like Xilinx. Lynott Dec., Ex. AA, (Shapiro Report) at 3. The result of this "patent thicket" can create what is known as "royalty stacking." Royalty stacking exists where a single product potentially practices numerous patents, and thus, runs the risk of being burdened by royalties to many separate patentees. (*Id.* at 6.) This is a particularly difficult issue in the semiconductor industry where a single product may include hundreds or even thousands of separate components. And, it is unlike the concerns addressed in *Georgia-Pacific* where the accused product was covered by a single patent. *Georgia-Pacific Corp. v. U.S. Plywood Corp.*, 318 F. Supp. 1116, 1132 (S.D.N.Y. 1970) ("[T]he contribution of the [patented] invention cannot be isolated as a separate physical part. The invention permeated the [accused Georgia-Pacific] plywood panel to such a degree that it should be considered as covering the article as a whole."); *see also id.*

---

[3] IV has acquired a portfolio of at least ▮▮▮ patents, only four of which are asserted in this case. Xilinx already has a license to more than ▮▮▮ ▮▮▮. *See* Lynott Dec., Ex. AA (Shapiro Report) at 11 (citing IV-ALT00309685).

The complexity of the products at issue here and the potential for those products to practice numerous patents is readily apparent. There are estimated to be ■■■ or more patents that potentially cover the FPGA devices Xilinx sells. Lynott Dec., Ex. AA (Shapiro Report) at 18. As a result, Xilinx faces patent infringement lawsuits, demands for patent licenses, and related requests for damages from thousands of parties on at least ■■■ patents when trying to commercialize its products. (*Id.*) The problems created by this environment are not merely a hypothetical problem – as Dr. Shapiro opines – they are an economic reality. And it is an economic reality that hypothetical negotiators would have to consider. The jury should be permitted to hear what factors an economically rational licensee would consider in entering into a patent license. Indeed, that is the fundamental premise of the hypothetical negotiation.

Mr. Wagner's opinion, which fails to even consider royalty stacking, is fundamentally flawed and requires rebuttal from Dr. Shapiro if Mr. Wagner is permitted to testify. Any reasonable royalty analysis reflecting the results of a hypothetical negotiation should reflect the business realities faced by the accused infringer. (*Id.*); *see also Apple v. Samsung Elecs. Co.*, No. 11-cv-01846-LHK, 2012 WL 2571332, at *8 (N.D. Cal. June 30, 2012) (noting an infringer's profits is a relevant consideration under at least three *Georgia-Pacific* factors that inform a reasonable royalty calculation) (citing *Georgia-Pacific*, 318 F. Supp at 1120). Such business realities include the royalty stack that affects Xilinx's accused products—currently ***and*** in the future. Lynott Dec., Ex. AA (Shapiro Report) at 1, 18. Likewise, to the extent IV has a different view of the economic realities than Dr. Shapiro, those criticisms can be addressed on cross-examination. *St. Clair*, 935 F. Supp. 2d at 781-82 (denying motion to exclude accused infringer's damages expert and ruling that plaintiff's objections went to the weight, not admissibility, of the testimony). IV's Motion should be denied.

### 4. Dr. Shapiro's Opinions Are Not Improperly Duplicative

Dr. Shapiro's testimony is not duplicative of that of Ms. Davis; but even if it were, that would not be a basis for exclusion. *See St. Clair*, 935 F. Supp. 2d at 781. This is especially true given that the trial will be timed, and the parties will not be given time to waste. (*Id.*) With a Ph.D. in Economics, Dr. Shapiro comes from a different discipline than Ms. Davis who has a background in accounting, and their testimony is complementary, not duplicative. Dr. Shapiro provides a fundamental, scientific, and reliable understanding of the patent stacking issues that Mr. Wagner fails to consider. The testimony of each is important to Xilinx's defense, and any minimal duplication can be addressed at trial.

### 5. Dr. Shapiro's Opinions Do Not Unfairly Disparage IV

IV next seeks to exclude Dr. Shapiro's testimony as seeking to disparage IV and unfairly prejudicial. Aside from the fact that these are not proper grounds for exclusion under *Daubert*, IV's prejudice argument is misguided. As an initial matter, IV's Motion ignores that Dr. Shapiro is a *rebuttal* witness. Dr. Shapiro's testimony on IV's business model and the patent market is in direct rebuttal to Mr. Wagner's proffered opinions on IV's business model (Lynott Dec., Ex. AA (Shapiro Report) at 18; D.I. 476, Ex. 1 (Wagner Report) at 14-16) and on what Mr. Wagner calls the "Inefficient Market for Patents." D.I. 476, Ex. 4 (Wagner Opening Report) at ¶ 145. Although Mr. Wagner's testimony should be excluded in its entirety, to the extent he is permitted to testify, Dr. Shapiro's testimony is needed to rebut Mr. Wagner's testimony – including his testimony on IV's business model and the patent market. Any disagreement IV has with Dr. Shapiro's opinions can be fully tested on cross-examination. *See Daubert,* 509 U.S. at 596.

Dr. Shapiro's testimony also does not unfairly disparage IV – which is not the test under *Daubert* in any event. Dr. Shapiro's testimony is necessary and proper to explain the business and economic realities that would be known to the parties to the hypothetical negotiation. That

10

IV considers objective, factual and economic descriptions about its business to be disparaging is not grounds to exclude testimony that is plainly accurate and non-prejudicial. *See, e.g., HTC Corp. v. Tech. Props. Ltd.*, No. 08-cv-00882-PSG, 2013 WL 4782598, at *3-4 (N.D. Cal. Sept. 6, 2013) (precluding derogatory characterizations of patent owners such as the term "troll" without prior court approval, but allowing references to "non-practicing entities," "patent assertion entities," or other neutral language to that effect). Dr. Shapiro's testimony explains the economic realities faced by companies due to dense pools of patents assigned to thousands of different patent holders. Lynott Dec., Ex. AA (Shapiro Report) at 2. Dr. Shapiro tied those economic realities to the specific facts at issue here, including the effects of patent thickets as they relate to IV, the party with whom Xilinx would be engaged in a hypothetical negotiation for one of the asserted patents. (*Id.* at 3–6.) Because Mr. Wagner did not even address these economic realities in arriving at his opinions, Dr. Shapiro's opinions are necessary and proper rebuttal. In short, economic reality does not amount to excludable, disparaging testimony. Dr. Shapiro has detailed numerous errors with Mr. Wagner's analysis, all of which are proper subjects of Dr. Shapiro's rebuttal testimony and should be allowed.

## V. CONCLUSION

Dr. Shapiro's testimony is admissible, and Xilinx respectfully requests that the Court deny IV's Motion.

|  | MORRIS, NICHOLS, ARSHT & TUNNELL LLP, |
|---|---|
|  | */s/ Michael Flynn* |
|  | Karen Jacobs (#2881) |
|  | Michael Flynn (#5333) |
|  | 1201 North Market Street |
|  | P.O. Box 1347 |
| OF COUNSEL: | Wilmington, DE 19899 |
|  | (302) 658-9200 |
| Patrick T. Michael | kjacobs@mnat.com |
| David L. Wallach | mflynn@mnat.com |
| JONES DAY |  |
| 555 California Street, 26th Floor | *Attorneys for Xilinx, Inc.* |
| San Francisco, CA 94140 |  |
| (415) 626-3939 |  |

William C. Rooklidge
JONES DAY
3161 Michelson Drive, Suite 800
Irvine, CA 92612
(949) 553-7501

David B. Cochran
JONES DAY
North Point
901 Lakeside Avenue
Cleveland, OH 44114
(216) 586-7029

Laurie M. Charrington
Joe C. Liu
Kathleen D. Lynott
JONES DAY
Silicon Valley Office
1755 Embarcadero Road
Palo Alto, CA 94303
(650) 739-3939

December 20, 2013
7865969